Harold H. Davis (SBN CA 235552)
Marc R. Baluda (SBN CA 192516)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
Hal.Davis@gtlaw.com
Marc.Baluda@gtlaw.com

Attorneys for Party in Interest
RONALD NICHOLSEN II

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SANTA ROSA

| | |
|---|---|
| In re Kelham Vineyards & Winery, LLC | Bankruptcy Case No.<br>23-10384 SR__ - Chapter 11<br>[Assigned to: Judge William Lafferty]<br><br>**PARTY IN INTEREST RONALD NICHOLSEN II'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO APPOINT A CHAPTER 11 TRUSTEE**<br><br>Hearing:<br>DATE: September 5, 2023<br>TIME: 9:30 a.m.<br>DEPT: 220, Oakland, CA |

Error! Unknown document property name.
ACTIVE 689292923v1

## Table of Contents

I.     INTRODUCTION ........................................................................................... 7

II.    THE PARTIES ............................................................................................... 7

III.   JURISDICTION ............................................................................................. 8

IV.    STANDING ................................................................................................... 8

V.     STATEMENT OF FACTS ............................................................................ 8

    A.    History of Kelham Vineyards ............................................................. 8
    B.    Kelham Vineyards Growers LLC ...................................................... 10
    C.    Alleged Creditor Main Street LLC .................................................... 10
    D.    Ronald Nicholsen's Petition for Writ of Mandate to Inspect the Company's Books ........ 11

        1.    The California state court granted a Writ of Mandate compelling Kelham Vineyards' and Susanna Kelham's Compliance with the California Corporation Code ................................................ 12
        2.    The California state court orders Susanna Kelham to pay sanctions and fees for the respondents' failure to comply with the Writ and on-going violations of California law ........ 13
        3.    The California state court set a trial ........................................ 14

    E.    The Petition for Involuntary Bankruptcy ........................................... 14

VI.    CAUSE EXISTS FOR THE APPOINTMENT OF A TRUSTEE UNDER § 1104(A) ........ 15

    A.    Applicable Standard ............................................................................ 15
    B.    The Officers and Principals of the Debtor are the Same as the Major Creditors .......... 16
    C.    Conflicts of Interest and Kelham Vineyards Sustains Significant Losses for the Benefit of Kelham Growers ............ 18
    D.    A Chapter 11 Trustee is Necessary to Stop the Incompetence and Gross Mismanagement of Kelham Vineyards ............ 21

        1.    Kelham Vineyards is draining its Bank Accounts in Response to the Writ Action .. 21
        2.    Kelham Vineyards is pursuing unpermitted and unlawful business opportunities . 22
        3.    Kelham Vineyards pays its employees to perform work on Susanna Kelham's and Hamilton Nicholsen's personal homes and on behalf of Kelham Growers ........... 23
        4.    Kelham Vineyards' Tax Returns are Glaringly Inaccurate ..................... 23
        5.    Kelham Vineyards paid a significant amount of money toward Susanna Kelham's Mortgages and Other Unknown Mortgages ........... 23

    E.    Kelham Vineyards has not maintained proper books and records ...................... 25
    F.    In the Alternative, the Court should order the appointment of a Trustee under Section 1104 (a)(2) ................ 25

VII.   CONCLUSION .............................................................................................. 26

[Assigned to: Judge William Lafferty]

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

Error! Unknown document property name.    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 2 of 26
ACTIVE 689292923v1

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*In re 942 Penn RR, LLC,*
    642 B.R. 89 (Bankr. S.D. Fla. 2022) ...............................................................................18

*In re Aardvark, Inc.,*
    No. 96-858, 1997 WL 129346 (D. Del. Mar. 4, 1997) ....................................................19

*In re Best Home Performance of CT,*
    LLC, 2019 Bankr. LEXIS 3682 (Bankr. D. Conn. December 2, 2019) ...............................7

*Cajun Electric Power Coop. v. Central Louisiana Electric Coop.,*
    74 F.3d 599 (5th Cir. 1996) ..............................................................................................15

*In re China Fishery Grp. Ltd. (Cayman),*
    No. 16-11895, 2016 WL 6875903 (Bankr. S.D.N.Y. Oct. 28, 2016) ................................17

*In re Colby Constr. Corp.,*
    51 B.R. 113 (Bankr. S.D.N.Y. 1985) ...............................................................................15

*Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc.,*
    828 F.2d 239 (4th Cir. 1987) ............................................................................................15

*In re Concord Coal Corp.,*
    11 B.R. 552 (Bankr. S.D. W.Va. 1981) ............................................................................18

*In re Corona Care Convalescent Corporation,*
    257 B.R. 379 (Bankr. C.D. Cal. 2015) ..............................................................................14

*In re Embrace Sys. Corp.,*
    178 B.R. 112 (Bankr. W.D. Mich. 1995) ..........................................................................15

*In re Euro–Am. Lodging Corp.,*
    365 B.R. 421 (Bankr. S.D.N.Y. 2007) .......................................................................23, 24

*In re Eurospark Indus., Inc.,*
    424 B.R. 621 (Bankr. E.D.N.Y. 2010) .............................................................................17

*In re Grasso,*
    490 B.R. 500 (Bankr. E.D. Pa. 2013) ...............................................................................19

*Grogan v. Garner,*
    498 U.S. 279 (1991) ..........................................................................................................14

*In re Ionosphere Clubs, Inc.,*
    113 B.R. 164 (Bankr. S.D. N.Y. 1990) ............................................................................24

*In re Klein/Ray Broadcasting,*
    100 B.R. 509 (9th Cir. Ct. 1987) ......................................................................................14

*Lowenschuss v. Selnick,*
    171 F.3d 673 (9th Cir. 1999) ............................................................................................15

3       [Assigned to: Judge William Lafferty]

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO
APPOINT A CHAPTER 11 TRUSTEE

Error! Unknown document property name.   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 3 of 26
Case: 23-40523  Doc# 306
ACTIVE 689292923v1

*In re Marvel Entm't.Corp.*,
140 F.3d 463 (3d Cir. 1998)................................................................14, 15, 17, 18

*In re Microwave Products of America, Inc.*,
102 B.R. 666 (Bankr. W.D.Tenn. 1989)..................................................................18

*In re Morningstar Marketplace, Ltd.*,
544 B.R. 297 (Bankr. M.D. Pa. 2016)....................................................................17

*In re Nartron Corp.*,
330 B.R. 573 (Bankr. W.D. Mich. 2005).................................................................15

*Oklahoma Refining Co. v. Blaik*,
838 F.2d 1133 (10th Cir. 1988) ...............................................................................15

*In re Sharon Steel Corp.*,
871 F.2d [1217]..........................................................................................................24

*In re Sharon Steel Corp.*,
871 F.2d 1217 (3d Cir. 1989)............................................................................15, 19

*Smart World Techs., LLC v. Juno Online Servs., Inc.* (*In re Smart World Techs., LLC*),
423 F.3d 166 (2d Cir. 2005)......................................................................................17

*In re SunCruz Casinos, LLC*,
298 B.R. 821 (Bankr. S.D. Fla. 2003)......................................................................18

*In re V. Savino Oil & Heating Co.*,
99 B.R. .................................................................................................................18, 24

*In re Veblen West Dairy LLP*,
434 B.R. 550 (Brankr. D. S.D. 2010) .......................................................................15

*In re W.R. Grace & Co.*,
285 B.R. 148 (Bankr. D. Del. 2002) .........................................................................14

*In re William A. Smith Const. Co., Inc.*,
77 B.R. 124 (Bankr.N.D.Ohio 1987) ........................................................................14

**Federal Statutes**

11 U.S.C. § 101 (31)(B)(i-vi).........................................................................................7

11 U.S.C. § 101 (31)(E)...................................................................................................7

11 U.S.C. § 303(d)............................................................................................................7

11 U.S.C. § 1104(a) ..................................................................................................6, 7, 14

11 U.S.C. § 1104(a)(1).............................................................................14, 18, 19, 24

11 U.S.C. § 1104(c)..........................................................................................................7

28 U.S.C. § 157.................................................................................................................7

28 U.S.C. § 157(b)(2).......................................................................................................7

28 U.S.C. § 1334...............................................................................................................7

Error! Unknown document property name. Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 4 of 26
ACTIVE 689292923v1

28 U.S.C. § 1408 ........................................................................................................... 7

28 U.S.C. § 1409 ........................................................................................................... 7

**State Statutes**

Cal. Code Civ. Proc.
§1085 .................................................................................................................. 10

Cal. Corp. Code § 17701.13, *et seq.* ......................................................................... 10

Cal. Corp. Code § 17704.10 ........................................................................................ 10

Cal. Corp. Code, §17704.10 (a) ................................................................................... 10

Cal. Corp. Code §17704.10 (g) .................................................................................... 12

**Rules**

Local Rules of Bankruptcy Court, Rule 9010-1 (a) ..................................................... 13

**Other Authorities**

1 March, Ahart and Shapiro, California Practice Guide—Bankruptcy ¶ 4:2001 (2014) ........................... 14

https://www.investopedia.com/terms/a/adjusting-journal-
entry.asp#:~:text=An%20adjusting%20journal%20entry%20is,or%20expenses%20for
%20the%20period ....................................................................................................... 23

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO
APPOINT A CHAPTER 11 TRUSTEE

Pursuant to 11 U.S.C. § 1104(a), Ronald Nicholsen II, party in interest in the above-captioned Chapter 11 case, hereby files this motion (the "Motion") for entry of an order directing the appointment of a Chapter 11 trustee to manage the business and affairs of Kelham Vineyards.

In support of the Motion, Ronald Nicholsen relies upon the accompanying Memorandum and Points of Authorities.

6

[Assigned to: Judge William Lafferty]

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

Case: Unknown document property name. Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 6 of 26

ACTIVE 689292923v1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The immediate appointment of a chapter 11 trustee is needed to preserve the value of Kelham Vineyards & Winery LLC ("Kelham Vineyards" or the "Debtor") by stopping the ongoing mismanagement, eliminating the numerous conflicts of interest caused by common ownership of the Debtor and its major operational creditors, and providing an independent party to investigate the Debtor's insider transactions. Appointing a chapter 11 trustee will further allow this bankruptcy case to proceed efficiently and maximize the value of the bankruptcy estate for the benefit of all stakeholders.

The two members of petitioning creditor Main Street Cottage LLC ("Main Street LLC") collectively own 66% of the membership interest in Kelham Vineyards, the Debtor. The other owner of Kelham Vineyards and moving party herein – Ronald Nicholsen – has been embroiled in a heavily litigated writ action against Kelham Vineyards and Susanna Kelham in state court since October 2021.

As a result of that state court action, Kelham Vineyards was forced to provide Ronald Nicholsen its company's books and records in December 2022. Those records tell a tale of gross mismanagement of Kelham Vineyards and egregious breaches of fiduciary duty against the estate and in favor of related entities under Susanna Kelham's common ownership. For example, despite representing in applications for insurance in 2021 that its inventory of wine is worth $100 million, Kelham Vineyards obtained a "valuation" for the purpose of buying Ronald Nicholsen's interest in the company, which claimed his 33.3% interest in the company was only worth $499,000. Likewise, Kelham Vineyards, through Susanna Kelham, signed its answer to the involuntary petition claiming that it is default "on all of its major principal operational debts" – but did not fully disclose that Susanna is the controlling party of each entity allegedly holding those "debts." Dkt. No. 6. For those reasons, and those described below, Ronald Nicholsen as a party in interest respectfully seeks the immediate appointment of an independent and disinterested trustee under 11 U.S.C. § 1104(a).

## II.     THE PARTIES

Purported creditor Main Street LLC is a California limited liability company.

Debtor Kelham Vineyards is a California limited liability company. The members of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

Case: 23-40085 Doc# 16 Filed: 08/07/23 Entered: 08/07/23 16:06:25 Page 7 of 26
Error! Unknown document property name.
ACTIVE 689292923v1

petitioning creditor and of the Debtor are nearly identical, and are as follows:

| Petitioning Creditor Main Street Cottage LLC | Debtor Kelham Vineyards & Winery LLC |
|---|---|
| Hamilton Nicholsen | Hamilton Nicholsen |
| Susanna Kelham | Susanna Kelham |
| | Ronald Nicholsen |

Hamilton Nicholsen and Ronald Nicholsen are brothers and sons of Susanna Kelham. Hamilton Nicholsen and Susanna Kelham, as well as their affiliate company (and petitioning creditor) Main Street LLC, are "insiders" of the Debtor as expressly described in 11 U.S.C. § 101 (31)(B)(i-vi) & (E).

### III.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The legal predicates for the relief requested herein are 11 U.S.C. §§ 1104(a) and 1104(c).

### IV.    STANDING

Ronald Nicholsen owns 33.3% of Debtor Kelham Vineyards. Courts have recognized, "[i]n the context of an involuntary bankruptcy proceeding where the petitioning creditor and the debtor are not owned by the same person, there is no real issue with respect to who can contest the petition under 11 U.S.C. § 303(d) or what can be advanced as a bona fide defense." *In re Best Home Performance of CT, LLC*, 2019 Bankr. LEXIS 3682, *20 (Bankr. D. Conn. December 2, 2019). "That said, where the Debtor's control party also happens to be the control party of the Petitioner, as in the present case, the underlying purpose of the statute would be thwarted in favor of manipulation and abuse if no one was to have a voice for the corporation." *Id*.

Accordingly, numerous courts have granted minority equity owners such as Ronald Nicholsen standing as a party in interest "when confronted with abusive involuntary petitions involving internal corporate feuding where the debtor would otherwise be rendered defenseless and its control party is utterly conflicted." *Id*. at *19-20.

### V.    STATEMENT OF FACTS

**A.    History of Kelham Vineyards**

Case: Unknown document property name.    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 8 of 26
ACTIVE 689292923v1

With the financial and moral support of his late stepfather, Rawson Kelham, in 1997, Ronald Nicholsen established Kelham Maclean Winery at 360 Zinfandel Lane in Saint Helena, California. Declaration of Ronald Nicholsen ("Decl. Nicholsen"), ¶ 2. The company owns and operates a winery, tasting room, and showroom in St. Helena, California. *Id*. at ¶ 5. It also manages five acres of prime planted vineyards and production of up to 48,000 bottles of wine a year. *Id*. at ¶ 5. From its inception until 2021, Ronald Nicholsen was its winemaker, vineyard manager, tasting and tour guide, operations manager, and host of winemaker dinners all over the United States. *Id*. at ¶ 6.

In 2000, Susanna Kelham and Hamilton Nicholsen joined Kelham Vineyards. Decl. Nicholsen, ¶3. Ronald Nicholsen, Susanna Kelham, and Hamilton Nicholsen are equal owners and members of Kelham Vineyards, each owning a 33.3% interest in Kelham Vineyards, with Susanna Kelham claiming a 33.4% interest. *Id*. at ¶¶ 3 - 4.

Kelham Vineyards has a permit to produce 100,000-gallons of wine a year – which is significantly larger than most all other boutique wineries in Napa Valley. Decl. Nicholsen, ¶ 5. As of 2021, it was producing approximately 12,000 – 15,0000 gallons of wine a year. *Id*. at ¶ 5.

On May 24, 2021, Susanna Kelham abruptly pushed Ronald Nicholsen out of the company he started and banned him from the property at 360 Zinfandel Lane even though he is a partial owner of that real property. Decl. Nicholsen, ¶ 13, Ex. 1. Since May 24, 2021, Hamilton Nicholsen and Susanna Kelham have had exclusive control of Kelham Vineyards and its operations – over Ronald Nicholsen's objections.

As part of its operations, Kelham Vineyards maintains a voluminous library of many of its vintages of wine. On Kelham Vineyards' 2021 application for commercial liability insurance, it represented its bottled wine stored at the winery was worth $8 million and its bottled wine stored at an off-site facility was worth $92 million. Declaration of Harold H. Davis ("Decl. Davis"), ¶ 2, Ex. 2, pg. 22.[1]

---

[1] Conversely, in October 2022, Kelham Vineyards engaged Greg Barber of Barber Analytics to provide a minority equity interest valuation. Barber determined the equity value of the entire enterprise was $2,056,000. Decl. Davis, ¶ 3, Ex. 3, pg. 2. In reaching this conclusion, Barber did not consider the company's assets and made numerous adjustments to Kelham Vineyards' financial records such as removing mortgages from the balance sheets, removing a home owned by Susanna Kelham and Hamilton Nicholsen in Tahoe (even though Kelham Vineyards pays expenses for that property), and removing other items

### B. Kelham Vineyards Growers LLC

Since its inception, Kelham Vineyards has made its wine with grapes sourced from its 40-acre vineyard in Oakville, California. Decl. Nicholsen, ¶ 7. Those vineyards were always, until his death in 2011, owned by Rawson Kelham with the intention of providing grapes for Kelham Vineyards' wines. *Id*. at ¶ 7.

In 2016, after contentious litigation over Rawson Kelham's estate, Susanna Kelham formed Kelham Vineyards Growers LLC ("Kelham Growers") and began "selling" grapes from the vineyard to Kelham Vineyards. Decl. Nicholsen, ¶¶ 8-11; Decl. Davis, ¶ 4, Ex. 4. Susanna Kelham is the only owner of Kelham Growers. Decl. Davis, ¶ 5, Ex. 5. According to her, Susanna Kelham is Kelham Growers and Kelham Grower is her. Decl. Davis, ¶ 6, Ex. 6, S. Kelham Depo. Tr. 274:24-275:3.

In nearly all respects, Kelham Vineyards and Kelham Growers operate as one indivisible entity. The two properties are advertised to the public as being related. Decl. Davis, ¶ 7, Ex. 7. Kelham Vineyards pays for Kelham Growers' Napa County Planning, Building & Environmental Service permits. Decl. Davis, ¶ 8, Ex. 8. They share the same bookkeeper and certified public account. Decl. Davis, ¶ 9, Ex. 9, M. Drescher Depo. Tr. 22:5-17. The entities share the office space at the winery. *Id*. at Ex. 9, M. Drescher Depo. Tr. 24:8-23. Kelham Vineyards' employees work for both entities but are paid by Kelham Vineyards. *Infra*, part VI. D. 3.

### C. Alleged Creditor Main Street LLC

On January 4, 2017, Susanna Kelham transferred certain real property located at 1760 Main Street, St. Helena, California ("1760 Main Street" or "cottage") to Main Street LLC. Decl. Davis, ¶ 10, Ex. 10. In or about 2017, Kelham Vineyards began renting 1760 Main Street for $5,250 a month as an incentive for winery club members to stay at the "cottage" in exchange for purchasing wine. Decl. Davis, ¶ 6, Ex. 6, S. Kelham Depo. Tr. 204:12-205:1. There is no written lease agreement between Kelham Vineyards and Main Street LLC.

---

from its balance sheets. *Id*. at Ex. 3, pg. 4 (pg. 30 from the Report). This baseless valuation was done with the intent to "buy" Ronald Nicholsen out of his company at a deceptively low value.

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

Error! Unknown document property name. ACTIVE 689292923v1

During her deposition on April 27, 2023, Susanna Kelham testified that she did not know whether Kelham Vineyards was in arrears to Main Street LLC. *Id.* at Ex. 6, S. Kelham Depo. Tr. 310:7-22. She testified that Melanie Drescher, the bookkeeper for both Kelham Vineyards and Main Street LLC, would know whether Kelham Vineyards owed any amounts to Main Street LLC. *Id.*

At her deposition on May 18, 2023, Melanie Drescher confirmed she was the bookkeeper for all three entities controlled by Susanna Kelham: Kelham Vineyards, Kelham Growers, and Main Street LLC. Decl. Davis, ¶ 9, Ex. 9, M. Drescher Depo. Tr. 22:5-17. She further testified that Kelham Growers pays for her bookkeeping services on behalf of itself and Main Street LLC. *Id.* at Ex. 9, M. Drescher Depo. Tr. 23:20-23. Melanie Drescher testified in her personal capacity and on behalf of Kelham Vineyards regarding topics: "7. The assets and liabilities of Kelham Vineyards…" and "11. All real properties for which Kelham Vineyards pays mortgage, rental or use payments and/or property taxes and any associated mortgage or lease agreements whether Written or oral." *Id.* at Ex. 9, M. Drescher Depo. Tr. 14:3-20. Melanie Drescher testified that she believed Kelham Vineyards had paid all rent due to Main Street LLC, but she needed to confirm. *Id.* at Ex. 9, M. Drescher Depo. Tr. 81:21-23.

### D. Ronald Nicholsen's Petition for Writ of Mandate to Inspect the Company's Books

As a member of Kelham Vineyards, Ronald Nicholsen has a statutory right under California law to inspect the company's books and records. See Cal. Corp. Code, §17704.10 (a).[2] Immediately after being forced out of the company he founded, on June 1, 2021, Ronald Nicholsen invoked his statutory right to inspect the company's records by demanding to inspect Kelham Vineyards' books and records.

After months of obfuscation and delay by Kelham Vineyards and Susanna Kelham, on October 4, 2021, Ronald Nicholsen filed a verified petition for writ of mandate (the "Petition") pursuant to California Code of Civil Procedure §1085 for a Writ of mandate compelling Kelham Vineyards and Susanna Kelham (the "respondents") to comply with their obligations under California Corporations Code §§ 17704.10 and 17701.13, *et seq.*, to permit him to inspect the company's books and records in

---

[2] "Upon the request of a member or transferee, for purposes reasonably related to the interest of that person as a member or a transferee, a manager or, if the limited liability company is member-managed, a member in possession of the requested information, shall promptly deliver, in Writing, to the member or transferee, at the expense of the limited liability company, a copy of the information required to be maintained by paragraphs (1), (2), and (4) of subdivision (d) of Section 17701.13, and any Written operating agreement of the limited liability company."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

California Superior Court, County of Napa. Decl. Davis, ¶ 11, Ex. 11; Decl. Nicholsen, ¶ 8.

As detailed in Ronald Nicholsen's motion to lift the stay (Dkt. No. 11), despite quickly serving Kelham Vineyards, Susanna Kelham, a member of both debtor Kelham Vineyards and petitioning creditor Main Street LLC, evaded five separate attempts to personally serve her the Petition. Decl. Davis, ¶ 12, Ex. 12. Eventually, on November 15, 2021, counsel for Kelham Vineyards accepted service of the Petition on Susanna Kelham's behalf. Decl. Davis, ¶ 13, Ex. 13. On January 26, 2022, Kelham Vineyards filed a response to the Petition. Susanna Kelham did not personally respond to the Petition.

1.      The California state court granted a Writ of Mandate compelling Kelham Vineyards' and Susanna Kelham's Compliance with the California Corporation Code

Unfortunately, the filing of the Petition did not secure respondents Kelham Vineyards and Susanna Kelham's compliance. On September 27, 2022, Ronald Nicholsen filed an opening brief in support of a writ of mandate. Neither respondent bothered filing an opposition. On November 4, 2022, the California state court heard arguments from Ronald Nicholsen and Kelham Vineyards regarding the merits of Ronald Nicholsen's petition for writ of mandate. Thereafter, the California state court issued a writ of mandate compelling Kelham Vineyards and Susanna Kelham to provide Ronald Nicholsen its books and records, which included, but was not limited to, 19 categories of records enumerated therein (the "Writ"). Decl. Davis, ¶ 14, Ex. 14.

Pursuant to the Writ, on December 4, 2022, the parties appeared at the winery for Ronald Nicholsen to inspect the Debtor's books and records. The only records presented were hard copy documents, so Ronald Nicholsen was forced hire a vendor to scan the records to determine if the respondents complied with the Writ. The respondents denied Ronald Nicholsen's repeated requests to permit the vendor to scan the records off-site for a considerably discounted price. Decl. Davis, ¶ 15.

Over the following two weeks, Kelham Vineyards provided inconsistent representations regarding whether 29 banker boxes contained any records responsive to the Writ. By December 20, 2022, the vendor had scanned 1/3 of the records, costing Ronald Nicholsen more than $24,000; but without any confirmation from Kelham Vineyards the relevancy of the thousands of other pages, Ronald Nicholsen was forced to call off the scanning efforts. Ronald Nicholsen still does not know the content of those 29

[Assigned to: Judge William Lafferty]
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

ACTIVE 689292923v1

banker boxes. And he has received scant electronic documents.

> 2. <u>The California state court orders Susanna Kelham to pay sanctions and fees for the respondents' failure to comply with the Writ and on-going violations of California law</u>

Kelham Vineyards and Susanna Kelham were required to make an initial return of the Writ by December 15, 2022. Neither bothered, and both continued withholding records from Ronald Nicholsen.

On January 25, 2023, during a regularly scheduled case management conference, Ronald Nicholsen informed the California state court of the respondents' on-going non-compliance. In response, the state court told respondents it was not "rocket science" and *sua sponte* set a hearing to show cause why they should not be sanctioned for failing to comply with the Writ. Decl. Davis, ¶ 16.

By the date of the hearing on the order to show cause, on February 15, 2023, Kelham Vineyards and Susanna Kelham had neither returned the Writ nor returned many of the records responsive to the Writ. Ronald Nicholsen requested that the state court sanction Susanna Kelham personally liable on behalf of both the respondents because she is the managing member of Kelham Vineyards, and any order against Kelham Vineyards would hurt Ronald Nicholsen's pecuniary interest in the company. The California state court sanctioned Susanna Kelham $1,500, personally, for her and Kelham Vineyards' failure to comply with its Writ.[3] Decl. Davis, ¶ 17, Ex. 15. As part of its order, the state court also determined that Kelham Vineyards' and Susanna Kelham's refusal to comply with its Writ and the Corporations Code, as of March 2, 2023, was without justification pursuant to Cal. Corp. Code §17704.10 (g). *Id.* The court set a second order to show cause as to why they still had not returned the Writ and sanctions should not issue. *Id.*

The second hearing for an order to show cause was held on March 13, 2023. Days before, Kelham Vineyards finally made an initial return of the Writ, which was woefully deficient. Decl. Davis, ¶ 18. Susanna Kelham did not return the Writ by the hearing. Decl. Davis, ¶ 19, Ex. 16. At the conclusion of that hearing, the California state court set a third order to show cause hearing against Susanna Kelham for her failure to appear, and for a hearing on Ronald Nicholsen's petition for attorney's fees.

Thereafter, Susanna Kelham appeared through new counsel in the action and made an initial

---

[3] The law firm representing Kelham Vineyards in the state action paid this sanction on her behalf.

Case: 23-10384 Doc# 105 Filed: 08/07/23 Entered: 08/07/23 16:06:25 Page 13 of 26
ACTIVE 689292923v1

return of the Writ whereby she made the baseless claim that she complied with the Writ. As of today's date, Kelham Vineyards has refused to provide any of the company's emails, Susanna Kelham has refused to produce emails sent on her personal email account regarding the company, records regarding purported debts with related entity Kelham Vineyards Growers, LLC, and numerous other categories of records required by the Writ.

On May 10, 2023, the state court awarded Ronald Nicholsen $134,679.40 as a partial reimbursement for his expenses, including attorney's fees, through March 9, 2023, against Susanna Kelham, personally, due to her and Kelham Vineyards' failure to comply with the Writ and Corporations Code. Decl. Davis, ¶ 21, Ex, 17.

### 3. The California state court set a trial

By the order of May 10, 2023, the state court ruled that there were questions of fact regarding Kelham Vineyards' and Susanna Kelham's compliance with the Writ (and the Corporations Code) necessitating an evidentiary hearing. On May 18, 2023, the state court set 1–2-day trial to commence on October 2, 2023. Decl. Davis, ¶ 22, Ex. 18.

### E. The Petition for Involuntary Bankruptcy

On July 20, 2023, Main Street LLC filed its Petition for Involuntary Bankruptcy (the "Involuntary Petition"). Dkt. No. 1. On July 21, 2023, Main Street LLC served the Involuntary Petition on Kelham Vineyards. Dkt. No. 8, p. 20.

On July 24, 2023, Susanna Kelham on behalf of Kelham Vineyards served Main Street LLC's attorney an Answer to the Involuntary Petition, wherein she "admits" Kelham Vineyards owes a debt to Main Street LLC. Dkt. No. 6. Therein, she also avers that all the other purported "major principal operational debts" of Kelham Vineyards are owed to her (as "Managing Member" of the Debtor) or to entities she controls or owns. Dkt. No. 6, ¶¶ 10, 13. Kelham Vineyards did not, however, file the Answer with the Court (*see* Docket), presumably because doing so would violate Local Rues of Bankruptcy Court, Rule 9010-1 (a), as Kelham Vineyards is apparently not represented by counsel in this bankruptcy case.

On July 27, 2023, Main Street LLC filed a motion for expedited adjudication of its pending

Error! Unknown document property name.
ACTIVE 689292923v1

involuntary bankruptcy and request for an entry of order for relief. Dkt Nos. 6-9. According to Main Street LLC's moving papers, the purported urgency is for Kelham Vineyards to begin an "orderly liquidation of KVW's assets, which includes the harvesting and sale of grapes, which require immediate attention…." Dkt. No. 8, p. 5, lines 5-6.

## VI.   <u>CAUSE EXISTS FOR THE APPOINTMENT OF A TRUSTEE UNDER § 1104(a)</u>

By this motion, Party in Interest and minority owner Ronald Nicholsen seeks entry of an order directing the appointment of a chapter 11 trustee to manage the business and affairs of Kelham Vineyards pursuant to § 1104(a) of the Bankruptcy Code. It is readily apparent that Kelham Vineyards' incompetence and mismanagement – in addition to its obfuscating, distrustful, and improper behavior – necessitate the appointment of a trustee.

### A.   Applicable Standard

Section 1104 (a) provides, in pertinent part, as follows:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest . . ., and after notice and a hearing, the court *shall* order the appointment of a trustee –
>
> > (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management . . ., or similar cause . . . or
> >
> > (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . .

11 U.S.C. § 1104 (a) (emphasis added).

Where a court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee is mandatory. *In re W.R. Grace & Co.*, 285 B.R. 148, 158 (Bankr. D. Del. 2002); see also *In re Klein/Ray Broadcasting*, 100 B.R. 509, 511 (9th Cir. Ct. 1987) ("Under Section 1104 a trial court "shall" appoint a trustee for "cause" or "in the best interest of the creditors.")

Ronald Nicholsen has the burden of proving the grounds exist for an appointment by a preponderance of the evidence. *In re Corona Care Convalescent Corporation*, 257 B.R. 379, 384 (Bankr. C.D. Cal. 2015) ("The parties seeking appointment of a Chapter 11 trustee under 11 U.S.C. § 1112(b)(1) and/or 1104(a) have the burden of proving appropriate grounds exist for such appointment by the preponderance of the evidence.") (citing 1 March, Ahart and Shapiro, California Practice Guide—

ACTIVE 689292923v1

Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 15 of 26

Bankruptcy ¶ 4:2001 at 4–144 (2014), *In re William A. Smith Const. Co., Inc.*, 77 B.R. 124, 126 (Bankr.N.D.Ohio 1987) and *Grogan v. Garner*, 498 U.S. 279, 286–291, 111 (1991)).

The categories enumerated in 11 U.S.C. § 1104(a)(1) "cover a wide range of conduct" and, thus, are best described as illustrative, rather than exclusive. *In re Marvel Entm't.Corp.*, 140 F.3d 463, 472 (3d Cir. 1998) (internal quotations omitted). Fraud, dishonesty, incompetence, and gross mismanagement of a debtor's business affairs are all grounds for appointment of a chapter 11 trustee under § 1104(a)(1). *See, e.g.*, *In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989); *In re Colby Constr. Corp.*, 51 B.R. 113, 116-18 (Bankr. S.D.N.Y. 1985). Although not explicitly enumerated, other "[c]onsiderations include the materiality of any misconduct, the debtor-in-possession's evenhandedness or lack thereof in dealings with insiders and affiliated entities in relation to other creditors, the existence of pre-petition voidable preferences or fraudulent conveyances, whether any conflicts of interest on the part of the debtor-in-possession are interfering with its ability to fulfill its fiduciary duties, and whether there has been self-dealing or squandering of estate assets." *In re Veblen West Dairy LLP*, 434 B.R. 550, 553 (Brankr. D. S.D. 2010) (citing *In re Nartron Corp.*, 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005) (citing *Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc.*, 828 F.2d 239, 242 (4th Cir. 1987); *Oklahoma Refining Co. v. Blaik*, 838 F.2d 1133 (10th Cir. 1988); *In re Sharon Steel*, 871 F.2d 1217, 1228 (3d Cir. 1989); *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1998); *Cajun Electric Power Coop. v. Central Louisiana Electric Coop.*, 74 F.3d 599, 600 (5th Cir. 1996); and *Lowenschuss v. Selnick*, 171 F.3d 673 (9th Cir. 1999)). As shown below, each of these considerations is present and warrant the appointment of a trustee to protect creditors, the estate, and equity owners.

**B.    The Officers and Principals of the Debtor are the Same as the Major Creditors**

Courts have appointed chapter 11 trustees where, in addition to the questionable transfers of the debtor's assets as shown below, the officers and principals of the debtor were the same as those of the creditor. *See*, *e.g.*, *In re Oklahoma Refining Co.*, 838 F.2d 1133 (10th Cir. 1988) (recognizing that transactions with affiliated companies may constitute cause for appointment of a trustee); *In re Embrace Sys. Corp.*, 178 B.R. 112, 128-29 (Bankr. W.D. Mich. 1995) (finding that debtor's conflict of interest arising from its interest in company attempting to acquire certain of its technology assets constituted

Error! Unknown document property name.
ACTIVE 689292923v1

"cause").

On July 20, 2023, Main Street LLC filed its Involuntary Petition for bankruptcy. Dkt. No. 1. Therein, Hamilton Nicholsen did not disclose that he is an owner of putative debtor Kelham Vineyards. Days later, Susanna Kelham, on behalf of Kelham Vineyards provided its Answer to Main Street LLC's counsel who attached it to Main Street LLC's request for judicial notice in support of its motion for expedited adjudication. Dkt. No. 6. Susanna Kelham and Hamilton Nicholsen, as the owners of creditor Main Street LLC then moved this Court for expedited adjudication of the involuntary bankruptcy to "allow KVW, creditors, and equity holders to commence an orderly liquidation of KVW's assets…" Dkt. No. 8, pg. 5.

The operating agreement that purports to govern Kelham Vineyards requires all three members to consent to the filing of a petition in bankruptcy or the entering into of an arrangement among creditors. Decl. Davis, ¶ 23, Ex. 19, p. 14, section 5.4(h). Main Street LLC's Petition for Involuntary Bankruptcy is, accordingly, an obvious and impermissible end-around the terms of the operating agreement by which two members of Kelham Vineyards are using their related entity to force the dissolution of Kelham Vineyards and liquidate its assets in their favor and against Ronald Nicholsen's interests.[4]

Equally concerning, in its Answer, Susanna Kelham avers that Kelham Vineyards is "in default on its major principal operational debts" in the following categories: (1) rent payments on 360 Zinfandel Lane; (2) payments to its grape supplier; (3) lease payments to Main Street LLC; and (4) guaranteed payments to its managing member. Dkt. No. 6, p. 8 at ¶10. Susanna Kelham is the "Managing Member" of Kelham Vineyards to whom the alleged "guaranteed payments" are owed and she also claims to hold "an equity interest of varying degrees" in those entities. Dkt. No. 6, p. 8 at ¶ 10 and p. 9 at ¶13.

Furthermore, Susanna Kelham has demonstrated she is the controlling party for the creditors who allegedly hold those "debts," as demonstrated in five letters she sent Ronald Nicholsen and Hamilton Nicholsen on October 26, 2022, days before the California state court entered its order granting the Writ:

- On behalf of Main Street LLC, she evicted Debtor Kelham Vineyards from 1760 Main

---

[4] Ronald Nicholsen also contends the Involuntary Petition was an improper effort to stay the California state action and halt the enforcement of the state court's writ compelling Kelham Vineyards and Susanna Kelham to produce records that would further demonstrate their gross malfeasance.

17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

Error! Unknown document property name.
ACTIVE 689292923v1

Street;

- On behalf of the "owners" of 360 Zinfandel Lane, she evicted Kelham Vineyards from the winery premises;

- On behalf of Kelham Growers, she evicted Kelham Vineyards from use of 1467 Dwyer Road;

- On behalf of Kelham Growers, she demanded collection of an unknown amount of debt from Kelham Vineyards; and

- On her own behalf, she demanded Kelham Vineyards pay her unknown amount for loans she allegedly made at unknown times for unknown purposes.

Decl. Nicholsen, ¶ 19, Ex. 20.

Passing over that each of these letters were retaliatory, they were also illusory, as she testified on April 27, 2023, that Kelham Vineyards still operates from 360 Zinfandel Lane and it still rents 1760 Main Street. Decl. Davis, ¶ 6, Ex. 6, S. Kelham Depo. Tr. 291:24-292:5; 294:1-6]. She further admitted she did not know how much Kelham Vineyards allegedly owes her – she could not even say if it was for more or less than one million dollars. *Id*. at Ex. 6, S. Kelham Depo. Tr. 293:4-17. When pushed for an explanation regarding the letters, she refused to answer based on "attorney-client information." *Id*. at Ex. 6, S. Kelham Depo. Tr. 292:6-23. Regardless, the letters substantiate that she is the controlling party for the key creditors holding Kelham Vineyards' alleged debts and thus cause exists to appoint a trustee. In this circumstance, the appointment of a trustee is not only warranted but required for cause.

Although Kelham Vineyards represented that its wine inventory alone is worth $100 million (*supra*, part V. B.), its current officers are conspiring to bankrupt it by filing an involuntary bankruptcy petition through their other company over a purported debt of $107,500. This is a significant and material conflict of interest that warrants the appointment of a disinterested trustee who can review intercompany balances "without the conflicts of interest that plague[d] current management…." *In re China Fishery Grp. Ltd. (Cayman)*, No. 16-11895, 2016 WL 6875903, at *20 (Bankr. S.D.N.Y. Oct. 28, 2016).

**C.    Conflicts of Interest and Kelham Vineyards Sustains Significant Losses for the Benefit of Kelham Growers**

Kelham Vineyards' management suffers from material conflicts of interest that prevent them from

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

Enter Unknown Document Property Name
ACTIVE 689292923v1

discharging its fiduciary duties so an independent trustee should be appointed. *See In re Marvel Entm't*, 140 F.3d at 473. A debtor-in-possession owes fiduciary duties to its creditors and the bankruptcy estate. *In re Morningstar Marketplace, Ltd.,* 544 B.R. 297, 303 (Bankr. M.D. Pa. 2016) (citing *In re Marvel Entm't. Corp*., 140 F.3d 463, 471 (3d Cir. 1998)); *see also Smart World Techs., LLC v. Juno Online Servs., Inc*. (*In re Smart World Techs., LLC*), 423 F.3d 166, 175 (2d Cir. 2005). These obligations "include a duty of care to protect the assets, a duty of loyalty and a duty of impartiality." *In re Eurospark Indus., Inc.*, 424 B.R. 621, 627 (Bankr. E.D.N.Y. 2010). "Fiduciary obligations include the duty of loyalty and good faith which forbid 'directors and other business operators from using their position of trust and control over the rights of other parties to further their own private interest, either by usurping opportunities, holding undisclosed conflicts, or otherwise exploiting their position.'" *In re SunCruz Casinos, LLC*, 298 B.R. 821, 830 (Bankr. S.D. Fla. 2003) (citing *In re Microwave Products of America, Inc*., 102 B.R. 666, 672 (Bankr. W.D.Tenn. 1989)). "And if the debtor in possession defaults in this respect, Section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee." *In re Marvel*, 140 F.3d 463, 474 (3d Cir.1998) (quoting *V. Savino Oil*, 99 B.R. at 526)); *see In re Concord Coal Corp*., 11 B.R. 552 (Bankr. S.D. W.Va. 1981) (the Court has discretion to appoint trustee where loyalty of company management is substantially called into question by his many competing business interests).

In addition to the reasons stated above, Kelham Vineyards' management is hopelessly conflicted in carrying out its fiduciary duties for the benefit of creditors and the estate. "When those in charge of a debtor in possession have a conflict of interest with the estate and creditors, regardless of whether those conflicts create acrimony between the insiders and other parties in interest, it is appropriate to appoint a trustee because those conflicts prevent the insiders from acting consistent with their fiduciary duties." *In re 942 Penn RR, LLC*, 642 B.R. 89, 94 (Bankr. S.D. Fla. 2022).

Over the past two years, Kelham Vineyards overpaid Kelham Growers, and has sold a significant amount of its bulk wine and unlabeled wine then transferred all its proceeds to Kelham Growers or Susanna Kelham. For example, on November 25, 2018, Kelham Growers sold grapes to Kelham Vineyards for $209,733.00. Decl. Davis, ¶ 24, Ex. 21. As reflected on that invoice, there is a credit of

Case: Unknown Document: Property Game Filed: 08/07/23 Entered: 08/07/23 16:06:25 Page 19 of 26
ACTIVE 689292923v1

$92,937 toward the balance. *Id*. On July 22, 2021, Kelham Vineyards paid Kelham Growers $90,000 with the memo line "2018." Decl. Davis, ¶ 25, Ex. 22. On November 19, 2021, Kelham Vineyards also paid Kelham Growers $206,796.00 for its 2018 purchase of grapes. Decl. Davis, ¶ 26 and Ex. 23 and ¶ 27 and Ex. 24. Thus, in 2021 Kelham Vineyards inexplicably paid Kelham Growers $180,000 more than it agreed to pay for grapes in 2018.

This is not an isolated incident. Kelham Vineyards has repeatedly sustained financial losses for the benefit of Kelham Growers under the current management. For example, on October 16, 2020, Kelham Vineyards purportedly purchased $142,245 worth of smoke tainted grapes from Kelham Growers, which had been rejected from another buyer. Decl. Davis, ¶ 28, Ex. 25. Kelham Vineyards processed the grapes into bulked out wine - bulking out wine is a known term within the industry, which means Kelham Vineyards bought the grapes and spent the time and money process it into wine, but Kelham Vineyards did not ingest the grapes into its own production. Decl. Nicholsen, ¶ 14. Kelham Vineyards then sold the bulked wine for $151,445.00. Decl. Davis, ¶ 29, Ex. 26. Days after selling the bulked wine, on June 17, 2021, Kelham Vineyards wrote a check for the entire amount it was paid to Kelham Growers. Decl. Davis, ¶ 30, Ex. 27. Thus, Kelham Vineyards sustained a complete loss on the purchase of the tainted grapes and costs associated with bulking out and selling the wine.

Similarly, on April 12, 2022, Kelham Vineyards entered agreed to sell 1991 cases of its unlabeled wine to another winery, and Kelham Vineyards was paid $619,425 for that sale as reflected in its bank statement. Decl. Davis, ¶¶ 31 and Ex. 28; and ¶ 32 and Ex. 29. On July 12, 2022, Kelham Vineyards paid $600,000 to Kelham Growers and the deposit slip contains a handwritten note: "happy birthday to me!" Decl. Davis, ¶ 33, Ex. 30. Susanna Kelham's birthday is July 12th. Decl. Davis, ¶ 6, Ex. 6, S. Kelham Depo. Tr. 306:3-5. When asked during her deposition why Kelham Vineyards paid her $600,000, she did not know the purpose for the payment and claimed the bookkeeper would know the answer. *Id*. at Ex. 6, S. Kelham Depo. Tr. 305:7-306:19. Then on December 1, 2022, Kelham Vineyards paid $128,000 to Kelham Growers for "repayment of loans." Decl. Davis, ¶ 34, Ex. 31.

These payments constitute cause under § 1104(a)(1) because they reflect material conflicts of interest that interfere with the Debtor's ability to fulfill its fiduciary duties. *See, e.g.*, *In re Aardvark, Inc.*,

[Assigned to: Judge William Lafferty]

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

ACTIVE 689292923v1

No. 96-858, 1997 WL 129346, at *4 (D. Del. Mar. 4, 1997) (reversing bankruptcy court decision not to appoint trustee where there was "evidence of a potential conflict of interest" in addition to undisputed evidence of "inadequate recordkeeping, failure to file tax returns, and failure to make required payments"); *In re Grasso*, 490 B.R. 500, 517-18 (Bankr. E.D. Pa. 2013) (finding a conflict of interest where estate possessed potential claims against debtor's wife, and that such conflict constituted cause for appointment of trustee); *Sharon Steel*, 86 B.R. at 465 (holding that management's conflict of interest warranted appointment of trustee).

### D. A Chapter 11 Trustee is Necessary to Stop the Incompetence and Gross Mismanagement of Kelham Vineyards

The determination of whether cause exists is discretionary; it must be taken on a case-by-case basis, considering all relevant factors and the totality of the circumstances. *See Sharon Steel*, 871 F.2d at 1228. As demonstrated by the following improper acts, the appointment of a Chapter 11 Trustee is essential to stopping the ongoing and pervasive mismanagement, putting Kelham Vineyards' financial affairs in order so that this bankruptcy proceeding can proceed efficiently and with confidence in the bankruptcy proceedings.

#### 1. Kelham Vineyards is draining its Bank Accounts in Response to the Writ Action

A month after Ronald Nicholsen filed his petition for writ of mandate in state court, on November 18, 2021, members of Kelham Vineyards (without Ronald Nicholsen) met regarding its finances and those of Kelham Growers. Decl. Davis, ¶ 35, Ex. 32, pg. 3. Kelham Vineyards' office manager took notes of that meeting. Decl. Davis, ¶ 36, Ex. 33, G. Crego Depo. Tr. 182:1-23. Her notes reflect that they "need to empty bank accounts due to lawsuit," which she testified regarded his writ action. *Id*. The day after that meeting, Susanna Kelham made numerous transfers from Kelham Vineyards' bank accounts to its Mechanic's Bank account – these transfers totaled $298,000. Decl. Davis, ¶ 26, Ex. 23 and ¶ 27, Ex. 24. On the same day, November 19, 2021, she cashed the $206,796 check on behalf of Kelham Growers. *Id*.

Also, as shown above, in 2022, Kelham Vineyards began selling its bulk wine and bottled unlabeled wine and transferring all of its proceeds to Kelham Growers and Susanna Kelham. *Supra*, Part VI. C.

Case: 23-10384 Doc# 106 Filed: 08/07/23 Entered: 08/07/23 16:06:25 Page 21 of 26
Error! Unknown document property name.
ACTIVE 689292923v1

2.   <u>Kelham Vineyards is pursuing unpermitted and unlawful business opportunities</u>

Kelham Vineyards may be pursuing unpermitted and unlawful business expansions. The Napa County Winery Definition Ordinance 947 of 1990 prohibits wineries in Napa County from offering food service for charge to its patrons. On or about November 3, 2021, Kelham Vineyards applied for the trademark "Kelham Vineyards with Le Petit Chef" described to the United States Patent and Trademark Office as "Restaurant services featuring a dining experience using overhead projectors with animation on the tables flat surface with dishes, namely, food and wine coursed food." Decl. Davis, ¶ 37, Ex. 34. As shown in the advertisement presented to the USPTO, Kelham Vineyards apparently intends to offer tasting menus with wine for up to $300.00 a person, which will include animation on the table for the guests' entertainment. Decl. Davis, ¶ 38, Ex. 35. As proposed, Ronald Nicholsen understands and is informed that this would violate the Napa County Winery Definition Ordinance and he is concerned that this will create significant liability for Kelham Vineyards. Decl. Nicholsen, ¶ 15.

On April 5, 2022, counsel for Kelham Vineyards in the California state action transmitted two affidavits from the Department of Alcoholic Beverage Control ("ABC") for Ronald Nicholsen and his wife to complete. Decl. Davis, ¶ 39, Ex. 36. When asked the purpose of the forms, as Ronald Nicholsen had never completed that document in his ownership of the winery, he received no response. *Id*. During her deposition, Susanna Kelham testified that the forms were presented *sua sponte* by ABC as part of its "cleanup, and they they came in and they said, you know, we don't even have the fact that your husband died on this particular ABC permit. And you have to bring it up to code now." Decl. Davis, ¶ 6, Ex. 6, S. Kelham Depo., Tr. 279:7-281:1. In reality, Kelham Vineyards applied for a revised license with ABC related to expanding its premises. Decl. Davis, ¶ 40, Ex. 37. The proposed expansion is consistent with Ronald Nicholsen's understanding of certain construction projects occurring at the premises. Decl. Nicholsen, ¶ 16. However, Kelham Vineyards has neither applied for nor obtained any building permits for any expansion. Decl. Nicholsen, ¶ 16.

Thus, Ronald Nicholsen believes Kelham Vineyards is continuing clandestine business operations without his knowledge and consent, and perhaps in violation of local and state laws and regulations subjecting the Debtor to further needless risk.

Case: Unknown Document property name
Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 22 of 26
ACTIVE 689292923v1

### 3. Kelham Vineyards pays its employees to perform work on Susanna Kelham's and Hamilton Nicholsen's personal homes and on behalf of Kelham Growers

Kelham Vineyards employs Antonio Olivera as one of its two full-time employees. Decl. Nicholsen, ¶ 17. As reflected on Mr. Olivera's timecards, he performs work both at the vineyards and winery – and at Susanna's and Hamilton's homes. Decl. Davis, ¶ 41, Ex. 38. Kelham Vineyards pays all his wages for working for Kelham Growers and for the owners of the company. *Id.*

The bookkeeper for all three entities testified that "there was a period of time prior to [her] where some of the employees were paid by Kelham Vineyards and Winery LLC and reimbursed by Growers." Decl. Davis, ¶ 9, Ex. 9, M. Drescher Depo. Tr. 149:14-24. Apparently, this was done because Kelham Growers did not have payroll set up. *Id.* at Ex. 9, M. Drescher Depo. Tr. 150:4-15. There are no records or evidence of Kelham Growers reimbursing those amounts – or any money – to Kelham Vineyards.

### 4. Kelham Vineyards' Tax Returns are Glaringly Inaccurate

On October 8, 2021, Kelham Vineyards furnished Ronald Nicholsen its 2020 tax returns. Therein, it reported to the IRS that it paid Ronald Nicholsen almost twice the amount he was paid. Decl. Davis, ¶42, Ex. 39 (Declaration of Sean McNamee filed in California state action, ¶ 4). Accordingly, Ronald Nicholsen requested Kelham Vineyards provide backup to verify the amount Kelham Vineyards reported. *Id.* No response was ever provided.

Ronald Nicholsen's concerns about Kelham Vineyards' 2020 tax returns were substantiated in April 2022 upon his receipt of a Notice of Proposed Assessment from California Franchise Tax Board proposing a tax assessment of $27,657 against him based on Kelham Vineyards' estimated income for 2019. Decl. Nicholsen, ¶ 18. Kelham Vineyards did not pay Ronald Nicholsen an amount nearing what it reported. *Id.* The amount it reported is also at odds with the purported 2019 profit and loss statement it provided Ronald Nicholsen. Ultimately, due to Kelham Vineyards' tax returns – a lien was placed on Ronald Nicholsen's home and he is likely going to sell his home because of the lien. *Id.*

### 5. Kelham Vineyards paid a significant amount of money toward Susanna Kelham's Mortgages and Other Unknown Mortgages

On September 27, 2022, Ronald Nicholsen filed his opening brief on the merits in the writ action

[Assigned to: Judge William Lafferty]
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

Case: Unknown Document Property Name
ACTIVE 689292923v1
Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 23 of 26

pending in state court. Decl. Davis, ¶ 43, Ex. 40. Therein, he moved for an order compelling the production of all documents regarding the mortgages Kelham Vineyards pays. *Id.* at Ex. 40, p. 6-7. As demonstrated by the QuickBooks file received from Kelham Vineyards, Kelham Vineyards paid nearly $8,000 a month toward a $3 million mortgage with Bank of Marin, which is listed in the QuickBooks File as "New Bank of Marin Loan – Mort./Trac #5776." *Id.* at Ex. 40, p. 6-7.

After receiving Ronald Nicholson's opening brief, in October 2022, Kelham Vineyards allegedly ceased making payments to Bank of Marin for the loan and instead paid Susanna Kelham that money directly. Decl. Davis, ¶ 44, Ex. 41, p. 3:11-14. Susanna Kelham testified that these payments are to lease the premises at 360 Zinfandel Lane, but the written lease between her and Kelham Vineyards is contrary to her explanation. Decl. Davis, ¶ 45, Ex. 42.

In addition to the Bank of Marin mortgage payments, there are numerous transfers from Kelham Vineyards' bank accounts for the payment of other unknown mortgages. Decl. Davis, ¶ 46, Ex. 43 (Dec. 2021 transfer of $20,000 "for Dec. mortgage"), and ¶ 47, Ex. 44 (Jan. 2022 transfer of $32,000 for "monthly mortgage"). For example, on April 15, 2022, Kelham Vineyards paid $96,000 to its "mortgage savings account." Decl. Davis, ¶ 48, Ex. 45.[5]

Kelham Vineyards also pays the monthly expenses, property taxes, and mortgage for a house in Tahoe City, California, which is owned by Hamilton Nicholsen and Susanna Kelham. The expenses and taxes alone cost Kelham Vineyards nearly $200,000. Decl. Davis, ¶ 42, Ex. 39 (Decl. McNamee, ¶8). Based on a single line item in the QuickBooks File, it appears Kelham Vineyards spent almost $400,000 to pay off the mortgage in December 2020.[6] *Id.*

Kelham Vineyards owns real property at 540 Mund Road in Deer Park, California. Decl. Davis, ¶44, Ex. 41, p. 3:20-22. Unbeknownst to Ronald Nicholsen, in 2018, Kelham Vineyards merged lots with

---

[5] Based on this information, Ronald Nicholson reasonably believes that Kelham Vineyards likely owns properties that are either hidden or constructively owned as a result of paying mortgages or shared title, and that secured creditors may arise laying claims to assets. For this reason, Ronald Nicholson suspects that the company may be at risk beyond just related creditors.

[6] Without additional information from Kelham Vineyards it is impossible to know whether the mortgage was actually paid off because the line-item is coded as "AJE," which presumably is an acronym for "adjusting journal entry" and is defined by investopedia.com as "an entry in a company's general ledger that occurs at the end of an accounting period to record any unrecognized income or expenses for the period." https://www.investopedia.com/terms/a/adjusting-journal-entry.asp#:~:text=An%20adjusting%20journal%20entry%20is,or%20expenses%20for%20the%20period.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE

Error! Unknown document property name.
ACTIVE 689292923v1

536 Mund Road, which is Hamilton Nicholsen's personal property. Decl. Davis, ¶ 49, Ex. 46. It is unknown whether Hamilton Nicholsen was gifted this lot or whether he paid for the property.

### E. Kelham Vineyards has not maintained proper books and records

Cause to appoint a trustee is also belied by the California state action, whereby Kelham Vineyards and Susanna Kelham have repeatedly violated California law by refusing to allow Ronald Nicholsen to access and inspect the company's books and records. They have repeatedly disregarded the state court's orders without any justification, necessitating the court set three orders to show cause, and their conduct in response to an uncontroversial document demand demonstrates that they will continue diminishing the estate's assets for their own gain. *Supra*, Part V. D. 3.

### F. In the Alternative, the Court should order the appointment of a Trustee under Section 1104 (a)(2)

"Unlike § 1104(a)(1), § 1104(a)(2) does not require a finding of fault; the court may appoint a trustee even if no 'cause' exists." *In re Euro–Am. Lodging Corp.*, 365 B.R. 421, 428 (Bankr. S.D.N.Y. 2007). Instead, section 1104(a)(2) reflects the practical reality that a trustee is needed. *Id. See also*, *In re Sharon Steel Corp.*, 871 F.2d [1217] at 1226 [(3rd Cir. 1989)]; *In re V. Savino Oil & Heating Co.*, 99 B.R. at 527 n. 11.

Factors that courts have used to determine whether a trustee should be appointed under this subsection include:

> (1) the trustworthiness of the debtor;
>
> (2) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation;
>
> (3) the confidence – or lack thereof – of the business community and of creditors in present management; and
>
> (4) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment

*In re Euro–Am. Lodging Corp.*, 365 B.R. at 427 (quoting *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D. N.Y. 1990)). For the reasons stated above, a trustee is necessary because it is in the best interests of creditors, equity security holders, and other interests of the bankruptcy estate, even if the

Case: Unknown Document Property Name    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 25 of
ACTIVE 689292923v1                                                     26

Court does not find cause pursuant to 11 U.S.C. § 1104(a)(1).

### VII. <u>CONCLUSION</u>

For the foregoing reasons, Ronald Nicholsen respectfully requests this Court to order the appointment of a trustee.

Dated: August 4, 2023

GREENBERG TRAURIG, LLP

By: */s/ Harold H. Davis*
Harold H. Davis
Marc R. Baluda

Attorneys for Petitioner
RONALD NICHOLSEN II

[Assigned to: Judge William Lafferty]

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RONALD NICHOLSEN'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE