Harold H. Davis (SBN CA 235552)
Marc R. Baluda (SBN CA 192516)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
Hal.Davis@gtlaw.com
Marc.Baluda@gtlaw.com


Attorneys for Petitioner RONALD NICHOLSEN II

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SANTA ROSA

In re Kelham Vineyards & Winery, LLC

Bankruptcy Case No.
  23-10384 SR__- Chapter 11
  [Assigned to: Judge William Lafferty]

**DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PARTY IN INTEREST RONALD NICHOLSEN II'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE**


Hearing:
DATE:      September 5, 2023
TIME:      9:30 a.m.
DEPT:      220, Oakland, CA

# DECLARATION OF HAROLD H. DAVIS

I, Harold H. Davis, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California. I am a principal shareholder of the law firm Greenberg Traurig, LLP, attorneys of record for Party in Interest Ronald Nicholsen II ("Ronald Nicholsen"). The following facts are within my personal knowledge, and if called upon as a witness, I could and would competently testify to the truth of the matters asserted in this Declaration. I submit this Declaration in support of Party in Interest Ronald Nicholsen's Motion to Appoint a Chapter 11 Trustee.

2. Attached hereto as **Exhibit 2** is a true and correct copy of an insurance application submitted by Kelham Vineyards & Winery LLC ("Kelham Vineyards" or the "Debtor") that was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court.

3. Attached hereto as **Exhibit 3** is a true and correct copy of excerpts of Barber Analytics Minority Equity Interest Valuation, dated December 8, 2022.

4. Attached hereto as **Exhibit 4** is a true and correct copy of Kelham Vineyards & Growers, LLC's articles of organization downloaded from the California Secretary of State website located at https://bizfileonline.sos.ca.gov/search/business.

5. Attached hereto **Exhibit 5** is a true and correct copy of the payment protection program loan application that purports to be submitted by Kelham Growers that was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court.

6. On April 27, 2023, I deposed Susanna Kelham in her personal capacity and designated by Kelham Vineyards as a person most knowledgeable. Attached hereto as **Exhibit 6** is true and correct copy of excerpts of the transcript from Susanna Kelham's deposition.

7. Attached hereto as **Exhibit 7** is a true and correct copy of Kelham Vineyards' website at www.kelhamvineyards.com, which was copied on August 2, 2023 at 12:52 a.m.

1

**DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PARTY IN INTEREST'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE**

8. Attached hereto as **Exhibit 8** is a true and correct copy of a permit and check stub that was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court.

9. On May 18, 2023, I deposed Melanie Drescher in her personal capacity and on behalf of Kelham Vineyards regarding topics: "7. The assets and liabilities of Kelham Vineyards..." and "11. All real properties for which Kelham Vineyards pays mortgage, rental or use payments and/or property taxes and any associated mortgage or lease agreements whether Written or oral." Attached hereto as **Exhibit 9** are true and correct copies of excerpts of the transcript from Melanie Drescher's deposition.

10. Attached hereto as **Exhibit 10** is a true and correct copy of a chain of title guarantee obtained from Stewart Title Guaranty Company on July 14, 2023.

11. On October 4, 2021, Ronald Nicholsen filed a verified petition for writ of mandate against Kelham Vineyards and Susanna Kelham. Attached hereto as **Exhibit 11** is a true and correct copy of that petition for writ mandate.

12. Ronald Nicholsen personally served the Petition for Writ of Mandate on Kelham Vineyards. Susanna Kelham evaded five separate attempts to personally serve her the Petition. Attached hereto as **Exhibit 12** is a true and correct copy of the process server's Declaration of Due Diligence re Susanna Rogers Kelham.

13. Thereafter, on November 15, 2021, Kelham Vineyards' counsel accepted service on behalf of Susanna Kelham, attached hereto as **Exhibit 13** is a true and correct copy of that email from Kelham Vineyards' counsel.

14. On November 4, 2022, the California state court entered a writ and order granting Ronald Nicholsen's writ of mandate to enforce his right to obtain, inspect, and copy certain records of a limited liability company per California Corporations Code. Attached hereto as **Exhibit 14** is a true and correct copy of that order and writ.

15. Per the Writ, on December 4, 2022, the parties appeared at the winery for Ronald

**DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PARTY IN INTEREST'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE**

ACTIVE 689223136v3

Nicholsen to inspect the Debtor's books and records. The records presented were hard copy documents provided in such a manner that Ronald Nicholsen was forced hire a vendor to scan the records to determine if respondents complied with the Writ. Kelham Vineyards and Susanna Kelham denied Ronald Nicholsen's repeated requests made on December 14, 16, and 20, 2022 to permit the vendor to scan the records off-site for a considerably discounted price.

16. On January 25, 2023, during a regularly scheduled case management conference, Ronald Nicholsen informed the California state court of the respondents' on-going non-compliance. In response, the state court told respondents that it was not "rocket science" and *sua sponte* set a hearing to show cause why they should not be sanctioned for failing to comply with the Writ.

17. On March 2, 2023, the California state court entered an order sanctioning Susanna Roger Kelham for the respondents' failure to comply with the court's Writ. Attached hereto as **Exhibit 15** is a true and correct copy of that order. On February 28, 2023, pursuant to the sanction order, Holland & Knight LLP (the law firm representing Kelham Vineyards) paid the sanctions of $1,500.00 on behalf of Susanna Kelham.

18. On March 9, 2023, Kelham Vineyards filed and served its initial return of the writ. The return was woefully deficient.

19. On March 13, 2023, the California state court held the hearing on its second order to show cause for why sanctions should not be issued. Attached hereto as **Exhibit 16** is a true and correct copy of excerpts of that transcript hearing.

20. As of today's date, Kelham Vineyards has refused to provide any of the company's emails, Susann Kelham has refused to produce emails sent on her personal email account regarding the company and responsive to the Writ, records regarding purported debts with related entity Kelham Vineyards Growers, LLC, and numerous other categories of records required by the Writ.

21. On May 10, 2023, the state court awarded Ronald Nicholsen $134,679.40 as a partial reimbursement for his expenses, including attorney's fees, up to March 9, 2023, against Susanna Kelham, personally, due to her and Kelham Vineyards' failure to comply with the Writ and

**DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PARTY IN INTEREST'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE**

ACTIVE 689223136v3

Corporations Code. Attached hereto as **Exhibit 17** is a true and correct copy of that order.

22.     Attached hereto as **Exhibit 18** is a true and correct copy of the docket from the California state court action, which I caused to be printed from the court's website on August 3, 2023.

23.     On October 15, 2021, Kelham Vineyards transmitted a copy of its operating agreement to Marc Baluda, also counsel of record for Ronald Nicholsen. Attached hereto as **Exhibit 19** is a true and correct copy of that email and operating agreement.

24.     Attached hereto as **Exhibit 21** is a true and correct copy of an invoice that was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court.

25.     Attached hereto as **Exhibit 22** is a true and correct copy of portions of Kelham Vineyards' Mechanics Bank statement for July 2021, which contains an image of a cancelled check dated July 22, 2021.

26.     Attached hereto as **Exhibit 23** is a true and correct copy of a check stub dated November 15, 2021 that was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court.

27.     Attached hereto as **Exhibit 24** is a true and correct copy of portions of Kelham Vineyards' Mechanics Bank statement for November 2021, which contains an image of a cancelled check of November 19, 2021.

28.     Attached hereto as **Exhibit 25** is a true and correct copy of an invoice from Kelham Growers that counsel for Kelham Vineyards provided on February 15, 2023 in response to the Writ issued by the California state court.

29.     Attached hereto as **Exhibit 26** is a true and correct copy of an invoice that was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court. The name of the buyer is redacted for proprietary purposes.

4

**DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PARTY IN INTEREST'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE**

ACTIVE 689223136v3

30.     Attached hereto as **Exhibit 27** is a true and correct copy of portions of Kelham Vineyards' Mechanics Bank statement for July 2021, which contains an image of a cancelled check dated June 17, 2021, that counsel for Kelham Vineyards provided our firm on February 15, 2023 in response to the Writ issued by the California state court.

31.     Attached hereto as **Exhibit 28** is a true and correct copy of a check issued to Kelham Vineyards by a winery, which was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court. The name of the buyer is redacted for proprietary purposes.

32.     Attached hereto as **Exhibit 29** is a true and correct copy of a portion of Kelham Vineyards' April 2022 bank statement that counsel for Kelham Vineyards provided our office on February 15, 2023 in response to the Writ issued by the California state court.

33.     Attached hereto as **Exhibit 30** is a true and correct copy of a deposit slip that was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court.

34.     Attached hereto as **Exhibit 31** is a true and correct copy of portions of Kelham Vineyards' Mechanics Bank statement for December 2022 that counsel for Kelham Vineyards. provided our firm on February 15, 2023 in response to the Writ issued by the California state court

35.     Attached hereto as **Exhibit 32** is a true and correct copy of handwritten notes that was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court.

36.     Attached hereto as **Exhibit 33** are true and correct copies of excerpts of the deposition of Genevieve Crego taken on May 12, 2023 in the California state action.

37.     Attached hereto as **Exhibit 34** is a true and correct copy of results from the Trademark Electronic Search System that resulted from searching for Kelham Vineyards on July 18, 2023.

38.     Attached hereto as **Exhibit 35**  is a true and correct copy of the Specimen image

**DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PARTY IN INTEREST'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE**

ACTIVE 689223136v3

submitted by Kelham Vineyards on November 3, 2021 to the United States Patent and Trademark Office, which was obtained on its website https://tsdr.uspto.gov/#caseNumber=97106009&caseType=SERIAL_NO&searchType=documentSearch.

39.     On April 5, 2022, counsel for Kelham Vineyards in the California state action transmitted two affidavits from the Department of Alcoholic Beverage Control ("ABC") for Ronald Nicholsen and his wife to complete. Attached hereto as **Exhibit 36** is a true and correct copy of that correspondence.

40.     Attached hereto as **Exhibit 37** is a true and correct copy of a notice from Department of Alcoholic Beverage Control dated April 13, 2022, that was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court.

41.     Attached hereto as **Exhibit 38** is a true and correct copy of copies of timecards for Kelham Vineyards' employee Antonio Olivera's located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court.

42.     On September 27, 2022, the declaration of Sean McNamee was filed in support of Ronald Nicholsen's opening brief on the merits in support of his petition for writ of mandate in the California state action, which is attached hereto as **Exhibit 39**.

43.     On September 27, 2022, Ronald Nicholsen filed the opening brief on the merits of his petition for writ of mandate, which is attached hereto as **Exhibit 40**.

44.     On February 15, 2023, Kelham Vineyards filed and served a response to the California state court's order to show cause, which is attached hereto as **Exhibit 41**.

45.     Attached hereto as **Exhibit 42** is a true and accurate copy of a lease agreement between Kelham Vineyards and Susanna Kelham, which Kelham Vineyards' counsel in the California state action provided in 2023 pursuant to the Writ.

**DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PARTY IN INTEREST'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE**

ACTIVE 689223136v3

46.     Attached hereto as **Exhibit 43** is a true and correct copy of a transfer receipt for $20,000 from Kelham Vineyards' wine club account to another account with a handwritten note "for dec. mortgage" that was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court

47.     Attached hereto as **Exhibit 44** is a true and correct copy of a transfer receipt for $32,000 from Kelham Vineyards' wine club account to another account with a note "monthly mortgages" that was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court.

48.     Attached hereto as **Exhibit 45** is payment record of Kelham Vineyards paying $96,000 to its "mortgage savings account #8557, which was located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court

49.     Attached hereto as **Exhibit 46** is an application for merger of contiguous parcels located within Kelham Vineyards' filing cabinets in December 2022, which my law firm accessed in response to the Writ issued by the California state court.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 3rd day of August 2023, in Napa, California.

/s/ _____

Harold H. Davis

**DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PARTY IN INTEREST'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE**

ACTIVE 689223136v3

# Exhibit 2



# SUPPLEMENTAL APPLICATION

PRIME VINTAGE INSURANCE SERVICES, LLC
License No. 1608340
56 Ivanhoe Drive
Manalapan, NJ 07726
Phone: 904-557-1897 or 858-922-4738
Submissions@primevintage.com



Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 10 of 316

KV-Ins-0014609

## SECTION A: APPLICANT

| | | | |
|---|---|---|---|
| A1 | DATE OF APPLICATION | 7/26/21 | |
| A2 | EFFECTIVE DATE | 7/26/21 | QUOTE DUE DATE |
| A3 | NAMED INSURED(S) | KELHAM VINEYARDS & WINERY, LLC | |
| A4 | MAILING ADDRESS | 360 ZINFANDEL LANE  ST. HELENA  CA  94574 | |
| | DBA(S) | KELHAM VINEYARDS | |

If more than one Named Insured exists, please list and explain relationship below:

| | | | |
|---|---|---|---|
| A5 | CONTACT NAME | SUSANNA KELHAM | PHONE (707) 963-2000 |
| A6 | COMPANY STRUCTURE | ☐ Individual   ☐ Partnership   ☐ Corporation   ☐ Other | |
| A7 | WEBSITE | WWW.KELHAMVINEYARDS.COM | |

## SECTION B: REVENUE BREAKDOWN

### WINE AND CIDER PRODUCTS

#### CASED WINE (WINE THAT IS OR IS TO BE BOTTLED)

| B1 | | |
|---|---|---|
| Sales Volume – Total Number of cased/bottled wine to be sold over the next 12 months: | 1,380 Cases |
| Revenue – Total Sales of cased/bottled wine over the next 12 months: | $ 1,425,000 |
| Average – Approximate revenue per case (average for all varietals): | $ 1,020 |

#### BULK WINE (WINE THAT IS TO BE SOLD AS BULK WINE VERSUS CASED WINE)

| B2 | | |
|---|---|---|
| Sales Volume – Total Number of bulk wine gallons to be sold over the next 12 months: | 4700 Gallons |
| Revenue – Total Sales of bulk wine over the next 12 months: | $ 170,000 |
| Average – Approximate revenue per gallon for wine to be sold as bulk wine (average for all varietals): | $ 35 PER GAL |

#### CASED CIDER (CIDER THAT IS OR IS TO BE BOTTLED)

| B3 | | |
|---|---|---|
| Sales Volume – Total Number of cased/bottled cider to be sold over the next 12 months: | Cases |
| Revenue – Total Sales of cased/bottled cider over the next 12 months: | $ |
| Average – Approximate revenue per case (average for all varietals): | $ |

#### BULK CIDER (CIDER THAT IS TO BE SOLD AS BULK CIDER VERSUS CASED CIDER)

| B4 | | |
|---|---|---|
| Sales Volume – Total Number of bulk cider gallons to be sold over the next 12 months: | Gallons |
| Revenue – Total Sales of bulk cider over the next 12 months: | $ |
| Average – Approximate revenue per gallon for cider to be sold as bulk cider (average for all varietals): | $ |

### SECTION B – REVENUE BREAKDOWN CONTINUED


Napa Vintage

Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 11
of 316

KV-Ins-0014608

## TASTING/TOUR OPERATIONS

| B5 | Do you operate or lease a Tasting Room? | ☒ Yes ☐ No |
| --- | --- | --- |
| | If yes, what is your annual revenue for Tasting Fees? (This should only include wine that is consumed on premises.) | $ 205,000 |
| | Do you offer Tours? | ☐ Yes ☒ No |
| | How many visitors do you have on an annual basis? | **Visitors** |
| | Is your staff trained and/or certified in serving Alcohol? | ☒ Yes ☐ No |
| B6 | Do you provide transportation for visitors to or on your Property? | ☐ Yes ☒ No |
| | If yes, please provide details: | |

## MERCHANDISE

| B7 | Do you sell merchandise? | ☐ Yes ☒ No |
| --- | --- | --- |
| | If yes, please advise the annual receipts from these products: | $ |
| | If yes, do you produce these products? | ☐ Yes ☒ No |
| | Where do you sell these products? | $ |
| | Please describe these products: | |

## CUSTOM CRUSH OPERATIONS

| B8 | Do you perform custom crush, winemaking, cider making, wine consulting, or cider consulting services? | ☒ Yes ☐ No |
| --- | --- | --- |
| | If yes, please advise annual revenue: | $ 160,000 |
| | Please advise number of clients: | 1 **Clients** |
| | *Please provide a copy of the contract used for your custom crush clients. | |

## RESTAURANT/DELI/CATERING EXPOSURE

| B9 | Do you have a restaurant, deli, or catering exposure? | ☐ Yes ☒ No |
| --- | --- | --- |
| | If yes, please advise annual receipts: | $ |
| | *If yes, please complete the Restaurant/Deli/Catering Section of this Supplemental Application. | |

## B&B/GUEST HOUSE RENTAL EXPOSURE

| B10 | Do you have a B&B/Guest House Rental exposure?  LIABILITY COVERAGE ONLY | ☒ Yes ☐ No |
| --- | --- | --- |
| | If yes, please advise annual receipts:  LEASE ONLY $5,500.00 PER MONTH | $ |
| | *If yes, please complete the B&B/Guest House Section of this Supplemental Application. | |

## FOREIGN SALES

| B11 | Do you have foreign sales? | ☐ Yes ☒ No |
| --- | --- | --- |
| | If yes, please advise total foreign sales (excluding Canada): | $ |
| | Please list countries: | |

## SECTION C: GENERAL INFORMATION



Case: 23-10384     Doc# 16-1     Filed: 08/07/23     Entered: 08/07/23 16:06:25     Page 12
of 316

KV-Ins-0014607

## GENERAL OPERATIONS

| | | |
|---|---|---|
| C1 | Do you currently have insurance for your winery? | ☒ Yes ☐ No |
| | If yes, have you had any losses in the past 5 years? | ☒ Yes ☐ No |
| | *Please provide a minimum of 3 years currently valued loss runs for all new business submissions.<br>*If no prior insurance, please provide a signed letter of no losses. | UNKNOWN |
| C2 | Number of years in business: | 22 Years |
| C3 | Number of employees: | 3 |
| C4 | Do you have business exposures besides winemaking or cider making?<br><br>If yes, please explain: | ☐ Yes ☒ No |
| C5 | Who is your winemaker(s)?  HAMILTON NICHOLSEN<br><br>Winemaker(s) years of experience: 22 Years | |
| C6 | Percentage of wine/cider sold through Wholesalers: | 0 % |
| | Percentage of wine/cider sold through Retail/Direct to Consumer: | 100 % |
| C7 | Do you participate in off-site venues such as festivals and/or tastings?<br><br>If yes, total number attended annually: | ☐ Yes ☒ No |
| C8 | Do you use independent and/or labor contractors?<br><br>If yes, please describe:  VINEYARD MANAGEMENT MARK NEIL & SONS | ☒ Yes ☐ No |
| C9 | Do you bottle your own wine/cider?<br><br>If yes, please describe bottling line and equipment:  ON SITE MOBILE TRUCK / 3RD PARTY | ☒ Yes ☐ No |
| C10 | Do you bottle wine for others?<br><br>If yes, how many cases are bottled for others? | ☒ Yes ☐ No<br>3600 Cases |

## VINEYARD EXPOSURE

| | | |
|---|---|---|
| C11 | Do you own or lease vineyard or apple tree property?  OWN | ☒ Yes ☐ No |
| | If yes, please provide total number of acres: | 6.7 Acres |
| | If yes, please provide number of planted acres: | 6.7 Acres |

## SPECIAL EVENTS

| | | |
|---|---|---|
| C12 | Do you host or sponsor Special Events on your premises?  NO LIVE MUSIC | ☒ Yes ☐ No |
| | If yes, please advise the following: | |
| | Number of events with less than 50 people attending: | 5-15 Events |
| | Number of events with between 50 to 100 people attending: | 2-6 Events |
| | Number of events with between 100 to 250 people attending: | 0-2 Events |
| | Number of events with over 250 people attending: | 0-1 Events |



Prime Vintage

KV-Ins-0014606

## SECTION C: GENERAL INFORMATION CONTINUED

| C13 | Do you rent out your facility to third parties for their events? | ☐ Yes ☒ No |
|---|---|---|
| | **If yes, please advise the following:** | |
| | Number of events with less than 50 people attending: | **Events** |
| | Number of events with between 50 to 100 people attending: | **Events** |
| | Number of events with between 100 to 250 people attending: | **Events** |
| | Number of events with over 250 people attending: | **Events** |
| | *Please provide a copy of the contract used for these events. | |

**FARM EXPOSURE**

| C14 | Is your primary residence on the premises? | ☐ Yes ☒ No |
|---|---|---|
| | If yes, please provide Dwelling & Household Property information on Statement of Values & answer questions below. | |

| C15 | Do you have other dwellings on the premises? | ☐ Yes ☒ No |
|---|---|---|
| | **If yes, please advise the following:** | |
| | Total number of dwellings: | |
| | Are they occupied full time? | ☐ Yes ☐ No |

| C16 | Is there a pool on the premises? | ☒ Yes ☐ No |
|---|---|---|
| | If yes, is there a diving board? | ☐ Yes ☒ No |
| | If yes, is it fenced so that visitors cannot access? | ☐ Yes ☒ No |
| | If yes, is there a self-latching gate?   EMERGENCY SENSOR INSTALLED | ☐ Yes ☒ No |

| C17 | Do you have any other crops besides grapes or apples? | ☐ Yes ☒ No |
|---|---|---|
| | If yes, please provide details: | |

| C18 | Do you have any livestock? | ☐ Yes ☒ No |
|---|---|---|
| | If yes, please provide details: | |

| C19 | Do you have any Horses? | ☐ Yes ☒ No |
|---|---|---|
| | If yes, are they kept fenced in and away from visitors? | ☐ Yes ☒ No |
| | If yes, do you allow visitors to ride them? | ☐ Yes ☒ No |

| C20 | Do you own any Watercraft? | ☐ Yes ☒ No |
|---|---|---|
| | If yes, please provide details: | |



Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 14 of 316

KV-Ins-0014605

## SECTION D: WINE STOCK INVENTORY (PLEASE USE WINE STOCK CURRENTLY "ON HAND" WHEN COMPLETING)

| | YEAR WINE MADE | NUMBER OF CASES (Cased Wine/Cider) | NUMBER OF GALLONS (Bulk Wine/Cider to be Bottled) | NUMBER OF GALLONS (Bulk Wine/Cider to be sold as Bulk) |
|---|---|---|---|---|
| D1 | **Wine/Cider made 2 or more Years ago** | Cases | Gallons | N/A |
| D2 | (Wine/Cider made 1 Year ago) | 1500 Cases | 3566 Gallons | N/A |
| D3 | (Wine/Cider made Current Year) | 1500 Cases | 3566 Gallons | 7000 Gallons |
| D4 | (Anticipated Harvest) | 3000 Cases | 3500 Gallons | 0 Gallons |
| D5 | **Library Wines** | 35,599 Cases | 84630 Gallons | 0 Gallons |

## SECTION E: LIABILITY COVERAGE OPTIONS

| | COVERAGE OPTION | YES/NO | LIMIT | | |
|---|---|---|---|---|---|
| E1 | Product Withdrawal Expense | ☑ Yes ☐ No | ☐ $50,000 | ☑ $100,000 | ☐ $250,000 |
| E2 | Wind Drift or Overspray | ☐ Yes ☑ No | ☐ $1,000,000 | | |
| E3 | Hired & Non-owned Auto Liability | ☑ Yes ☐ No | ☑ $1,000,000 | | |
| E4 | Employee Benefits Liability | ☐ Yes ☑ No | ☐ $1,000,000 | | |
| E5 | Personal Liability | ☑ Yes ☐ No | ☑ $1,000,000 | | |
| E6 | Professional Liability | ☑ Yes ☐ No | ☑ $1,000,000 | | |
| E7 | Employment Practices Liability | ☐ Yes ☐ No | See EPL Supplemental Section below for Limit Options. | | |
| E8 | Excess Liability | ☑ Yes ☐ No | $ (Not to exceed $10,000,000) 5,000,000 | | |

## SECTION F: PROPERTY

### WINE LEAKAGE

| F1 | What is your maximum leakage exposure from one tank/vessel at one time? | 6,000 GALLONS |
|---|---|---|
| | What is your maximum value per gallon from tank/vessel leakage? | $ 75.00 PER GALLON |
| | Wine/Cider Leakage Sublimit desired: | $ 250,000 |

### PROPERTY IN TRANSIT

| F2 | What is your largest shipment of Bulk Wine/Cider (Not by Mail Service)? | 3000 GALLONS |
|---|---|---|
| | What is the distance of this shipment? 10 MILES | $ 75 Per Gallon |
| | What is your largest shipment of Cased Wine/Cider (Not by Mail Service)? | 1232 Cases |
| | What is the distance of this shipment? | 32 Miles |
| | What is the average number of shipments per year? | 3 Shipments |
| | Property in Transit Sublimit desired: | $ 1,100,000 |



Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 15 of 316

KV-Ins-0014604

## SECTION F: PROPERTY CONTINUED

### EQUIPMENT/BARRELS

| | | |
|---|---|---|
| F3 | Mobile Equipment Blanket Limit Desired: | $ **NO** |
| F4 | Do you own any ATV(s)? | ☐ Yes ☑ No |
| | If yes, please answer the questions below: | ☐ Yes ☑ No |
| | Please provide the number of ATV(s): | **ATV(s)** |
| | Please describe ATV use: | |
| | Are the ATV(s) taken off premises? | ☐ Yes ☑ No |
| | Do you want physical damage coverage? | ☐ Yes ☑ No |
| | If yes, please advise total replacement cost value for all ATV(s): | $ |
| | *Please include this total amount under the Mobile Equipment Blanket Limit above. | |
| F5 | Do you own Barrels? | ☑ Yes ☐ No |
| | If yes, please answer the questions below: | ☑ Yes ☐ No |
| | Please advise number of Barrels: | **300** Barrels |
| | Please provide value of new Barrels: | $ **1200.00 EACH** |
| | Please provide percentage of French Barrels: | **100** % |
| | Please provide percentage of American Barrels: | **0** % |
| | *Please include the total value amount under the Wine/Cider Equipment on the Statement of Values. | |
| F6 | Do you own any permanently installed equipment at your vineyards? | ☐ Yes ☑ No |
| | *If yes, please include total amount under Permanently Fixed Equipment on the Statement of Values. | |

### STOCK OF OTHERS

| | | |
|---|---|---|
| F7 | Do you store wine for others? | ☑ Yes ☐ No |
| | If yes, are you responsible for insuring the wine of others? | ☐ Yes ☑ No |
| | Please advise the maximum value of wine you are responsible for insuring: | $ |

### FINE ARTS/SCHEDULED PERSONAL PROPERTY

| | | |
|---|---|---|
| F8 | Do you have any Fine Arts that you want insured on this policy? | ☑ Yes ☐ No |
| | If yes, please advise sublimit: | $ **185,000** |
| | *Separate schedule describing all items will be required. | |
| F9 | Do you have any Personal Property that you want specifically scheduled on this policy? | ☐ Yes ☑ No |
| | If yes, please advise sublimit: | $ |
| | *Separate schedule describing all items will be required. | |

### MISCELLANEOUS

| | | |
|---|---|---|
| F10 | Are any of your buildings sprinklered? | ☐ Yes ☑ No |
| | If so, do you want earthquake sprinkler leakage coverage for these buildings? | ☐ Yes ☑ No |
| F11 | Do you have plans for any construction at your described premises? | ☐ Yes ☑ No |
| | If yes, please explain: | |
| F12 | Do you own any Caves? | ☐ Yes ☑ No |
| | If yes, please advise Value (excluding costs of excavation): | $ |



Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 16
of 316

KV-Ins-0014603

## SECTION G: ADDITIONAL COVERAGE OPTIONS

### STOCK AT UNNAMED LOCATIONS

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE | | |
|---|---|---|---|---|
| Stock at Unnamed Locations | $250,000 | ☐ $500,000 | ☐ $1,000,000 | ☐ $2,000,000 |

### CRIME COVERAGE

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE | | |
|---|---|---|---|---|
| Employee Dishonesty | $50,000 | ☐ $100,000 | ☐ $250,000 | ☐ $500,000 |
| Money & Securities – On Premises | $25,000 | ☐ $50,000 | ☐ $100,000 | |
| Money & Securities – Off Premises | $10,000 | ☐ $25,000 | ☐ $50,000 | ☐ $100,000 |

### ACCIDENTAL BLENDING OF WINE – HUMAN ERRORS

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE | | |
|---|---|---|---|---|
| Accidental Blending of Wine – Human Errors | $0 | ☐ $25,000 | ☐ $50,000 | ☒ $100,000 |

### POLLUTANTS CLEAN UP AND REMOVAL

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE |
|---|---|---|
| Pollutants Clean Up and Removal | $50,000 | ☐ $100,000 |

### ACCOUNTS RECEIVABLE

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE | |
|---|---|---|---|
| Accounts Receivable | $250,000 | ☐ $500,000 | ☐ $1,000,000 |

### VALUABLE PAPERS

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE | |
|---|---|---|---|
| Valuable Papers | $250,000 | ☐ $500,000 | ☐ $1,000,000 |

### BUSINESS INCOME, EXTENDED BUSINESS INCOME, & EXTRA EXPENSE TIMELINE

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE |
|---|---|---|
| Business Income, Extended Business Income, & Extra Expense Timeline | 12 Months (Actual Loss Sustained) | ☐ 24 Months (Actual Loss Sustained) |

### PERSONAL EFFECTS AND PROPERTY OF OTHERS (OTHER THAN STOCK)

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE | |
|---|---|---|---|
| Personal Effects and Property of Others (Other than Stock) | $25,000 | ☐ $50,000 | ☐ $100,000 |



Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 17 of 316

KV-Ins-0014602

## SECTION G: ADDITIONAL COVERAGE OPTIONS CONTINUED

### BACKUP OR OVERFLOW OF WATER FROM SEWER, DRAIN, SUMP

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE | |
|---|---|---|---|
| Backup or Overflow of Water from Sewer, Drain, or Sump | $25,000 | ☐ $100,000 | |

### UTILITY SERVICES — DIRECT DAMAGE

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE | |
|---|---|---|---|
| Utility Services – Direct Damage (This Limitation does not apply to Stock) | $25,000 | ☒ $50,000 | ☐ $100,000 |

### UTILITY SERVICES — BUSINESS INCOME AND EXTRA EXPENSE

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE | |
|---|---|---|---|
| Utility Services – BI and EE (This Limitation does not apply to Stock) | $25,000 | ☐ $50,000 | ☐ $100,000 |

### TRELLIS AND VINES

| COVERAGE | PRIME VINTAGE AUTOMATIC SUBLIMIT | OPTIONAL SUBLIMIT INCREASE | | |
|---|---|---|---|---|
| Trellis and Vines | $100,000 | ☐ $250,000 | ☐ $500,000 | ☐ $1,000,000 |

## SECTION H: NOTES SECTION



| # | Question | Answer |
|---|----------|--------|
| 1. | Please check all boxes that apply for this exposure: ☐ Restaurant ☐ Deli ☐ Catering ☐ Other | NONE |
| 2. | Years in Operation: | Years |
| 3. | Number of Days Per Week Open: | Days |
| 4. | Hours of Operation: | AM to _____ PM |
| 5. | Seating Capacity: | People |
| 6. | Do you serve other alcohol besides wine or cider? <br><br> If yes, please provide details: | ☐ Yes ☐ No |
| 7. | Do you have Tableside or Fondue Cooking? <br><br> If yes, please provide details: | ☐ Yes ☐ No |
| 8. | Is catering offered? <br><br> If yes, please advise percentage of gross receipts provided in question B9 above: <br><br> Please advise number of events catered each year: | ☐ Yes ☐ No <br><br> % <br><br> events |
| 9. | Has the electrical system been updated to current building code standards in the last 25 years? <br> Have new breaker boxes and wiring been added to the system? <br> If yes, please advise what year: <br> If yes, please advise average number of people attending these catered events: | ☐ Yes ☐ No <br> ☐ Yes ☐ No |
| 10. | Are there any permanent fixtures, equipment, or coolers powered by extension cords? <br><br> If yes, please advise safety precautions taken: | ☐ Yes ☐ No |
| 11. | Is refrigeration maintained at < 41°F? | ☐ Yes ☐ No |
| 12. | Are freezers maintained at < 20°F? | ☐ Yes ☐ No |
| 13. | Is fresh shellfish served? <br> Is raw meat/seafood served? <br> If yes, please advise if there are disclaimers on menus regarding consumption of raw/undercooked meats, poultry, seafood, shellfish, or eggs? | ☐ Yes ☐ No <br> ☐ Yes ☐ No <br> ☐ Yes ☐ No |
| 14. | Is there a UL 300 compliant Automatic Extinguishing System? | ☐ Yes ☐ No |
| 15. | Is there a Class K (wet chemical) fire extinguisher in all cooking areas? | ☐ Yes ☐ No |
| 16. | Is the fire suppression system serviced twice a year by a licensed contractor? | ☐ Yes ☐ No |
| 17. | Is there a contracted cleaning program established for the hood and ventilation system? <br><br> If yes, please advise number of times per year: | ☐ Yes ☐ No <br><br> Times |
| 18. | How often are filters/screens pulled down and cleaned? ☐ More than once per week ☐ Weekly ☐ Monthly | |
| 19. | Have you had any Board of Health Violations during the last 36 months? <br><br> If yes, please provide details: | ☐ Yes ☐ No |



| | B&B/GUEST HOUSE RENTAL SUPPLEMENTAL APPLICATION ~ **PLEASE COMPLETE IF YOU ANSWERED "YES" TO B10 ABOVE** | |
|---|---|---|
| 1. | Please check all boxes that apply for this exposure: ☐ B&B ☒ Guest House(s) ☐ Other | |
| 2. | Years in Operation: | **6** Years |
| 3. | Does the owner reside on the premises where the B&B/Guest House(s) is located? | ☐ Yes ☒ No |
| | If not, is there a manager residing on the premises and overseeing the operations? | ☐ Yes ☐ No |
| 4. | Do you require guests to sign a contract waiving you of all liability? | ☐ Yes ☒ No |
| | *Please provide a copy of the contract. | |
| 5. | How many stories is the B&B/Guest House? | **2** Stories |
| 6. | How many Buildings? | **1** Buildings |
| | How many rooms? | **3 BEDROOMS** |
| | Are all Buildings at the same Location? | ☐ Yes ☐ No |
| | If no, please provide details: | |
| 7. | Does the B&B/Guest House(s) have any pools, hot tubs, saunas, or steam rooms? | ☐ Yes ☒ No |
| | If yes, are the guests allowed access to these facilities? | ☐ Yes ☐ No |
| 8. | Does the B&B/Guest House(s) have exercise equipment, tennis courts, or other athletic facilities? | ☐ Yes ☒ No |
| | If yes, are the guests allowed access to these facilities? | ☐ Yes ☒ No |
| 9. | Is there a swimming pool on premises? | ☐ Yes ☒ No |
| | If yes, is there a diving board? | ☐ Yes ☒ No |
| | If yes, do the guests have access to the pool? | ☐ Yes ☒ No |
| 10. | Does the B&B/Guest House(s) have horses or stable facilities? | ☐ Yes ☒ No |
| | If yes, are the guests allowed to access and/or ride the horses? | ☐ Yes ☒ No |
| 11. | Do guest rooms have at least two means of escape (stairway, ramp, door, or window)? | ☒ Yes ☐ No |
| 12. | Are smoke detectors installed on every floor and in each guest room? | ☒ Yes ☐ No |
| 13. | Are there fire extinguishers in the B&B/Guest House(s)? | ☒ Yes ☐ No |
| | If yes, please advise how many: | **2** Fire Extinguishers |
| 14. | Is there a no smoking policy for the entire premises? | ☒ Yes ☐ No |
| 15. | Are there any fireplaces in the B&B/Guest House(s)? | ☒ Yes ☐ No |
| | If yes, please advise how many: | **1** Fireplaces |
| 16. | Does the B&B/Guest House(s) provide food service? | ☐ Yes ☒ No |
| | *If yes, please complete the Restaurant/Deli/Catering Supplemental Application on Page 10. | |



Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 20
of 316

KV-Ins-0014599

**PLEASE COMPLETE THIS SECTION IF YOU ARE REQUESTING PROFESSIONAL LIABILITY ERRORS & OMISSIONS COVERAGE.**

| LIMIT OF INSURANCE: $1,000,000 | DEDUCTIBLE: $2,500 |
|---|---|

| | |
|---|---|
| Do you currently have Professional Liability Errors & Omissions Coverage? | ☐ Yes ☑ No |
| If yes, is your coverage claims-made or occurrence? ☐ Claims-Made ☐ Occurrence | |
| If Claims-Made, please provide the retroactive date: | |
| Designated Professional Services: | |
| *COVERAGE IS LIMITED TO WINEMAKING/WINE CONSULTING AND CIDER MAKING/CIDER CONSULTING. | |

**CONSULTING REVENUE**

| | |
|---|---|
| Please provide your projected gross consulting revenue for the current year: | $ 0 |
| Please provide the annual gross consulting revenue last year: | $ 0 |
| Please provide the annual gross consulting revenue two years ago: | $ 0 |

**CONTRACTS**

| | |
|---|---|
| Do you use a written contract? ☑ In all Cases ☐ Sometimes ☐ Never | |
| *Please provide a copy of the contract. | |

**LOSS HISTORY**

| | |
|---|---|
| Have you been sued or threatened with suit for any act, error or omission in the past 3 years?<br>If yes, please provide full details: | ☐ Yes ☑ No |
| After inquiry, do any of your principals, partners, officers, directors, employees, or any other proposed insured have knowledge or information about any act, error, or omission which might reasonably be expected to give rise to a claim against you?<br>If yes, please provide full details: | ☐ Yes ☑ No |
| Has any similar insurance ever been declined or cancelled?<br>If yes, please provide full details: CHUBB CANCELLED POLICY DUE TO FIRE 2020 | ☑ Yes ☐ No |

KV-Ins-0014598

## EMPLOYMENT PRACTICES LIABILITY SUPPLEMENTAL APPLICATION

**PLEASE COMPLETE THIS SECTION IF YOU ARE REQUESTING EMPLOYMENT PRACTICES LIABILITY COVERAGE.**

### LIMIT AND DEDUCTIBLE OPTIONS

| | | | |
|---|---|---|---|
| ☐ $25,000 / $5,000 Deductible | ☐ $50,000 / $5,000 Deductible | ☐ $75,000 / $5,000 Deductible | ☐ $100,000 / $5,000 Deductible |
| ☐ $100,000 / $10,000 Deductible | ☐ $250,000 / $5,000 Deductible | ☐ $250,000 / $10,000 Deductible | ☐ $250,000 / $25,000 Deductible |

Do you currently have Employment Practices Liability Coverage? ☐ Yes ☐ No

If yes, is your coverage claims-made or occurrence? ☐ Claims-Made ☐ Occurrence

If Claims-Made, please provide the retroactive date:

### EMPLOYEE INFORMATION

Please provide total number of employees:     Full Time     Part Time     Seasonal     Temporary

### HUMAN RESOURCES PROCEDURES

| | |
|---|---|
| Do you have a written policy on anti-harassment and procedures to report harassment to management? | ☐ Yes ☒ No |
| Do you have a written policy on anti-discrimination or an EEOC statement prohibiting discrimination? | ☐ Yes ☒ No |
| Do you utilize an employment application that contains an at-will provision? | ☐ Yes ☒ No |
| Do you schedule management and supervisory workplace training on HR related issues? | ☐ Yes ☒ No |
| Do you adopt termination review by management, HR manager, or outside HR professional or law firm? | ☐ Yes ☒ No |
| Are your facilities designed to accommodate the disabled in accordance with the Americans with Disabilities Act (ADA) law? | ☒ Yes ☐ No |

### LOSS HISTORY

| | |
|---|---|
| Have you had any wrongful termination, discrimination, sexual harassment, or workplace torts that have been filed against you in the last 5 years? | ☐ Yes ☒ No |
| If yes, please provide details below: | |


Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 22 of 316

KV-Ins-0014597



# Paragon Wildfire Protection Questionnaire
Email Submissions to: WineRe@paragoninsgroup.com

## SECTION A: APPLICANT INFORMATION

| A1 | DATE OF APPLICATION | 8/17/21 |
|----|----|----|
| A2 | EFFECTIVE DATE | 8/17/21 |
| A3 | NAMED INSURED(S) | KELHAM VINEYARDS |

## SECTION B: WILDFIRE PROTECTION INFORMATION

| B1 | Building Construction:<br>☒ Frame  ☐ Joisted Masonry  ☒ Non-Combustible  ☐ Masonry Non-Combustible  ☐ Modified Fire Resistive  ☐ Fire Resistive | | |
|----|----|----|----|
| B2 | Year Built: 1998  Year Upgraded:<br>If Upgraded, describe: EXPANDED | | |
| B3 | Describe Roofing Material: METAL | | |
| B4 | Is Siding Material Fire Resistive?<br>If Yes, describe: | ☐ YES ☒ No | |
| B5 | Does Building include Fire Resistant Soffits?<br>Are Soffit vents installed? | ☐ YES ☒ No<br>☒ YES ☐ No | |
| B6 | Building Fire Protections: (mark all that apply)<br>☒ Sprinkled  ☐ Smoke Alarm  ☒ Burglar Alarm  ☒ Central Station | ☐ YES ☐ No | |
| B7 | Is there a Fire Hydrant on Site?<br>If yes, distance from building 40 feet  Distance from street: N/A feet OWN WATER SOURCE | ☒ YES ☐ No | |
| B8 | Is there a Fire Pump on Site? | ☒ YES ☐ No | |
| B9 | Nearest 24/7 Fire Department:<br>Distance from Location: 5 miles | | |
| B10 | Do you have a Brush Maintenance Program in Place? | ☒ YES ☐ No | |
| | If yes, are Grasses cleared to at least 100 feet of building? | ☒ YES ☐ No | |
| | If yes, are Shrubs cleared to at least 150 feet of building? | ☐ YES ☒ No | |
| | If yes, are Trees cleared to at least 100 feet of building? | ☐ YES ☒ No | |
| | If yes, are Tree limbs cut to a minimum of 10 feet above ground out to 200 feet from building? | ☐ YES ☐ No | |
| | If yes, include pictures of Defensible Space on all sides of building<br>*Cal Fire Defensible Space Resources:* http://www.fire.ca.gov/programs/communications/defensible-space-prc-4291/ | | |
| B11 | Private Water on Site: (mark all that apply)<br>☒ Water Tank  ☒ Retention Pond  ☒ Well  ☒ Other:<br>Describe in detail including capacity and access to water: POOL FOR FIRE ISSUES ONLY | | |

### READ AND SIGN BELOW

I have reviewed this application for accuracy before signing it. As a condition precedent to coverage, I hereby state that the information contained herein is true, accurate, and complete and that no material facts have been omitted, misrepresented, or misstated. I know of no other claims or lawsuits against the Applicant, and I know of no other events, incidents, or occurrences which might reasonably lead to a claim or lawsuit against the applicant. I understand that this is an application for insurance only and that completion and submission of this application does not bind coverage with any insurer.

| | | |
|----|----|----|
| SIGNATURE OF APPLICANT | | |
| SUSANNA KELHAM<br>NAME | OWNER<br>TITLE | 8/17/21<br>DATE |
| SIGNATURE OF BROKER | | |
| NAME | TITLE | DATE |

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 23 of 316

KV-Ins-0014596

# Supplemental Application


MIV
INSURANCE SERVICES

Insured: **KELHAM VINEYARDS**
Contact Name & Title: **SUSANNA KELHAM** Tel. #: **707 963 2000**
Website Address: **WWW.KELHAMVINEYARDS.COM**

Eff. Date: **8/1/21**
Email: **INFO@KELHAMVINEYARDS.COM**

## GENERAL INFORMATION:

Years in business: **23**     Number of locations: **1**
Description of operations: **WINERY**
Union: ☐ Yes  ☒ No      If yes, name of Union: _____
Current number of employees:  Full time: **5**   Part time: ____   Seasonal: ____   Volunteers: ____
Percent of employee turnover in the last 12 months: **0**      Full time: ____  Part time: ____
Employee staffing expectation over the next 12 months: **0**      Full time: ____  Part time: ____
Average hourly wages for Vineyard employees:   Full time: $____   Part time: $____
Average hourly wages for Winery employees:   Full time: $ **28.00**   Part time: $____
Has the insured ever been in bankruptcy? ☐ Yes  ☒ No      If yes, explain: _____
Any housing provided?  ☐ Yes  ☒ No      If yes, number of houses, employees and titles: _____
Any homes located on premises rented out to employees? ☐ Yes ☒ No  If yes, number of homes, employees and titles: _____
Will insured rent out facilities for special events such as weddings, parties, etc? ☒ Yes   ☐ No
If yes, what services are provided: **GROUP EVENTS**

## BENEFITS:

Are ALL employees eligible Y/N, if no then who? **NO - ONLY HAMILTON NICHOLSEN APPLICABLE**
                    % paid by employer: **100%**  % of participation: ____

Group Health:       ☐ Yes  ☒ No
Paid sick leave:     ☒ Yes  ☐ No
Vacation:          ☒ Yes  ☐ No
Retirement/Pension Plan:   ☐ Yes  ☒ No
Name of Healthcare provider: **CA GROWERS**
Do you use a specific:  Clinic: **NO**      Physician: **NO**      Emergency room: **NO**
Will insured use the Medical Provider Network as their first treatment center? ☒ Yes  ☐ No
CPR training provided:   ☐ Yes  ☒ No

## SAFETY PROGRAM:

Safety program / IIPP compliance with SB 198:      ☐ Yes  ☒ No
Return to light duty plan:          ☒ Yes  ☐ No
Return to full time modified work plan:      ☐ Yes  ☒ No
Designated full time safety director:      ☐ Yes  ☒ No   Name: _____
Safety meetings held for all employees:      ☐ Yes  ☒ No   Frequency of meetings: _____
Safety training held for all employees:      ☐ Yes  ☒ No   Incentive program for employees:  ☐ Yes   ☐ No
Personal protective safety equipment provided:   ☒ Yes  ☐ No
Supervisors are held accountable for injuries/accidents:   ☐ Yes  ☒ No
Accident investigation program in place:      ☐ Yes  ☒ No
Safety orientation for new hires          ☒ Yes  ☐ No
Do you have a Health & Wellness program:      ☐ Yes  ☒ No
Describe Health & Wellness activities: _____

## HIRING PRACTICES:

| | | | | | |
|---|---|---|---|---|---|
| Employment application: | ☐ Yes | ☒ No | Drug/substance abuse: | ☐ Yes | ☒ No |
| Reference checks: | ☒ Yes | ☐ No | Audiometric Testing: | ☐ Yes | ☒ No |
| Motor Vehicle Record Check: | ☐ Yes | ☒ No | Pre/Post employment physical: | ☐ Yes | ☒ No |
| Volunteer Labor used: | ☐ Yes | ☒ No | Pathogenic test (i.e. lead ): | ☐ Yes | ☒ No |
| Temporary labor used: | ☐ Yes | ☒ No | Orthopedic back test: | ☐ Yes | ☒ No |

KV-Ins-0014595

# Supplemental Application



**MIV**

MADERA VISTA INSURANCE CENTER

## OPERATIONS:

Hours of operation: 10:00 to 5:00 Number of daily shifts: 6
Is there a driving/delivery exposure: ☐ Yes ☒ No   Number of authorized drivers:_____   Number of vehicles:_____
Types of vehicles driven: _____
Reason(s) for driving (delivery, sales calls, etc.)? _____
Frequency of delivery: ☐ Daily   ☐ Weekly   ☐ Other
Delivery radius: ☐ <50 miles   ☐ 51-100 miles   ☐ 101-250 miles   ☐ 250 miles
Frequency of MVR checks: _____   Participation in DMV Pull Notice program: ☐ Yes   ☐ No
Driver acceptability standards have been established: ☐ Yes ☐ No
Vehicles inspection / maintenance program: ☐ Yes ☐ No   Frequency: _____
Vehicle maintenance performed is performed by employees: ☐ Yes ☐ No
Employees take vehicles home: ☐ Yes ☐ No
Motor Carrier Permit (MCP) Filing Number: _____
DOT Number: _____

## Wine Tasting & Sales:

Gross receipts:  Wholesale _____ %   Retail _____ %   Material handling exposure: ☐ Yes ☒ No
Outside sales employees: ☐ Yes ☒ No   Lifting: ☐ Below 50 lbs.   ☐ Above 50 lbs.
Any travel out of Country/State: ☐ Yes ☒ No   Number of employees: _____   Frequency: _____
What States/Countries: _____

## Winery:

Does insured bottle their own wine: ☒ Yes   ☐ No   ☐ Subcontracted
If subbed out, are certificates of insurance obtained? ☐ Yes   ☐ No
Any use of forklifts? ☒ Yes   ☐ No   Are all forklifts operators trained and certified? ☒ Yes   ☐ No
What is the max height at which you will work? 12
Fall protection methods utilized? Describe: CAGE
Is case palletizing automated: ☐ Yes   ☐ No
Material handling exposure: ☐ Yes ☒ No
Lifting: ☒ Below 50 lbs.   ☐ Above 50 lbs.
Is machinery/equipment properly guarded: ☒ Yes   ☐ No
Does insured have a Lock out/Tag out program: ☐ Yes   ☐ No
Personal Protection equipment provided: ☒ Yes   ☐ No
What PPE is required: MASKS & GLOVES
Any day laborers or temporary/employee leasing: ☐ Yes ☒ No
Any confined space work? i.e. cleaning of tanks, tunnels for pipelines, etc.: ☒ Yes   ☐ No
Describe: TANK CLEANING

## Vineyard/Farming Operations:

Grapes: 100 % Other: _____ %
How many acres: ☒ 160 or less   ☐ 161-499   ☐ 500-999   ☐ 1000+
Does insured use a Vineyard Manager? ☒ Yes   ☐ No   if yes, are certificates of insurance obtained: ☐ Yes ☒ No
Are harvest workers employees or leased labor? YES
Harvest performed by employee: 0 % hired contractor: 100 %
Are harvest employees regular or seasonal hires? SEASONAL
Number of vineyard supervisors: DEPENDS ON # OF PEOPLE
Any group transportation of employees? ☐ Yes ☒ No
If, yes, how: ☐ Van   ☐ Bus   ☐ Other; and how often: ☐ Daily   ☐ Weekly   ☐ Monthly
# of employees per vehicle: N/A
How are employees paid? Hourly rate: ✓   Piece rate: _____   Combination: _____   Other: _____
Material handling exposure: ☐ Yes ☒ No
Lifting: ☒ Below 50 lbs.   ☐ Above 50 lbs.
Any use of forklifts? ☒ Yes   ☐ No   Are all forklifts operators trained and certified? ☒ Yes   ☐ No
Any day laborers or temporary/employee leasing: ☐ Yes ☒ No
Training and certification for tractor operators: ☐ Yes ☒ No
Trained and certified pesticide applicators: ☐ Yes ☒ No



# Paragon WineRe™ Supplemental Application

### Email Submissions to: WineRe@paragoninsgroup.com

## SECTION A: APPLICANT INFORMATION

| | | |
|---|---|---|
| A1 | DATE OF APPLICATION | 7/26/21 |
| A2 | EFFECTIVE DATE | 7/26/21 |
| A3 | NAMED INSURED(S) DBA(S) | KELHAM VINEYARDS & WINERY, LLC |
| | If more than one Named Insured exists, please list and explain relationship below: | |
| A4 | CONTACT NAME | SUSANNA KELHAM   PHONE (707) 963-2000 |
| A5 | STREET ADDRESS | 360 ZINFANDEL LANE ST. HELENA CA 94574 |
| A6 | CORP. STRUCTURE | ☐ Individual  ☐ Partnership  ☐ Corporation  ☐ Other |
| A7 | WEBSITE | WWW.KELHAMVINEYARDS.COM   FEIN # 68-047-3623 |

## SECTION B: REVENUE BREAKDOWN

| | CASED WINE | |
|---|---|---|
| B1 | **Sales Volume** -- Total number of cased/bottled wine sold over last 12 months: | 1380 cases |
| | **Revenue** – Total sales of cased/bottled wine over last 12 months: | $ 1,425,000 |
| | **Average** – Approximate revenue per case (average for all varietals): | $ 1,020 |

| | BULK WINE (WINE TO BE SOLD AS BULK WINE) | |
|---|---|---|
| B2 | **Sales Volume** – Total number of bulk wine gallons sold last 12 months: | 4700 gallons |
| | **Revenue** – Total sales of bulk wine over last 12 months (sold as bulk wine versus cased wine): | $ 170,000 |
| | **Average** – Approximate revenue per gallon for wine sold as bulk wine (average for all varietals): | $ 35 PER GAL |

| | SPARKLING WINE | |
|---|---|---|
| B3 | **Sales Volume** – Total sales of sparkling wine over last 12 months: | N/A $ |

| | ALL OTHER REVENUES (last 12 months): | |
|---|---|---|
| B4 | Bulk Grape Sales | $ 0 |
| B5 | Tasting Room Only Sales | $ 205,000 |
| B6 | Host Custom Crush Sales
If yes, provide copy of required written contract and # of Clients: | $ 160,000 |
| B7 | Restaurant Sales
If yes, complete Restaurant Supplemental | $ 0 |
| B8 | Third Party Event Facility Rental Sales | $ 0 |
| B9 | Hotel, B&B, Dwelling Rental Sales
If yes, complete Hospitality Supplemental | $ 5,500 PER MONTH |
| B10 | Foreign Sales (excluding Canada) | $ 0 |
| B11 | Sales from "other than wine products"
If yes, Describe these products: | $ 0 |
| B12 | TOTAL REVENUE | $ |

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 26
of 316

KV-Ins-0014593

## SECTION C: WINE STOCK INVENTORY

| WINE STOCK VALUATION: (WHEN COMPLETING, USE CURRENT WINE STOCK ON HAND – NOT WINE PRODUCED) | | | |
|---|---|---|---|
| **VINTAGE YEAR** | **NO. OF CASE** (cased wine only) | **NO. OF GALLONS** (bulk wine to be bottled) | **NO. OF GALLONS** (bulk wine to be sold as bulk) |
| Wine Made 3+ Years Ago | 3200 Cases | 7600 Gallons | 0 Gallons |
| (Wine Made 2 Years Ago) | 3200 Cases | 7600 Gallons | 0 Gallons |
| (Wine Made 1 Year Ago) | 1500 Cases | 3500 Gallons | 0 Gallons |
| (Wine Made Current Year) | 1500 Cases | 3500 Gallons | 7000 Gallons |
| (Anticipated Year Harvest) | N/A | 3500 Gallons | 0 Gallons |
| **Library Wines** | 35,500 Cases | 84,629 N/A | 0 N/A |

## SECTION D: PROPERTY

| | COOPERAGE SCHEDULE – Last 12 Months | |
|---|---|---|
| D1 | Average # of Barrels on Hand | 300 |
| D2 | Total Replacement Cost of All Barrels | 150,000 |
| | **TANK SCHEDULE** – Permanent Tanks on Hand | |
| D3 | Total # of Tanks on Hand | 14 |
| D4 | Total Tank Gallons Available | 49,000 |
| D5 | Largest Tank (gals) on Hand | 6,000 |
| D6 | Total Replacement Cost of All Tanks | 250,000 |
| | **STOCK OF OTHERS:** | |
| D7 | Do you store wine for others? If yes, provide required written contract for review and number of clients last 12 months: | ☒ Yes ☐ No |
| | **MISCELLANEOUS:** | |
| D8 | Mobile Equipment Values (attach schedule): | $ 0 |
| D9 | Do you have plans for any construction at your described premises? If yes, please explain: | ☐ Yes ☒ No |
| D10 | Do you own any Caves? If yes, please advise Square Footage: | ☐ Yes ☒ No |
| D11 | Do you own and operate Solar Panels If yes, describe and include total wattage: | ☐ Yes ☒ No |
| D12 | Do you own permanent backup generator(s)? | ☒ Yes ☐ No |
| D13 | Do you have access to city water line? If no, describe available private water on site, including gallons, and how it is accessed: | ☐ Yes ☒ No |
| D14 | Do you have a written Sanitation Program? | ☒ Yes ☐ No |
| D15 | Do you have a Winemaking Log? If yes, describe how information is stored:  SPREADSHEET | ☒ Yes ☐ No |
| D16 | Do you have an Equipment Maintenance Program? | ☒ Yes ☐ No |
| D17 | Do you conduct Employee Safety Trainings? If yes, advise number of trainings per year: | ☒ Yes ☐ No |



Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 27 of 316

KV-Ins-0014592

## SECTION E: OPERATIONS INFORMATION

| | | |
|---|---|---|
| E1 | Do you currently have insurance for your winery? | ☒ Yes ☐ No |
| | If yes, have you had any losses in the past five (5) years? We will need five (5) years of currently valued loss runs if you are not an existing client. | ☒ Yes ☐ No |
| E2 | Number of years in business: | 22 years |
| E3 | Total number of employees: | 3 employees |
| E4 | Do you have any operations insured elsewhere? | ☐ Yes ☒ No |
| | If yes, explain: | |
| E5 | Do you have business exposures besides winemaking and distribution? | ☐ Yes ☒ No |
| | If yes, explain: | |
| E6 | Do you bottle your own wine? | ☒ Yes ☐ No |
| | If yes, please describe bottling line and equipment: | |
| E7 | Do you bottle wine for others? | ☒ Yes ☐ No |
| | If yes, how many cases are bottled for others? | 3800 cases |
| E8 | Do you provide transportation for visitors to or on your Property? | ☐ Yes ☒ No |
| | If yes, please provide details: | |
| E9 | Do you offer Winery Tours? | ☐ Yes ☒ No |
| E10 | Do you accept limo or tour bus visits (parties of 10 or more) If yes, average # of weekly visits during peak season: | ☒ Yes ☐ No |
| E11 | Is your staff trained and/or certified in serving alcohol? (example: TIPS) | ☐ Yes ☒ No |
| E12 | How many visitors do you have on an Annual basis? | visitors |
| E13 | Do you own or lease any vineyard property? | ☒ Yes ☐ No |
| | If yes, please provide number of planted acres: | 6.7 acres |
| E14 | Do you host Events on your Premises? (does not include: wine club events, harvest events, association events) | ☒ Yes ☐ No |
| | If yes, provide number of annual events: | events |
| E15 | Do you rent out your facility to third parties for wedding events? | ☐ Yes ☒ No |
| | If yes, provide number of annual wedding events:        & Average Attendance per event | |
| | If yes, submit required written contract for review | |
| E15 | Do you rent out your facility to third parties for events other than weddings?: | ☐ Yes ☒ No |
| | If yes, provide number of annual events:        & Average Attendance per event | |
| | If yes, submit required written contract for review | |

## SECTION F: LIABILITY COVERAGE OPTIONS:

| | COVERAGE OPTION | YES / NO | CURRENT LIMIT | REQUESTED LIMIT | | |
|---|---|---|---|---|---|---|
| F1 | Product Withdrawal Expense | ☒ Yes ☐ No | $ | ☐ $25,000 | ☒ $100,000 | ☐ $250,000 |
| F2 | Wind Drift or Overspray | ☐ Yes ☒ No | $ | ☐ $1,000,000 | | |
| F3 | Hired & Non-Owned Automobile Liability | ☒ Yes ☐ No | $ | ☒ $1,000,000 | | |
| F4 | Employee Benefits Liability | ☐ Yes ☒ No | $ | ☐ $1,000,000 | | |
| F7 | Excess Liability (ACORD Application Required) | ☒ Yes ☐ No | $ | $ 5 M | Not to Exceed $10M | |

PARAGON Insurance Holdings

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 28 of 316

KV-Ins-0014591

## SECTION G: AUTO EXPOSURES

| DRIVER SCREENING PROCEDURES – MVRs: | |
|---|---|
| G1 | Do you have Driver Screening policies and procedures in place? | ☐ Yes ☒ No |
| | *If yes, please describe:* | |

## SECTION H: SUPPLEMENTAL INFORMATION

**READ AND SIGN BELOW**

I have reviewed this application for accuracy before signing it. As a condition precedent to coverage, I hereby state that the information contained herein is true, accurate, and complete and that no material facts have been omitted, misrepresented, or misstated. I know of no other claims or lawsuits against the Applicant, and I know of no other events, incidents, or occurrences which might reasonably lead to a claim or lawsuit against the applicant. I understand that this is an application for insurance only and that completion and submission of this application does not bind coverage with any insurer.

| SIGNATURE OF APPLICANT | | |
|---|---|---|
| SUSANNA KELHAM | OWNER | 8 | 11 | 21 |
| NAME | TITLE | DATE |

| SIGNATURE OF BROKER | | |
|---|---|---|
| | | |
| NAME | TITLE | DATE |

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 29 of 316

KV-Ins-0014590

# PLEASE READ CAREFULLY
# GENERAL FRAUD WARNING NOTICE

Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent act, which is a crime and may subject the person to criminal and civil penalties.

## STATE SPECIFIC FRAUD WARNING NOTICES

**Arkansas Fraud Warning**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information on an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Colorado Fraud Warning**
It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**District of Columbia Fraud Warning**
WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by an applicant.

**Florida Fraud Warning**
Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Hawaii Fraud Warning**
For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

**Kentucky Fraud Warning**
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Louisiana Fraud Warning**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Maine Fraud Warning**
It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland Fraud Warning**
Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**New Hampshire Statement of Residency**
To procure automobile insurance, I hereby attest that I am, and each named insured is, a resident of the State of New Hampshire. I understand that if I falsely claim for myself or any named insured to be a resident of the State of New Hampshire, I am subject to prosecution, imprisonment of up to one year, a fine of $2,000 and the denial of coverage for any loss, not occurring in New Hampshire, under the automobile insurance policy for which I am applying. I also understand that this statement will be relied upon in connection with future renewals of the automobile insurance policy for which I am applying, and that it is my responsibility to inform my insurance company before my next renewal after I or any named insured ceases to be a New Hampshire resident and that I will be subject to the penalties listed above if I fail to do so.

**New Jersey Fraud Warning**
Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**New Mexico Fraud Warning**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York Fraud Warning**
Automobile Insurance: Any person who knowingly and with intent to defraud any insurance company or other person files an application for commercial insurance or a statement of claim for any commercial or personal insurance benefits containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, and any person who, in connection with such application or claim, knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the value of the subject motor vehicle or stated claim for each violation. Other Types of Insurance: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation.

**Ohio Fraud Warning**
Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma Fraud Warning**
WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon Fraud Warning**
Any person who knowingly and with intent to defraud or solicit another to defraud an insurer: (1) by submitting an application, or (2) by filing a claim containing a false statement as to any material fact, may be violating state law.

**Pennsylvania Fraud Warning**
All Types of Insurance: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. Motor Vehicle Insurance: Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.

**Tennessee Fraud Warning**
It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Virginia Fraud Warning**
It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

**Washington Fraud Warning**
It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

## POLICY CANCELLATION PROCEDURE

**Pro Rata Calculation**
We will compute return premium pro rata and round to the next highest whole dollar when a policy is cancelled:
1. At the company's request;
2. Because the insured no longer has a financial or insurable interest in the property or business operation that is the subject of insurance;
3. Rewritten in the same company or company group; or
4. After the first year for a prepaid policy written for a term of more than one year.

**Other Cancellations**
If preceding paragraph does not apply, we will compute return premium at .90 of the pro rata unearned premium and round to the next higher whole dollar.

Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 30
of 316

KV-Ins-0014589

# Location Schedule

Please show average and maximum (peak) # of cases and/or gallons of wine that exists at each location. If you have both cased and gallons (bulk) at a location, please give both. If you only have cased or gallons (bulk) at a location only show cased or gallons (bulk).

| Named Insured | KELHAM VINEYARDS |
| --- | --- |
| Effective Date | 7/29/21 |

**Wine Stock at Each Location:**

| Loc # | Bldg # | Facility Name/Description | Address | Average # of Cases | Average # of Gallons | Average Wine Inventory Value | Maximum Wine Inventory Value |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | WINERY | | 3000 Cases | 30,000 Gallons | $ 8M | $ 8M |

**Property, other than wine stock, Limits (provide value below if coverage is needed)**

| Building Limit: | Business Personal Property Limit: | Wine Equipment, Including Barrels Limit: |
| --- | --- | --- |
| $ 5M | $ 16M | $ 6M |

Any Permanently Fixed Agricultural Equipment? ☐ Yes ☐ No
If yes, description _____ Limit $ _____

**Building Information**

Year Built 2000   Construction Type METAL   Square Footage 14,500
Distance to Fire Hydrant 60 feet   Distance to Fire Department 3 miles
Fire Sprinklers? ☐ Yes ☒ No   Fire/Burglar Alarm? ☒ Yes ☐ No

| Loc # | Bldg # | Facility Name/Description | Address | Average # of Cases | Average # of Gallons | Average Wine Inventory Value | Maximum Wine Inventory Value |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | VALLEY WINE | AMERICAN CANYON | 32K Cases | 76K Gallons | $ 92M | $ 92M |

**Property, other than wine stock, Limits (provide value below if coverage is needed)**

| Building Limit: | Business Personal Property Limit: | Wine Equipment, Including Barrels Limit: |
| --- | --- | --- |
| $ 3RD PARTY | $ _____ | $ _____ |

Any Permanently Fixed Agricultural Equipment? ☐ Yes ☐ No
If yes, description _____ Limit $ _____

**Building Information**

Year Built 2008   Construction Type CONCRETE   Square Footage 32K
Distance to Fire Hydrant 60 feet   Distance to Fire Department 3 miles
Fire Sprinklers? ☒ Yes ☐ No   Fire/Burglar Alarm? ☒ Yes ☐ No

| Loc # | Bldg # | Facility Name/Description | Address | Average # of Cases | Average # of Gallons | Average Wine Inventory Value | Maximum Wine Inventory Value |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | Cases | Gallons | $ | $ |

**Property, other than wine stock, Limits (provide value below if coverage is needed)**

| Building Limit: | Business Personal Property Limit: | Wine Equipment, Including Barrels Limit: |
| --- | --- | --- |
| $ _____ | $ _____ | $ _____ |

Any Permanently Fixed Agricultural Equipment? ☐ Yes ☐ No
If yes, description _____ Limit $ _____

**Building Information**

Year Built _____   Construction Type _____   Square Footage _____
Distance to Fire Hydrant _____ feet   Distance to Fire Department _____ miles
Fire Sprinklers? ☐ Yes ☐ No   Fire/Burglar Alarm? ☐ Yes ☐ No

KV-Ins-0014588

# Exhibit 3

# Kelham Vineyards & Winery, LLC

**Minority Equity Interest Valuation**
as of October 14, 2022

Issue Date: December 8, 2022



Barber Analytics, LLC, 1 Sansome Street, Suite 3500, San Francisco, CA 94104  415.946.8914

# Kelham Vineyards & Winery, LLC

**Executive Summary - Valuation Conclusion**

We have completed our valuation of a 33% interest (the Interest) in Kelham Vineyards & Winery, LLC (Kelham Vineyards or the Company) as of October 14, 2022 (the Valuation Date) for management planning purposes. The concluded fair market value is listed in the Value Conclusion table to the right.

In performing our valuation of the Interest in the Company, the scope of our work included consideration of the elements of appraisal relevant to the valuation of a closely-held enterprise, as outlined in Revenue Ruling 59-60. We established the equity value of the Company using generally accepted valuation methodologies which assume a going-concern premise of value. See Exhibit 5 for a description of our valuation method selection process and weighting. The aggregate value of the equity indicated by the selected methods was multiplied by the Interest size to arrive at the Interest value on a marketable, minority basis.

Although the Company is a limited liability company, the valuation methods used valued Kelham Vineyards as if it were a C-Corporation. Based upon the distribution plans for the Company, the expected term of pass-through tax status and the recent reduction in the C-Corporation income tax rate, we determined no premium or discount should be applied for the Company's pass-through tax status. A discount for lack of marketability (DLOM) was applied to reflect the increased risk and inconvenience of owning a privately-held stock arising from the inability to readily sell the units (see following page).

| Value Conclusion | | |
|---|---|---|
| Equity value[1] | | $2,056,000 |
| Interest size | | 33.00% |
| Indicated Interest value | | $678,480 |
| Discount for lack of marketability[2] | 26.5% | (179,797) |
| | | $498,683 |
| **Concluded Value (rounded)** | | **$499,000** |

---

(1)  Based on the Valuation Method Selection and Equity Value Summary presented in Exhibit 5. Marketable, minority basis.
(2)  See Executive Summary - Discount for Lack of Marketability.



Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 34 of 316

# Kelham Vineyards & Winery, LLC

**Company Operations and Financial Overview**

## Operations Overview and Outlook

Kelham Vineyards is a small, family-owned winery located in the Oakville appellation of the Napa Valley. The Company was founded in 2000, with their first wines made with the 1999 vintage. Kelham Vineyards produces about 3,000 cases annually with just a few labels. The Company's flagship wines are a reserve Cabernet Sauvignon and red blends, but they also produce a Merlot, a Chardonnay and a Sauvignon Blanc. The Company's wines are quite unique in that most are aged for about 10 years. BA interviewed Susanna and Hamilton Kelham, the Manager and winemaker, respectively, regarding the business operations and Company plans on October 26, 2022.

The Company sources its grapes from seven acres of farmed vineyards on its winery site, as well as buying grapes from an adjacent 67-acre vineyard owned and farmed by Susanna Kelham. The winery site is thirteen acres in total and is leased from Susanna Kelham. There is no written lease for the winery site, any written grape contracts, or a trade name license agreement with Susanna Kelham. The Company's seven-acre vineyard has been recently replanted and just started producing usable grapes in 2022. Kelham Vineyards also provides custom crush services to one client, Terra Valentine wines.

The Company's most expensive label, Tribute, is a red blend and retails for about $275 per bottle. The Sons red blend sells for $150 per bottle. The Reserve Cabernet Sauvignon and other labels are priced in the $100-$125 per bottle range. The Company has not increased prices in the past  seven years and has no plans to. Kelham Vineyards is unique in that it sells *all* its wine through the tasting room and to wine club members. The Company does virtually no marketing and promotion and replaces lost wine club members through recommendations from existing club members.

The Company lost its 2020 vintage to smoke taint, selling that vintage as bulk wine in the first half of 2022. The winemaker thought aging the



wine over 10 years would draw the smoke flavor out and decided to sell the vintage rather than risk diluting the brand by selling inferior wine. Kelham Vineyards has also seen a reduction in tasting room visits since 2017 due to the publicity around the California wildfires. Finally, the Company has seen its insurance costs increase over 50% due to the wildfires.

Source: Company website and discussions with management.



# Kelham Vineyards & Winery, LLC

**Historical Financial Statements - Summary**

The financial statements provided by the Company are internal, unaudited and prepared on an accrual basis. A number of adjustments were made to the statements to try to adjust EBITDA to a level consistent with publicly-traded company accrual accounting and are discussed below. We used the EBITDA level of earnings as we didn't have an accurate measure of accrual depreciation and amortization that would allow the statement of an accurate level of EBIT or after-tax earnings. In addition, the inventory accounting for 2022 is not made until the end of the fiscal year, so we could not calculate interim earnings for 2022 or a trailing-twelve-months EBITDA.

Several adjustments were made to the statements to remove or adjust costs that were either inaccurate or miscategorized. First, the mortgage and related interest on the Company's winery and vineyards was on its books, although the property is leased. We removed the mortgage from the balance sheet and the interest expense from the income statement. In addition, the loan for the Tahoe house was removed from the balance sheet and the related expenses were removed from the income statement as the property is not owned by the Company, or used for business purposes. Income taxes reported in operating costs were recategorized as they are more accurately assigned to income tax expense. We also eliminated guaranteed payments made to the owners for personal taxes from the operating expenses as they are more accurately categorized as distributions. Finally, the actual lease payment made for the Company's winery and vineyard property was eliminated and replaced with the payment that Company management believes should have been made.

Finally, financial statements are designed to provide the user with an estimate of the on-going earnings power of an entity. To do that, it is important to identify one-time or non-recurring items that impact earnings. Once identified, valuation experts will usually exclude the non-recurring items from the results. As a result, the PPP loan that was forgiven was eliminated from the balance sheet and income statement. Please see the notes to the financial statements that detail these adjustments.

Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 36 of 316

# Exhibit 4

| Secretary of State **Articles of Organization** Limited Liability Company (LLC) | LLC-1 | **20 1 6 2 3 2 1 0 3 6 8** |
|---|---|---|

**IMPORTANT — Read Instructions before completing this form.**

**Filing Fee - $70.00**

**Copy Fees** - First plain copy free; Additional copies: First page $1.00 & .50 for each attachment page; Certification Fee - $5.00

*Important!* LLCs may have to pay an annual minimum $800 tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.

**FILED**
Secretary of State
State of California

**AUG 1 2 2016**

This Space For Office Use Only

---

**1. Limited Liability Company Name** (See Instructions – Must contain an LLC ending such as LLC or L.L.C. "LLC" will be added, if not included.)

Kelham Vineyards Growers LLC

---

**2. Business Addresses**

| a. Initial Street Address of Designated Office in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1467 Dwyer Road | Yountville | CA | 94599 |

| b. Initial Mailing Address of LLC, if different than item 2a | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| PO Box 60 | Oakville | CA | 94562 |

---

**3. Agent for Service of Process**

**Item 3a and 3b:** If naming an **individual**, the agent must reside in California and Item 3a and 3b must be completed with the agent's name and complete California street address.

**Item 3c:** If naming a California Registered **Corporate Agent**, a current agent registration certificate must be on file with the California Secretary of State and Item 3c must be completed (leave Item 3a-3b blank).

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Susanna | | Kelham | |

| b. Street Address (if agent is not a corporation) - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1467 Dwyer Road | Yountville | CA | 94599 |

c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 3a or 3b

---

**4. Management** (Select **only** one box)

The LLC will be managed by:

[ ] One Manager   [ ] More than One Manager   [✓] All LLC Member(s)

---

**5. Purpose Statement** (Do not alter Purpose Statement)

The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

---

**6.** The Information contained herein, including in any attachments, is true and correct.

Organizer sign here

Susanna Kelham
Print your name here

2016 California Secretary of State
www.sos.ca.gov/business/be

# Exhibit 5



1st
SUP, 9.20

**Paycheck Protection Program**
**Borrower Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ■ LLC ☐ Independent contractor ☐ Eligible self-employed individual ☐ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization ☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other | **DBA or Tradename if Applicable** |
|---|---|---|
| | | **Kelham Vineyards Growers** |

| **Business Legal Name** | |
|---|---|
| Kelham Vineyards Growers | |

| **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
|---|---|---|
| PO Box 60 Oakville, CA 94562 | | 707.396.2144 |
| | **Primary Contact** | **Email Address** |
| | Susanna Roger Kelham | sannakelham@icloud.com |

| **Average Monthly Payroll:** | $24492.82 | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $61232.05 | **Number of Employees:** | 10 |
|---|---|---|---|---|---|

| Purpose of the loan (select more than one): | ■Payroll ☐Lease / Mortgage Interest ☐Utilities ☐Other (explain): _____ |
|---|---|

### Applicant Ownership

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| **Owner Name** | **Title** | **Ownership %** | **TIN (EIN, SSN)** | **Address** |
|---|---|---|---|---|
| Susanna Rogers Kelham | Owner | 100 | | |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| **Question** | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☐ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☐ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ☐ | ☐ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☐ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| **Question** | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole? Initial here to confirm your response to question 5 → NO | ☐ | ☐ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 6 → NO | ☐ | ☐ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ☐ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ☐ |

1

KV-Ins-0015589



**Paycheck Protection Program**
**Borrower Application Form**

<u>**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**</u>

<u>CERTIFICATIONS AND AUTHORIZATIONS</u>

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

<u>CERTIFICATIONS</u>

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

SK   The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

SK   Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

SK   The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

SK   The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

SK   I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

SK   During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

SK   I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

SK   I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____         April 8, 2020
Signature of Authorized Representative of Applicant       _____
                                                                                         Date
**Susanna R. Kelham**                                     **Owner**
_____                          _____
Print Name                                                Title

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 41
of 316

KV-Ins-0015590

# Exhibit 6

RONALD NICHOLSEN

*vs*

KELHAM VINEYARDS & WINERY LLC, et al.

---

# *VIDEOTAPED DEPOSITION OF*

## *SUSANNA ROGERS KELHAM*

### *April 27, 2023*

---



**SIMS & SIMS**
CERTIFIED SHORTHAND REPORTERS
EST. 1948

SIMS & SIMS REPORTING, INC.
1700 Second Street, Suite 308
Napa, California 94559
(707) 226-3022
simsandsims@sbcglobal.net
simsandsims.com

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF NAPA

---oOo---

RONALD NICHOLSEN II,                    )
                                        )
              Petitioner,               )
                                        )
        vs.                             )       No. 21CV001403
                                        )
KELHAM VINEYARDS & WINERY LLC           )
and SUSANNA ROGERS KELHAM,              )
                                        )
              Respondents.              )
_____ )

**CERTIFIED COPY**

---oOo---

VIDEOTAPED DEPOSITION OF PERSON MOST KNOWLEDGEABLE

OF KELHAM VINEYARDS & WINERY, LLC

SUSANNA ROGERS KELHAM

---oOo---

Napa, California
Thursday, April 27, 2023
9:05 a.m.

CECILIA E. RODRIGUEZ, CSR No. 11479, RPR

Sims & Sims Reporting, Inc.        (707) 226-3022

1                            ---oOo---

2                          I N D E X

3                            ---oOo---

4

5        APPEARANCES:                                     PAGE

6                                                          11

7                            ---oOo---

8

9        EXAMINATION BY:                                  PAGE

10             MR. DAVIS  . . . . . . . . . . . .          15

11                           ---oOo---

12       DEPOSITION EXHIBITS:                             PAGE

13

14         1    Amended Notice of Taking Deposition        17

15              of Kelham Vineyards and Winery LLC's

16              Person Most Knowledgeable

17         2    Emails to Harold Davis and Marc            23

18              Baluda from Richard Petty dated

19              November 15, 2021

20         3    Order Sanctioning Respondent               24

21              Susanna Rogers Kelham For Failure to

22              Comply With the Court's Writ of

23              Mandate and Order Dated November 4,

24              2022

25       ///

Case: 23-10384*  Doc# 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 45
of 316

1    BE IT REMEMBERED that, on Thursday, the 27th

2    day of April, 2023, commencing at the hour of 9:05

3    o'clock a.m. thereof, at Sims & Sims Reporting, 1700

4    Second Street, Suite 308, Napa, California, before

5    me, Cecilia E. Rodriguez, CSR No. 11479, a duly

6    licensed Certified Shorthand Reporter in the State

7    of California, there personally appeared

8                    SUSANNA ROGERS KELHAM,

9    the witness herein, who, being by me first

10   duly sworn, was thereupon examined and testified as

11   hereinafter set forth.

12                    ---oOo---

13              A P P E A R A N C E S

14                    ---oOo---

15   GREENBERG TRAURIG, LLP, 101 Second Street,

16   Suite 2200, San Francisco, California 94105,

17   represented by HAROLD H. DAVIS, ESQUIRE, appeared

18   as counsel on behalf of the Petitioner herein.

19   GREENBERG TRAURIG, LLP, 101 Second Street,

20   Suite 2200, San Francisco, California 94105,

21   represented by MARC R. BALUDA, ESQUIRE, appeared

22   as counsel on behalf of the Petitioner herein.

23   GREENBERG TRAURIG, LLP, 101 Second Street,

24   Suite 2200, San Francisco, California 94105,

25   represented by RICHARD RODRIGUEZ, ESQUIRE, of

Case: 23-10384* Doc# 16-1 Filed: 08/07/23 Entered: 08/07/23 16:06:25 Page 46 of 316

1    counsel, on behalf of the Petitioner herein.

2        VGC LLP, 9461 Charleville Boulevard, Suite

3    757, Beverly Hills, California 90212, represented by

4    ANDREW D. WHITE, ESQUIRE, appeared as counsel on

5    behalf of the Respondent Susanna Rogers Kelham,

6    herein.

7        HOLLAND & KNIGHT, LLP, 400 S. Hope Street,

8    8th Floor, Los Angeles, California 90071, represented

9    by RICHARD W. PETTY, ESQUIRE, appeared as counsel on

10   behalf of the Respondents Kelham Vineyards & Winery,

11   LLC, herein.

12       Mike Tunick, Videographer, Ronald Nicholsen,

13   Hamilton Nicholsen and Genevieve Crego were also

14   present.

15

16

17

18

19

20

21

22

23

24

25

12

Case: 23-10384*  Doc#: 16-1  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 47 of 316

1                        PROCEEDINGS

2          THE VIDEOGRAPHER:  We're going on record at

3    9:05 a.m.  It's April 27, 2023.  This marks the

4    beginning of the deposition Susanna Kelham in the

5    matter of Ronald Nicholsen II vs. Kelham Vineyards &          09:06:19

6    Winery LLC.  And this is for the Superior Court,

7    State of California, County of Napa, case number

8    21CV001403.  We're located at Sims & Sims Deposition

9    Reporters in Napa.  The videographer is Mike Tunick,

10   and I've been retained by counsel for the Petitioner.

11          And now can we have our attorneys present

12   please introduce yourselves.

13          MR. DAVIS:  Good morning.  My name is Harold

14   Davis.  I'm with Greenberg Traurig in San Francisco.

15   And with me today is my partner and shareholder Marc          09:06:54

16   Baluda, and also of counsel with the firm Richard

17   Rodriguez.  Also, in attendance is Petitioner

18   Mr. Nicholsen.

19          MR. WHITE:  Good morning.  Andrew White on

20   behalf of Respondent Susanna Kelham.                          09:07:08

21          MR. PETTY:  Richard Petty on behalf of the

22   LLC.

23                  SUSANNA ROGERS KELHAM,

24           Having first been duly sworn, was

25              examined and testified as follows:

Case: 23-10384*  Doc# 16-1  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 48 of 316

1                    ---oOo---

2         MR. DAVIS:  Good morning, Ms. Nicholsen.  As

3   I mentioned, my name is -- or excuse me, Ms. Kelham,

4   my name is Harold Davis.  Just before we begin, I

5   need to put on the record that I have an objection to          09:07:37

6   some of the people that are here viewing the

7   deposition today.

8         I was notified yesterday that Mr. Hamilton

9   Nicholsen would be here, and I did voice that

10  objection.  I was not aware that Mrs. Crego would be           09:07:48

11  here.  The basis for that objection is is that

12  they're going to be witnesses, and I actually have

13  deposition notices out to them.  I haven't had a

14  chance to address that with the court.  I'm not

15  trying to create an argument or anything, but I do             09:08:00

16  want to make it clear on the record that we have an

17  objection because they're going to be deposed later

18  on.

19        MR. WHITE:  Okay.  And I'll respond to that.

20  Mr. Nicholsen and Ms. Crego have the absolute right,          09:08:09

21  according to California law, to be present today.

22  Mr. Nicholsen is an officer of the LLC.  They're also

23  here for emotional support for Ham's mother,

24  Ms. Kelham here.

25        We've already made it clear that this                   09:08:27

Sims & Sims Reporting, Inc.          (707) 226-3022

```
 1   deposition is a significant burden emotionally and
 2   physically for Ms. Kelham, so they're here for
 3   emotional support as well.  So they have the absolute
 4   right to be here, subject to -- you know, if you feel
 5   the need to exclude them from the room, I believe you        09:08:43
 6   would have to seek a protective order to do so.
 7           And with that, I think we can move on.
 8           MR. DAVIS:  Yeah.  We'll try to resolve that
 9   issue later.
10                       ---oOo---
11                     EXAMINATION
12   BY MR. DAVIS:
13   Q.    I know your name.  But could you please state
14   your name for the record?
15   A.    Susanna Kelham.                                        09:08:57
16   Q.    Thank you.  You've been deposed before,
17   correct?
18   A.    No.
19   Q.    You've never been deposed before?
20   A.    No.                                                    09:09:04
21   Q.    Okay.  Well, then let me go over a few basics
22   with you.  I won't spend a lot of time on that.
23           You understand that you are under oath,
24   correct?
25   A.    Yes.                                                   09:09:14
```

Case: 23-10384*  Doc# 16-1  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 50 of 316

Sims & Sims Reporting, Inc.                    (707) 226-3022

1          THE WITNESS:  I don't know.

2    BY MR. DAVIS:

3    Q.     Okay.  Does Kelham Vineyards pay utilities

4    for other properties, other than 360 Zinfandel Lane?

5          MR. WHITE:  Vague and ambiguous.          `02:30:55`

6    Speculation.

7          Same instruction.  This is outside of your

8    scope of a PMK.  You can answer in your personal

9    capacity.

10          THE WITNESS:  I have -- I don't know.          `02:31:01`

11   BY MR. DAVIS:

12   Q.     What is the guest house Main Street?

13   A.     The guest house Main Street is a house that I

14   owned and purchased by myself.  And it's a guest

15   house.          `02:31:15`

16   Q.     Does Kelham Vineyards pay anything related to

17   the guest house on Main Street?

18          MR. WHITE:  Same instruction.

19          This is outside your PMK scope.  Answer in

20   your personal capacity.          `02:31:29`

21          THE WITNESS:  Yes.  The -- I'm trying to

22   think.  The rent is 5250.  And that is to rent it so

23   that we are able to -- as a promotional, we have it

24   for the winery for people that come and are in our

25   club, only club people.  And they have a place to          `02:32:03`

204

Sims & Sims Reporting, Inc. * (707) 226-3022

1    stay.

2    BY MR. DAVIS:

3    Q.    Okay.  So Kelham Vineyards pays rent for the

4    guest house at Main Street, is that -- do I have that

5    right?

6    A.    Yes.

7          (Exhibit 29 was marked for identification.)

8    BY MR. DAVIS:

9    Q.    Okay.  I'm going to hand you what I've marked

10   as Exhibit 29 to your deposition.  I'll represent to          02:32:21

11   you that it is a portion taken from the QuickBooks

12   file that we received that's dated May 27, 2022.  And

13   it's a Profit & Loss statement from January through

14   December 2021.

15         Have you seen this profit and loss statement           02:32:39

16   before?

17   A.    No, I haven't.

18   Q.    If we turn to the page that says "Page 4 of

19   5" at the bottom right-hand corner, and you'll see an

20   entry at the top.  I believe it's the fourth entry           02:32:55

21   marked "6506 Rent/Lease Guest House Main Street,

22   $42,000"; do you see that?

23   A.    I do.

24   Q.    So is that rent that Kelham Vineyards was

25   paying for the use of that guest house?                      02:33:11

205

Case: 23-10384*  Doc#: 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 52 of 316

1    BY MR. DAVIS:

2    Q.    And so you don't recall having a meeting in

3    November 2021 with Grace Kinney?

4    A.    No, I don't.

5    Q.    Okay.  All right.  Did you ever talk with          04:19:11

6    Ms. Kinney about how does the winery not give more

7    money to the government?

8    A.    I don't recall.

9    Q.    And here on the first page it says -- under

10   number I, it says, "Run all things business related     04:19:39

11   through books"; do you see that?

12   A.    Yes.

13   Q.    Do you know what that refers to?

14   A.    I don't.

15   Q.    Okay.  And it says -- under that it says:          04:19:52

16   "SK owed four years of grapes."

17   A.    Yes.

18   Q.    Do you see that?

19   A.    Yes.

20   Q.    So as of November 2021, were you owed four         04:20:05

21   years of grapes?  Do you know what that means?

22   A.    The winery had not paid me for four years for

23   my fruit.

24   Q.    And when we're talking about you, are you

25   saying that Kelham Vineyards had not paid Kelham          04:20:20

                                                                           274

Case: 23-10384*  Doc#: 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 53 of 316

1    Growers for four years?

2    A.      Susanna Kelham and Growers are one and the

3    same.

4            (Hamilton Nicholsen left the deposition.)

5    BY MR. DAVIS:                                          04:20:34

6    Q.      Okay.  On the next page, the document talks

7    about "Multiple properties to place."  It's right

8    here.  It lists Charter Oak Main Street and vineyard;

9    do you see that?

10   A.      Mm-hmm.                                        04:21:00

11   Q.      Do you know what this refers to?

12   A.      I don't know what it is.  I don't know what

13   it is.  It -- it -- it -- no.  I have no idea what --

14   you'd have to ask Gen what the verbiage means because

15   I don't know what that means.                          04:21:25

16           MR. WHITE:  And that's fine.  She wrote this.

17   So if you don't know what she meant when she wrote

18   that --

19           THE WITNESS:  No.

20           MR. WHITE:  -- tell him that.

21           THE WITNESS:  I have -- I have no idea what

22   she meant.

23   BY MR. DAVIS:

24   Q.      Let's turn to the next page 28420.  And then

25   there's a Roman numeral II.  And it says:             04:21:37

275

Case: 23-10384*  Doc#: 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 54 of 316

1    BY MR. DAVIS:

2    Q.    Yes.

3    A.    Yes.

4    Q.    And did you search for any records regarding

5    the monthly inventory reports, you personally?          04:25:48

6    A.    No.

7    Q.    Okay.  My understanding is that Kelham

8    Vineyards either filed or intended to file with the

9    California Department of Alcoholic and Beverage

10   Control some documents in which the winery asked       04:26:05

11   Mr. Nicholsen and his wife to execute; do you recall

12   that?

13   A.    Yes, I do.

14   Q.    And do you know what that was about?

15   A.    Yes, I do.                                        04:26:20

16   Q.    Okay.  And could you tell me what those

17   documents were about?

18   A.    It is -- the ABC were doing a cleanup, and

19   they came in and they said, you know, we don't even

20   have the fact that your husband died on this           04:26:32

21   particular ABC permit.  And you have to bring it up

22   to code now.  Because there's -- I mean, again, my

23   husband's death certificate I had to get.  Hamilton

24   and his wife had to go get fingerprinted and

25   everything else because we got the ABC permit prior    04:26:54

Case: 23-10384* Doc#:16-1 Filed: 08/07/23 Entered: 08/07/23 16:06:25 Page 55 of 316

1    to them being married.

2         And so Ron, who is also on that permit for

3    the LLC, they asked him to get specific things.

4    Hamilton then took that information and sent it to

5    Ron and said we have to have this information because          04:27:14

6    they're going to take away our permit if we don't

7    supply them so they can bring everything up to date

8    because -- I mean, it was something that the

9    government was doing to clean house.

10   Q.    Were there written communications between the          04:27:33

11   government and Kelham Vineyards about this process

12   you've just described?

13   A.    I have --

14         MR. WHITE:  Hold on.

15         This is outside the scope of her testimony as          04:27:43

16   a PMK today.  So I'm going to object.

17         And instruct you to answer in your personal

18   capacity only.

19         MR. PETTY:  Calls for speculation.

20         THE WITNESS:  I -- I -- I don't recall.          04:27:51

21   BY MR. DAVIS:

22   Q.    Okay.  Did you search for any written

23   communications -- and I mean you personally --

24   between Kelham Vineyards and what I'm abbreviating as

25   ABC?          04:28:07

Sims & Sims Reporting, Inc.          (707) 226-3022

Case: 23-10384* Doc#: 161 Filed: 08/07/23 Entered: 08/07/23 16:06:25 Page 56 of 316

1      MR. DAVIS:  I don't agree with that.  But, I

2  mean, I hear your instruction.

3      MR. WHITE:  Yeah.  So I'm going to instruct

4  her not to answer those questions.  And I understand

5  you don't agree with that, but that's fine.          04:38:46

6  BY MR. DAVIS:

7  Q.    Yeah.  And my question was you just informed

8  them that you were terminating the lease, right?

9      MR. WHITE:  Well, the documents speak for

10  themselves.  I'm not going to let her get into the

11  logic or the thinking or the reasoning behind them.

12  That's attorney-client privilege.

13      MR. DAVIS:  First off, the document speaks

14  for itself is not an objection.  I've let you make

15  it.  But cite me a case where that's a sustained     04:39:04

16  objection.  There isn't one.

17  BY MR. DAVIS:

18  Q.    And number two is I'm just asking if that's

19  what you did, purported to terminate the lease?

20  A.    I don't remember.                             04:39:14

21  Q.    Okay.  And does the winery still operate at

22  360 Zinfandel Lane?

23  A.    Yes.

24  Q.    Okay.  So despite this notice in October of

25  2022, the winery has not yet been evicted from 360   04:39:30

Case: 23-10384*  Doc#: 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 57 of 316

1    Zinfandel Lane?

2    A.      That is correct.

3    Q.      Do you have plans to evict the winery from

4    360 Zinfandel Lane?

5    A.      I can't answer that question.                    04:39:42

6    Q.      Okay.  Were these -- this eviction notice

7    provided to Mr. Nicholsen in retaliation for him

8    filing a petition?

9           MR. PETTY:  Objection.  Lacks foundation.

10   Mischaracterizes the nature of the document.           04:40:00

11          THE WITNESS:  I can't answer that question.

12   BY MR. DAVIS:

13   Q.      And when you say you say you can't answer, is

14   it because it's privileged?

15   A.      I don't -- I don't -- I don't -- I can't       04:40:06

16   answer the question.

17   Q.      Okay.  Why can't you answer the question?

18   I'm just trying to figure out whether you can't

19   answer because it's -- you don't want to reveal

20   attorney-client information or you don't know the      04:40:22

21   information.  I need to -- that's what I'm trying to

22   get at.

23   A.      Attorney-client information.

24   Q.      Like I said, I'm not going to keep pressing

25   on it because that's an issue I'll resolve outside of

Case: 23-10384*  Doc#: 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 58 of 316

1    the court.   But I just -- the question was a

2    little -- the answer was a little vague.   That's why

3    I was asking it again.

4         It -- the second letter indicates that you

5    are going to collect a debt in full from the winery.      04:40:50

6    Is that -- is that accurate?

7    A.      Yes, capital call.

8    Q.      Have you actually received repayment for that

9    debt yet?

10   A.      No.                                               04:41:18

11   Q.      Do you know what the total amount is that

12   you're asking for repayment?

13   A.      No.

14   Q.      Is it more than a million dollars?

15   A.      I don't know.                                     04:41:26

16   Q.      Is it less than a million dollars?

17   A.      I don't know.

18   Q.      Okay.   The third letter discusses -- and I'm

19   paraphrasing -- that it -- it appears that you're

20   saying that the winery cannot use the 760 -- 1760        04:41:47

21   Main Street property.

22   A.      I don't -- I don't understand that.

23   Q.      You don't --

24   A.      I'm sorry.   I didn't -- I didn't -- I -- I

25   can't answer that question.                              04:42:32

Case: 23-10384*   Doc#: 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 59 of 316

1    Q.    Okay.  Has the winery ceased using this 1760

2    Main Street property?

3    A.    No.

4    Q.    Okay.  So as of today, they're still using

5    that premises, correct?                            04:42:44

6    A.    Yes.

7    Q.    All right.  Then the next letter, the next

8    page discusses 1467 Dwyer Road, if I pronounced that?

9    A.    Mm-hmm.

10   Q.    And what is 1467 Dwyer Road?               04:43:04

11   A.    My home.

12   Q.    And here it indicates the winery should cease

13   all use of 1467 Dwyer Road; is that right?

14         MR. WHITE:  Hold on.  Hold on.

15         Attorney-client privilege.  I'm going to      04:43:20

16   instruct you not to answer any -- any -- with any

17   information you've learned from your attorney.

18         THE WITNESS:  Correct.  I can't answer that.

19   BY MR. DAVIS:

20   Q.    Okay.  Have you stopped the winery from using  04:43:29

21   your home?

22   A.    My home, the winery didn't use.  That's why

23   I'm saying I don't -- I don't understand the -- how

24   you're phrasing it.

25   Q.    Okay.  Well, let's do it this way.  I mean,   04:43:53

Sims & Sims Reporting, Inc.    (707) 226-3022

1    category.  But you can answer in your personal

2    capacity.  Okay?

3            THE WITNESS:  I don't know what it was for.

4    You'd have to ask Mel, the bookkeeper.

5            (Exhibit 46 was marked for identification.)          04:58:11

6    BY MR. DAVIS:

7    Q.      I'm going to hand you what I've marked as

8    Exhibit 46 to this deposition.  It is -- got the

9    Bates range of KV-Ins-16438.  And it appears to be a

10   deposit record with Mechanics Bank in the amount of    04:58:44

11   $600,000.  It's the one that's sort of diagonally

12   shaped; do you see that?

13   A.      Yes.

14   Q.      And so was this a deposit that you made into

15   your account from a payment made by Kelham Vineyards   04:59:09

16   to you?

17           MR. WHITE:  Same instruction regarding your

18   PMK capacity.

19           THE WITNESS:  You'd have to ask Mel, the

20   bookkeeper, about this, please.                        04:59:30

21           (Ms. Crego left the deposition.)

22   BY MR. DAVIS:

23   Q.      Okay.  So is it fair to say, then, you're not

24   sure what this $600,000 relates to?

25   A.      There could be many things that it's related   04:59:39

305

Case: 23-10384*  Doc# 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 61
of 316

1    to.  But I'm not sure, so I'm not going to say.  It's

2    up to Mel to give you an actual reason.

3    Q.     There's a handwritten note that says "Happy

4    Birthday to Me!"

5    A.     July 12th is my birthday.                              04:59:54

6    Q.     Okay.  And are you writing that because

7    you're getting $600,000?

8    A.     I don't know.

9    Q.     All right.  And do you frequently get a

10   payment of $600,000?                                          05:00:06

11   A.     I -- when people owe me money because they

12   haven't paid me for the grapes, yes, I do.

13   Q.     So do you believe that this is a payment for

14   grapes?

15   A.     I don't know.  I will have to ask Mel.                 05:00:19

16   Q.     All right.  Do you know if there are any

17   underlying loan agreements that relate to this

18   $600,000?

19   A.     I don't know.

20          (Exhibit 47 was marked for identification.)

21   BY MR. DAVIS:

22   Q.     I'm going to hand you what I've marked as

23   Exhibit 47 to the deposition.  It has the Bates range

24   number KV-Ins-19056 through 57.

25          Have you seen Exhibit 47 before?                       05:01:22

306

Case: 23-10384*  Doc# 161-1  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 62 of 316

1   purchased from?

2   A.     No.

3   Q.     Okay.  Then the next category is -- it looks

4   like it's crossed out.  It says "Payments owed for

5   Main Street Cottage"; do you see that?                    05:05:02

6   A.     Yes.

7   Q.     Does this indicate that all payments related

8   to the Main Street Cottage have been paid?

9          MR. WHITE:  Hold on.

10         Speculation beyond the scope of her testimony       05:05:12

11   as a PMK.  Lacks foundation.

12         Go ahead.

13         THE WITNESS:  You'd have to ask Mel.

14   BY MR. DAVIS:

15   Q.     Okay.  And I have to ask Mel because you           05:05:21

16   don't know; is that right?

17   A.     I don't.

18   Q.     Okay.  And would the same be true that you

19   don't know about the payments for the Main Street

20   Cottage that's listed below, the crossed out amounts     05:05:35

21   there?

22   A.     Correct.

23   Q.     Then the -- I think the last one on this

24   document that I want to ask about is the very last

25   entry that lists $277,775; do you see that entry?        05:05:46

Case: 23-10384*  Doc#: 16-1  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 63 of 316

1

2                        ---oOo---

3

4          I have read the foregoing deposition.  The

5      answers to the questions are true of my own knowledge.

6      I declare under the penalty of perjury that the

7      foregoing deposition is a true and correct transcription

8      of my said testimony, except as I have corrected any

9      answer in ink and initialed such correction, or as shown

10     on the attached errata sheet.

11

12                        _____

13                        Signature of witness

14                        _____
                          Date of signature

15

16                        ---oOo---

17     ( )  The deponent failed to appear in order to approve
       or sign his/her deposition.

18

19

20     ( )  The deponent refused to approve or sign his/her
       deposition for the following reason:_____

21     _____

22

23     ( )  The deponent approved his/her deposition by the
       letter attached hereto and made a part of the deposition

24     herein.

25                        ---oOo---

353

Case: 23-10384*  Doc# 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 64
of 316

```
1    STATE OF CALIFORNIA )
                         )  ss:
2    COUNTY OF NAPA      )
3            I hereby certify that the witness in the
4    foregoing deposition, named
5                    SUSANNA ROGERS KELHAM,
6    was duly sworn to testify to the truth, the whole truth
7    and nothing but the truth in the within-entitled cause;
8    pursuant to Section 2093 (b) CCP; that said deposition
9    was taken at the time and place therein named; that the
10   testimony of said witness was reported by me, a duly

11   licensed Certified Shorthand Reporter under the laws of

12   the State of California, and a disinterested person, and

13   was thereafter transcribed into typewriting under my

14   direction.

15           And I further certify that I am not of counsel

16   or attorney for either or any of the parties to said

17   deposition, nor in any way interested in the outcome of

18   the cause named in said caption.

19                   IN WITNESS WHEREOF, I have hereunto

20                   set my hand this 11th day of

21                   May, 2023.

22

23                   CECILIA E. RODRIGUEZ, CSR NO. 11479
                     County of Napa
24                   State of California

25                   ---oOo---
```

354

Case: 23-10384*  Doc# 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 65 of 316

# Exhibit 7

# Kelham Vineyards

## N A P A   V A L L E Y

### OUR VINEYARDS

The Oakville Appellation nestled deep in the heart of the Napa Valley is considered by many to be the premier Cabernet Sauvignon growing regions in the country... some would say even the world. Our allocation wines are estate grown, produced and bottled from our prized vineyard holdings. Kelham Vineyards lush eighty-acre parcel is located in the western foothills and produces some of the finest wines that the area has to offer. The wines we produce are held for ten years or longer and are to be enjoyed by both the casual wine drinker and the seasoned connoisseur alike. Worthy of any collection, each bottle is a testament to the maturity, pedigree and level of production detail that Kelham Vineyards is known for.

HOME    ABOUT    WINES    TASTINGS    GERARD HUG'S ART    CONTACT







© 2020 Kelham Vineyards

# Exhibit 8

Planning, Building, & Environmental Services

1195 Third Street, Suite 210
Napa, CA 94559
www.countyofnapa.org

Environmental Health: (707) 253-4471
Fax: (707) 253-4545

David Morrison
Director

# INVOICE

A Tradition of Stewardship
A Commitment to Service

MAR 2 3 2020

| Invoice ID | Invoice Date |
|---|---|
| 154943 | 03/16/2020 |

| Owner ID | Due Date |
|---|---|
| 04229 | 04/30/2020 |

KELHAM VINEYARD
ATTN SUSANNA KELHAM
360 ZINFANDEL LN
ST HELENA CA 94574

THE FOLLOWING IS AN ITEMIZATION OF THE PERMITS THAT YOUR BILLING GROUP IS REQUIRED BY STATE LAW AND/OR LOCAL ORDINANCE TO OBTAIN. THE APPLICANT AGREES TO COMPLY WITH STATE/LOCAL LAWS AND ORDINANCES PERTAINING TO THE SITES BELOW AND TO ALLOW INSPECTION OF SITES BY REPRESENTATIVES FROM THE NAPA COUNTY DEPARTMENT OF PLANNING, BUILDING, & ENVIRONMENTAL SERVICES. APPLICANT AGREES TO PAY FEES FOR PERMITS WHICH, WHEN ISSUED, ARE VALID UNTIL THE NEXT RENEWAL PERIOD OR UNTIL SUSPENDED OR REVOKED. PERMITS ARE NOT TRANSFERABLE.

| DESCRIPTION | AMOUNT |
|---|---|
| **KELHAM VINEYARDS--WINERY** | |
| **360 ZINFANDEL LN SAINT HELENA, CA 94574** | |
| Permit No. | |
| 4337 - HMBP: 1,000-20,000 Units | $318.00 |
| 4337 - State Fee - CUPA | $49.00 |
| 11637 - Liquid Waste: Alternative Sewage Treatment System w/ Service Provider | $284.00 |
| **KELHAM DYWER VINEYARD** | |
| **1467 DWYER RD YOUNTVILLE, CA 94599** | |
| Permit No. | |
| 436206 - HMBP: Aboveground Fuel Tanks Only | $318.00 |
| 436206 - State Fee - CUPA | $49.00 |
| **TOTAL** | **$1,018.00** |

THIS INVOICE MUST BE SIGNED AND <u>ALL</u> PAGES OF THIS <u>ENTIRE</u> INVOICE RETURNED TO THE ABOVE ADDRESS, WITH THE TOTAL FEES DUE PRIOR TO THE EXPIRATION DATE. MAKE CHECKS PAYABLE TO NAPA COUNTY. FOR EXISTING BUSINESSES, ALL FEES ARE DUE PRIOR TO EXPIRATION OF EXISTING PERMITS. IF FEES ARE NOT RECEIVED BY THE EXPIRATION DATE, A 25% PENALTY WILL BE ASSESSED. FOR NEW BUSINESSES, ALL FEES ARE DUE AND ALL PERMITS MUST BE OBTAINED PRIOR TO COMMENCEMENT OF OPERATION.

Representative's Signature: _____ Date: 5/6/2020
Representative's Name (please print): Hamilton Nicholson
Relationship to Licensee: Winemaker
Provide email address: info@kelham Vineyards.com
(current: info@kelhamvineyards.com)

------------------------------------ FOR OFFICE USE ONLY ------------------------------------

Facility Type: New _____ Renewal _____ Ownership Change _____

Vehicle License Number (If Applicable) _____



A Tradition of Stewardship
A Commitment to Service

Planning, Building & Environmental Services

1195 Third Street, Suite 210
Napa, CA 94559
www.countyofnapa.org

**David Morrison**
Director

## NAPA COUNTY UNIFIED PROGRAMS EVALUATION FORM

FACILITY NAME: _Kelham Vineyards_   PHONE: _707-963-2000_

ADDRESS: _360 Zinfandel Lane_   NAME: _Hamilton Nicholson_

1. Which of the following hazardous materials handling programs applies to your business? Check all that apply.

Hazardous Materials Business Plan _____
Hazardous Waste Generator _____
Underground Storage Tank(s) _____
Spill Prevention Counter Measures Plan _____
Above Ground Storage Tank(s) APSA) _____
California Accidental Release Program (Cal ARP) _____
California Environmental Reporting System (CERS) __✗__

2. Please comment regarding your experience obtaining the required Environmental Health(CUPA) applications, information, inspections and/or approvals necessary for your business;

How would you define the overall process?
Poor_____   Fair _✗_   Good _____   Very Good_____   Excellent_____

With regards to interaction with the Environmental Health(CUPA) personnel, was the staff member you worked with courteous?
Poor_____   Fair _✗_   Good_____   Very Good_____   Excellent_____

Were you satisfied with the service provided by Environmental Health(CUPA) staff overall?
Poor_____   Fair _✗_   Good_____   Very Good_____   Excellent_____

Did you receive timely response to your requests for assistance?
Poor_____   Fair _✗_   Good_____   Very Good_____   Excellent_____

Was the staff member you worked with knowledgeable and helpful?
Poor _____   Fair _✗_   Good_____   Very Good_____   Excellent_____

Do you have any comments or suggestions that you would like to provide for consideration to improve the programs?
_____
_____
_____

Planning Division   Building Division   Engineering & Conservation   Environmental Health   Parks & Open Space
(707) 253-4417   (707) 253-4417   (707) 253-4417   (707) 253-4471   (707) 259-5933
Filed (707) 253-4417   Entered: 08/06/16:25   Page 71
of 316

KV-Ins-0034822

KELHAM VINEYARDS & WINERY LLC  ST. HELENA, CA 94574

14125

Napa County

Permit Deposit

5/12/2020

1,018.00

Mechanics Bank - #37   Inv ID 154943 OWNER ID 04229

1,018.00

SP900INL-1    TO REORDER, CALL YOUR LOCAL SAFEGUARD DISTRIBUTOR AT 510-768-8773

Safeguard

KV-Ins-0034823

# Exhibit 9

RONALD NICHOLSEN

*vs*

KELHAM VINEYARDS & WINERY LLC, et al.

---

***DEPOSITION OF***

***MELANIE (CARRICO) DRESCHER***

***May 18, 2023***

---



**SIMS & SIMS**
CERTIFIED SHORTHAND REPORTERS
EST. 1948

SIMS & SIMS REPORTING, INC.
1700 Second Street, Suite 308
Napa, California 94559
(707) 226-3022
simsandsims@sbcglobal.net
simsandsims.com

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF NAPA

--oOo--

RONALD NICHOLSEN II,          )
                              )
          Petitioner,         )
                              )
     VS.                      )     No. 21CV001403
                              )
KELHAM VINEYARDS & WINERY     )
LLC and SUSANNA ROGERS        )
KELHAM,                       )
                              )
          Respondents.        )
                              )
                              )

CERTIFIED COPY

--oOo--

DEPOSITION OF MELANIE DRESCHER

--oOo--

Napa, California
Thursday, May 18, 2023
10:05 a.m.

--oOo--

REPORTED BY: KATHLEEN M. SOLOAGA, CSR, RPR
          CSR License No. 6957

Sims & Sims Reporting, Inc.  *  (707) 226-3022

I N D E X

                                                           PAGE

APPEARANCES                                                 10


EXAMINATION BY:

          MR. DAVIS                                         11


EXHIBITS FOR PETITIONER:

No. 1 -  Amended Notice of Taking Deposition of            13
         Melanie Carrico Drescher

No. 2 -  Amended Notice of Deposition of Kelham            13
         Vineyards and Winery LLC's Person Most
         Knowledgeable

No. 3 -  Letter to Melanie Carrico from Susanna            21
         Kelham

No. 4 -  Document headed Kelham Vineyards,                 32
         Susanna Kelham Bookkeeping Information
         Form - Melanie Carrico, dated 8/26/21

No. 5 -  Invoice dated 6/1/2022 from MDM                   49
         Bookkeeping, Inc., to Kelham Vineyards

No. 6 -  Document headed Hey Mel with                      54
         handwritten notes

No. 7 -  Invoice dated 2/15/2022 from MDM                  75
         Bookkeeping, Inc., to Kelham Vineyards

//                                                         //

Case: 23-10384*  Doc# 16-1  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 76
of 316

1     BE IT REMEMBERED that, pursuant to Notice of

2  Taking Deposition, and on Thursday, May 18, 2023,

3  commencing at 10:05 a.m. thereof, at office of Sims &

4  Sims Reporting, Inc., 1700 Second Street, Suite 308,

5  Napa, California, before me, KATHLEEN M. SOLOAGA, CSR No.

6  6957, a duly licensed Certified Shorthand Reporter in the

7  State of California, there personally appeared

8                 MELANIE DRESCHER,

9  a witness called under the appropriate and applicable

10  provisions of the Codes of the State of California, who,

11  being first duly sworn, was thereupon examined and

12  testified as hereinafter set forth.

13                 --oOo--

14            A P P E A R A N C E S

15                 --oOo--

16     HAROLD H. DAVIS, Attorney at Law, and MARC R.

17  BALUDA, Attorney at Law, of GREENBERG TRAURIG, LLP, 101

18  Second Street, Suite 2200, San Francisco, California

19  94105-3668, appeared as counsel on behalf of Petitioner.

20     RICHARD W. PETTY, Attorney at Law, of HOLLAND &

21  KNIGHT, LLP, 400 South Hope Street, 8th Floor, Los

22  Angeles, California 90071-2801, appeared as counsel on

23  behalf of Respondent Kelham Vineyards & Winery, LLC.

24     Also present were Petitioner Ronald Nicholsen

25  II, Hamilton Nicholsen, and Genevieve Crego.

1                          --oOo--

2                    MELANIE DRESCHER,

3   called as a witness, having been first duly sworn to tell

4   the truth, the whole truth, and nothing but the truth,

5   was examined and testified as follows

6          THE WITNESS:  I do.

7                        EXAMINATION

8   BY MR. DAVIS:

9   Q.        Good morning.  My name is Hal Davis, and I think

10  that you may know that, but for the record, since this is

11  all being taken down stenographically.

12          Can you please state your full name for the

13  record.

14  A.        It's Melanie Drescher.

15  Q.        Would you spell your last name?

16  A.        D-r-e-s-c-h-e-r.

17  Q.        Ms. Drescher, have you ever been deposed before?

18  A.        No.

19  Q.        Okay.  Well, let me just give you a very quick

20  background of what we're going to do here today.  I will

21  ask questions and expect you to answer those questions to

22  the extent that you understand them.

23  A.        Okay.

24  Q.        You have to respond verbally with a yes or a no,

25  or whatever your answer is.  It can't be just head

Case: 23-10384*  Doc# 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 78
of 316
Sims & Sims Reporting, Inc.         (707) 226-3022

1          Have you seen Exhibit 2 before?

2   A.     I don't believe so.

3   Q.     Okay.  Do you understand that you are here to

4   testify on behalf of Kelham Vineyards regarding certain

5   topics that are listed in Exhibit 2?

6   A.     Yes.

7   Q.     Okay.  And do you know which topics those are?

8   A.     Yes.

9   Q.     And which ones do you understand you are here to

10  testify about?

11  A.     Yes.

12         Do you want me to list them all?

13  Q.     Yeah, you can --

14  A.     Okay.

15  Q.     -- just tell me the numbers, which ones you are

16  here to...

17  A.     Sure.  Okay.  Number four, number five, number

18  six, seven, number eight, number nine, number ten, number

19  11.  I don't recall if I'm number 13 or not, I think

20  there's parts of that, number 17.  I believe that's all.

21  Q.     Okay.  Could you tell me what you did to

22  prepare, if anything, for your deposition today?

23  A.     I didn't prepare for the deposition --

24  Q.     Okay.  Did you --

25  A.     -- for today, I mean, other than just asking a

Case: 23-10384   Doc# 161   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 79 of 316

1   A.      Yes.

2   Q.      Does that reflect what your understanding is of

3   your role with respect to Kelham Vineyards?

4   A.      Yes.

5   Q.      Did you have any involvement in managing Kelham

6   Growers' bookkeeping?

7   A.      Yes.

8   Q.      Okay.  And so are you engaged from them

9   separately, or is this the engagement letter that covers

10  both?

11  A.      No, I'm engaged with them separately.

12  Q.      Okay.  And so there would be a separate

13  engagement letter?

14  A.      I don't recall.

15  Q.      Do you also manage bookkeeping for Main Street

16  Cottage LLC?

17  A.      Yes, I do.

18  Q.      Okay.  And is there a separate engagement letter

19  for them?

20  A.      I -- I don't recall.

21  Q.      Do you know if your scope of work for Kelham

22  Vineyards and Main Street Cottage is similar to what you

23  are doing for Kelham Vineyards?

24  A.      Yes.

25  Q.      And are those, when you -- when you say you have

Case: 23-10384*  Doc#: 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 80 of 316

1    about ten or so clients, does that number -- are you

2    counting the Kelham Vineyards, Kelham Growers, and this

3    Main Street Cottage as one, or are they multiple, they

4    count as three?

5    A.      They count as three.

6    Q.      Okay.  All right.

7    A.      Yeah.

8    Q.      And do you recall when you were retained by

9    Kelham Growers?

10   A.      Yes, the same day that I was retained by Kelham

11   Vineyards.

12   Q.      Okay.  And who pays you for your work for Kelham

13   Growers?

14   A.      The Growers.

15   Q.      Okay.  So you've never been paid by Kelham

16   Vineyards for your work for Growers?

17   A.      That's correct.

18   Q.      Do you receive separate checks?

19   A.      Yes.

20   Q.      And is the same true with Main Street Cottage?

21   A.      Main Street Cottage and Kelham Growers pay me

22   from Kelham Growers, because they are owned by the same

23   people.

24   Q.      Who is your understanding who they are owned by?

25   A.      Kelham Growers is owned by Susanna Kelham, and

Case: 23-10384*  Doc# 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 81
of 316

1  Main Street LLC is also owned by Susanna Kelham.

2  Q.      Have you seen the corporate records for either

3  of those entities?

4  A.      Yes.  I've seen the tax returns.

5  Q.      Anything other than the tax returns as far as

6  corporate records go?

7  A.      No.

8  Q.      Do you use Kelham Vineyards' office at all to

9  conduct any of your work?

10  A.      Yes.

11  Q.      And under what circumstances do you use Kelham

12  Vineyards' offices to --

13  A.      I conduct all of my work from Kelham Vineyards'

14  office for Kelham Vineyards.

15  Q.      And then when you're doing work for Kelham

16  Growers, where do you conduct that business?

17  A.      I -- at a separate desk and computer at Kelham

18  Vineyards.

19  Q.      Okay.  So it's still at the same 360 Zinfandel

20  Lane, but you just switch to a different desk when you

21  are working on Kelham Growers?

22  A.      Correct.  It has a completely separate file,

23  QuickBooks file.

24  Q.      And so is that -- so there's two different

25  desktop computers you work on, or is it the same?

24

Case: 23-10384*  Doc# 161-1  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 82 of 316

1    landlord.

2    Q.      Even on a commercial property basis?

3    A.      No.

4    Q.      What is the monthly rent for the Main Street

5    Cottage?

6    A.      I believe it's 5250 a month?  I would have to

7    look to give you an exact number.

8    Q.      I think you told me earlier Ms. Kelham owns Main

9    Street LLC?

10   A.      She does.

11   Q.      Is there a lease agreement between Kelham

12   Vineyards and Main Street LLC?

13   A.      I don't know.

14   Q.      You have never seen one?

15   A.      I've never seen one.

16   Q.      Who does Kelham Vineyards pay that rent to?

17   A.      To Main Street LLC.

18   Q.      And do you know when Kelham Vineyards first

19   started renting the Main Street Cottage?

20   A.      I don't know.  Before my time.

21   Q.      Has Kelham Vineyards paid all the rent due to

22   Main Street LLC?

23   A.      I believe so.  I would have to check.

24   Q.      And do you record the rent that Kelham Vineyards

25   pays for the Main Street Cottage?

Sims & Sims Reporting, Inc.     (707) 226-3022

```
1   Q.        Just a couple of questions, you may not know the
2   answer to these, but on -- in the Work Day Description,
3   one of these here, let's say Friday, says, "Oak vineyards
4   tractor work."  Do you know what that refers to?
5   A.        No.  I imagine -- I'm guessing it's Oakville --
6   Q.        And is Oakville --
7   A.        -- but I don't know.
8   Q.        Well, when you say "it's Oakville," that would
9   refer to Kelham Growers?
10  A.        I guess.  I have no idea.
11  Q.        All right.  Do you know if Mr. Olivera is an
12  employee of Kelham Growers?
13  A.        No, he's not.
14  Q.        Are you aware of a situation in which Kelham
15  Winery has paid Kelham Growers for Kelham Growers'
16  employees?
17  A.        Can you restate?  Sorry.
18  Q.        Sure.  I'm asking about Kelham Vineyards --
19  A.        Mm-hmm.
20  Q.        -- paying for Kelham Growers' employees.  Do you
21  know of any situation where that's happened?
22  A.        There was a period of time prior to me where
23  some of the employees were paid by Kelham Vineyards and
24  Winery LLC and reimbursed by the Growers.
25  Q.        And then the reverse of that, has there been any
```

149

Case: 23-10384*  Doc# 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 84 of 316

1    time when Growers has paid for any employees working for

2    Kelham Vineyards?

3    A.        I don't know.  I don't believe so.

4    Q.        Do you know why Kelham Vineyards, in those

5    circumstances you were mentioning, was paying Kelham

6    Growers for its employees?

7    A.        Yes, because that's where we had all of our

8    payroll set up, we had all the payroll taxes all set up

9    through Kelham Vineyards and Winery because Kelham

10   Growers didn't have its own -- have a payroll set up,

11   it's just easier to pay them from the winery and

12   reimburse it.

13            There's a corresponding invoice for each one of

14   the payments that was made, as well, from the winery to

15   the Growers.

16   Q.        And do you know if there's any written agreement

17   about that situation?

18   A.        I don't know.

19            (Document headed Timecards, Employee Name:

20            Antonio Olivera, was marked as Petitioner's

21            Exhibit No. 34 for identification.)

22   BY MR. DAVIS:

23   Q.        I'm just going to -- I will go to the next one

24   very quickly, I just -- let me ask you this.  I am going

25   to hand you what I have marked as Exhibit 34.

Case: 23-10384*  Doc# 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 85
of 316

--o0o--

I have read the foregoing deposition.  The answers to the questions are true of my own knowledge.  I declare under the penalty of perjury that the foregoing deposition is a true and correct transcription of my said testimony, except as I have corrected any answer in ink and initialed such correction, or as shown on the attached errata sheet.

_____
Signature of witness

_____
Date of signature

--o0o--

( )  The deponent failed to appear in order to approve or sign his/her deposition.

( )  The deponent refused to approve or sign his/her deposition for the following reason:_____

_____

( )  The deponent approved his/her deposition by the letter attached hereto and made a part of the deposition herein.

--o0o--

Case: 23-10384*  Doc# 16-1  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 86 of 316

```
 1   STATE OF CALIFORNIA    )
                            ) ss:
 2   COUNTY OF NAPA         )

 3

 4        I hereby certify that the witness in the

 5   foregoing deposition, named

 6                    MELANIE DRESCHER,

 7   was duly sworn to testify to the truth, the whole truth

 8   and nothing but the truth in the within-entitled cause;

 9   pursuant to Section 2093 (b) CCP; that said deposition

10   was taken at the time and place therein named; that the

11   testimony of said witness was reported by me, a duly

12   licensed Certified Shorthand Reporter under the laws of

13   the State of California, and a disinterested person, and

14   was thereafter transcribed into typewriting under my

15   direction.

16        And I further certify that I am not of counsel

17   or attorney for either or any of the parties to

18   said deposition, nor in any way interested in the outcome

19   of the cause named in said caption.

20                    IN WITNESS WHEREOF, I have

21                    hereunto set my hand this 1st

22                    day of June, 2023.

23

24                    KATHLEEN M. SOLOAGA, CSR No. 6957
                      County of Napa
25                    State of California
```

270

Case: 23-10384*  Doc# 161  Filed: 08/07/23  Entered: 08/07/23 16:06:25  Page 87 of 316

1

2

3

4  Melanie Drescher                June 1, 2023
   C/O Richard Petty, Esq.
5  400 S. Hope St., 8th Fl.
   Los Angeles, CA 90071
6
            Re: Ronald Nicholsen vs Kelham Vineyards
7               Case No. 21CV001403

8           The deposition you have rendered in the
   above-entitled matter has been transcribed into
9  typewriting and is ready for your review.

10          If you wish to read, correct and sign your
   deposition, the deposition transcript will be available
11 in our Napa offices during business hours for a period of
   30 calendar days from the date of this letter before
12 being forwarded in a sealed envelope as provided by law
   to the attorney who noticed your deposition.
13
            You may come to our office to read and sign the
14 original transcript, or you may contact your attorney or
   the attorney who arranged for you to be present at your
15 deposition.  It may be possible for you to review their
   copy and submit to us a letter setting forth any changes
16 you choose to make.  If you wish to come to our office to
   read your deposition, please call in advance and make an
17 appointment.

18          If you have any questions regarding this letter,
   please contact your attorney or call our office.
19
                         Sincerely,
20
                         SIMS & SIMS
21

22                       By:  KATHLEEN M. SOLOAGA,
                              CSR No. 6957
23

24 cc:  All counsel
        Original
25 Date Taken:  May 18, 2023

271

Case: 23-10384* Doc# 161 Filed: 08/07/23 Entered: 08/07/23 16:06:25 Page 88 of 316

# Exhibit 10



# CLTA CHAIN OF TITLE GUARANTEE

ISSUED BY
STEWART TITLE GUARANTY COMPANY
a corporation, herein called the Company,

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, AND THE GUARANTEE CONDITIONS ATTACHED HERETO AND MADE A PART OF THIS GUARANTEE,

### GUARANTEES

the Assured named in Schedule A of this Guarantee

against loss or damage not exceeding the Amount of Liability stated in Schedule A sustained by the Assured by reason of any incorrectness in the Assurances set forth in Schedule A.

Countersigned:

_____
Authorized Signature

First American Title Company of Napa
Company Name

_____
City State

**stewart**
title guaranty company

Matt Morris
President and CEO

Denise Carraux
Secretary

**© California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.
File Number:  T0021581-006-006-KD

# EXCLUSIONS FROM COVERAGE

Except as expressly provided by the assurances in Schedule A, the Company assumes no liability for loss or damage by reason of the following:

(a) Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the Land.

(b) Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the Public Records (1) that are created, suffered, assumed or agreed to by one or more of the Assureds; or (2) that result in no loss to the Assured.

(c) Defects, liens, encumbrances, adverse claims or other matters not shown by the Public Records.

(d) The identity of any party shown or referred to in any of the schedules of this Guarantee.

(e) The validity, legal effect or priority of any matter shown or referred to in any of the schedules of this Guarantee.

(f) (1) Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2) proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the Public Records.

(g) (1) Unpatented mining claims; (2) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (3) water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the Public Records.

# GUARANTEE CONDITIONS

1. Definition of Terms.
   The following terms when used in the Guarantee mean:
   (a) the "Assured": the party or parties named as the Assured in Schedule A, or on a supplemental writing executed by the Company.
   (b) "Land": the Land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "Land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.
   (c) "Mortgage": mortgage, deed of trust, trust deed, or other security instrument.
   (d) "Public Records": those records established under California statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.
   (e) "Date of Guarantee": the Date of Guarantee set forth in Schedule A.
   (f) "Amount of Liability": the Amount of Liability as stated in Schedule A.

2. Notice of Claim to be Given by Assured.
   The Assured shall notify the Company promptly in writing in case knowledge shall come to the Assured of any assertion of facts, or claim of title or interest that is contrary to the assurances set forth in Schedule A Schedule A and that might cause loss or damage for which the Company may be liable under this Guarantee. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of the Assured under this Guarantee unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

3. No Duty to Defend or Prosecute.
   The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.

4. Company's Option to Defend or Prosecute Actions; Duty of Assured to Cooperate.
   Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:
   (a) The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in Paragraph 4 (b), or to do any other act which in its opinion may be necessary or desirable to establish the correctness of the assurances set forth in Schedule A or to prevent or reduce loss or damage to the Assured. The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.
File Number:  T0021581-006-006-KD

concede liability or waive any provision of this Guarantee. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(b) If the Company elects to exercise its options as stated in Paragraph 4(a) the Company shall have the right to select counsel of its choice (subject to the right of the Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay any fees, costs or expenses incurred by an Assured in the defense of those causes of action which allege matters not covered by this Guarantee.

(c) Whenever the Company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.

(d) In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, the Assured shall secure to the Company the right to so prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the Assured for this purpose. Whenever requested by the Company, the Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of the Company may be necessary or desirable to establish the correctness of the assurances set forth in Schedule A or to prevent or reduce loss or damage to the Assured.. If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.

5. Proof of Loss or Damage.

(a) In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Assured furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

(b) In addition, the Assured may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Guarantee, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the Assured provided to the Company pursuant to this paragraph shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee to the Assured for that claim.

6. Options to Pay or Otherwise Settle Claims: Termination of Liability.

In case of a claim under this Guarantee, the Company shall have the following additional options:

(a) To pay or tender payment of the Amount of Liability together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

(b) To pay or otherwise settle with the Assured any claim assured against under this Guarantee. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment or tender of payment and that that the Company is obligated to pay; or

(c) To pay or otherwise settle with other parties for the loss or damage provided for under this Guarantee, together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in 6 (a), (b) or (c) of this paragraph the Company's obligations to the Assured under this Guarantee for the claimed loss or damage, other than the

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.
File Number:  T0021581-006-006-KD

payments required to be made, shall terminate, including any duty to continue any and all litigation initiated by the Company pursuant to Paragraph 4.

7. Limitation of Liability.
   (a) This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured claimant who has suffered loss or damage by reason of reliance upon the assurances set forth in Schedule A and only to the extent herein described, and subject to the Exclusions From Coverage of this Guarantee.
   (b) If the Company, or the Assured under the direction of the Company at the Company's expense, removes the alleged defect, lien or, encumbrance or cures any other matter assured against by this Guarantee in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.
   (c) In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom.
   (d) The Company shall not be liable for loss or damage to the Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

8. Reduction of Liability or Termination of Liability.
   All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the Amount of Liability under this Guarantee pro tanto.

9. Payment of Loss.
   (a) No payment shall be made without producing this Guarantee for endorsement of the payment unless the Guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.
   (b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions, the loss or damage shall be payable within thirty (30) days thereafter.

10. Subrogation Upon Payment or Settlement.
    Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured claimant.
    The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies.
    If a payment on account of a claim does not fully cover the loss of the Assured the Company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

11. Arbitration.
    Either the Company or the Assured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Assured arising out of or relating to this Guarantee, any service of the Company in connection with its issuance or the breach of a Guarantee provision, or to any other controversy or claim arising out of the transaction giving rise to this Guarantee. All arbitrable matters when the amount of liability is $2,000,000 or less shall be arbitrated at the option of either the Company or the Assured. All arbitrable matters when the amount of liability is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Assured. Arbitration pursuant to this Guarantee and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.
File Number: T0021581-006-006-KD

12. Liability Limited to This Guarantee; Guarantee Entire Contract.
    (a) This Guarantee together with all endorsements, if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the Company. In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.
    (b) Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.
    (c) No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

13. Severability
    In the event any provision of this Guarantee, in whole or in part, is held invalid or unenforceable under applicable law, the Guarantee shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

14. Choice of Law; Forum
    (a) Choice of Law: The Assured acknowledges the Company has underwritten the risks covered by this Guarantee and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of Guaranties of the jurisdiction where the Land is located.
    Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims that are adverse to the Assured and to interpret and enforce the terms of this Guarantee. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.
    (b) Choice of Forum: Any litigation or other proceeding brought by the Assured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

15. Notices, Where Sent.
    All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at P. O. Box 2029, Houston, TX 77252-2029.

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

File Number: T0021581-006-006-KD

# Chain of Title Guarantee

File No.: **T0021581-006-006-KD**                    Guarantee No.: **G-2905-000002866**

Liability: **$1,000.00**                                                        Fee: **$545.00**

1.      Name of Assured:

   **Lauren Nicholsen**

2.      Date of Guarantee:

   **July 14, 2023 at 7:30 AM**

The assurances referred to on the face page are:

That, according to those public records which, under the recording laws, impart constructive notice of matters relating to the interest, if any, which was acquired by Main Street Cottage, LLC, a California limited liability company pursuant to a Quitclaim Deed recorded January 4, 2017 as Series Number 2017-0000226 of Official Records. in and to the land described as follows:

**See Exhibit A attached hereto and made a part hereof.**

Only the following matters appear in such records subsequent to January 1, 2000 (March 15, 1988):

1.  Deed
    From:                        Inez Pinkney, a married woman, who acquired title as Inez Green, a widow, as her sole and separate property
    To:             Inez Pinkney and Harry L. Pinkney, wife and husband as community property
    Recorded:       March 15, 1988 in Book 1569 at page 868, of Official Records.

2.  Deed
    From:           Harry L. Pinkney
    To:             Inez Pinkney, as her sole and separate property
    Recorded:       March 28, 1988 in Book 1572 at page 15, of Official Records.

3.  Deed
    From:                        Betty M. Kekipi, Executor of the Estate of Inez Pinkney, deceased, under the Independent Administration of Estates Act Case No. 26-32464, filed in the Napa Superior Court, March 9, 2006
    To:             Frances A. Damazo-Mullin, Trustee of the Frances A. Damazo-Mullin Living Trust dated July 12, 2007
    Recorded:       October 1, 2007 as Series Number 2007-0031413, of Official Records.

4.  Deed
    From:                        Frances A. Damazo-Mullin, Trustee of the Frances A. Damazo-Mullin Living Trust dated July 12, 2007
    To:             Frances A. Damazo-Mullin, Trustee of the Frances A. Damazo-Mullin Living Trust dated July 12, 2007 and T. J. Mullin, spouse of the grantor
    Recorded:       June 22, 2011 as Series Number 2011-0014318, of Official Records.

Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 95 of 316

# CHAIN OF TITLE GUARANTEE
(Continued)

5. Deed
   From:      Frances A. Damazo-Mullin, Trustee of the Frances A. Damazo-Mullin Living Trust dated July 12, 2007
   To:      Frances A. Damazo-Mullin, Trustee of the Frances A. Damazo-Mullin Living Trust dated July 12, 2007 and T. J. Mullin; Joanne Edna Maher, a married woman, as her sole and separate property
   Recorded: June 22, 2011 as Series Number 2011-0014319, of Official Records.

6. Deed
   From:      William J. Maher, spouse of the grantee
   To:      Joanne Edna Maher, a married woman, as her sole and separate property
   Recorded: June 23, 2011 as Series Number 2011-0014355, of Official Records.

7. Deed
   From:      Joanne Edna Maher, a single woman, who acquired title as Joanne Edna Maher, a married woman, as her sole and separate property
   To:      Joanne Edna Maher, a single woman
   Recorded: March 7, 2014 as Series Number 2014-0004393, of Official Records.

8. Deed
   From:      Joanne Edna Maher, a single woman
   To:      Susanna Kelham, a single woman
   Recorded: March 7, 2016 as Series Number 2016-0005448, of Official Records.

9. Deed
   From:      Susanna Kelham, a single woman
   To:      Main Street Cottage, LLC, a California limited liability company
   Recorded: January 4, 2017; as Series Number 2017-0000226, of Official Records.

This Guarantee does not cover:

1. Taxes, assessments, and matters related thereto.

2. Deeds of trusts, easements and/or agreements.

Case: 23-10384　　Doc# 16-1　　Filed: 08/07/23　　Entered: 08/07/23 16:06:25　　Page 96 of 316

# EXHIBIT A

# LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF NAPA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

COMMENCING at a point which bears South 55° 20' East 154.00 feet from the most Eastern corner of Parcel C as the same is shown on that certain Record of Survey Map entitled, "Record of Survey Map of a portion of the Lands of Noell P. French 507 O.R. 110, all of Beatrice French 515 O.R. 298" of record in Book 8 of Surveys, page 108, said Napa County Records, and running thence South SS0 20' East 50.00 feet; thence South 34° 47' West 240.69 feet to a point on the northeastern line of Main Street; thence North 55° 13' West and along said last mentioned line 50.00 feet; thence North 34° 47" East 240.59 feet to the point of commencement.

Said above described parcel boing Parcel 3 as the same is described in the deed to Josephine Byrd and Herbert L. Byrd, her husband, in Volume 507 of Official Records at page 173, said Napa County Records.

APN: 009-403-020

# Exhibit 11

1 | Harold H. Davis (SBN 235552)
2 | Marc R. Baluda (SBN 192516)
  | **GREENBERG TRAURIG, LLP**
3 | 4 Embarcadero Center, Suite 3000
  | San Francisco, CA 94111
4 | Telephone:     (415) 655-1300
  | Facsimile:     (415) 707-2010
5 | E-mail:        davish@gtlaw.com

6 | *Attorneys for Petitioner RONALD NICHOLSEN II*

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF NAPA

10

11 | RONALD NICHOLSEN II,                     Case No.   **21CV001403**

12 |          Petitioner,

13 | v.                                       **VERIFIED PETITION FOR WRIT OF**
                                             **MANDATE TO ENFORCE MEMBER'S**
14 | KELHAM VINEYARDS & WINERY LLC,          **RIGHT TO OBTAIN, INSPECT, AND**
   | AND SUSANNA ROGERS KELHAM;              **COPY CERTAIN RECORDS OF A**
15 |                                         **LIMITED LIABILITY COMPANY PER**
   |          Respondents.                   **CORPORATIONS CODE § 17704.10**
16

17

18

19

20

21

22

23

24

25

26

27

28

---

**VERIFIED PETITION FOR WRIT OF MANDATE**

**PETITION**

Per California Code of Civil Procedure § 1085, California Corporations Code §§ 17704.10, and 17701.13 *et seq.* and California Rules of Court Rule 8.932, Petitioner, in his capacity as a member of Kelham Vineyards & Winery LLC ("Kelham Vineyards") respectfully moves this Court for a Writ of Mandate directed to Respondents. By this Verified Petition, Petitioner alleges:

**INTRODUCTION**

1.      This Petition is brought to obtain corporate records that Petitioner is clearly entitled to, but for which Respondents unlawfully refuse to provide.

2.      Specifically, Petitioner has lawfully requested that Respondents provide to him copies of and/or allow inspection of:

    a.  Kelham Vineyards' state tax returns for the past six years per Cal. Corp. Code § 17701.13(4);

    b.  Kelham Vineyards' federal tax return for year 2020 per Cal. Corp. Code § 17701.13(4);

    c.  The complete Operating Agreement executed by all three members of Kelham Vineyards per Cal. Corp. Code § 17701.13(5); and

    d.  Kelham Vineyards' "books and records … as they relate to the internal affairs of the limited liability for at least the current and past four fiscal years" per Cal. Corp. Code § 17701.13(7)

Collectively, Petitioner refers to these materials as "KELHAM CORPORATE RECORDS".

3.      Despite requesting the KELHAM CORPORATE RECORDS, and having a clear right to these documents per California Corporations Code § 17704.10(1), Respondents have failed, without justification, to turn over these records.  Petitioner does not otherwise have access to these documents.  Consequently, an order compelling Respondents to produce these records is necessary.

**BACKGROUND**

4.      This dispute arises from a family's internecine conflict over Kelham Vineyards and its assets.  Respondent Susanna Rogers Kelham ("S. Kelham") seeks to conceal company records from

VERIFIED PETITION FOR WRIT OF MANDATE

Petitioner for S. Kelham's pecuniary gain and at Petitioner's expense and in an effort to unwind Kelham Vineyards in a way that would result in an illegitimate windfall to the Respondents.

5.      Petitioner is the founder and co-owner of Kelham Vineyards.

6.      Respondents are Petitioner's mother, S. Kelham, and the limited liability company in which they are all members, Kelham Vineyards.

7.      Petitioner and Respondent S. Kelham are equal owners and members of Kelham Vineyards.

8.      At the end of May 2021, S. Kelham, unexpectedly informed Petitioner that it was "time to sever our business relationship, and to start the process of negotiating a settlement for your exit from Kelham Vineyards and Winery LLC."

9.      Immediately thereafter, Petitioner demanded Respondents allow him to inspect or transmit to him records pursuant to California Corporations Code §§ 17704.10 and 17701.13. Petitioner's demand for the records was related to his interest as a member of the company because those records will permit Petitioner to evaluate whether Respondent S. Kelham could unilaterally sever his ownership in the company, to discover the Company's assets and liabilities in light of the other members' decision to have Kelham Vineyards appraised to "buy him out", the corresponding value of his membership interest, and to evaluate the propriety of manager compensation and distributions, among other interests.

10.     There is no dispute that Petitioner is entitled to inspect or received these records pursuant to California Corporations Code §§ 17704.10 and 17701.13. Respondents have never claimed otherwise. Regardless, Respondents have denied and deprived Petitioner of his right to access, inspect or receive copies of the records, without any justification, for months.

11.     Respondents have also engaged in systematic retaliation against Petitioner presumptively in the hopes that he will abandon his request for the corporate records and his company.

VERIFIED PETITION FOR WRIT OF MANDATE

Petitioner will not be doing either. Respondents' apparent efforts to purloin Petitioner's winery from him only serve to heighten the urgency and importance of his demand for the records.

12.     Petitioner has been diligent and made repeated efforts to obtain these records from Respondents in hopes of avoiding litigation. These efforts have spanned months, and include, without limitation, engaging a lawyer, transmitting numerous written letters requesting the KELHAM CORPORATE RECORDS, and requesting the records from Kelham Vineyards' current and former CPAs and Hamilton Nicholson's attorney. Hamilton Nicholsen is Petitioner's brother and a co-equal member of Kelham Vineyards.

13.     Petitioner has no adequate or speedy remedy at law to obtain the records to which he is statutorily entitled to receive from Respondents. This Court should issue a writ mandating Respondents to forthwith deliver to Petitioner the documents requested in ¶2. Because Respondents failure to provide these documents is without justification, Petitioner also respectfully requests this Court for an award of costs and attorneys' fees per Cal. Corp. Code § 17704.10(g) that Petitioner incurred in bringing this writ of mandate and any other relief the Court may deem proper.

### The Parties

14.     Petitioner Ronald Nicholsen II is an individual residing in Napa County, California (hereinafter "Petitioner"). At all relevant times, Petitioner was and is a member of Kelham Vineyard, owning a 33% interest in the Company. Petitioner is also an owner of the real property at 360 Zinfandel Lane, where respondent Kelham Vineyard has its principal place of business.

15.     Respondent Kelham Vineyards & Winery, LLC is a California limited liability corporation organized under the California Revised Uniform Limited Liability Company Act, Corporations Code, §17701.01, *et seq*. with its principal place of business located at 360 Zinfandel Lane, St. Helena, California ("Kelham Vineyards" or "Company"). The Company does business as Kelham Vineyards, which owns and operates a winery, tasting room, and showroom in St. Helena.

Case: 23-10384   Doc# 16-1   Filed: 06/07/23   Entered: 06/07/23 16:06:25   Page 102 of 316

VERIFIED PETITION FOR WRIT OF MANDATE

Kelham Vineyards manages 10.9 acres included planted vineyards and winery with capacity of 75-thousand gallon annual wine production.

16. Respondent Susanna Rogers Kelham is an individual residing in Napa County, California. At all relevant times, Respondent S. Kelham is a member of and the member-manager of Kelham Vineyards.

17. Hamilton Nicholsen is an individual residing in Napa County, California is also a member of Kelham Vineyards.

18. Petitioner, Respondent S. Kelham, and Hamilton Nicholsen are the equal owners of Kelham Vineyards with each owning a 33% in the Company. Petitioner and Respondents are also family members. Respondent S. Kelham is Petitioner and Hamilton Nicholsen's mother and Petitioner is Respondent Hamilton Nicholsen's older brother.

19. Upon information and belief, Kelham Vineyards may also have an ownership interest in an approximately eighty acre parcel in the Oakville Appellation in the premier Cabernet Sauvignon growing region ("Oakville Vineyards"). Kelham Vineyards sells grapes from Oakville Vineyards to Napa's most esteemed so-called "cult" wineries. Information regarding Oakville Vineyards, Kelham Vineyards, and the Kelham Family are published on a single website which represents that Oakville Vineyards and Kelham Vineyards are affiliated and one company. Petitioner is unaware of the members or owners of Oakville Vineyards or the identity of the owners of the land, but Petitioner understands and believes Kelham Vineyards may have comingled assets, funds, and liabilities or that capital improvements on Oakville Vineyards were paid for by Kelham Vineyards. Petitioner, accordingly, may have an interest in Oakville Vineyards.

## **Jurisdiction and Venue**

20. This Court has jurisdiction over this matter pursuant to the common law and California Corporations Code section 17704.10 (f), which provides:

Case: 23-10384    Doc# 16-1    Filed: 06/07/23    Entered: 06/07/23 16:06:25    Page 103 of 316

VERIFIED PETITION FOR WRIT OF MANDATE

In addition to the remedies provided in Sections 17713.06 and 17713.07 and any other remedies, a court of competent jurisdiction may enforce the duty of making and mailing or delivering the information and financial statements required by this section and, for good cause shown, extend the time therefor.

21. Jurisdiction is proper in this venue because Respondent Kelham Vineyards maintains its principal place of business in Napa County, and the corporate books and records that are the subject of this Petition are presumptively in this County. Jurisdiction is proper because Respondent is a resident of Napa County. Jurisdiction is further proper in this county pursuant to California Code of Civil Procedure §§ 1085 and 1086 because Petitioner has no alternative plain, speedy and adequate remedy in the ordinary course of the law.

22. Venue is proper in this County pursuant to California Code of Civil Procedure §§ 395(a) and 395.5 because Respondent Kelham Vineyards has its principal place of business in Napa County. Venue is further proper because Respondent S. Kelham is a resident of Napa County.

### General Allegations

23. Petitioner is a member of Kelham Vineyards. He desires to obtain statutorily delineated documents and to review, inspect and copy the books and records of the Company for reasons reasonably related to his interests as a member of Kelham Vineyards, including, without limitation, to evaluate the current value of the Company and its assets, the Company's assets and liabilities, and the corresponding value of his membership interest; to evaluate the propriety of Respondents efforts to "buy him out"; to evaluate the priority of manager compensation and distributions; and to evaluate whether the Company is being managed in a manner consistent with its purposes and in the interests of the members. Petitioner is entitled to such an inspection per California Corporations Code §§ 17704.10 and 17701.13.

24. Under Cal. Corp. Code § 17704.10(a), upon request by a member, "for purposes reasonably related to the interest of that person as a member," a manager of a limited liability company

"shall promptly deliver, in writing, to the member... a copy of the information required to be maintained under paragraphs (1), (2), and (4) of subdivision (d) of Section 17701.13, and any written operating agreement of the limited liability company." Additionally, under Cal. Corp. Code § 17704.10(b)(1), a member of a limited liability company may, "for purposes reasonably related to the interest of that person as a member . . . (1) inspect and copy during normal business hours any of the records to be maintained pursuant to Section 17701.13."

### The Creation and Management of Kelham Vineyards

25.     With the financial and moral support of his late step-father, Rawson Kelham, Petitioner founded Kelham Vineyards in 1997. Petitioner and Mr. Kelham envisioned that the winery would exist for generations as a family business with the responsibility first to the generation running the winery as partners and second to maintain the business so that each successive generation would share in the opportunity to grow, produce, and sell Kelham Vineyards' Wine.

26.     For six days a week for the past twenty-four years, Petitioner has been the winemaker, vineyard manager, winery tour guide, and operations manager for Kelham Vineyards. He also managed the Oakville Vineyards that Petitioner believes may be owned, operated, or part of Kelham Vineyards. If Petitioner was not at the winery or in the vineyards, he was hosting winemaker dinners all over the United States on behalf of Kelham Vineyards. Petitioner consistently outperformed the other members and employees of Kelham Vineyards in terms of his sheer volume of sales and sweat equity poured into the winery he founded.

27.     Petitioner also maintained his and Mr. Kelham's vision that Kelham Vineyards be owned and operated as a family business.

28.     While Petitioner has focused his energy almost exclusively on the winemaking, sales, and growth of the Winery, Petitioner understands and believes that Respondent S. Kelham exclusively controls the books, records, and finances of the Company.  At all times relevant, Petitioner has not had

Case: 23-10384   Doc# 16-1   Filed: 06/07/23   Entered: 06/07/23 16:06:25   Page 105 of 316

access to the Company's books and records, bank accounts, contracts, or other records regarding the operations of Kelham Vineyards.

### Respondent S. Kelham Informs Petitioner of her Shocking Decision to "Buy Him Out" of the Winery he founded

29.     On May 24, 2021, Respondent S. Kelham unexpectedly informed Petitioner that it was "time to sever our business relationship, and to start the process of negotiating a settlement for your exit from Kelham Vineyards and Winery LLC. As a reminder, you own a 33% interest in Kelham Vineyards and Winery LLC. I am in the process of having Kelham Vineyard and Winery LLC appraised. Once that value is determined, we can negotiate the terms of your exit…. I believe it is time to move in our separate directions and I hope you will agree to a reasonable settlement for your exit."

30.     Petitioner's interest as a member of Kelham Vineyards is squarely at issue by Respondent's claim of appraising the Company with the intent to buy him out and to sever his membership interest in Kelham Vineyard.

31.     But this was not the first of Respondent S. Kelham's questionable decisions involving his membership interests in the prior months. In October 2020, Respondent S. Kelham informed Petitioner that his monthly "membership distributions" were being reduced by the amount of his and his family's health insurance because Kelham Vineyards was unable to secure "any help from the Federal or State Government." Petitioner recently discovered that was false because the Company received $103,452 from the Federal Government's Paycheck Protection Program. Nevertheless, Respondent S. Kelham did not reset his membership distributions to their previous levels; thus causing tremendous financial hardship to Petitioner and his family.

32.     Upon information and belief, Petitioner understands that Kelham Vineyards only very recently filed its 2020 federal or state returns. The members of Kelham Vineyards are taxed as a partnership, so Petitioner cannot file his taxes until Kelham Vineyards files its taxes. Respondent only provided the schedule K-1 to Petitioner, which is insufficient and does not comply with the

Corporations Code.

33.    Moreover, the Company's continued dilatory filing of its taxes causes and will continue to cause Petitioner harm. For tax year 2019, Petitioner only recently received Kelham Vineyard's tax returns and Petitioner was penalized by the IRS because of the delay. Petitioner expects that he will be further penalized by the IRS for the 2020 tax year due to Respondent S. Kelham's inexplicable and inexcusable delay.

34.    Upon information and belief, Petitioner understands Respondent S. Kelham is making decisions regarding capital improvements to Kelham Vineyards' property without his consent and with funds from Kelham Vineyards. In 2013, the County of Napa sued Petitioner, Respondent S. Kelham, and Hamilton Nicholsen because of similar conduct. Thus, Petitioner's membership interest in the Company and his interests as an owner of the real property are directly at issue by Respondents' conduct.

### Petitioner Repeatedly Requests KELHAM CORPORATE RECORDS, But Respondents Unjustly Fail to Comply

35.    Given the events transpiring over the months preceding the abrupt announcement that Respondent S. Kelham intends to buy Petitioner out of his business and sever their business relationship, on June 1, 2021, Petitioner's attorney transmitted a written demand to receive or inspect and copy seeking fourteen categories of records from Kelham Vineyards, including six categories of records pursuant to Cal. Corp. Code §§ 17704.10 and 17701.13 ("Record Demand Letter") to be delivered to Respondents.

36.    On June 4, 2021, Hamilton Nicholsen informed Petitioner's counsel that Petitioner "has access to all the information you demand." Having found the response inadequate and inaccurate, on June 8, 2021, Petitioner's counsel once again demanded the prompt delivery of the records or provide him a date and time to inspect the documents at the Company.

37.    On June 10, 2021, Hamilton Nicholsen informed Petitioner's counsel that he could

8

Case: 23-10384    Doc# 16-1    Filed: 06/07/23    Entered: 06/07/23 16:06:25    Page 107 of 316

review any information he would like at the Winery and directed him to schedule a visit with Kelham Vineyard's office manager. The next day, Respondent S. Kelham provided her first response to the Record Demand Letter. Therein she feigned confusion regarding the purpose of Petitioner's demand for the records. No documents were transmitted or forthcoming.

38.     On June 30, 2021, Petitioner notified Respondent that he and his attorney intended to appear in person on Thursday, July 1, 2021 at 10:00 a.m. to inspect and copy the records.  Later that same day, Respondent S. Kelham informed Petitioner that the records would ***not*** be available for his inspection at Kelham Vineyards. Instead, she claimed she would send the documents via email. Respondent also provided the contact information for Kelham Vineyards' former and current Certified Public Accountants and directed Petitioner's attorney to obtain the requested information from them.

39.     Also attached to the June 30th email were two letters from Respondent S. Kelham detailing her and Hamilton Nicholsen's retaliation against Petitioner for invoking his statutory right to obtain records from the Company. In those letters, Respondents made the spurious claim that Petitioner "resigned" and then informed him that his grossly diluted membership distributions were being further cut.

40.     At no time did Petitioner abdicate his ownership in the property, his membership interest in Kelham Vineyard, nor did he "resign" in his role of winemaker, vineyard operator, or his other roles at the Company.

41.     Hamilton Nicholsen also informed Petition that "the decision has been made by Kelham Vineyards to sell off a large majority of its current bulk wine inventory" and if Petitioner wished to purchase the wine then he should submit a written offer for the "remaining partners" to consider. The decision to sell of a significant asset of the Company before engaging an appraiser to evaluate and determine the fair market value of the Company certainly regarded Petitioner's

membership interest in Kelham Vineyards. And Petitioner believes it required his approval. He did not consent to the sale, which he believes was nonetheless effectuated over his objection.

42. Because of Respondents' ongoing refusal to provide the records and block Petitioner's access to the records at the Company, Petitioner contacted Kelham's two CPAs to ask for the records. Only one of the CPAs responded that she has not performed any work for Kelham Vineyards in more than six years and she returned all of its records to Respondent S. Kelham years ago. The other CPA did not respond to the numerous emails from Petitioner.

43. On July 11, 2021, Respondent S. Kelham transmitted what appears to be an incomplete and unsigned version of the Kelham Vineyard Operating Agreement. Petitioner contends that there is a version that is executed by all three members and should be produced.

44. On July 16, 2021, Petitioner once again demanded a fully executed version of the Operating Agreement and the remaining set of records. No response was forth coming until August 9, 2021 when Respondent S. Kelham transmitted some of the requested records. She did not transmit each amendment or version of the Operating Agreements or one executed by all three members, its state tax returns for the past six years, its federal tax return for year 2020, and the books and records of the limited liability company as they relate to the internal affairs of the limited liability for at least the current and past four fiscal years. The latter category being the most critical for his interests.

45. Thereafter, on or about August 17, 2021, Petitioner's counsel had a call with an attorney purporting to represent Hamilton Nicholsen regarding the parties deteriorating relationship. During that call, Petitioner's counsel explained that he had been waiting for months to receive the requested documents Respondents, including an executed copy of the Operating Agreement. Shockingly, the attorney stated he was in possession of a fully executed Operating agreement and possibly in possession of amendments to the Operating Agreement, and if permitted to do so, he would send them to Petitioner's counsel. Despite numerous follow-ups, no such documents were received from the

VERIFIED PETITION FOR WRIT OF MANDATE

attorney and the attorney has never been heard from again.

46. On Sunday, September 12, 2021, Respondent S. Kelham transmitted another set of letters to Petitioner informing him that he was no longer permitted on the premises of Kelham Vineyards (a property he owns) and that he is not to contact Respondent S. Kelham or Hamilton Nicholsen. Having no access to Kelham Vineyards, its books or records, Petitioner is compelled to seek a writ from this Court.

## FIRST CAUSE OF ACTION

### Writ of Mandate Code of Civil Procedure 1085

47. Petitioner incorporates by reference all of the foregoing paragraphs, as though fully set forth herein.

48. California Code of Civil Procedure section 1085 (a) provides:

> A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person.

49. A writ of mandate lies to compel a limited liability company, such as Kelham Vineyards, and S. Kelham, a manager of a California Limited Liability Company in possession of the requested information, to perform an official act required by law. In this case, Respondents are in possession of KELHAM CORPORATE RECORDS and thus are required to provide Petition with those records and documents in response to a demand from Petitioner pursuant to Corporations Code sections 17704.10 and 17701.13.

50. California Code of Civil Procedure Section 1086 compels this Court to issue a writ "in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested." A writ of mandate will

lie when, as here, there is no plain, speedy, and adequate remedy, when Respondents have a duty to perform, and Petitioner has a clear beneficial right to performance. *Payne v. Superior Court of Los Angeles County* (1976) 17 Cal.3d 908

51.    Petitioner has standing to seek this writ because he is a member of the limited liability company and he has beneficial interest with a direct and substantial interest in the documents withheld. Without access to the books and records of Kelham Vineyards to which he is legally entitled, Petitioner is unable to evaluate or know of the assets, liabilities, and internal affairs of the Company. He is, accordingly, unable to determine whether his rights or obligations due to him by his other members have been violated. Likewise, without access to the books and records, Petitioner cannot obtain an independent value of "the partnership as it stands" for determining how and whether Kelham Vineyards should be wound down or whether the appraiser selected by Respondent S. Kelham is in possession of information that would inform it of the full picture of the assets and liabilities of Kelham Vineyards in Respondent S. Kelham's efforts to push him out of the company he founded.

52.    Petitioner seeks to enforce his rights as a member of the Company and he respectfully requests the Court issue a writ compelling Respondents to provide to him:

    a.    Kelham Vineyards' state tax returns for the past six years;

    b.    Kelham Vineyards' federal tax return for year 2020;

    c.    The complete Operating Agreement executed by all three members of Kelham Vineyards; and

    d.    Kelham Vineyards' "books and records … as they relate to the internal affairs of the limited liability for at least the current and past four fiscal years".

53.    Petitioner is informed and believes and thereon alleges that, at all times relevant, Respondents have been able to provide Petitioner with the KELHAM CORPORATE RECORDS, and to permit Petitioner to inspect and copy those and other company documents. Notwithstanding this ability, and despite Petitioner's repeated requests, Respondents have failed and refused to perform their legal duty to comply.

54. Rather than comply with the California Corporations Code, Respondents obstructed Petitioner's right to access the records and retaliated against him for making the demand. Hamilton Nicholsen instructed Petitioner's attorney that he could access the records at Kelham Vineyard but when Petitioner endeavored to do so, Respondent S. Kelham refused to permit him to do so by denying him access to the records. Then Respondent S. Kelham directed Petitioner to contact Kelham Vineyards' former CPAs to obtain the records, and although he was not required to, Petitioner did so in good faith but to no avail. Petitioner also tried to obtain some of the KELHAM CORPORATE RECORDS from Hamilton Nicholsen's attorney but no records were forthcoming.

55. Further, Respondents have continued an illegitimate retribution campaign in retaliation for Petitioner's demand of the KELHAM CORPORATE RECORDS he is legally entitled to receive. These retaliatory actions include, without limitation, prohibiting Petitioner from entering the premises he owns and claiming he is not allowed to contact his mother or brother, and current co-members of Kelham Vineyards. Respondent S. Kelham and Hamitlon Nicholsen's conduct reflects that absent a writ from this Court, Respondents will not produce to Petitioner the records to which he is legally entitled.

56. Petitioner has no plain, speedy, and adequate remedy in the ordinary course of law, other than the relief sought in this Petition. Petitioners seek timely, current, and sufficiently informative information about the Company and Petitioner's interests.

57. Respondents' failure to comply with their statutory obligations has damaged Petitioner by denying him access to current information about the Company and Petitioner's interests, to which Petitioner is clearly entitled, and which Respondents are legally required to provide. Further, Petitioner has been forced to incur legal expenses in bringing this Petition for which he otherwise would not have incurred.

58. Per Cal. Corp. Code § 17704.10(g), "if the court finds the failure of the limited liability

**VERIFIED PETITION FOR WRIT OF MANDATE**

company to comply with the requirements of this section is without justification, the court may award an amount sufficient" to reasonably reimburse a member for expenses, including attorneys' fees. Respondents have not provided any, let alone "sufficient," justification for their failure to comply, and Petitioner is entitled to an award of costs and attorneys' fees.

**WHEREFORE, Petitioner prays**:

a. That the Court issue a writ of mandate compelling Respondents to forthwith deliver to Petitioner copies of the KELHAM CORPORATE RECORDS;

b. That the Court issue a writ of mandate commanding Respondents to forthwith permit Petitioners to conduct an inspection and copying of the Company's books and records as requested;

c. For an award of costs and attorneys' fees to compensate Petitioner for reasonable expenses incurred in bringing this Petition; and

d. For such other and further relief as the Court may deem proper

Respectfully submitted,

GREENBERG TRAURIG

Dated: October 4, 2021            By:      */s/ Harold Davis*
                                            Harold Davis
                                            Marc Baluda

                                            Attorneys for Petitioner
                                            RONALD NICHOLSEN II

## VERIFICATION

I, Ronald Nicholsen II, am the petitioner in this proceeding. I have read the foregoing petition and know its contents. The facts stated therein are true and are within my personal knowledge, except those alleged on information and belief, and as to those I believe true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is correct.

Executed October 4, 2021, at Napa, California.

By: _____  10.04.2021
RONALD NICHOLSEN II

# Exhibit 12

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|
| HAROLD H. DAVIS (SBN 235552)<br>GREENBERG TRAURIG LLP<br>4 EMBARCADERO CENTER SUITE 3000<br>SAN FRANCISCO , CA 94111<br> Telephone No: (415) 655-1304<br> Attorney For: Petitioner | *Ref. No. or File No.:* | |

| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT OF CALIFORNIA COUNTY OF NAPA |
|---|
| *Plaintiff:* RONALD NICHOLSEN II<br>*Defendant:* KELHAM VINEYARDS & WINERY LLC; et al. |

| **AFFIDAVIT OF DUE DILIGENCE** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:* |
|---|---|---|---|---|

1. I, Michelle Sturdee 140008, Solano County , and any employee or independent contractors retained by FIRST LEGAL are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on subject SUSANNA ROGERS KELHAM as follows:

2. *Documents:* CIVIL CASE COVER SHEET; VERIFIED PETITION FOR WRIT OF MANDATE TO ENFORCE MEMBER'S RIGHT TO OBTAIN, INSPECT, AND COPY CERTAIN RECORDS OF A LIMITED LIABILITY COMPANY PER CORPORATIONS CODE § 17704.10

| **Attempt Detail** |
|---|

1) Unsuccessful Attempt by: Michelle Sturdee (140008, Solano County) on: Oct 6, 2021, 12:16 pm PDT at 1467 DWYER ROAD, YOUNTVILLE, CA 94599
No access, gated- intercom is broken, left a note on intercom.

2) Unsuccessful Attempt by: Michelle Sturdee (140008, Solano County) on: Oct 7, 2021, 9:37 am PDT at 1467 DWYER ROAD, YOUNTVILLE, CA 94599
Gained access, no answer at the door. No cars.

3) Unsuccessful Attempt by: Michelle Sturdee (140008, Solano County) on: Oct 8, 2021, 5:49 pm PDT at 1467 DWYER ROAD, YOUNTVILLE, CA 94599
No answer, no cars seen.

4) Unsuccessful Attempt by: Michelle Sturdee (140008, Solano County) on: Oct 10, 2021, 7:02 pm PDT at 1467 DWYER ROAD, YOUNTVILLE, CA 94599
Gained access, no answer, lights on inside up stairs , no activity seen or heard. This house is like a mansion. white Audi parked - Nevada plates 358P45 -

5) Unsuccessful Attempt by: Michelle Sturdee (140008, Solano County) on: Oct 14, 2021, 3:11 pm PDT at 1467 DWYER ROAD, YOUNTVILLE, CA 94599
GATED, NO ACCESS, SPOKE WITH OFFICE PERSON VIA INTERCOM, WOULD NOT GIVE ME ACCESS INSIDE. STAETS SUBJECT IS NOT THERE, DID NOT PROVIDE ANY OTHER INFORMATION , I ASKED IF I COULD LEAVE MY PHONE NUMBER, EXPLAINED THAT WE DELIVERED ONE TO THE COMPANY AND THAT I NEEDED TO HAND DELIVER A COPY TO HER. PLEASE HAVE HER CALL ME I CAN MEET HER ANYWHERE IN NAPA COUNTY SHE NEEDED ME TO .
I CAN NOT SEE INSIDE THE GATE TO SEE IF THE CARS (RANGE ROVER / BENTLY ) WAS PRESENT.



Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 116
of 316

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|

Attorney or Party without Attorney:
HAROLD H. DAVIS (SBN 235552)
GREENBERG TRAURIG LLP
4 EMBARCADERO CENTER SUITE 3000
SAN FRANCISCO , CA 94111
  Telephone No: (415) 655-1304

  Attorney For: Petitioner          Ref. No. or File No.:

Insert name of Court, and Judicial District and Branch Court:
SUPERIOR COURT OF CALIFORNIA COUNTY OF NAPA

Plaintiff: RONALD NICHOLSEN II
Defendant: KELHAM VINEYARDS & WINERY LLC; et al.

| **AFFIDAVIT OF DUE DILIGENCE** | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

3. **Person Who Served Papers:**
   a. Michelle Sturdee (140008, Solano County)
   b. **FIRST LEGAL**
      1517 W. Beverly Blvd.
      LOS ANGELES, CA 90026
   c. (213) 250-1111

Recoverable cost Per CCP 1033.5(a)(4)(B)

d. *The Fee* for Service was:
e. I am: A Registered California Process Server

4. *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.*

_____        _____
10/27/2021
*(Date)*                        *(Signature)*

AFFIDAVIT OF
DUE DILIGENCE

6194299
(16072819)
Page 2 of 2

Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 117 of 316

# Exhibit 13

| From: | richard.petty@hklaw.com |
|---|---|
| To: | Davis, Hal (Shld-SFO-IP-Tech); Baluda, Marc R. (Shld-SFO-CP) |
| Subject: | RE: Ronald Nicholsen II v. Kelham Vineyards & Winery LLC et al. |
| Date: | Monday, November 15, 2021 6:00:11 PM |
| Attachments: | image001.png |
| | image002.png |

Mr. Davis:

I am also authorized to accept service on behalf of Ms. Kelham individually.

**Richard Petty** | **Holland & Knight**
Senior Counsel
Holland & Knight LLP
400 South Hope Street, 8th Floor | Los Angeles, California 90071
Phone 213.896.2477 | Fax 213.896.2450
richard.petty@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** davish@gtlaw.com <davish@gtlaw.com>
**Sent:** Monday, November 15, 2021 5:03 PM
**To:** Petty, Richard W (LAX - X52477) <richard.petty@hklaw.com>; baludam@gtlaw.com
**Subject:** RE: Ronald Nicholsen II v. Kelham Vineyards & Winery LLC et al.

*[External email]*
Mr. Petty:

Thank you for your email. Are you available for a call tomorrow?

In the meantime, could you please let us know if you represent Ms. Susana Kelham as well, and whether you will accept service of the petition on behalf of Kelham Vineyards and Ms. Kelham?

**Hal Davis**
Shareholder

Greenberg Traurig, LLP
4 Embarcadero Ctr, Ste. 3000 | San Francisco, CA 94111-5983
T +1 415.590.5100
davish@gtlaw.com | www.gtlaw.com | View GT Biography





Learn more about our commitment to diversity, equity, and inclusion.

**From:** richard.petty@hklaw.com <richard.petty@hklaw.com>
**Sent:** Monday, November 15, 2021 9:37 AM
**To:** Baluda, Marc R. (Shld-SFO-CP) <baludam@gtlaw.com>
**Cc:** Davis, Hal (Shld-SFO-IP-Tech) <davish@gtlaw.com>
**Subject:** Ronald Nicholsen II v. Kelham Vineyards & Winery LLC et al.

**\*EXTERNAL TO GT\***

Dear Mr. Baluda:

I have been retained to represent Kelham Vineyards & Winery LLC in the above entitled action. Kindly contact me at your convenience to discuss the matter.  My cell phone number is (510) 435-8172.

Thank you,

**Richard Petty** | **Holland & Knight**
Senior Counsel
Holland & Knight LLP
400 South Hope Street, 8th Floor | Los Angeles, California 90071
Phone 213.896.2477 | Fax 213.896.2450
richard.petty@hklaw.com | www.hklaw.com

Add to address book | View professional biography

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# Exhibit 14

rec'd by eFile 9/27/22

1  Harold H. Davis (SBN 235552)
2  Marc R. Baluda (SBN 192516)
   **GREENBERG TRAURIG, LLP**
3  101 Second Street, Suite 2200
   San Francisco, CA 94105
4  Telephone:   (415) 655-1300
   Facsimile:   (415) 707-2010
5  E-mail:      davish@gtlaw.com
6  *Attorneys for Petitioner RONALD NICHOLSEN II*

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF NAPA

10

11  RONALD NICHOLSEN II,                    Case No. 21CV001403

12            Petitioner,
                                            [PROPOSED] **WRIT AND ORDER**   SRL
13      v.                                  **GRANTING PETITIONER RONALD**
                                            **NICHOLSEN II'S WRIT OF MANDATE**
14  KELHAM VINEYARDS & WINERY LLC,          **TO ENFORCE HIS RIGHT TO OBTAIN,**
    AND SUSANNA ROGERS KELHAM,              **INSPECT, AND COPY CERTAIN**
15                                          **RECORDS OF A LIMITED LIABILITY**
              Respondents.                  **COMPANY PER CALIFORNIA**
16                                          **CORPORATIONS CODE**

17
                                            Hearing Date: November 4, 2022
18                                          Time:        8:30 a.m.
                                            Dept.:       B
19

20

21

22

23

24

25

26

27

28

                          [PROPOSED] WRIT AND ORDER
                                    SRL
*ACTIVE 682270673v1*

FILED

NOV 04 2022

Clerk of the Napa Superior Court
By:_____
          Deputy

~~Judgment having been entered in this proceeding in favor of Petitioner RONALD~~
~~NICHOLSEN II ("NICHOLSEN") ordering that Preemptory Writ of Mandate be issued from this~~
~~Court,~~ **IT IS THEREFORE ORDERED THAT** Respondents Kelham Vineyards & Winery LLC ("Kelham Vineyards" or the "Company") and Susanna Kelham ("S. Kelham") (collectively, "Respondents") must comply with California Corporations Code section 17704.10 ("Section 17704.10") by providing NICHOLSEN with the following Company's books and records not later than 20 days after issuance of this Wit:

1. The books and records of the limited liability company as they relate to the internal affairs of the limited liability company for at least the current and past four fiscal years, which includes but is not limited to:

    a. The general ledgers or adjusting journal entries prepared by Respondents' accounting firm(s);

    b. The bank statements, including cancelled checks, for each bank account identified in the QuickBooks File back dated December 9, 2021;

    c. All the mortgage, financing, title reports, and other ownership information regarding the properties Kelham Vineyards holds an ownership interest in or pays amounts on behalf of others, ~~including but not limited to 360 Zinfandel Lane in St. Helena, California, "Guest House Main St." Mund Road, and Tahoe City House;~~

    d. All records regarding Kelham Vineyards payment for the expenses, property taxes, and mortgage for a house in Tahoe City, California, including proof of payment for Kelham Vineyards paying off the mortgage in December 2020.

    e. All documentation, payments, assignments, assumptions or other records regarding Kelham Vineyards monthly payment of nearly $8,000 toward a mortgage with Bank of Marin, which is listed in the QuickBooks File as "New Bank of Marin Loan – Mort./Trac #5776."

    f. All the leases and rental agreements between Kelham Vineyards and any person or entity including, but not limited to, "Guest House Main St." Mund Road, Tahoe City House, to "Others" for 360 Zinfandel Lane in St. Helena, California, including rent payments, payments for the use of the premises, and register of patrons that lodged or leased those premises;

    g. All contracts, loan documents, payments, invoices, communications regarding loans, contracts, invoices, reimbursements, authorization to take loans, and purpose for the loans between Kelham Vineyards and Kelham Growers, LLC;

1

[PROPOSED] WRIT AND ORDER

*ACTIVE 682270673v1*

h. All contracts, loan documents, payments, invoices, communications regarding the contracts, loan documents, payments, authorization to take loans, and purpose for the loans between Kelham Vineyards and S. Kelham;

i. The loan or contract documents for all the other assets Kelham Vineyards reports to the taxing authorities;

j. All contracts and loan documents, including evidence of payments, invoices, communications regarding the loan for the Mach4 tractor, authorization to take loans, and purpose for the loan;

k. All invoices and proof of payment for grapes Kelham Vineyards bought from Kelham Growers, including the rejected tonnage, a copy of the contract for purchase, records reflecting the disposition of the bulk wine, and payment to Kelham Vineyards;

l. All unbottled inventories by the gallon;

m. All ~~non provided~~ communication with members of Kelham Vineyards regarding its operations, sale, membership interest and equity, and the appraisal of the Company;

n. Credit card statements and proof of payment for the American Express and "CitiAADvantage" Business credit cards;

o. The records Kelham Vineyards provided the federal government for the Paycheck Protection Program loan it received in April 2020;

p. All documents Kelham Vineyards filed with, or intended to file with the California Department of Alcoholic Beverage Control underlying Respondents' request for Nicholsen and his wife to execute financial affidavits;

q. Copies of all contracts for the sale of juice, which should include the gallons sold and the manner in which it was sold;

r. All harvest tags, and contracts for all grape purchases, including the TTB F 5120.17sm forms for the past four fiscal years; and

s. AG Health Insurance Bills attributable to NICHOLSEN.

2. A copy of the articles of organization and all amendments thereto, together with any powers of attorney pursuant to which the articles of organization or any amendments thereto were executed.

3. All tax transcripts, federal, state and local tax returns for the past six years – including documentation substantiating Kelham Vineyards' reporting to the tax authorities;

4. All records reflecting the contribution and the share in profits and losses of each

2

[PROPOSED] WRIT AND ORDER

*ACTIVE 682270673v1*

member, including the $10,000 guaranteed monthly payments to S. Kelham starting in Jan. 2020, and the additional guaranteed monthly payments to H. Nicholsen in 2021.

~~IT IS FURTHER ORDERED THAT Respondents' failure to comply with Section 17704.10 is without justification.~~ *SRLY*

**IT IS FURTHER ORDERED THAT** within 5 days of the date of this Writ, the parties agree on a date and time for NICHOLSEN to collect all of his personal possessions from 360 Zinfandel Lane.

~~IT IS FURTHER ORDERED THAT within 7 days of the date of this Writ, S. Kelham is to be deposed both in her individual capacity and as the corporate representative of Kelham Vineyards, at Respondents' expense, so that NICHOLSEN can ascertain information regarding the existence and whereabouts of Company's records.~~

The Court retains jurisdiction and orders Respondents to file with the Court and serve on all parties an initial return to the Writ not later than ~~20 days from the date Respondents are service with the Writ~~ DECEMBER 15 2022 BY 4:00 PM *SRLY*, in which Respondents shall demonstrate they have complied with the Court's Order and Writ. The Court further retains jurisdiction to determine whether Respondents returned the Writ pursuant to California Code of Civil Procedure section 1090.

The Court exercises continuing jurisdiction to ensure compliance with this Writ, and ~~specifically to award NICHOLSEN an amount sufficient to reimburse him for bringing the action for the reasonable expenses incurred by him, including attorney's fees, in connection with the action or proceeding. California Corporations Code section 17704.10.~~ *SRLY*

IT IS SO ORDERED

Dated: ~~October ___,~~ 2022          By: _____
*November 9, 2022*                                    Hon. Scott R.L. Young
                                                                  Judge of Superior Court of Napa County

3

[~~PROPOSED~~] WRIT AND ORDER

*ACTIVE 682270673v1*

# Exhibit 15

1  Harold H. Davis (SBN 235552)
2  Marc R. Baluda (SBN 192516)
   **GREENBERG TRAURIG, LLP**
3  101 Second Street, Suite 2200
   San Francisco, CA 94105
4  Telephone: (415) 655-1300
   Facsimile: (415) 707-2010
5  E-mail: davish@gtlaw.com
6  *Attorneys for Petitioner RONALD NICHOLSEN II*

FILED

MAR 02 2023

CLERK OF THE NAPA SUPERIOR COURT
BY_____
        DEPUTY

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                              FOR THE COUNTY OF NAPA

10

11  RONALD NICHOLSEN II,                    Case No. 21CV001403

12              Petitioner,                 [PROPOSED] ORDER SANCTIONING
                                            RESPONDENT SUSANNA ROGERS
13  v.                                      KELHAM FOR FAILURE TO COMPLY
                                            WITH THE COURT'S WRIT OF
14  KELHAM VINEYARDS & WINERY LLC,          MANDATE AND ORDER DATED
    AND SUSANNA ROGERS KELHAM,              NOVEMBER 4, 2022
15
              Respondents.
16
                                            Hearing Date: February 15, 2023
17                                          Time:        9:00 a.m.
                                            Dept.:       B
18

19

20

21

22

23

24

25                                                   **RECEIVED**

26                                                   FEB 28 2023

27                                                   Napa Superior Court

28

                                          1
                              [PROPOSED] ORDER

On the Court's own motion, an Order to Show Cause hearing was held on February 15, 2023, mandating that Respondents Kelham Vineyards & Winery LLC ("Kelham Vineyards" or the "Company") and Susanna Kelham (collectively, "Respondents") show cause why they should not be sanctioned for failing to comply with the Court's Writ of Mandate and Order Granting Petitioner Ronald Nicholsen II's Writ of Mandate to Enforce His Rights to Obtain, Inspect, and Copy Certain Records of a Limited Liability Company Per California Corporations Code dated November 4, 2022 ("November Order"). The November Order provided, inter alia, that "Respondents must comply with California Corporations Code section 17704.10 by providing Petitioner RONALD NICHOLSEN II ("NICHOLSEN") with the Company's books and records", as specifically set forth therein. Respondents were required to file and serve an initial return of the writ not later than December 15, 2022. By the November Order, the Court also set a Case Management Conference for January 25, 2023, and an evidentiary hearing for March 13, 2023.

The Court held a Case Management Conference on January 23, 2023. At that time, Respondents had not filed a case management conference statement and had not returned the writ as required by the November Order. The Court set an Order to Show Cause ("OSC") hearing for February 15, 2023. Respondents did not timely file a response to the OSC per California Rule of Court 3.110(i). At the time of the OSC hearing, Respondents had still not returned the writ as required by the November Order.

## ORDER

Having fully considered the pleadings, evidence, and arguments of all parties, both written and oral, and finding good cause therefor, the Court HEREBY ORDERS as follow

1. Respondents failed to comply Court's November Order to return the writ and failed to timely or sufficiently respond to the Court's OSC.

2. Respondents' failure to return the writ was without justification pursuant to California Corporations Code section 17704.10 due to Respondents' failure to comply with the November Order, the OSC.

3. Respondent Susana Kelham, as the Managing Member of the Company, must personally

2

[PROPOSED] ORDER

1    pay Petitioner NICHOLSEN's counsel $1,500.00 in sanctions by 4:00 p.m. on February

2    28, 2023, for failing to comply with the Writ.

3    4. The evidentiary hearing scheduled for March 13, 2023, is vacated.

4    5. A further Order to Show Cause and as to why Respondents have not returned the writ and

5    sanctions should not issue is scheduled for 8:30 a.m. on March 13, 2023.

6    6. The Parties are ordered to brief the issue of Petitioner's remedies for Respondents' failure

7    to comply with California Corporations Code section 17704.10. Such briefs shall not

8    exceed 15 pages.

**IT IS SO ORDERED**

Dated: February _28_, 2023           By:     _Sɪ̃ll_

ACTIVE 685365207v1

# Exhibit 16

1        SUPERIOR COURT OF THE STATE OF CALIFORNIA

2          IN AND FOR THE COUNTY OF NAPA

3            _____

4

5  RONALD NICHOLSEN II,    )
                        )
6         Petitioner,   )
  vs.                 ) Case No. 21CV001403
7                    )
  KELHAM VINEYARDS & WINERY )
8  LLC, and SUSANNA ROGERS  )
  KELHAM,             )
9                    )
         Respondents.  )
10 _____)

11

12

13       REPORTER'S TRANSCRIPT OF PROCEEDINGS

14

15         MONDAY MARCH 13, 2023

16

17      HONORABLE SCOTT R.L. YOUNG, JUDGE

18           DEPARTMENT B

19

20

21

22

23  Stenographically Reported by:
  Burgundy B. Ryan, RPR,
24  CSR No. 11373
  Job No. 484578
25  Pages 1-56

```
1                    A P P E A R A N C E S

2

3    ON BEHALF OF THE PETITIONER:

4              GREENBERG TRAURIG, LLP

5              By:  HAROLD H. DAVIS, Esquire

6                   MARC BALUDA, Esquire

7              4 Embarcadero Center

8              Suite 3000

9              San Francisco, California 94111

10             415.655.1300

11

12   ON BEHALF OF THE RESPONDENT:

13             HOLLAND & KNIGHT, LLP

14             By:  RICHARD PETTY, Esquire

15             400 S. Hope Street, 8th Floor

16             Los Angeles, California 90071

17             213.896.2400

18

19

20

21

22

23

24

25
```

Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 132
of 316

1    remember the exact timing.  I think our motion -- our

2    response for the Petitioner's fees was filed slightly

3    before their return -- again, I'm using that as

4    quotes -- their return of the writ and then we filed the

5    next -- what was filed the next day was our -- our

6    response where we had a chance to kind of go in depth of

7    what they have said in the two paragraphs, it's only two

8    paragraphs long what they said, and sort of summarizes

9    what I laid out here today.

10         But there are a couple of quick points to what

11   Mr. Petty said that I think also need clarifying here,

12   but yeah, that's the filing sort of order.

13         THE COURT:  Okay.  You can respond.

14         MR. DAVIS:  Yeah.

15         MR. BALUDA:  If I may add a point, too.

16   Susanna Kelham still has not returned the writ.  She

17   returned the writ for the LLC.  They are studiously

18   avoiding responding with regard to the other

19   Respondents.  When they say "documents are in the

20   possession of the LLC," they do not respond with regard

21   to documents in the possession of Susanna Kelham, who is

22   also subject to this Court's order and who also is a

23   Respondent.

24         So all of the discussions have been about the

25   LLC, but you will note the writ is signed as the

1   managing member.  She does not return the writ.  Nor has

2   she.  She is studiously avoiding taking a position in

3   this litigation.  She is studiously avoiding taking any

4   position with regards to her personally.  And she is not

5   speaking with regards to documents in her possession,

6   always with regards to the LLC, but there are two

7   parties in this action.  And you will note that all of

8   the conversations studiously avoids her in her personal

9   capacity, even though the Court has sanctioned her in

10  her personal capacity.

11          MR. DAVIS:  And so a few things about the

12  QuickBooks file.  It's Mr. Petty's notion that we can

13  just generate these on our own.  I'm not sure how

14  familiar he is with QuickBooks, but that is just not the

15  case.  We got a single static file, we can't just run

16  the reports.  And we don't know what reports were run

17  for the appraiser.  There are databases of documents and

18  information we didn't get.  We got a single file, one

19  file, singular.  And we didn't get that until after the

20  February 15th hearing that was updated.

21          The notion about these properties that he keeps

22  talking about.  I think it's important to look at the

23  narrow categories of the Court's order.  We are not

24  asking for every single thing ever applying to these --

25  these properties.

# Exhibit 17

CIV-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Harold H. Davis (SBN CA 235552)
Marc R. Baluda (SBN CA 192516)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200, San Francisco, CA 94105

TELEPHONE NO.: 415.655.1300    FAX NO. *(Optional)*: 415.707.2010
E-MAIL ADDRESS *(Optional)*: Hal.Davis@gtlaw.com
ATTORNEY FOR *(Name)*: Petitioner RONALD NICHOLSEN II

FILED
5/10/2023 3:01 PM
Clerk of the Napa Superior Court
By: Rudy Arroyo, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Napa
STREET ADDRESS: 825 Brown Street
MAILING ADDRESS:
CITY AND ZIP CODE: Napa, CA 94559
BRANCH NAME:

PLAINTIFF/PETITIONER: RONALD NICHOLSEN II
DEFENDANT/RESPONDENT: KELHAM VINEYARDS & WINERY LLC et al

| NOTICE OF ENTRY OF JUDGMENT OR ORDER | CASE NUMBER: 21CV001403 |
|---|---|

**NOTICE OF ENTRY OF JUDGMENT
OR ORDER**

*(Check one):*  ☑ **UNLIMITED CASE** (Amount demanded exceeded $25,000)    ☐ **LIMITED CASE** (Amount demanded was $25,000 or less)

CASE NUMBER:
21CV001403

**TO ALL PARTIES :**

1. A judgment, decree, or order was entered in this action on *(date):* May 10, 2023

2. A copy of the judgment, decree, or order is attached to this notice.

Date: May 10, 2023

Harold H. Davis
(TYPE OR PRINT NAME OF  ☑ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

▶ _____
(SIGNATURE)

Page 1 of 2

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 136 of 316

| | |
|---|---|
| PLAINTIFF/PETITIONER: RONALD NICHOLSEN II | CASE NUMBER: 21CV001403 |
| DEFENDANT/RESPONDENT: KELHAM VINEYARDS & WINERY LLC et al | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
## NOTICE OF ENTRY OF JUDGMENT OR ORDER

*(NOTE: You cannot serve the Notice of Entry of Judgment or Order if you are a party in the action. The person who served the notice must complete this proof of service.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Entry of Judgment or Order* by enclosing it in a sealed envelope with postage fully prepaid and *(check one):*

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Entry of Judgment or Order* was mailed:

   a. on *(date):*

   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

   a. Name of person served:
      Stacie P. Nelson
      Street address: 400 S. Hope Street, 8th Floor
      City: Los Angeles
      State and zip code: CA 90071

   c. Name of person served:
      Andrew D. White
      Street address: 9461 Charleville Blvd., Suite 757
      City: Beverly Hills
      State and zip code: CA 90212

   b. Name of person served:
      Richard W. Petty
      Street address: 400 S. Hope Street, 8th Floor
      City: Los Angeles
      State and zip code: CA 90071

   d. Name of person served:
      Street address:
      City:
      State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

5. Number of pages attached _____ .

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

CIV-130 [New January 1, 2010]

## NOTICE OF ENTRY OF JUDGMENT OR ORDER

1

**PROOF OF SERVICE**

I, the undersigned, declare:

2

3

I am a citizen of the United States of America, am over the age of eighteen (18) years, and not a party to the within action. My business address is 101 Second Street, Suite 2200, San Francisco, CA 94105-3668. On the date below, I caused to be served the following documents:

4

5

♦ **NOTICE OF ENTRY OF JUDGMENT OR ORDER**

6

on the parties involved, addressed as follows:

7

Stacie P. Nelson
Richard W. Petty
HOLLAND & KNIGHT LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
T: 415.743.6900 / F: 415.743.6910
stacie.nelson@hklaw.com
richard.petty@hklaw.com

*Attorneys for Respondents Kelham Vineyards & Winery LLC*

8

9

10

11

12

Andrew D. White
VGC, LLP
9461 Charleville Blvd., Suite 757
Beverly Hills, CA 90212
T: 714.907.5032
awhite@vgcllp.com

*Attorneys for Respondent Susanna Rogers Kelham*

13

14

15

16

☐ **BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the person(s) listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing mail. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage prepaid.

17

18

19

☐ **BY OVERNIGHT DELIVERY:** I am personally and readily familiar with the business practice of Greenberg Traurig, LLP, for collection and processing of correspondence and documents for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by UPS for overnight delivery.

20

21

22

☒ **BY ELECTRONIC TRANSMISSION:** Based on a court order or agreement by the parties, I transmitted true and correct copies of the document(s) via e-mail from lynne.rose@gtlaw.com to the email addresses listed for each party as set forth above or on the attached service list.

23

24

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Francisco, California, on May 10, 2023.

25

26

_____
LYNNE ROSE

27

28

CASE NO. 21CV001403

**PROOF OF SERVICE**

# Attachment

×d

21CV001403
Napa - Civil

REC'D 5/3/23

1 | Harold H. Davis (SBN 235552)
2 | Marc R. Baluda (SBN 192516)
| **GREENBERG TRAURIG, LLP**
3 | 101 Second Street, Suite 2200
| San Francisco, CA 94105
4 | Telephone: (415) 655-1300
5 | Facsimile: (415) 707-2010
| E-mail: davish@gtlaw.com
6
| *Attorneys for Petitioner RONALD NICHOLSEN II*
7

FILED

MAY 1 0 2023

Clerk of the Napa Superior Court
By: Perez
Deputy

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
| FOR THE COUNTY OF NAPA
10

| 11 | RONALD NICHOLSEN II, | Case No. 21CV001403 |
|---|---|
| 12 | Petitioner, | |
| 13 | v. | [PROPOSED] ORDER FOLLOWING CONTINUED SECOND ORDER TO SHOW CAUSE HELD ON APRIL 17, 2023 |
| 14 | KELHAM VINEYARDS & WINERY LLC, AND SUSANNA ROGERS KELHAM, | |
| 15 | Respondents. | Hearing Date: April 17, 2023 |
| 16 | | Time: 8:30 a.m. Dept.: B |

17
18
19
20
21
22
23
24
25
26
27
28

1
**[PROPOSED] ORDER**

ACTIVE 686992263v3

On the Court's own motion, a continued second Order to Show Cause hearing was held on April 17, 2023, mandating that Respondents Kelham Vineyards & Winery LLC ("Kelham Vineyards" or the "Company") and Susanna Kelham (collectively, "Respondents") show cause why they should not be sanctioned for failing to comply with the Court's Writ of Mandate and Order Granting Petitioner Ronald Nicholsen II's Writ of Mandate to Enforce His Rights to Obtain, Inspect, and Copy Certain Records of a Limited Liability Company Per California Corporations Code dated November 4, 2022 (the "November Order"). The November Order provided, inter alia, that "Respondents must comply with California Corporations Code section 17704.10 by providing Petitioner Ronald Nicholsen II ("Petitioner" or "Nicholsen") with the Company's books and records", as specifically set forth therein. Respondents were required to file and serve an initial return of the writ not later than December 15, 2022.

Subsequently, the Court held a Case Management Conference on January 23, 2023. At that time, Respondents had not filed a case management conference statement and had not returned the writ as required by the November Order. Consequently, the Court set an Order to Show Cause ("First OSC") hearing for February 15, 2023. Respondents did not timely file a response to the OSC per California Rule of Court 3.110(i). At the time of the First OSC hearing, Respondents had still not returned the writ as required by the November Order. As a result, the Court entered an order on March 2, 2023, which, among other things, (i) imposed a sanction of $1,500 on Susanna Kelham, personally, (ii) found that Respondents failure to return the writ was without justification pursuant to California Corporations Code section 17704.10, (iii) set a second Order to Show Cause hearing for March 13, 2023 ("Second OSC"), and (iv) ordered the parties to brief the issue of remedies available to Petitioner for Respondents' failure to comply with California Corporations Code section 17704.10.

In compliance with the March 2, 2023 Order, the parties submitted their briefs and additional filings including, Kelham Vineyards' Initial Return to Writ, filed on March 9, 2023; Petitioner's Petition for Recovery of Fees and Expenses and Response to OSC, filed on March 9, 2023 (the "Petition for Fees"); Kelham Vineyards' Brief Regarding Remedies and Request for Evidentiary

2
**[PROPOSED] ORDER**

ACTIVE 686992263v3

1 | Hearing, filed on March 10, 2023; and Petitioner's Notice of Respondents' Noncompliance with the

2 | Court's November 4, 2022 Writ and First Order to Show Cause, and accompanying documents, filed

3 | on March 10, 2023.

4 | The Second OSC was held on March 13, 2023, and the Court then continued the Second

5 | OSC and set a hearing on Petitioner's Petition for Fees for April 17, 2023. The Court also set a

6 | briefing schedule with opening briefs due March 30, 2023 and responses due April 11, 2023, and the

7 | parties accordingly filed their briefs and responses. On April 17, 2023, the Court heard argument on

8 | the pleadings set forth above, and issued an Amended Minute order on April 21, 2023.

9 | **ORDER**

10 | Having fully considered the pleadings, evidence, and arguments of all parties, both written and

11 | oral, and finding good cause therefor, the Court HEREBY ADOPTS ITS AMENDED MINUTE

12 | ORDER, attached hereto as Exhibit A, with the following modification:

13 | 1. Respondent Susanna Kelham (on behalf of Respondents) is ordered to personally pay,

14 | within 15 days of the notice of entry of this order, $134,679.40 (consisting of $107,820 in

15 | attorneys' fees, $2,449.61 in costs and $24,409.79 in expenses) payable to Petitioner's

16 | counsel.

17 |

18 |

19 | **IT IS SO ORDERED**

20 |

21 | Dated: 5-9 , 2023     By: _____

22 |

23 |

24 |

25 |

26 |

27 |

28 |

2
[PROPOSED] ORDER

ACTIVE 686992263v3

# Exhibit A



**Superior Court of California**
**County of Napa**

**Amended Minutes**

**Case #: 21CV001403**      **Ronald Nicholsen, II vs Kelham Vineyards & Winery LLC et al**

| **Hearing Date:** | 04/17/2023 | **Hearing Time:** | 8:30 AM |
| **Judicial Officer:** | Scott R.L. Young | **Clerk:** | O Cruz De Hernandez |
| **Court Reporter:** | No Court Reporter | **Interpreter:** | |
| **Courtroom:** | Courtroom B | | |

**Parties Present:**

| | |
|---|---|
| Davis, Harold Henry | Attorney In Person |
| Nicholsen, Ronald, II | Petitioner Via Zoom |
| Petty, Richard William | Attorney In Person |
| Baluda, Marc | Attorney In Person |

---

## NATURE OF PROCEEDINGS

The matter comes on calendar regularly this date for Other Hearing Re: Attorney's Fees, Cost and Sanctions.

---

### HEARING

Court hears comments from counsel in regard to the status of the case and Depositions.

Court hears arguments from counsel in regard to Attorney's Fees, Costs, and Sanctions.

Having heard comments, the Court orders this matter continued for a Case Management Conference: to set Evidentiary Hearing as set forth below:

Notice is waived by parties present.

Court hears further comments from counsel in regard to Depositions.

Pursuant to stipulation of the parties, the Deposition of Susana Kelham shall take place on 04/27/2023.

Parties are directed to meet and confer in regard to a potential Zoom Deposition.

-o0o-

After the Hearing, off the record, and outside the presence of the parties, the Court orders the following Amended Tentative Ruling shall be adopted and with the following modifications journal language:

**AMENDED RULING:** The Court rules on the issues presented in the parties' brief as discussed further below.

A. Introduction

On November 4, 2022, the Court granted Petitioner Ronald Nicholsen II's ("Petitioner") Verified Petition for Writ of Mandate and issued a Writ compelling Respondents Kelham Vineyards & Winery LLC's ("Kelham Vineyards")

and Susanna Kelham ("Ms. Kelham") (collectively, "Respondents") to comply with Corporations Code[1] section 17704.10 and to make an initial return to the Writ by 4:00 p.m. on December 15, 2022 ("Writ").

On January 25, 2023, the Court issued an Order to Show Cause regarding Respondents' Failure to Comply with the Writ and Why Sanctions Should Not Issue ("First OSC"). (Minute Order dated 1/25/23.) On February 15, 2023, the Court heard the First OSC. It found no good cause for Respondents' failure to return the Writ on December 15, 2022, and, therefore, sanctions in the amount of $1,500 were issued against Ms. Kelham to be paid by February 28, 2023 by 4:00 p.m. (Minute Order dated 2/15/23.) The Court set an Order to Show Cause as to Why Section 17704.10 Had Not Been Complied With ("Second OSC"). (See Minute Order dated 2/15/23.)

On March 13, 2023, the Court heard the Second OSC. The Court noted that it had received numerous filings by the parties but that it did not have time to review them all in detail prior to the hearing. (See Minute Order dated 3/13/23.) These filings included Kelham Vineyards' Initial Return to Writ, filed on March 9, 2023; Petitioner's Petition for Recovery of Fees and Expenses and Response to OSC, filed on March 9, 2023; Kelham Winery's Brief Regarding Remedies and Request for Evidentiary Hearing, filed on March 10, 2023; and Petitioner's Notice of Respondents' Noncompliance with the Court's November 4, 2022 Writ and First Order to Show Cause, and accompanying documents, filed on March 10, 2023. The Court, therefore, continued the Second OSC to April 17, 2023 and set a briefing schedule with opening briefs due March 30, 2023 and responses due April 11, 2023.

The Court has since reviewed the parties' March 9 and March 10 filings referenced above, as well as the parties' March 30 and April 11 briefs.

B. Issues Raised in Parties' Briefs

Due to the several different filings before the Court, all of which pertain to the issues set for the present hearing, the Court organizes its discussion by the issues raised in the briefs as set forth as follows:

1. Kelham Vineyards contends that it was never served with a copy of the Writ. (Kelham Vineyard's Initial Return to Writ filed 3/9/23.)

2. Kelham Vineyards contends that it has fully complied with Section 17704.10. (Kelham Vineyards' Response to Petitioner's Statement Regarding Specific Records Not Produced ("Kelham Vineyards' Response"), filed 4/11/23; Kelham Vineyard's Initial Return to Writ, filed 3/9/23.)

3. Petitioner contends that he is entitled to recover his attorneys' fees and expenses in bringing this action due to Respondents' continued refusal to comply with the Corporations Code and court orders. (Petitioner's Reply to Respondents' Response to Petition for Recovery of Fees and Expenses, filed 4/11/23; Petitioner's Notice of Noncompliance, filed 3/10/23, at 11:8-14; Petition for Fees and Expenses, filed 3/9/23, at 1:8-12.)

4. Petitioner requests the following additional sanctions due to Respondents' continued failure to return the Writ: that (1) Ms. Kelham pay $3,000 on behalf of Respondents; (2) Respondents scan all the contents of the 29 banker boxes at Ms. Kelham's expense and transmit those records to Petitioner within two weeks; (3) Ms. Kelham provide Petitioner access to all of her personal email accounts and her personal computers; (4) Respondents provide access to computers and electronics for a forensic search; (5) Ms. Kelham be compelled to attend a deposition; and (6) a trial be held to assess any damages Petitioner sustained in this action due to Respondents' failure to return the Writ. (Petitioner's Statement of Records Not Produced ("Petitioner's Statement"), filed 3/30/23, at 16:15-17:19; Petitioner's Notice of Noncompliance, filed 3/10/23, at 11:15-12:11; Petition for Fees and Expenses, filed 3/9/23, at 1:13-15, 10:23-11:5.)

C. Discussion

1. Notice of the Writ on Respondents was Proper

Kelham Vineyards' contention that it was never served with a copy of the Writ is not well taken, as it is being raised for the first time after Kelham Vineyards appeared and asserted substantive arguments on the Writ at the

___

[1] All subsequent statutory references are to the Corporations Code unless otherwise specified.

November 4, 2022 hearing, January 25, 2023 case management conference, and February 15, 2023 First OSC. Moreover, Petitioner provides evidence that counsel waived rights with respect to notice of the November 4, 2022 hearing, at which the Writ was granted. (Petitioner's Notice of Noncompliance, filed 3/10/23, at 4:3-13, citing Declaration of Harold Davis ("Davis Decl.") at ¶ 4, Exh. 3 at 30:3-7.)

Kelham Vineyards' further argues that Code of Civil Procedure section 1096 requires that "[t]he writ must be served in the same manner as a summons in a civil action, except when otherwise expressly directed by order of the Court." (Kelham Winery's Initial Return to Writ filed 3/9/23.) Petitioner demonstrates that he caused the Writ to be personally served on Kelham Vineyards and attempted on five separate occasions to personally serve Ms. Kelham, after which Kelham Vineyard's counsel agreed to accept service on behalf of Ms. Kelham. (Petitioner's Notice of Noncompliance, filed 3/10/23, at 3:26-4:2, citing Davis Decl., at ¶ 2, Exhs. 1-2.)

Based on the foregoing, the Court finds that Respondents were provided proper notice of the Writ.

*2. The Parties' Disagreement Regarding Respondents' Compliance with the Writ is Appropriate for an Evidentiary Hearing*

Kelham Winery's verified Initial Return to Writ, filed on March 9, asserts that it has complied with Section 17704.10 to the extent that the responsive documents are in its possession, custody, or control by providing Petitioner's agents with unfettered access to all of its books and records retained in hard copy for fourteen days in December 2022 and by producing more than 1.21 gigabytes of electronic copies of its books and records (including two copies of QuickBooks files showing every financial transaction involving Respondent during the current and past four fiscal years. (Kelham Winery's Initial Return to Writ filed 3/9/23.)

On April 3, 2023, Ms. Kelham filed a verified Initial Return to Writ, in which she objects to the scope of documents ordered to be produced as beyond the requirements of Section 17704.10[2] and states that she has made a diligent and reasonable inquiry to discover and locate any documents that may be responsive to the Petitioner's document requests as set forth in the Writ and confirms that she has no such documents in her personal possession to the best of her understanding. Ms. Kelham avers that all such documents are kept with Kelham Vineyards. Thus, Ms. Kelham asserts that she has fully complied with Section 17704.10 and requests that the OSC be discharged.

In response, Petitioner identifies several categories of documents which still have not been produced. (See Petitioner's Statement, filed 3/30/23, at 1:14-14:13; Petitioner's Notice of Noncompliance, filed 3/10/23, at 5:4-9:12; Petitioner's Notice of Ms. Kelham's Noncompliance, filed 4/11/23, at 10, fn. 2.) Petitioner cites to Kelham Vineyard's Response to the First OSC to show that Kelham Vineyard's concedes it has not produced certain documents. (Kelham Vineyards' Response to First OSC, filed 2/14/23.) However, Kelham Vineyard's Response to the First OSC also asserts that those certain categories of documents do not exist or are not prepared as part of its ordinary operations. (*Id.*, at 2:24-7:13.) Moreover, Kelham Vineyard's Response filed on April 11, 2023 contends that, although Petitioner claims there are additional responsive documents, the documents either have been made available for copying and can be made available again, are outside of the Court's order, or do not exist. (Kelham Vineyard's Response, filed 4/11/23, at 2:23-6:4.)

The Court recognizes that the parties seriously dispute whether Kelham Vineyards has fully complied with the Writ. At this juncture, the Court is unable to ascertain the veracity of the parties' countering contentions which are purely argument at this point. Thus, the Court finds that an evidentiary hearing is appropriate. The Court does not elect to exercise its discretion to grant a jury trial on the issue, as requested by Petitioner, where an evidentiary hearing before the Court should more than suffice. (See Petitioner's Notice of Noncompliance, filed 3/10/23, at 10:6-25, citing Code Civ. Proc., § 1090.)

Based on the foregoing, **appearances are required** to discuss setting an evidentiary hearing.

*3. Petitioner's Request for Fees and Costs is Granted in Part*

Petitioner requests an award of $248,859.00 for reimbursement of the reasonable expenses he incurred, including attorney's fees, in connection with the action to date. (Petitioner's Reply, filed 4/11/12, at 2:8-11;

---

[2] The Court is not inclined to rule on Ms. Kelham's belated objections to the scope of the Writ, where she made no written response to the underlying Petition for Writ, and where the parties—through counsel—had the opportunity to argue the substance of the Petition for Writ and, indeed, mutually agreed to the terms of the Writ at the November 4, 2022 hearing.

Petition for Fees and Expenses, filed 3/9/23, at 2:2-4.) $168,418.80 of that amount represents requested attorneys' fees for work done up to March 9, 2023, $80,440.20 represents requested attorneys' fees for work done from March 9, 2023 to present, $2,449.61 represents filing and motion costs, and $24,409.79 represents Petitioner's on-site scanning fees. Petitioner requests that "Ms. Kelham be personally liable because she is the managing member of the Company, and any order against the Company would hurt [Petitioner's] interest in the Company." (Notice of Noncompliance, filed 4/11/23, at 14; Notice of Noncompliance, filed 3/10/23, at 12.)

Petitioner relies on Section 17704.10, subdivision (g), and Code of Civil Procedure section 1209, subdivision (a)(5), as authority for his request.

Section 17704.10, subdivision (g), authorizes the court to award attorneys' fees in an amount sufficient to reimburse the person bringing the action if the court finds the limited liability company's failure to comply with the requirements of Corporations Code section 17704.10 is without justification. (Corp. Code, § 17704.10(g).) Code of Civil Procedure section 1209, subdivision (a)(5) identifies "disobedience of any lawful judgment, order, or process of the court" as "contempt of the authority of the court" for which reasonable attorney's fees and costs incurred may be imposed as a fine. (Petitioner's Statement, filed 3/30/23, at 16:7-14; Petitioner's Notice of Noncompliance, filed 3/10/23, at 11:8-14, citing *Moore v. Superior Court* (2020) 57 Cal.App.5th 441, 464-65.)

As noted in the Court's Tentative Ruling for the November 4, 2022 hearing, Petitioner provided evidence that, prior to bringing the instant action, he made requests to Kelham Vineyards and Ms. Kelham to inspect and copy Kelham Vineyards' records, including its operating agreement, books and records, articles of organization, and tax returns, and that his requests were denied. (See Declaration of Marc R. Baluda filed in Support of Petitioner's Opening Brief, at ¶¶ 5, 7, 10, 15, 23, Exhs. 2-3, 6, 11, 14; Declaration of Sean McNamee filed in Support of Petitioner's Opening Brief, at ¶ 4, Exh. 20.) Moreover, the Court previously found, in a March 2, 2023 Order, that Respondents' failure to return the Writ was without justification pursuant to Section 17704.10. (Petition for Fees and Expenses filed 3/9/23, at 2:1-2, citing Declaration of Harold H. Davis ("Davis Dec."), ¶ 15, Exh. 9 (First OSC Order).)

Based on the foregoing, the Court finds that an award of attorneys' fees is appropriate for Respondents' failure to return the Writ without justification as ordered on March 2, 2023. The Court notes that, on March 9, 2023, Kelham Vineyards filed a verified Initial Return to the Writ and Ms. Kelham has since filed a verified return. Although Petitioner disputes Respondents' contentions therein that they have fully complied with the Writ, a determination on this issue is still outstanding and requires an evidentiary hearing. Thus, an award of attorney's fees incurred following the March 9, 2023 return (i.e., $80,440.20) is premature at this time.

Pursuant to Exhibit 11 attached to the Declaration of Marc Baluda in support of the Petition for Fees and Expenses, filed on March 9, 2023, Petitioner's counsel has spent a total of 301.2 hours up through March 9, 2023. Attorney Harold Davis spent 31.3 hours, Marc Baluda spent 56 hours, and Richard Rodriguez spent 213.9 hours.

Respondents argue that "Petitioner, at most, is entitled to recover for his attorney's fees in bringing the original petition, but not in reviewing the documents that he obtained from the inspection" because "[t]he LLC's operating agreement provides that any inspection and copying are done at the inspecting party's expense. (Respondents' Response, filed 3/30/23, at ¶ 5, citing Operating Agreement § 6.1.) That provision of the Operating Agreement, however, does not contemplate an action under Section 17704.10. Thus, this argument disregards Section 17704.10(g)'s authorization to award expenses incurred in connection with the action or proceeding. Moreover, it ignores Section 17704.10(a)'s provision that Respondents shall incur the expense of delivering a copy of the documents.

Respondents raise a concern that Mr. Rodriguez is an attorney licensed in Florida but not in California. Petitioner appears to argue that, due to Mr. Rodriguez not being licensed in California, his billing rate was reduced to $650. Petitioner further argues that the Rules of Professional Conduct, Rule 5.5, do not prohibit attorneys licensed in other states to work under practicing California attorneys and that Mr. Rodriguez has not appeared in court, provided legal advice, or filed pleadings under his name. Pursuant to Rule 5.5, subdivision (c)(1), a lawyer admitted in another United States jurisdiction may provide legal services on a temporary basis in this jurisdiction that are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter.

Other than the points discussed and denied above, Respondents do not otherwise contend that the hours set forth in Petitioner's March 9, 2023 Petition are unreasonable. Thus, the Court finds the hours spent by

Petitioner's counsel reasonable.

The Court does not, however, find the hourly rates of Petitioner's counsel reasonable. (Petition for Fees and Expenses, filed 3/9/23, at 5:18-21; Declaration of Marc Baluda ("Baluda Decl."), Exh. 10.) As both parties recognize, attorney fees should be reimbursed only at a rate commensurate with the reasonable hourly rate prevailing in the community for similar work; that community, here, being Napa County. (Petition for Fees and Expenses, filed 3/9/23, at 6:2-3; Respondents' Response, filed 3/30/23, at ¶ 11.) Hourly rates in Napa County are nowhere near the $1,266 or $1,340 that Petitioner is requesting for attorneys Davis and Baluda. Nor does the Court consider attorney Rodriguez's $650 hourly rate comparable to "junior associate billing rates" in this area, contrary to Petitioner's contention.

Petitioner argues that his efforts to engage counsel based in Napa to represent him were unsuccessful because of actual or potential conflicts of interest. (Petition for Fees and Expenses, filed 3/9/23, at 6:9-11, citing *Horsford v. Board of Trustees of Cal. State Univ.* (2005) 132 Cal.App.4th 359, 399; Declaration of Ronald Nicholsen II, at ¶ 2.) "Although *Horsford* demonstrates there are circumstances where it is appropriate to base a fee award on nonlocal hourly rates, the case also supports the proposition that an award based on local rates is the default rule, from which the trial court may deviate in its discretion, where justified by the circumstances." (*Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 72.) Here, Petitioner does not assert that he made a good faith effort to exhaust his search for local counsel or elsewhere with similar rates as Napa County, nor has Petitioner made a satisfactory showing that the circumstances justify the higher non-local rates.

Thus, the Court does not exercise its discretion to deviate from local hourly rates, which the Court believes are closer to $300 for associates and $500 for partners. Based on this, Petitioner's request for reimbursement of attorneys' fees is GRANTED IN PART in the amount of $107,820 (= 31.3 hours by Attorney Davis x $500 + 56 hours by Attorney Baluda x $500 + 213.9 hours by Attorney Rodriguez x $300).

The Court further GRANTS Petitioner's request for $2,449.61 in costs and $24,409.79 in expenses incurred as a result of the Writ.

Based on the foregoing, Ms. Kelham (on behalf of Respondents)[3] is ordered to pay, within 15 days of the notice of entry of judgment, $134,679.40 payable to Petitioner's counsel.

### 4. Petitioner's Request for Additional Sanctions is Denied

Petitioner relies on the following authority for his request for additional sanctions.

First, "[i]f a peremptory mandate has been issued and directed to an inferior tribunal, corporation, board, or person, and it appears to the court that a member of the tribunal, corporation, or board, or the person upon whom the writ has been personally served, has, without just excuse, refused or neglected to obey the writ, the court may, upon motion, impose a fine not exceeding one thousand dollars. In case of persistence in a refusal of obedience, the court may order the party to be imprisoned until the writ is obeyed, and may make any orders necessary and proper for the complete enforcement of the writ." (Code Civ. Proc., § 1097, see also *King v. Woods* (1983) 144 Cal.App.3d 571, 576-78.) "Because these methods vary in their severity, different levels of disobedience must be shown to justify their use." (*King, supra,* 144 Cal.App.3d at 576-78.)

Second, California courts have inherent power to "take appropriate action to secure compliance with . . . orders, to punish contempt, and to control its proceedings." (*Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443, 1454; Code Civ. Proc., § 128, *et seq.*)

With respect to the requested monetary sanctions in the amount of $3,000, the Court does not find, at this time without more, that Respondents' alleged noncompliance with the Writ is without just excuse. Respondents aver that they have worked tirelessly in a good faith effort to comply with the document requests, have produced a voluminous number of documents, and have attempted to explain why certain documents have not been produced. The Court recognizes that these contentions were not made under oath; however, until the Court can determine whether or not Respondents have complied with the Writ by way of an evidentiary hearing, it is unable to find a continued noncompliance without just excuse. Thus, the request for monetary sanctions is DENIED.

---

[3] Respondents did not address or object to Petitioner's request that Ms. Kelham be personally liable for Respondents' reimbursement of the fees and costs.

With respect to the remaining requested sanctions, which all relate to discovery in nature, Petitioner provides no discussion or argument as to the requested discovery-related orders, other than including the requests in a list. Moreover, the Court finds that the anticipated evidentiary hearing, where the parties can testify under oath, renders unnecessary or premature any discovery-related orders. The Court notes that Petitioner has noticed the deposition of Ms. Kelham pursuant to the Civil Discovery Act. (Petitioner's Notice of Ms. Kelham's Noncompliance, filed 4/11/23, at 12:14-13:12.) To the extent Petitioner contends Ms. Kelham has not complied with that notice, the Code of Civil Procedure sets forth appropriate avenues by which to enforce the notice, as opposed to by way of sanctions. Thus, at this time, the request for the discovery-related sanctions is DENIED.

**FUTURE HEARINGS**

May 18, 2023 8:30 AM Conference: Case Management
Courtroom B
Young, Scott R.L.

-o0o-

# Exhibit 18

# Case Information

21CV001403 | Ronald Nicholsen, II vs Kelham Vineyards & Winery LLC et al

Case Number
21CV001403

Court
Superior Court of Napa - Civil

File Date
10/04/2021

Case Type
Writ of Mandate Unlimited (02)

Case Status
Appealed

# Party

Respondent
Kelham Vineyards & Winery LLC

Active Attorneys ▾
Lead Attorney
Petty, Richard William
Retained

Respondent
Kelham, Susanna rogers

Active Attorneys ▾
Lead Attorney
Greeley, James Lawrence
Retained

Petitioner
Nicholsen, Ronald, II

Active Attorneys ▾
Lead Attorney
Davis, Harold Henry
Retained

# Events and Hearings

10/04/2021 Civil Case Cover Sheet

10/04/2021 Petition: Writ of Mandamus

01/25/2022 Notice

01/26/2022 Response or Reply ▼

Comment

RESPONSE AND OBJECTIONS TO VERIFIED PETITION FOR WRIT OFMANDATE TO ENFORCE MEMBER S RIGHT TO OBTAIN,INSPECT, AND COPY CERTAIN RECORDS OF A LIMITEDLIABILITY COMPANY PER CORPORATIONS CODE 17704.10

09/27/2022 Notice of Hearing ▼

Comment

NOTICE OF HEARING ON PETITIONER RONALD NICHOLSEN IIS PETITION FOR WRIT OF MANDATE

09/27/2022 Declaration ▼

Comment

PETITIONER RONALD NICHOLSEN IIS COMPENDIUM OF EVIDENCE IN SUPPORT OF THE BRIEF ON THE MERITS OF THE PETITION FOR WRIT OF MANDATE

09/27/2022 Brief ▼

Comment

PETITIONER RONALD NICHOLSEN IIS OPENING BRIEF ON THE MERITS OF VERIFIED PETITION FOR WRIT OF MANDATE TO ENFORCE HIS RIGHT TO OBTAIN, INSPECT, AND COPY CERTAIN RECORDS OF A LIMITED LIABILITY COMPANY PER CALIFORNIA CORPORATIONS CODE

09/27/2022 Proof of Service

10/28/2022 Notice of Hearing ▼

Comment

AMENDED NOTICE OF HEARING ON PETITIONER RONALD NICHOLSEN IIS PETITION FOR WRIT OF MANDATE PURSUANT TO LOCAL RULES OF COURT, RULE 2.9

10/28/2022 Brief: Reply ▼

Comment

PETITIONER RONALD NICHOLSEN IIS REPLY BRIEF IN SUPPORT OF VERIFIED PETITION FOR WRIT OF MANDATE TO ENFORCE HIS RIGHT TO OBTAIN, INSPECT, AND COPY CERTAIN RECORDS OF A LIMITED LIABILITY COMPANY PER CALIFORNIA CORPORATIONS CODE

10/28/2022 Declaration ▼

Comment

DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS REPLY BRIEF IN SUPPORT OF THE OF THE MERITS OF VERIFIED PETITION FOR WRIT OF MANDATE TO ENFORCE HIS RIGHT TO OBTAIN, INSPECT, AND COPY CERTAIN RECORDS OF A LIMITED LIABILIT

10/28/2022 Proof of Service

11/04/2022 Petition Hearing ▼

Judicial Officer
Young, Scott R.L.

Hearing Time
8:30 AM

Result
Heard

Comment
RONALD NICHOLSEN II S PETITION FOR WRIT OF MANDATE

11/04/2022 Order ▼

Comment
WRIT AND ORDER GRANTING PETITIONER RONALD NICHOLSEN IIS WRIT OF MANDATE TO ENFORCE HIS RIGHT TO OBTAIN,

11/04/2022 Minute Order

01/20/2023 Statement: Case Management Conference ▼

Comment
Case Management Statement (Statements)

01/23/2023 Statement: Case Management Conference

01/25/2023 Conference: Case Management ▼

Judicial Officer
Young, Scott R.L.

Hearing Time
8:30 AM

Result
Heard

01/25/2023 Minute Order

02/14/2023 Response or Reply ▼

Comment
RESPONDENT KELHAM VINEYARDS & WINERY LLC S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS

02/14/2023 Notice ▼

Comment

PETITIONER RONALD NICHOLSEN IIS NOTICE OF RESPONDENTS NONCOMPLIANCE WITH THE
COURTS NOVEMBER 4, 2022 ORDER AND SUBSEQUENT ORDER TO SHOW CAUSE

---

02/15/2023 Order to Show Cause (Non-DCSS) ▾

Judicial Officer

Young, Scott R.L.

Hearing Time

9:00 AM

Result

Heard

Comment

Failure to comply with 11/04/2022 Court order/sanctions TE: 1 hour

---

02/15/2023 Minute Order

---

03/02/2023 Order ▾

Comment

SANCTIONING RESPONDENT SUSANNA ROGERS KELHAM FOR FAILURE TO COMPLY WITH TEH
COURT'S WRIT OF MANDATE AND ORDER DATED NOVEMBER 4/2022

---

03/09/2023 Brief ▾

Comment

RESPONDENT KELHAM VINEYARDS & WINERY LLC S INITIAL RETURN TO WRIT

---

03/09/2023 Motion ▾

Comment

PETITIONER RONALD NICHOLSEN IIS PETITION FOR RECOVERY OF FEES AND EXPENSES AND
RESPONSE TO OSC (Motions)

---

03/09/2023 Declaration ▾

Comment

DECLARATION OF MARC R. BALUDA IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS PETITION
FOR RECOVERY OF FEES AND EXPENSES AND RESPONSE TO OSC (Declarations)

---

03/09/2023 Declaration ▾

Comment

DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS PETITION
FOR RECOVERY OF FEES AND EXPENSES (Declarations)

---

03/09/2023 Declaration ▾

Comment

PETITIONER RONALD NICHOLSEN IIS DECLARATION IN SUPPORT OF PETITION FOR RECOVERY OF FEES AND EXPENSES (Declarations)

03/09/2023 Declaration ▼

Comment

DECLARATION OF RICHARD RODRIGUEZ IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS PETITION FOR RECOVERY OF FEES AND EXPENSES (Declarations)

03/09/2023 Proof of Service ▼

Comment

PROOF OF SERVICE RE PETITIONER RONALD NICHOLSEN IIS PETITION FOR RECOVERY OF FEES AND EXPENSES AND RESPONSE TO OSC (Comment)

03/10/2023 Brief ▼

Comment

RESPONDENT KELHAM VINEYARDS & WINERY LLCS BRIEF REGARDING REMEDIES AND REQUEST FOR EVIDENTIARY HEARING

03/10/2023 Notice ▼

Comment

PETITIONER RONALD NICHOLSEN IIS NOTICE OF RESPONDENTS NONCOMPLIANCE WITH THE COURTS NOVEMBER 4, 2022 WRIT AND FIRST ORDER TO SHOW CAUSE (Comment)

03/10/2023 Declaration ▼

Comment

DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS NOTICE OF RESPONDENTS NONCOMPLIANCE WITH THE COURTS NOVEMBER 4, 2022 WRIT AND FIRST ORDER TO SHOW CAUSE (Declarations)

03/10/2023 Proof of Service ▼

Comment

PROOF OF SERVICE RE PETITIONER RONALD NICHOLSEN IIS NOTICE OF RESPONDENTS NONCOMPLIANCE (Comment)

03/13/2023 Order to Show Cause (Non-DCSS) ▼

Judicial Officer

Young, Scott R.L.

Hearing Time

8:30 AM

Result

Heard

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 155 of 316

Comment

as to why CCC 1704.10 has not been complied with.

03/13/2023 Notice of Hearing Court ▾

Comment

To Respondent Susanna Kelham re: FTA

03/13/2023 Minute Order

03/14/2023 Petition Hearing ▾

Judicial Officer

Young, Scott R.L.

Hearing Time

8:30 AM

Cancel Reason

Vacated

Comment

TE: 1 day; Evidentiary Hearing

03/30/2023 Statement ▾

Comment

PETITIONER RONALD NICHOLSEN II'S STATEMENT REGARDING SPECIFIC RECORDS NOT PRODUCED IN VIOLATION OF THE WRIT AND ORDER DATED NOVEMBER 4, 2022 (Statements)

03/30/2023 Declaration ▾

Comment

DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PETITIONER RONALD NICHOLSEN II'S STATEMENT REGARDING SPECIFIC RECORDS NOT PRODUCED IN VIOLATION OF THE WRIT AND ORDER DATED NOVEMBER 4, 2022 (Declarations)

03/30/2023 Declaration ▾

Comment

PETITIONER RONALD NICHOLSEN II S DECLARATION IN SUPPORT OF STATEMENT REGARDING SPECIFIC RECORDS NOT PRODUCED IN VIOLATION OF THE WRIT AND ORDER DATED NOVEMBER 4, 2022

03/30/2023 Proof of Service ▾

Comment

Proof of Service (Comment)

03/30/2023 Response or Reply ▾

Comment

RESPONDENTS KELHAM VINEYARDS & WINERY LLC S AND SUSANNA ROGERS KELHAM S RESPONSE AND OBJECTIONS TO PETITIONER RONALD NICHOLSEN II S PETITION FOR RECOVERY OF FEES AND EXPENSES AND RESPONSE TO OSC

04/03/2023 Response or Reply ▾

Comment

Response to OSC and Initial Return to Writ

04/04/2023 Notice ▾

Comment

NOTICE OF CHANGE OF ADDRESS OR OTHER CONTACT INFORMATION (Comment)

04/11/2023 Response or Reply ▾

Comment

RESPONDENT KELHAM VINEYARDS & WINERY LLC S RESPONSE TO PETITIONER RONALD NICHOLSEN II S STATEMENT REGARDING SPECIFIC RECORDS NOT PRODUCED IN VIOLATION OF THE WRIT AND ORDER DATED NOVEMBER 4, 2022

04/11/2023 Response or Reply ▾

Comment

PETITIONER RONALD NICHOLSEN IIS RESPONSE TO RESPONDENT SUSANNA KELHAMS INITIAL RETURN OF THE WRIT AND NOTICE OF CONTINUED NONCOMPLIANCE WITH THE COURTS WRIT AND ORDER OF NOVEMBER 4, 2022 (Responses)

04/11/2023 Proof of Service ▾

Comment

PROOF OF SERVICE RE PETITIONER RONALD NICHOLSEN IIS RESPONSE TO RESPONDENT SUSANNA KELHAMS INITIAL RETURN OF THE WRIT AND NOTICE OF CONTINUED NONCOMPLIANCE WITH THE COURTS WRIT AND ORDER OF NOVEMBER 4, 2022 (Comment)

04/11/2023 Declaration ▾

Comment

DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS RESPONSE TO RESPONDENT SUSANNA KELHAMS INITIAL RETURN OF THE WRIT AND NOTICE OF CONTINUED NONCOMPLIANCE WITH THE COURTS WRIT AND ORDER OF NOVEMBER 4, 2022 (Declarations)

04/11/2023 Response or Reply ▾

Comment

PETITIONER RONALD NICHOLSEN IIS REPLY TO RESPONDENTS RESPONSE AND OBJECTIONS TO PETITION FOR RECOVERY OF FEES AND EXPENSES AND RESPONSE TO OSC (Responses)

04/11/2023 Declaration ▾

Comment

DECLARATION OF MARC R. BALUDA IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS REPLY IN SUPPORT OF HIS PETITION FOR RECOVERY OF FEES AND EXPENSES AND RESPONSE TO OSC (Declarations)

04/11/2023 Declaration ▾

Comment

DECLARATION OF RICHARD RODRIGUEZ IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS REPLY TO RESPONDENTS RESPONSE AND OBJECTIONS TO PETITIONERS PETITION FOR RECOVERY OF FEES AND EXPENSES AND RESPONSE TO OSC (Declarations)

04/11/2023 Proof of Service ▾

Comment

PROOF OF SERVICE RE PETITIONER RONALD NICHOLSEN IIS REPLY TO RESPONDENTS RESPONSE AND OBJECTIONS TO PETITIONERS PETITION FOR RECOVERY OF FEES AND EXPENSES AND RESPONSE TO OSC (Comment)

04/11/2023 Declaration ▾

Comment

PETITIONER RONALD NICHOLSEN IIS DECLARATION IN SUPPORT OF HIS REPLY FOR REIMBURSEMENT OF COSTS AND FEES IN THIS ACTION (Declarations)

04/11/2023 Declaration ▾

Comment

DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS REPLY TO RESPONDENTS RESPONSE AND OBJECTIONS TO PETITIONERS PETITION FOR RECOVERY OF FEES AND EXPENSES AND RESPONSE TO OSC (Declarations)

04/13/2023 Conference: Mandatory Settlement ▾

Judicial Officer

Spanos, George V

Hearing Time

03:00 PM

Result

MSC Held - Trial Date Confirmed

Comment

Voluntary Settlement Conference

04/13/2023 MSC Outcome

04/17/2023 Order to Show Cause (Non-DCSS) ▾

Judicial Officer

Young, Scott R.L.

Hearing Time

8:30 AM

Result

Heard

Comment

Re: Respondent Susanna Kelham's FTA

---

04/17/2023 Other Hearing ▾

Judicial Officer

Young, Scott R.L.

Hearing Time

8:30 AM

Result

Heard

Comment

Cont'd hearing of 3/13/23 matters (attys fees, costs, etc.)

---

04/17/2023 Minute Order

---

04/17/2023 Minute Order: Amended

---

04/17/2023 Minute Order: Amended

---

04/20/2023 Other Hearing ▾

Judicial Officer

Young, Scott R.L.

Hearing Time

8:30 AM

Result

Heard

Comment

IDC - approved by Judge Young

---

04/20/2023 Minute Order

---

05/03/2023 Statement: Case Management Conference ▾

Comment

Case Management Statement

---

05/03/2023 Statement: Case Management Conference ▾

Comment

Case Management Statement (Statements)

---

05/03/2023 Statement: Case Management Conference ▾

Comment
HRNG: 05-18-2023 Case Management Statement

05/10/2023 Order ▼

Comment
ORDER FOLLOWING CONTINUED SECOND ORDER TO SHOW CAUSE HELD ON APRIL 17, 2023 (Orders)

05/10/2023 Notice ▼

Comment
Notice (Comment)

05/12/2023 Order ▼

Comment
ORDER FOLLOWING HEARING RE: ATTORNEYS FEES, COSTS AND SANCTIONS HELD ON APRIL 17, 2023 (Orders)

05/18/2023 Conference: Case Management ▼

Judicial Officer
Smith, Cynthia P

Hearing Time
8:30 AM

Result
Heard

Comment
to set Evidentiary Hearing

05/18/2023 Minute Order

05/23/2023 Notice of Appeal - Court of Appeal ▼

Judicial Officer          Comment
Young, Scott R.L.         A167895

05/24/2023 Notice ▼

Comment
To All Parties Re Filing of Notice of Appeal

05/24/2023 Notice of Appeal - Court of Appeal ▼

Judicial Officer
Young, Scott R.L.

05/26/2023 Notice ▼

Comment
To All Parties Re Filing of NOA

05/31/2023 Motion ▼

Comment
PETITIONER RONALD NICHOLSEN IIS NOTICE OF MOTION AND MOTION TO COMPEL AND REQUEST
FOR SANCTIONS (Motions)

05/31/2023 Proof of Service ▼

Comment
PROOF OF SERVICE re PETITIONER RONALD NICHOLSEN IIS NOTICE OF MOTION AND MOTION TO
COMPEL AND REQUEST FOR SANCTIONS (Comment)

05/31/2023 Memorandum: Points and Authorities ▼

Comment
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS
MOTION TO COMPEL AND REQUEST FOR SANCTIONS (Memos)

05/31/2023 Declaration ▼

Comment
DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS MOTION TO
COMPEL AND REQUEST FOR SANCTIONS (Declarations)

06/05/2023 Designation: Rule 8.124 ▼

Comment
With Court Reporter Transcripts

06/05/2023 Designation: Rule 8.124

06/06/2023 Proof of Service ▼

Comment
Designation to COA

06/06/2023 Proof of Service ▼

Comment
Designation to COA

06/15/2023 Opposition or Objections ▼

Comment
OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR SANCTIONS

06/15/2023 Opposition or Objections ▼

Comment

Opposition of Susanna Kelham to Petitioner's Motion to Compel and Request for Sanctions

06/15/2023 Declaration ▼

Comment

DECLARATION OF ANDREW D. WHITE IN SUPPORT OF RESPONDENT SUSANNA ROGERS KELHAM S OPPOSITION TO PETITIONER S MOTION TO COMPEL AND REQUEST FOR SANCTIONS

06/15/2023 Opposition or Objections ▼

Comment

RESPONDENT SUSANNA ROGERS KELHAM S EVIDENTIARY OBJECTIONS TO DECLARATION OF HAROLD H. DAVIS

06/22/2023 Response or Reply ▼

Comment

REPLY IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS MOTION TO COMPEL AND REQUEST FOR SANCTIONS (Responses)

06/22/2023 Response or Reply ▼

Comment

REPLY TO SUSANNA KELHAMS OPPOSITION TO RONALD NICHOLSEN IIS MOTION TO COMPEL AND REQUEST FOR SANCTIONS (Responses)

06/22/2023 Proof of Service ▼

Comment

Proof of Service (Comment)

06/22/2023 Declaration ▼

Comment

PETITIONER RONALD NICHOLSEN IIS DECLARATION IN SUPPORT OF HIS MOTION TO COMPEL AND REQUEST FOR SANCTIONS (Declarations)

06/22/2023 Declaration ▼

Comment

DECLARATION OF OMAR PARRA IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS REPLY IN SUPPORT OF HIS MOTION TO COMPEL AND REQUEST FOR SANCTIONS (Declarations)

06/22/2023 Declaration ▼

Comment

DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF PETITIONER RONALD NICHOLSEN IIS REPLY IN SUPPORT OF HIS MOTION TO COMPEL AND REQUEST FOR SANCTIONS (Declarations)

06/29/2023 Motion ▼

Judicial Officer
Young, Scott R.L.

Hearing Time
8:30 AM

Result
Heard

Comment
Plaintiffs Motion to Compel and Request For Sanctions ORAL ARGUMENT - Andrew White for Def S. Kelham

06/29/2023 Minute Order

06/30/2023 Minute Order: Amended

07/03/2023 Notice: Default (Appeal) ▾

Comment
Failure to Deposit Estimated Court Reporter Fees

07/05/2023 Statement: Case Management Conference ▾

Comment
Case Management Statement

07/07/2023 Statement: Case Management Conference ▾

Comment
Case Management Statement

07/07/2023 Notice ▾

Comment
NOTICE OF ENTRY OF JUDGMENT OR ORDER (Comment)

07/10/2023 Statement: Case Management Conference ▾

Comment
Case Management Statement (Statements)

07/20/2023 Conference: Case Management ▾

Judicial Officer
Young, Scott R.L.

Hearing Time
8:30 AM

Result
Heard

07/20/2023 Minute Order

07/21/2023 Notice: Stay of Proceedings

07/24/2023 Correspondence ▼

Comment
Respondent's Estimate Letter for Reporter Trust Account

07/25/2023 Notice of Hearing Court ▼

Comment
OSC/ STATUS DLR

07/31/2023 Notice ▼

Comment
Notice of Stay of Proceedings

08/03/2023 Notice of Hearing Court

08/10/2023 Conference: Mandatory Settlement ▼

Judicial Officer
Guadagni, Raymond A.

Hearing Time
03:00 PM

Cancel Reason
Vacated

08/17/2023 Conference: Case Management ▼

Judicial Officer
Young, Scott R.L.

Hearing Time
8:30 AM

09/28/2023 Conference: Trial Management ▼

Judicial Officer
Smith, Cynthia P

Hearing Time
8:30 AM

10/02/2023 Court Trial: Long Cause ▼

Judicial Officer
Smith, Cynthia P

Hearing Time
8:30 AM

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 164
of 316

Comment
TE: 2-3 Days

10/02/2023 Other Hearing ▼

Judicial Officer
Smith, Cynthia P

Hearing Time
8:30 AM

Comment
Evidentiary Hearing

01/25/2024 OSC/Status DLR ▼

Judicial Officer
Young, Scott R.L.

Hearing Time
8:30 AM

Comment
AS TO KELHAM VINEYARDS & WINERY LLC & SUSANNA ROGERS KELHAM

# Exhibit 19

**From:** Info <<u>info@kelhamvineyards.com</u>>
**Sent:** Friday, October 15, 2021 12:33 PM
**To:** Baluda, Marc R. (Shld-SFO-CP) <<u>baludam@gtlaw.com</u>>
**Subject:** Kelham Vineyards - Signed Operating Agreement

**\*EXTERNAL TO GT\***

Please see attached.

Thank you and have a great day,

Gen Crego
Kelham Vineyards
360 Zinfandel Lane
St. Helena, CA 94574
Phone: 707-963-2000
Fax: 707-963-2262
Web: www.kelhamvineyards.com





# OPERATING AGREEMENT FOR THE
## KELHAM VINEYARDS & WINERY, LLC

A. THIS OPERATING AGREEMENT is entered into as _____ 2010, by SUSANNA R. KELHAM, RONALD C. NICHOLSEN and HAMILTON NICHOLSEN (referred to individually as a Member and collectively as the Members).

B. The Members desire to amend a limited liability company (Company) formed under the Beverly-Killea Limited Liability Company Act.

C. The Members enter into this Agreement to form and provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.

NOW THEREFORE, the Members agree as follows:

## ARTICLE I: DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article or elsewhere in this Agreement and when not so defined shall have the meanings set forth in California Corporations Code section 1700

1.1. "Act" means the Beverly-Killea Limited Liability Company Act California Corporations Code 17000-17705), including amendments from time to time.

1.2. "Adjusted Capital Contribution" is defined in Article IV, Section 4.6(a).

1.3. "Adjusted Capital Account Deficit" is defined in Article IV, Section 4.3(a).

1.4. "Affiliate" of a Member means (1) any Person directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with the Member. The term "control" (including the terms "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through membership, ownership of voting securities, by contract, or otherwise.

1.5. "Agreement" means this operating agreement, as originally executed and as amended from time to time.

1.6. "Articles of Organization" is defined in Corporations Code section 17001(b), as applied to this Company.

1.7. "Assignee" means a person who has acquired a Member's Economic Interest in the Company, by way of a Transfer in accordance with the terms of this Agreement, but who has not become a Member.

1.8. "Assigning Member" means a Member who by means of a Transfer has transferred an Economic Interest in the Company to an Assignee.

1.9. "Available Cash" means all net revenues from the Company's operations, including net proceeds from all sales, refinancing, and other dispositions of Company property that the Manager, in the Manager's sole discretion, deems in excess of the amount reasonably necessary for the operating requirements of the Company, including debt reduction and Reserves.

1.10. "Book Depreciation" is defined in Article IV, Section 4.3(b).

1.11. "Capital Account" means, with respect to any Member, the account reflecting the capital interest of the Member in the Company, consisting of the Member's initial Capital Contribution maintained and adjusted in accordance with Article III, Section 3.[6].

1.12. "Capital Contribution" means with respect to any Member, the amount of the money and the Fair Market Value of any property (other than money) contributed to the Company (net of liabilities secured by such contributed property that the Company is considered to assume or take "subject to" under IRC section 752) in consideration of a Percentage Interest held by such Member. A Capital Contributions shall not be deemed a loan.

1.13. "Capital Event" means a sale or disposition of any of the Company's capital assets the receipt of insurance and other proceeds derived from the involuntary conversion of Company property, the receipt of proceeds from a refinancing of Company property, or a similar event with respect to company property or assets.

1.14. "Code or "IRS" means the Internal Revenue Code of 1986, as amended, and any successor provision.

1.15. "Company" means the company named in Article II, Section2.2 of this Agreement.

1.16. "Company Minimum Gain" is defined in Article IV, Section 4.3(c).

1.17. "Confidential Information" is defined in Article X, Section 10.2.

1.18. "Corporations Code" ("Corp C") means the California Corporations Code.

1.19. "Economic Interest" means a Person's right to share in the income, gains, losses, Deductions, credit or similar items of, and to receive distributions from, the Company, but does not include any other rights of a Member, including the right to vote or to participate in management.

1.20. "Encumber" means the act of creating or purporting to create an Encumbrance, whether or not perfected under applicable law.

1.21. "Encumbrance" means, with respect to any Membership Interest, or any element thereof, a mortgage, pledge, security interest, lien, proxy coupled with an interest (other than as contemplated in this Agreement), option, or preferential right to purchase.

1.22. "Gross Asset Value" means, with respect to any item of property of the Company the item's adjusted basis for federal income tax purposes, except as follows:

(a) The initial Gross Asset Value of any item of property contributed by a Member to the Company shall be the fair market value of such property, as mutually agreed by the contributing Member and the Company;

(b) The Gross Asset Value of any item of Company property distributed to any Member shall be the fair market value of such item of property on the date of distribution; and

(c) The Gross Asset Value of any item of Company property shall be subject to the Adjustments specified in Article IV, Section 4.11.

1.23. "Initial Members" means those Persons whose names are set forth in the first sentence of this Agreement. A reference to an "Initial Member" means any of the Initial Members.

1.24. "Involuntary Transfer" means with respect to any Membership Interest, or any element thereof, any Transfer or Encumbrance, whether by operation of law, pursuant to court order, foreclosure of a security interest, execution of a judgment or other legal process, or otherwise, including a purported transfer to or from a trustee in bankruptcy, receiver, or assignee for the benefit of creditors.

1.25. "Issue" or "Child" or "Children" shall refer to lineal issue of all degrees of the designated ancestor. Said term shall exclude stepchildren, foster children and children naturally born but not raised for a substantial time by the designated ancestor but shall include children adopted into the class.

1.26. "Losses". See Article IV, Section 4.2.

1.27. "Majority of Members" means a Member or Members whose Percentage Interests represent more than 50 percent of the Percentage Interests of all the Members.

1.28. "Manager" or "Managers" means the Person(s) named as such in Article II or the Persons who from time to time succeed any Person as a Manager and who, in either case, are serving at the relevant time as a Manager. The term "Manager" and the reference to the Manager in the singular shall be deemed to refer to the Manager or Managers serving under this document from time to time.

1.29. "Member" means an initial Member or a Person who otherwise acquires a Membership Interest, as permitted under this Agreement, and who remains a Member.

1.30." Member Nonrecourse Debt" is defined in Article IV, Section 4.3(d).

1.31. "Member Nonrecourse Debt Minimum Gain" is defined in Article IV, Section 4.3(e).

1.32." Member Nonrecourse Deductions" is defined in Article IV, Section 4.3(f).

1.33. "Membership Interest" means a Member's rights in the Company, collectively, Including the Member's Economic Interest, any right to Vote or participate in management, and any right to information concerning the business and affairs of the Company.

1.34." Nonrecourse Deductions" is defined in Article IV, Section 4.3(g).

1.35." Nonrecourse Liability" is defined in Article IV, Section 4.3(h).

1.36. "Notice" means a written notice required or permitted under this Agreement. A notice shall be deemed given or sent when deposited as certified mail or for overnight delivery, postage and fees prepaid, in the United States mails; when delivered to Federal Express, United Parcel Service, DHL, WorldWide Express, or Airborne Express, for overnight delivery, charges prepaid or charged to the sender's account; when personally delivered to the recipient; when transmitted by electronic means, and such transmission is electronically confirmed as having been successfully transmitted; or when delivered to the home or office of a recipient in the care of a person whom the sender has reason to believe will ultimately communicate the notice to the recipient.

1.37. "Percent of the Members" means the specified total of Percentage Interests of all the members.

1.38. "Percentage Interest" means a fraction, expressed as a percentage, the numerator of which is the total of a Member's Capital Account and the denominator of which is the total of all Capital Accounts of all Members.

1.39. "Person" means an individual, partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

1.40. "Profits" and "Losses" are defined in Article IV, Section 4.2.

1.41. "Proxy" has the meaning set forth in the first paragraph of Corp C 17001(ai) A Proxy may not be transmitted orally.

1.42. "Regulations" ("Reg") means the income tax regulations promulgated by the United States Department of the Treasury and published in the Federal Register for the purpose of interpreting and applying the provisions of the Code, as such Regulations maybe

amended from time to time, including corresponding provisions of applicable successor regulations.

1.43. "Reserves" means the aggregate of reserve accounts that the Manager, in the Manager's sole discretion, deems reasonably necessary to meet accrued or contingent liabilities of the Company, reasonably anticipated operating expenses and working capital requirements.

1.44. "Successor in Interest" means an Assignee, a successor of a Person by merger or otherwise by operation of law, or a transferee of all or substantially all of the business or assets of a Person.

1.45. "Tax Item" means each item of income, gain, loss, deduction, or credit of the Company.

1.46. "Tax Matters Partner" means such Person as may be designated under Article VI, Section 6.6.

1.47. "Transfer" means, with respect to a Membership Interest or any element of a Membership Interest, any sale, assignment, gift, Involuntary Transfer, Encumbrance, or other disposition of such a Membership Interest or any element of such Membership Interest, directly or indirectly, other than an Encumbrance that is expressly permitted under this Agreement.

1.48. Triggering Event" is defined in Article VIII, Section 8.4.

1.49. "Vote" means a written consent or approval, a ballot cast at a meeting, or, a voice vote.

1.50. "Voting Interest" means with respect to a Member, the right to Vote or participate in management and any right to information concerning the business and affairs of the Company provided under the Act, except as limited by the provisions of this Agreement. A Member's Voting Interest shall be directly proportional to that Member's Percentage Interest.

## ARTICLE II: ARTICLES OF ORGANIZATION

2.1. Promptly following execution of this Agreement, the Manager shall cause Restated Articles of Organization, in the form attached to this Agreement as Exhibit 1, to be filed with the California Secretary of State.

2.2. The name of the Company shall be the KELHAM VINEYARDS & WINERY, LLC

2.3. The principal executive office of the Company shall be at 360 Zinfandel Lane, St. Helena, California, or such other place or places as may be determined by the Manager from time to time.

2.4. The initial agent for service of process on the Company shall be SUSANNA R. KELHAM, whose address is: 360 Zinfandel Lane, St. Helena, California 94574. The Manager may from time to time change the company's agent for service of process.

2.5. The Company will be formed for the purposes of engaging in any lawful act or activity for which a limited liability company may be organized under the Beverly-Killea Limited Liability Company Act.

2.6. The Members intend the Company to be a limited liability company under the Act, classified as a partnership for federal and, to the maximum extent possible, state income taxes. Neither the Manager nor any Member shall take any action in consistent with the express intent of the parties to this Agreement

2.7. The term of existence of the Company shall comment on the effective date of filing of Articles of Organization with the California Secretary of State, and shall continue until the date specified in the article of organization, unless sooner terminated by the provisions of this Agreement or as provided by law.

2.8. The names and addresses of the Initial Members are as set forth in Exhibit 2.

2.9. The name and business address of the Manager is as set forth in Exhibit 3.

ARTICLE III: CAPITAL AND CAPITAL CONTRIBUTIONS

3.1. Each Member shall contribute to the capital of the Company as the Member's initial Capital Contribution the money and property specified in Exhibit 4. The initial Fair Market Value of each item of contributed property (net of liabilities secured by such property) that the Company is considered to assume or to take "subject to" under IRC section 752, is also set forth in Exhibit 4, together with the description and amount of these liabilities. If a Member fails to make the initial Capital Contributions specified in this Section within 30 days after the effective date of this Agreement, that Member's entire Membership Interest shall terminate, and that Member shall indemnify and hold the Company and the other Members harmless from any loss, cost, or expense, including reasonable attorney fees caused by the failure to make the initial Capital Contribution.

3.2. No Member shall be required to make any additional Capital Contributions. No Member may voluntarily make any additional Capital Contribution.

3.3. An individual Capital Account for each Member shall be maintained in accordance with the requirements of Reg. 1.704-1(b)(2)(iv) and adjusted in accordance with the following provisions:

(a) A Member's Capital Account shall be increased by that Member's Capital Contributions, that Member's share of Profits, and any items in the nature of income or gain that are specially allocated to that Member pursuant to Article IV.

(b) A Member's Capital Account shall be increased by the amount of any Company liabilities assumed by that Member subject to and in accordance with the provisions of Reg 1.704-1(b)(2)(iv)(c).

(c) A Member's Capital Account shall be decreased by (a) the amount of cash distributed to that Member; (b) the Fair Market Value of any property of the Company so distributed, net of liabilities secured by such distributed property that the distributee Member is considered to assume or to be subject to under IRC section 752; and (c) the amount of any items in the nature of expenses or losses that are specially allocated to that Member pursuant to Article IV.

(d) A Member's Capital Account shall be reduced by the Member's share of any expenditure of the Company described in IRC section 705(a)(2)(B) or which are treated as IRC section 705(a)(2)(B) expenditures pursuant to Reg section 1.704- 1(b)(2)(iv)(i) (including syndication expenses and losses nondeductible under IRC sections 267(a)(l) or 707(b)).

(e) If any Economic Interest (or portion thereof) is transferred, the transferee of such Economic Interest or portions shall succeed to the transferor's Capital Account attributable to such interest or portion.

(f) The principal amount of a promissory note that is not readily traded on an established securities market and that is contributed to the Company by the maker of the note shall not be included in the Capital Account of any Person until the Company makes a taxable disposition of the note or until (and to the extent) principal payments are made on the note, all in accordance with Reg section1.70 4-1(b)(2)(iv)(d)(2).

(g) Each Member's Capital Account shall be increased or decreased as necessary to reflect a revaluation of the Company's property assets in accordance with the requirements of Reg sections 1.704-1(b)(2)(iv)(f) and 1.704-1(b)(2)(iv)(g), including the special rules under Reg section 1.701-l(b)(4), as applicable. The provisions of this Agreement respecting the maintenance of Capital Accounts are intended to comply with Reg section1.704-1(b) and shall be interpreted and applied in a manner consistent with those Regulations.

3.4. A Member shall not be entitled to withdraw any part of the Member's Capital Contribution or to receive any distributions, whether of money or property, from the Company except as provided in this Agreement.

3.5. No interest shall be paid on funds or property contributed to the capital of the Company or on the balance of a Member's Capital Account.

3.6. A Member shall not be bound by, or be personally liable for, the expenses, liabilities, or obligations of the Company except as otherwise provided in the Act or in this Agreement.

3.7. No Member shall have priority over any other Member with respect to the return of a Capital Contribution or distributions or allocations of income, gain, losses, deductions, credits or items thereof.

## ARTICLE IV: ALLOCATIONS AND DISTRIBUTIONS

4.1. The Profits and Losses of the Company and all items of the Company income, gain, loss, deduction, or credit shall be allocates, for Company book purposes and for tax purposes, to a Member in accordance with the Member's Percentage Interest.

4.2. As used in this Agreement, "Profits and Losses" means, for each fiscal year or other period specified in this Agreement, an among equal to the Company's taxable income or loss for such period, determined in accordance with the IRC section 703(a), including al Tax Items required to be stated separately pursuant to IRC section 703(a)(1), with the following adjustments:

(a) Any income of the Company that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses shall be added to such taxable income or loss;

(b) Any expenditures of the Company described in IRC section705(a)(2)(B) or treated as IRC section 705(a)(2)(B) expenditures pursuant to Reg section 1.704-1(b)(z)(iv)(i) and not otherwise taken into account in computing Profits or Losses shall be subtracted fom such taxable income or shall increase such loss; and

(c) Notwithstanding the foregoing provisions of this Section 4.2, any items of income, gain, loss, or deduction that are specially allocated shall not be taken into account in computing Profits or Losses under Section 4.1.

4.3. The following definitions shall apply with respect to this Article IV.

(a) "Adjusted Capital Account Deficit" means with respect to any Member the deficit balance, if any, in such Member's Capital Account as of the end of the relevant fiscal year of the Company, after such Member's Capital Account has been adjusted as follows: (1) the Member's Capital Account shall be increased by the amount of such Member's share of Company Minimum Gain and Member N onrecourse Debt Minimum Gain; and(2) the Member's Capital Account shall be decreased by the amount of the items described in Reg sections 1.704-l(b)(2)(ii)(d)(4),(5), and (6).

This definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Reg section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently with that Regulation.

(b) "Book Depreciation" means, with respect to any item of Company property for a given fiscal year, a percentage of depreciation or other cost recovery deduction allowable for federal income tax purposes for such item during that fiscal year equal to the result (expressed as a percentage) obtained by dividing (1) the Fair Market Value of that item at the beginning of the fiscal year (or the acquisition date during

the fiscal year), by (2) the federal adjusted tax basis of the item at the beginning of the fiscal year (or the acquisition date during the fiscal year). If the adjusted tax basis of an item is zero, the Manager may determine Book Depreciation, provided that he does so in a reasonable and consistent manner.

(c) "Company Minimum Gain" has the meaning set forth in Reg section 1.704-2(d)(1).

(d) "Member Nonrecourse Debt" is defined in Reg section 1.704-2(b)(4).

(e) "Member Nonrecourse Debt Minimum Gain" for a fiscal year of the Company means the net increase in Minimum Gain attributable to Member Nonrecourse Debt, determined as set forth in Reg section 1.704-2(i)(2).

(f) "Member Nonrecourse Deductions" has the meaning set forth in Reg section 1.704-2(1)(2). For any fiscal year of the Company the amount of Member Nonrecourse Deductions with respect to a Member Nonrecourse Debt equals the net increase during that fiscal year in Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt during that fiscal year, reduced (but not below zero) by the amount of any distributions during such year to the Member bearing the economic risk of loss for such Member Nonrecourse Debt if such distributions are both from the proceeds of such Member Nonrecourse Debt and are allocable to an increase in Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt, all as determined according to the provisions of Reg section 1.704-2(i)(2). In determining Member Nonrecourse Deductions the ordering rules of Reg section 1.704-2(j) shall be followed.

(g) "Nonrecourse Deductions" has the meaning set forth in Reg section 1.704-2(c). The amount of Nonrecourse Deductions for a Company fiscal year equals the net increase in the amount of Company Minimum Gain during that fiscal year, reduced (but not below zero) by the aggregate amount of any distributions during that fiscal year of proceeds of a Nonrecourse Liability that are allocable to an increase in Company Minimum Gain.

(h) "Nonrecourse Liability" is defined in Reg section 1.752-1(a)(2).

4.4. The following special allocations shall be made in the following order:

(a) Company Minimum Gain Chargeback. If there is a net decrease in Company Minimum Gain during a fiscal year, each Member shall be allocated before any other allocation under this Section, items of Company income and gain for such fiscal year equal to such Member's share of the net decrease in Company Minimum Gain as determined in accordance with Reg section1.704-2(g) (2).

(b) Member Nonrecourse Debt Minimum Gain Chargeback. If there is a net decrease in Member Nonrecourse Debt Minimum Gain during a fiscal year, any Member with a share of the Member Nonrecourse Debt Minimum Gain attributable to such Member

Nonrecourse Debt as of the beginning of such fiscal year shall be allocated items of Company income and gain for such year (and, if necessary, subsequent years) equal to that Member's share of the net decrease in Member Nonrecourse Debt Minimum Gain. A Member's share of net decrease in Member Nonrecourse Debt Minimum Gain shall be determined pursuant to Reg section 1.704-2 (g)(2). A Member shall not be subject to the foregoing chargeback to the extent permitted under Reg section 1.704-2(i)(4).

(c) Qualified Income Offset. If any Member unexpectedly receives an adjustment, allocation, or distribution described in Reg section 1.704-1(b)(2)(ii)(d)(4)(5), or (6), such Member shall be allocated items of Company income and gain (consisting of a pro rata portion of each item of Company income including gross income and gain for such fiscal year) in an amount and manner sufficient to eliminate the Adjusted Capital Account Deficit created by such adjustment, allocation, or distribution.

4.5. Member Nonrecourse Deductions for any fiscal year of the Company shall be allocated to the Members in the same proportion as Profits are allocated under Section 4.1, provided that any Member Nonrecourse Deductions for any fiscal year or other period shall be allocated to the Member who bears (or is deemed to bear) the economic risk of loss with respect to the Member Nonrecourse Debt to which such Member Nonrecourse Deductions are attributable in accordance with Reg section 1.704-2(i)(2).

4.6. In any fiscal year of the Company, Profits in excess of Losses of the Company resulting from a Capital Event in that Fiscal Year shall be allocated to the Members in the following order:

(a) To Members, whose Adjusted Capital Contributions are in excess of their Capital Accounts, in proportion to those excesses, until all of those excesses have been eliminated. "Adjusted Capital Contributions" means, with respect to each Member the excess of such Member's contribution to the capital of the Company over all prior distributions to the Member that have resulted from Capital Events.

(b) Among the Members in the proportion that the Capital Contribution of each Member bears to the total Capital Contributions of all Members.

4.7. In any fiscal year of the Company, Losses in excess of Profits of the Company, resulting from a Capital Event in that fiscal year, shall be allocated to the Members with positive Capital Accounts, in proportion to their positive Capital Account balances, until no Member has a positive Capital Account. For this purpose Capital Accounts shall be reduced by the adjustments set forth in Reg sections 1.704-1(b)(2)(ii)(d)(4), (5), and (6).

4.8. Any unrealized appreciation or unrealized depreciation in the values of Company property distributed in kind to Members shall be deemed to be Profits or Losses realized by the Company immediately prior to the distribution of the property and such Profits or Losses shall be allocated to the Capital Accounts in the same proportions as Profits are allocated under Section 4.1. Any property so distributed shall be treated as a distribution

to the Members to the extent of the Fair Market Value of the property, less the amount of any liability secured by and related to the property. Nothing contained in this Agreement is intended to treat or cause such distributions to be treated as sales for value. For the purposes of this Section 4.8, "unrealized appreciation" or "unrealized depreciation" shall mean the difference between the Fair Market Value of such property and the Company's federal adjusted tax basis for such property.

4.9. Any item of income, gain, loss, or deduction with respect to any property (other than cash) that has been contributed by a Member to the capital of the Company, or that has been revalued pursuant to the provisions of Article III, Section 3. [6](g), and that is required or permitted to be allocated to such Member for income tax purposes under IRC section 704(c) in order to take into account the variation between the tax basis of such property and its Fair Market Value at the time of its contribution, shall be allocated solely for income tax purposes in the manner required or permitted under IRC section 704(c) using the "traditional" method described in Reg section 1.704-3(b), except that any other method allowable under applicable Regulations may be used for any contribution of property with respect to which there is agreement among the contributing Member and the Manager (and, if the Manager and the contributing Member are Affiliates, a Majority of Members who are not Affiliates of the Manager).

4.10. In the case of a Transfer of an Economic Interest during any fiscal year of the Company, the Assigning Member and Assignee shall each be allocated Profits or Losses based on the number of days each held the Economic Interest during that fiscal year. if the Assigning Member and Assignee agree to a different proration and advise the Manager of the agreed proration before the date of the Transfer, Profits or Losses from a Capital Event during that fiscal year shall be allocated to the holder of the Interest on the day such Capital Event occurred. If an Assignee makes a subsequent Assignment, said Assignee shall be considered an "Assigning Member" with respect to the subsequent Assignee for purposes of the aforesaid allocations.

4.11. (a) The Gross Asset Value of all Company property shall be adjusted as of the following times: (l) the acquisition of an interest or additional interest in the Company by any new or existing Member in exchange for more than a de minimis Capital Contribution; (2) the distribution of money or other property (other than a de minimis amount) by the Company to a Member as consideration for Economic Interest in the Company, and (3) the liquidation of the Company within the meaning of Reg section 1.704-l(b)(2)(ii)(g); provided, however, that adjustments under clauses (1) and (2) above shall be made only in the event of a revaluation of Company property under Article III, Section 3. [6](g) in accordance with Reg section 1.704-1(b)(2)(iv)(f);

(b) The Gross Asset Value of Company property shall be increased or decreased to reflect Adjustments to the adjusted tax basis of such property pursuant to IRC section 732, IRC section 733, or IRC section7 43, subject to the limitations imposed by IRC section 755 and Reg section 1.704-l(b)(2)(iv)(m); and

(c) If the Gross Asset Value of an item of property has been determined or adjusted pursuant to Article I, Section 22 or Paragraph (a) or (b) of this Section 4.11, such Gross Asset Value shall be adjusted by the Book Depreciation if, any, taken into account with respect to such property for purposes of computing Profits and Losses.

4.12. It is the intent of the Members that each Member's allocated share of Company Tax Items are determined in accordance with this Agreement to the fullest extent permitted by IRC sections 704 (b) and 704(c). Notwithstanding anything to the contrary contained in this Agreement, if the Company is advised that, as a result of the adoption of new or amended regulations pursuant to IRC sections 704(b) and 704(c), or the issuance of authorized interpretations, the allocations provided in this Agreement are unlikely to be respected for federal income tax purposes, the Manager is hereby granted the power to amend the allocation provisions of this Agreement, on advice of accountants and legal counsel, to the minimum extent necessary to cause such allocation provisions to be respected for federal income tax purposes,



4.13. All Available Cash, other than revenues or proceeds from a Capital Event or the dissolution of the Company, shall be distributed among the Members in the same manner as Profits. The parties intend that Available Cash shall be distributed as soon as practicable following the Manager's determination that such cash is available for distribution. The parties acknowledge that no assurances can be given with respect to when or whether said cash will be available for distributions to the Members.



4.14. All Available Cash resulting from a Capital Event (as distinguished from normal business operations or the dissolution of the Company) shall be distributed to the Members in accordance with their respective Percentage interests at such times as the Members may agree,

4.15. If the proceeds from a sale or other disposition of an item of Company property consistent of property other than cash, the value of that property shall be as determined by the Manager. Such on cash proceed shall then be allocated among all the Members in proportion to their Percentage Interests. If such non-cash proceeds are subsequently reduced to cash, such cash shall be distributed to each Member in accordance with Section 4.14.

4.16. Notwithstanding any other provisions of this Agreement to the contrary, when there is a distribution in liquidation of the Company, or when any Member's interests liquidated, all items of income and loss first shall be allocated to the Members Capital Accounts under this Article IV, and other credits and deductions to the Members Capital Accounts shall be made before the final distribution is made. The final distribution to the Members shall be made as provided in Article IX, Section9 .2(d) of this Agreement. The provisions of this Section 4 .16 and Article IX, Section9 .2(d) shall be construed in accordance with the requirements of Reg section1 .704-1(b)(2)(ii)(b)(2).

## ARTICLE V: MANAGEMENT

5.1. The business of the Company shall be managed by the Person named as a Manager in Article II, Section 2 .9. or any successors, selected as provided in Section 5 .3. Except as otherwise provided in this Agreement, all decisions concerning the management of the Company's business shall be made by the Manager or if there is more than one Manager, then by a Vote of a majority, by member, of the Managers.

5.2. Each Manager shall serve until the earlier of (l) the Manager's resignation, retirement, death, or disability; (2) the Manager's removal by the Members; and (3) the expiration of the Manager's term as Manager, if a term has been designated by a Majority of Members. A new Manager shall be appointed by a majority of Members on the occurrence of any of the foregoing events.

5.3. Each Manager has been appointed by a Majority of Members for (a) a term expiring with the appointment of a successor. A Manager who is not also a Member may be removed with or without cause at any time by action of a Majority of Members. A Manager who is a Member may be removed only on the Vote of all other Members and the execution and filing of a Certificate of Amendment of the Articles of Organization of the Company in conformity with Corporations Code section 17054. if necessary, to provide that the Company is to be managed by Members.

5.4. The Manager shall have the powers and duties described in Section 5.8 hereof and such other powers and duties as may be prescribed in this Agreement or by the Members. Notwithstanding the foregoing, the Manager shall not take any of the following actions on behalf of the Company unless all of the Members consent to the taking of such action.

(a) Any act that would make it impossible to carry on the ordinary business of the Company;

(b) Any confession of a judgment against the Company

(c) The dissolution of the Company;

(d) The disposition of all or a substantial part of the Company's assets not in the ordinary course of business:

(e) The incurring of any debt not in the ordinary course of business;

(f) A change in the nature of the principal business of the Company;

(g) The incurring of any contractual obligation or the making of any capital expenditure with a total cost of more than ten thousand dollars ($10,000);

(h) The filing of a petition in bankruptcy or the entering into of an arrangement among creditors; and

(i) The entering into, on behalf of the Company, of any transaction constituting a "reorganization" within the meaning of Corp C 17600.

(j) The employing, hiring, or otherwise working in the Company of any spouse, girlfriend, and/or significant other of any of the Members without unanimous vote of all Members.

5.5. If there is more than one Manager, actions of the Managers shall be taken at meetings or as otherwise provided in this Section 5.5 by a majority. No regular meetings of the Managers need be held. The Managers may call a meeting of the Managers by giving Notice of the time and place of the meeting at least 48 hours prior to the time of the holding of the meeting. The Notice need not specify the purpose of the meeting, nor the location if the meeting is to be held at the principal executive office of the Company.

If there is more than one Manager, a majority of Managers shall constitute a quorum for the transaction of business at any meeting of the Managers.

If there is more than one Manager, the transactions of the Managers at any meeting, however called or noticed, or wherever held, shall be as valid as though transacted at a meeting duly held after call and notice if a quorum is present and if either before or after the meeting, each Manager not present signs a written waiver of notice or a consent to the holding of such meeting or an approval of the minutes of such meeting.

If there is more than one Manager any action required or permitted to be taken by the Managers under this Agreement may individually or collectively consent in writing to such action.

Managers may participate in the meeting through the use of a conference telephone or similar communications equipment, provided that all Managers participating in the meeting can hear one another.

The Manager shall keep or cause to be kept with the books and records of the Company full and accurate minutes of all meetings, notices and waivers of notices of meetings, and all written consents of actions of the Managers, if there is more than one Manager.

5.6. It is acknowledged that the Manager has other business interests to which the Manager devotes part of the Manager's time. The Manager shall devote such time to the conduct of the business of the Company as tire Manager, in the Manager's own good faith and discretion, deems necessary.

5.7. The Manager shall be entitled to compensation for the Manager's services and to reimbursement for all expenses reasonably incurred by the Manager in the performance of the Manager's duties.

5.8. The Manager shall be the chief executive officer of the Company and shall have general supervision of the business and affairs of the Company, shall preside at all meetings of Members and of Managers, and shall have such other powers and duties usually vested in a chief executive officer. A Unanimous Vote of the Members is required to assign additional officers of the Company, and to alter the powers and duties of the Manager. The Manager can establish the powers and duties of all other officers and the compensation of all Company officers and amendment the articles of organization of this Agreement as required.

5.9. The Manager shall cause all assets of the Company whether real or personal, to be held in the name of the Company.

5.10. All funds of the Company shall be deposited in one or more accounts with one or more recognized financial institutions in the name of the Company, at such locations as shall be determined by the Manager. Withdrawal from such accounts shall require only the signature of the Manager or such other person or persons as the Manager may designate.

## ARTICLE VI: ACCOUNTS AND ACCOUNTING

6.1. Complete books of account of the Company's business in which each Company transaction shall be fully and accurately entered, shall be kept at the Company's principal executive office and at such other locations as the Manager shall determine from time to time and shall be open to inspection and copying on reasonable Notice by any Member or the Member's authorized representatives during normal business hours. The costs of such inspection and copying shall be borne by the Member.

6.2. Financial books and records of the company shall be kept on the cash method of accounting, which shall be the method of accounting followed by the company for federal income, tax purposes. The financial statements of the Company shall be appropriate and adequate for the company's business and for carrying out the provisions of this Agreement. The fiscal year of the Company shall be January 1 through December 31.

6.3. At all times during the term of existence of the Company, and beyond that term if the Manager deems it necessary; the Manager shall keep or cause to be kept the books of account referred to in Section 6.2, together with:

(a) A current list of the full name and last known business or residence address of each Member, together with the capital contribution and the share in Profits and Losses of each Member;

(b) A current list of the full name and business or residence address of each Manager;

(c) A copy of the Articles of Organization, as amended;

(d) Copies of the Company's federal, state, and local income tax or information returns and reports, if any, for the six most recent taxable years;

(e) An original executed copy or counterparts of this Agreement, as amended;

(f) Any powers of attorney under which the Articles of Organization or any amendments to said articles were executed;

(g) Financial statements of the Company for the six most recent fiscal years, and

(h) The books and Records of the Company as they relate to the Company's internal affairs for the current and past four fiscal years.

If the Manager deems that any of the foregoing items shall be kept beyond the term of existence of the Company, the repository of said items shall be as designated by the Manager.

6.4. Within 75 days after the end of each taxable year of the Company the Manager shall send to each of the Members all information necessary for the Members to complete their federal and state income tax or information returns and a copy of the Company's federal, state, and local income tax or information returns for such year.

## ARTICLE VII: MEMBERSHIP-MEETINGS,

## VOTING, INDEMNITY

7.1. There shall be only one class of membership and no Member shall have any rights or preferences in addition to or different from those possessed by any other Member except as specifically provided for in Article IV. Members shall have the right and power to appoint, remove, and replace Managers and officers of the Company and the right to Vote on all other matters with respect to which this Agreement or the Act requires or permits such Member action. Each Member shall Vote in proportion to the Member's Percentage Interest as of the governing record date, determined in accordance with Section 7 .2, If a Member has assigned all or part of the Member's Economic Interest to a person who has not been admitted as a Member, the Assigning Member shall Vote in proportion to the Percentage Interest that the Assigning Member would have had, if the assignment had not been made.

Without limiting the foregoing, all of the following acts shall require a sixty-six and two-thirds percent (66 2/3%) Vote of the Members:

(a) The Transfer of a Membership Interest and the admission of the Assignee as a Member of the Company;

(b) A compromise of the obligation of a Member to make a Capital Contribution under Article III.

7.2. The record date for determining the Members entitled to receive Notice of any meeting, to Vote, to receive any distribution, or to exercise any right in respect of any other lawful action, shall be the date set by the Manager or by a Majority of Members; provided that such record date shall not be more than 60, or less than ten calendar days prior to the date of the meeting and not more than 60 calendar days prior to any other

action. In the absence of any action setting a record date, the record date shall be determined in accordance with Corp C section 17104(k).

7.3. At all meetings of Members, a Member may Vote in person or by Proxy. Such Proxy shall be filed with the Manager before or at the time of the meeting, and may be filed by facsimile transmission to the Manager at the principal executive office of the Company or such other address as may be given by the Manager to the Members for such purposes.

## ARTICLE VIII: TRANSFERS OF MEMBERSHIP INTERESTS

8.1. A Member may not withdraw from the Company without the written consents of all remaining Members. Withdrawal shall not release a Member from any obligations and liabilities under this Agreement accrued or incurred prior to the effective date of withdrawal. A withdrawing Member shall have only the rights of a holder of an Economic Interest in the Company in respect of the Member's Membership Interest in the Company. Unless all remaining Members consent to such withdrawal, the withdrawing Member shall not be entitled to a distribution of its Economic Interest until the dissolution and liquidation of the Company. For purposes of this Section 8.1, the term "Economic Interest" shall not mean or include any right to share in the income, gains, losses, deductions, credits, or similar items of the Company attributable to any period following withdrawal, or any right to information concerning the business and affairs of the Company, except as provided in Corporations Code section 17106.

8.2. Except as expressly provided in this Agreement, a Member shall not transfer any part of the Member's Membership Interest in the Company, whether now owned or later acquired, unless (a) the other Members unanimously approve the transferee's admission to the Company as a Member upon such Transfer and (b) the Membership Interest to be transferred, when added to the total of all other Membership Interests transferred in the preceding 12 months, will not cause the termination of the Company under the Code. No Member may Encumber or permit or suffer any Encumbrance of all or any part of the Member's Membership Interest in the Company unless such Encumbrance has been approved in writing by the Manager. Such approval may be granted or withheld in the Manager's sole discretion. Any Transfer or Encumbrance of a Membership Interest without such approval shall be void. Notwithstanding any other provision of this Agreement to the contrary, a Member who is a natural person may transfer all or any portion of his or her Membership Interest to any revocable trust created for the benefit of the Member, or any combination between or among the Member and the Member's issue; provided that the Member retains a beneficial interest in the trust and all of the Voting Interest included in such Membership Interest. A Transfer of a Member's beneficial interest in such trust, or failure to retain such Voting Interest, shall be deemed a Transfer of a Membership interest.

8.3. If a Member wishes to transfer any or all of the Member's Membership Interest in the Company pursuant to a Bona Fide Offer (as defined below), the Member shall give Notice to the Managers at least 30 days in advance of the proposed sale or Transfer, indicating the terms of the Bona Fide Offer and the identity of the offeror. The Company

and the other Members shall have the option to purchase the Membership Interest proposed to be transferred at the price and on the terms provided in this Agreement. If the price for the Membership Interest is other than cash, the fair value in dollars of the price shall be as established in good faith by the Company. For purposes of this Agreement, "Bona Fide Offer" means an offer in writing setting forth all relevant terms and conditions of purchase from an offeror who is ready, willing, and able to consummate the purchase and who is not an Affiliate of the selling Member. For 30 days after the Notice is given, the Company shall have the right to purchase the Membership Interest offered, on the terms stated in the Notice, for the lesser of (a) the price stated in the Notice (or the price plus the dollar value of noncash consideration, as the case may be) and (b) the price determined under the appraisal procedures set forth in Section 8.8.

If the Company does not exercise the right to purchase all of the Membership Interest, then, with respect to the portion of the Membership Interest that the Company does not elect to purchase, that right shall be given to the other Members for an additional 30-dayperiod, beginning on the day that the Company's right to purchase expires. Each of the other Members shall have the right to purchase, on the same terms, a part of the interest of the offering Member in the proportion that the Member's Percentage Interest bears to the total Percentage Interests of all of the Members who choose to participate in the purchase; provided, however, that the Company and the participating Members may not, in the aggregate, purchase less than the entire interest to be sold by the offering Member.

If the Company and the other Members do not exercise their rights to purchase all of the Membership Interest, the offering Member may, within 90 days from the date the Notice is given and on the terms and conditions stated in the Notice, sell or exchange that Membership Interest to the offeror named in the Notice. Unless the requirements of Section 8.2 are met, the offeror under this section shall become an Assignee, and shall be entitled to receive only the share of Profits or other compensation by way of income and the return of Capital Contribution to which the assigning Member would have been entitled.

8.4. On the happening of any of the following events (Triggering Events) with respect to a Member or an Assignee of an economic interest, the Company and the other Members shall have the option to purchase the economic interest or Membership Interest in the Company of such Assignee of an economic interest or Member (Selling Member) at the price and on the terms provided in Section 8.8 of this Agreement:

(a) The death, bankruptcy, or withdrawal of a Member or an Assignee of an economic interest, or the winding up and dissolution of a corporate Member, or merger or other corporate reorganization of a corporate Member as a result of which the corporate Member does not survive as an entity; provided that the remaining Members have elected to continue the business of the Company as provided in Article IX, Section 9.l(a)

(b) The failure of a Member or an Assignee of an economic interest to make the Member's Capital Contribution pursuant to the provisions of Article III of this Agreement.

(c) The occurrence of any other event that is, or that would cause, a Transfer in contravention of this Agreement.

Each Member or Assignee of an economic interest agrees to promptly give Notice of a Triggering Event to the Managers.

8.5. Notwithstanding any other provisions of this Agreement:

(a) If, in connection with the divorce or dissolution of the marriage of a Member, any court issues a decree or order that transfers, confirms, or awards a Membership Interest, or any portion thereof to that Member's spouse (an "Award"), then, notwithstanding that such transfer would constitute an unpermitted Transfer under this Agreement, that Member shall have the right to purchase from his or her former spouse the Membership Interest, or portion thereof that was so transferred, and such former spouse shall sell the Membership Interest or portion thereof to that Member at the price set forth below in Section 8.8 of this Agreement. If the Member has failed to consummate the purchase within 180 days after the court award (the Expiration Date), the Company and the other Members shall have the option to purchase from the former spouse the Membership Interest or portion thereof pursuant to Section 8.6 of this Agreement; provided that the option period shall commence on the later of (1) the day following the Expiration Date, or (2) the date of actual notice of the Award.

(b) Upon the death of a Member or an Assignee of an economic interest, the interest of such deceased person may only be left to another Member, the issue of another Member or the issue of such deceased person. If, by reason of the death of a spouse of a Member, any portion of a Membership Interest is transferred to a Transferee other than (1) that Member or (2) a trust created for the benefit of that Member (3) or for the benefit of that Member and any combination between or among the Member and the Member's issue, in which the Member is the sole Trustee and the Member, as Trustee or individually possesses all of the Voting Interest included in that Membership Interest, then the Member shall have the right to purchase the Membership Interest or portion thereof from the estate or other successor of his or her deceased spouse or Transferee of such deceased spouse, and the estate, successor, or Transferee shall set the Membership Interest or portion thereof at the price set forth in Section 8.8 of this Agreement. If the Member has failed to consummate the purchase within 180 days after the date of death (the Expiration Date), the Company and the other Members shall have the first right to purchase from the estate or other successor of the deceased spouse the Membership Interest shall or portion thereof pursuant to Section 8.6 of this Agreement; provided that the option period shall commence on the later of (1) the day following the Expiration Date, or (2) the date of actual notice of the death.

8.6. On the receipt of Notice by the Manager and the other Members as contemplated by Sections 8.1, 8.3, and 8.5, and on receipt of actual notice of any Triggering Events as determined in good faith by the Manager (the date of such receipt is hereinafter referred to as the "Option Date") the Manager shall promptly cause a Notice of the occurrence of such a Triggering Event to be sent to all Members, and the Company shall have the option, for a period ending 30 calendar days following the determination of the purchase price as provided in Section 8.8, to purchase the Membership Interest in the Company to which the option relates, at the price and on the terms set forth in Section 8.8 of this Agreement, and the other Members, pro rata in accordance with their prior Membership Interests in the Company, shall then have the option, for a period of 30 days thereafter, to purchase the Membership Interest in the Company not purchased by the Company, on the same terms and conditions as apply to the Company. If all other Members do not elect to purchase the entire remaining Membership Interest in the Company, then the Members electing to purchase shall have the right, pro rata in accordance with their prior Membership Interest in the Company, to purchase the additional Membership Interest in the Company available for purchase The transferee of the Membership Interest in the Company that is not purchased shall hold such Membership Interest in the Company subject to all of the provisions of this Agreement.

8.7. Neither the Member whose interest is subject to purchase under this Article, nor such Member's Affiliate, shall participate in any Vote or discussion of any matter pertaining to the disposition of the Member's Membership Interest in the Company under this Agreement.

8.8. The purchase price of the Membership Interest that is the subject of an option under Section 8.6 shall be the, "Fair Option Price" of the interest and determined under this Section 8.8. "Fair Option Price", means f lie cash price that a willing buyer would pay to a willing seller when neither is acting under compulsion and when both have reasonable knowledge of the relevant facts on the Option bate. Each of the selling and purchasing parties shall use his, her, or its best efforts to mutually agree upon the Fair Option Price. If the parties are unable to so agree within 30 days of the Option Date, the selling party shall appoint, within 40 days of the Option Date, one appraiser, and the purchasing party shall appoint within 40 days of the Option Date, one appraiser. The two appraisers shall within a period of five additional days, agree upon and appoint an additional appraiser. The three appraisers shall, within 60 days after the appointment of the third appraiser, determine the Fair Option Price of the Membership Interest in writing and submit their report to all the parties.

The Fair Option Price shall be determined by disregarding the appraiser's valuation that diverges the greatest from each of the of the two appraisers' valuations, and the arithmetic mean of the remaining two appraisers' valuations shall be the Fair Option

Price. Each purchasing party shall pay for the services of the appraiser selected by it, plus one half of the fee charged by the third appraiser, and one half of all other costs relating to the determination of Fair Option Price. The Fair Option Price as so determined shall be payable in cash.

8.9. Except as expressly permitted under Section 8.2, a prospective transferee (other than an existing Member) of a Membership Interest may be admitted as a Member with respect to such Membership Interest (Substituted Member) only (a) on the unanimous Vote of the other Members in favor of the prospective transferee's admission as a Member, and (b) on such prospective transferee executing a counterpart of this Agreement as a party hereto. Any prospective transferee of a Membership Interest shall be deemed an Assignee's, and, therefore, the owner of only an Economic Interest until such prospective transferee has been admitted as a Substituted Member. Except as otherwise permitted in the Act, any such Assignee shall be entitled only to receive allocations and distributions under this Agreement with respect to such Membership Interest and shall have no right to Vote to exercise any rights of a Member until such Assignee has been admitted as a Substituted Member. Until the Assignee becomes a Substituted Member, the Assigning Member will continue to be a Member and to have the power to exercise any rights and powers of a Member under this Agreement, including the right to Vote in proportion to the Percentage Interest that the Assigning Member would have had in the event that the assignment had not been made.

8.10. Any person admitted to the Company as a Substituted Member shall be subject to all the provisions of this Agreement that apply to the Member from whom the Membership Interest was assigned, provided, however, that the assigning Member shall not be released from liabilities as a Member solely as a result of the assignment, both with respect to obligations to the Company and to third parties, incurred prior to the assignment.

8.11. The initial sale of Membership Interests in the Company to the Initial Members has not been qualified or registered under the securities laws of any state, including California, or registered under the Securities Act of 1933, in reliance upon exemptions from the registration provisions of those laws. Notwithstanding any other provision of this Agreement, Membership Interest may not be transferred unless registered or qualified under applicable state and federal securities law unless, in the opinion of legal counsel satisfactory to the Company, such qualification or registration is not required. The Member who desires to transfer a Membership Interest shall be responsible for all legal fees incurred in connection with said opinion.

ARTICLE IX: DISSOLUTION AND WINDING UP

9.1. The Company shall be dissolved upon the first to occur of the following events:

    (a) The death, bankruptcy, retirement, resignation, expulsion. or dissolution of a Member, if the remaining Members, by the Vote of a Majority of Members within 180 days of the happening of that event Vote to dissolve the business of the

Company, in which case, the Company shall dissolve. For purposes of this Paragraph (a), in determining a Majority of Members, the Percentage Interest of the Member who has died, become bankrupt, retired, resigned, been expelled or dissolved shall not be taken into account.

(b) The expiration of the term of existence of the Company.

(c) The written agreement of all Members to dissolve the Company.

(d) The sale or other disposition of substantially all of the Company's assets.

(e) Entry of a decree of judicial dissolution under Corporations Code section 17351.

9.7. On the dissolution of the Company, the Company shall engage in no further business other than that necessary to wind up the business and affairs of the Company. The Managers who have not wrongfully dissolved the Company or', if there is no such Manager, the Members, shall wind up the affairs of the Company. The Delegates winding up the affairs of the Company shall give Notice of the commencement of winding up by mail to all known creditors and claimants against the Company whose addresses appear in the records of the Company. After paying or adequately providing for the payment of all known debts of the Company (except debts owing to Members), the remaining assets of the Company shall be distributed or applied in the following order:

(a) To pay the expenses of liquidation.

(b) To the establishment of reasonable reserves by the Delegate for contingent liabilities or obligations of the Company. Upon the Delegate's determination that such reserves are no longer necessary, said reserves shall be distributed as p provided in this Section 9.2.

(c) To repay outstanding loans to Members. If there are insufficient funds to pay such Loans in full, each Member shall be repaid in the ratio that the Member's loan, together with interest accrued and unpaid there on, bears to the total of all such loans from Members, including all interest accrued and unpaid thereon. Such repayment shall first be credited to unpaid principal and the remainder shall be credited to accrued and unpaid interest.

(d) Among the Members with Positive Capital Account Balances as provided in Article IV, Section. 4.16.

9.3. Each Member shall look solely to the assets of the Company for the return of the Member's investment, and if the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the investment of each Member, such Member shall have no recourse against any other

Members for indemnification, contribution, or reimbursement, except as specifically provided in this Agreement.

## ARTICLE X: ARBITRATION

10.1. Any action to enforce or interpret this Agreement, or to resolve disputes with respect to this Agreement as between the Company and a Member, or between or among the Members, shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Arbitration shall be the exclusive dispute resolution process in the State of California, but arbitration shall be a nonexclusive process elsewhere. Any party may commence arbitration by sending a written demand for arbitration to the other parties. Such demand shall set forth the nature of the matter to be resolved by arbitration. The Manager shall select the place of arbitration. The substantive law of the State of California shall be applied by the arbitrator to the resolution of the dispute. The parties shall share equally all initial costs of arbitration. The prevailing party shall be entitled to reimbursement of attorney fees, costs, and expenses incurred in connection with the arbitration. All decisions of the arbitrator shall be final, binding, and conclusive on all parties. Judgment may be entered upon any such decision in accordance with applicable law in any court having jurisdiction thereof. The arbitrator (if permitted under applicable law) or such court may issue a writ of execution to enforce the arbitrator's decision.

## ARTICLE XI: GENERAL PROVISIONS

11.1. This Agreement constitutes the whole and entire agreement of the parties with respect to the subject matter of this Agreement, and it shall not be modified or amended in any respect except by a written instrument executed by all the parties. This Agreement replaces and supersedes all prior written and oral agreements by and among the Members and Managers or any of them.

11.2. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.3. This Agreement shall be construed and enforced in accordance with the internal laws of the State of California. If any provision of this Agreement is determined by any court of competent jurisdiction or arbitrator to be invalid, illegal, or unenforceable to any extent, that provision shall, if possible, be construed as though more narrowly drawn, if a narrower construction would avoid such invalidity, illegality, or unenforceability or, if that is not possible, such provision shall, to the extent of such invalidity, illegality, or unenforceability, be severed, and the remaining provisions of this Agreement shall remain in effect.

11.4. This Agreement shall be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

11.5. Whenever used in this Agreement, the singular shall include the plural and the plural shall include the singular, and the neuter gender shall include the male and female as well as a trust, firm, company, or corporation, all as the context and meaning of this Agreement may require.

11.6. The parties to this Agreement shall promptly execute and deliver any and all additional documents, instruments, notices, and other assurances, and shall do any and all other acts and things, reasonably necessary in connection with the performance of their respective obligations under this Agreement and to carry out the intent of the parties.

11.7. Except as provided in this Agreement, no provision of this Agreement shall be construed to limit in any manner the Members in the carrying on of their own respective businesses or activities.

11.8. Except as provided in this Agreement, no provision of this Agreements shall be construed to constitute a Member, in the Member's capacity as such, the agent of any other Member.

11.9. Each Member represents and warrants to the other Members that the Member has the capacity and authority to enter into this Agreement.

11.10. The article, section, and paragraph titles and headings contained in this Agreement are inserted as a matter of convenience and for ease of reference only and shall be disregarded for all other purposes, including the construction or enforcement of this Agreement or any of its provisions.

11.11. This Agreement may be altered, amended, or repealed only by a writing signed by all of the Members.

11.12. Time is of the essence of every provision of this Agreement that specifies a time for performance.

11.13. This Agreement is made solely for the benefit of the parties to this Agreement and their respective permitted successors and assigns, and no other person or entity shall have or acquire any right by virtue of this Agreement.

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Agreement on the day and year first above written.

| RONALD C. NICHOLSEN | HAMILTON NICHOLSEN | SUSANNA R. KELHAM |
|---|---|---|
| Manager and Member | Manager and Member | Manager and Member |

KELHAM VINEYARDS & WINERY, LLC

EXHIBIT 2

MEMBERS

NAME:                           ADDRESS:

SUSANNA R. KELHAM        P.O. Box 2707, Yountville, California 94599

RONALD C. NICHOLSEN     P.O. Box 2707, Yountville, California 94599

HAMILTON R. NICHOLSEN   P.O. Box 2707, Yountville, California 94599

KELHAM VINEYARDS & WINERY, LLC

EXHIBIT 3

MANAGER

Name:                          Address:

Susanna R. Kelham              360 Zinfandel Lane, St. Helena, CA 94574

Successors:

Hamilton Nicholsen, Member     360 Zinfandel Lane, St. Helena, CA 94574

Ronald Nicholsen, Member       360 Zinfandel Lane, St. Helena, CA 94574

As Equal Managing Members



# State of California
## Secretary of State

## LIMITED LIABILITY COMPANY
## CERTIFICATE OF AMENDMENT

A $30.00 filing fee must accompany this form.

IMPORTANT – Read instructions before completing this form.

This Space For Filing Use Only

| 1. | SECRETARY OF STATE FILE NUMBER 200035310017 | 2. | NAME OF LIMITED LIABILITY COMPANY Kelham Vineyards & Winery LLC |
|---|---|---|---|

3. COMPLETE ONLY THE SECTIONS WHERE INFORMATION IS BEING CHANGED. ADDITIONAL PAGES MAY BE ATTACHED IF NECESSARY.

A. LIMITED LIABILITY COMPANY NAME (END THE NAME WITH THE WORDS "LIMITED LIABILITY COMPANY," "LTD. LIABILITY CO." OR THE ABBREVIATIONS "LLC" OR "L.L.C.")

B. THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY (CHECK ONE):

[✓] ONE MANAGER
[ ] MORE THAN ONE MANAGER
[ ] ALL LIMITED LIABILITY COMPANY MEMBER(S)

C. AMENDMENT TO TEXT OF THE ARTICLES OF ORGANIZATION:

As attached

D. OTHER MATTERS TO BE INCLUDED IN THIS CERTIFICATE MAY BE SET FORTH ON SEPARATE ATTACHED PAGES AND ARE MADE A PART OF THIS CERTIFICATE. OTHER MATTERS MAY INCLUDE A CHANGE IN THE LATEST DATE ON WHICH THE LIMITED LIABILITY COMPANY IS TO DISSOLVE OR ANY CHANGE IN THE EVENTS THAT WILL CAUSE THE DISSOLUTION.

| 4. | FUTURE EFFECTIVE DATE, IF ANY: | | | | | | |
|---|---|---|---|---|---|---|---|
| | | **MONTH** November | | **DAY** 1 | | **YEAR** 2010 | |

5. NUMBER OF PAGES ATTACHED, IF ANY:

6. IT IS HEREBY DECLARED THAT I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

November 1, 2010

SIGNATURE OF AUTHORIZED PERSON            DATE

Susanna Kelham

TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON

7. RETURN TO:

NAME Susanna Kelham
FIRM Kelham Vineyards & Winery LLC
ADDRESS 360 Zinfandel Lane
CITY/STATE St. Helena, CA 94574
ZIP CODE

SEC/STATE FORM LLC-2 (Rev. 03/2008) – FILING FEE $30.00            APPROVED BY SECRETARY OF STATE

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 194 of 316



# State of California
## Secretary of State

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

That the attached transcript of ___|___ page(s) is a full, true and correct copy of the original record in the custody of this office.



**IN WITNESS WHEREOF,** I execute this certificate and affix the Great Seal of the State of California this day of

FEB 2 2 2010

*Jena Bowen*

**DEBRA BOWEN**
**Secretary of State**

L

# State of California
## Secretary of State

### STATEMENT OF INFORMATION
(Limited Liability Company)

**ENDORSED - FILED**
In the office of the Secretary of State
of the State of California

JAN 0 8 2010

**Filing Fee $20.00. If amendment, see instructions.**

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. LIMITED LIABILITY COMPANY NAME (Please do not alter if name is preprinted.)

KELHAM VINEYARDS & WINERY, LLC
200035310017

This Space For Filing Use Only

**DUE DATE:**

**FILE NUMBER AND STATE OR PLACE OF ORGANIZATION**

| 2. SECRETARY OF STATE FILE NUMBER | 3. STATE OR PLACE OF ORGANIZATION |
|---|---|
| 200035310017 | CALIFORNIA |

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | ZIP CODE |
|---|---|---|
| 360 ZINFANDEL LN | SAINT HELENA, CA | 94574 |

| 5. CALIFORNIA OFFICE WHERE RECORDS ARE MAINTAINED (DOMESTIC ONLY) | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 360 ZINFANDEL LN | SAINT HELENA | CA | 94574 |

**NAME AND COMPLETE ADDRESS OF THE CHIEF EXECUTIVE OFFICER, IF ANY**

| 6. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| | | | |

**NAME AND COMPLETE ADDRESS OF ANY MANAGER OR MANAGERS, OR IF NONE HAVE BEEN APPOINTED OR ELECTED, PROVIDE THE NAME AND ADDRESS OF EACH MEMBER** (Attach additional pages, if necessary.)

| 7. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| SUSANNA KELHAM | 1469 DWYERD RD/ PO BOX 2707 | YOUNTVILLE, CA | 94571 |
| 8. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| RON NICHOLSEN | 360 ZINFANDEL LN | SAINT HELENA, CA | 94574 |
| 9. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| HAMILTON NICHOLSEN | 360 ZINFANDEL LN | SAINT HELENA, CA | 94574 |

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California address. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 11 must be left blank.)

| 10. NAME OF AGENT FOR SERVICE OF PROCESS |
|---|
| SUSANNA KELHAM |

| 11. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | | ZIP CODE |
|---|---|---|---|
| 360 ZINFANDEL LN | ST HELENA | CA | 94574 |

**TYPE OF BUSINESS**

| 12. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY |
|---|
| WINERY |

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| ALAN MILLER | *Alan Smith* | AGENT | 1/7/2010 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

| LLC-12 (REV 03/2007) | | APPROVED BY SECRETARY OF STATE |
|---|---|---|

# Exhibit 21

**Kelham Vineyard Growers, LLC**

PO Box 60
Oakville, CA 94562

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/25/2018 | 1073 |

| Bill To |
|---------|
| Kelham Winery |

*2018 PAID*

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  | Due on receipt |  |

| Quantity | Description | Amount |
|----------|-------------|--------|
| 14.155 | Cabernet Block E2 | 59,451.00 |
| 0.55 | Cabernet Block C | 2,310.00 |
| 3.704 | Cabernet Block A | 15,556.80 |
| 7.175 | Cabernet Reserve | 30,135.00 |
| 19.741 | Merlot | 49,352.50 |
| 10.036 | Malbec | 25,090.00 |
| 9.318 | Cabernet Franc | 23,295.00 |

| | |
|---|---|
| **Total** | $205,190.30 |
| **Payments/Credits** | -$92,937.00 |
| **Balance Due** | $112,253.30 |

KV-Ins-0019062

# Exhibit 22



# Mechanics Bank®

P.O. Box 6010
Santa Maria, CA 93456-6010
800.797.6324
www.mechanicsbank.com

**RETURN SERVICE REQUESTED**

KELHAM VINEYARDS & WINERY LLC
360 ZINFANDEL LN
SAINT HELENA CA 94574-1636

### Managing Your Accounts

| | | |
|---|---|---|
| 👤 | Client Services | 800.797.6324 |
| 🖥 | Online | www.mechanicsbank.com |
| 📱 | Mobile | Download Our Mobile Apps |

---

## Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| PREFERRED BUSINESS CHECKING | XXXXXXXX3760 | $25,734.95 |

## PREFERRED BUSINESS CHECKING-XXXXXXXX3760

### Account Summary

| Date | Description | Amount |
|---|---|---|
| 07/01/2021 | **Beginning Balance** | **$23,932.94** |
| | 10 Credit(s) This Period | $194,300.13 |
| | 72 Debit(s) This Period | $192,498.12 |
| 07/30/2021 | **Ending Balance** | **$25,734.95** |

### Deposits

| Date | Description | Amount |
|---|---|---|
| 07/02/2021 | DEPOSIT | $7,000.00 |
| 07/07/2021 | DEPOSIT | $5,000.00 |
| 07/08/2021 | DEPOSIT | $15,000.00 |
| 07/12/2021 | DEPOSIT | $20,753.63 |
| 07/15/2021 | DEPOSIT | $646.50 |
| 07/20/2021 | DEPOSIT | $25,000.00 |
| 07/21/2021 | DEPOSIT | $90,000.00 |
| 07/26/2021 | DEPOSIT | $10,400.00 |
| 07/28/2021 | DEPOSIT | $15,500.00 |

### Electronic Credits

| Date | Description | Amount |
|---|---|---|
| 07/16/2021 | Re-imbursement - Registration | $5,000.00 |

### Electronic Debits

| Date | Description | Amount |
|---|---|---|
| 07/02/2021 | INTUIT 33337815 ACCT FEE 524771000279777 | $19.95 |
| 07/02/2021 | DIRECTV Payment XXXXX1746 | $80.34 |
| 07/06/2021 | MERCHANT BNKCD DISCOUNT 924200534882 | $19.95 |
| 07/06/2021 | MERCHANT BNKCD DEPOSIT 924202207883 | $24.90 |
| 07/06/2021 | MERCHANT BNKCD FEE 924200534882 | $49.95 |
| 07/07/2021 | ATT Payment XXXXX8012EPAYP | $57.49 |
| 07/08/2021 | EMPLOYMENT DEVEL EDD EFTPMT 865354016 | $241.56 |
| 07/08/2021 | EMPLOYMENT DEVEL EDD EFTPMT 1455440160 | $241.56 |
| 07/08/2021 | IRS USATAXPYMT 225158933214846 | $1,284.40 |
| 07/08/2021 | IRS USATAXPYMT 225158934344697 | $1,284.40 |



Member **FDIC**



**#15506**   07/28/2021   **$75.91**



**#15507**   07/23/2021   **$132.42**



**#15508**   07/21/2021   **$85.06**



**#15509**   07/23/2021   **$1,170.00**



**#15510**   07/23/2021   **$90,000.00**



**#15524**   07/29/2021   **$23.99**



**#15525**   07/29/2021   **$1,248.00**



**#15526**   07/30/2021   **$5,250.00**

# Exhibit 23

KELHAM VINEYARDS & WINERY LLC  ST. HELENA, CA 94574

15752

Kelham Vineyard - Growers

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|------|------|-----------|---------------|-------------|----------|---------|
| | | | | | 11/15/2021 | |
| 12/18/2018 | Bill | | 209,733.00 | 206,796.00 | | 206,796.00 |
| | | | | | Check Amount | 206,796.00 |

Mechanics Bank - #37

206,796.00

Safeguard   SF6001NL-1   LITHO USA   SFSL1   OX75041111E   TO REORDER, CALL YOUR LOCAL SAFEGUARD DISTRIBUTOR AT 510-769-6773   CSCGPJ0010000   V16SF000204

KV-Ins-0019065

# Exhibit 24

**Mechanics Bank**®

P.O. Box 6010
Santa Maria, CA 93456-6010
800.797.6324
www.mechanicsbank.com

**RETURN SERVICE REQUESTED**

KELHAM VINEYARDS & WINERY LLC
360 ZINFANDEL LN
SAINT HELENA CA 94574-1636

## *Managing Your Accounts*

| | | |
|---|---|---|
| 👤 | Client Services | 800.797.6324 |
| 🖥 | Online | www.mechanicsbank.com |
| 📱 | Mobile | Download Our Mobile Apps |

### *Summary of Accounts*

| Account Type | Account Number | Ending Balance |
|---|---|---|
| PREFERRED BUSINESS CHECKING | XXXXXXXX3760 | $17,763.52 |

**LIMITED TIME OFFER[1]**

**2.99%** APR[2]

**Prime +1%, years 2-5[2]**

# EQUIPMENT FINANCING
## Great rates for the equipment you need

Learn more at **www.MechanicsBank.com/GetEquipment**



1) Offer is effective as of 10/1/2021 and is subject to change or cancellation without notice. See banker for details. 2) First year interest rate will have a promo of 2.99%. Years 2 – 5 will have an interest rate at Prime + 1% fixed at signing. As of 10/8/21, the Prime Rate is 3.25%. Pricing subject to change. Prepayment penalty in the first 2 years. Prime Rate is defined as "the Prime Rate as published daily in the Money Rates section of the Wall Street Journal." Offer is for new 5-year term loan up to $250,000 on new equipment only and does not apply to the refinance of existing loans.

## PREFERRED BUSINESS CHECKING-XXXXXXXX3760

### Account Summary

| Date | Description | Amount |
|---|---|---|
| 10/30/2021 | **Beginning Balance** | **$57,399.33** |
| | 8 Credit(s) This Period | $405,000.00 |
| | 89 Debit(s) This Period | $444,635.81 |
| 11/30/2021 | **Ending Balance** | **$17,763.52** |

### Deposits

| Date | Description | Amount |
|---|---|---|
| 11/01/2021 | DEPOSIT | $16,000.00 |
| 11/03/2021 | DEPOSIT | $5,000.00 |
| 11/08/2021 | DEPOSIT | $30,000.00 |
| 11/12/2021 | DEPOSIT | $12,000.00 |
| 11/17/2021 | DEPOSIT | $15,000.00 |
| 11/19/2021 | DEPOSIT | $90,000.00 |
| 11/19/2021 | DEPOSIT | $208,000.00 |

### Electronic Credits

| Date | Description | Amount |
|---|---|---|
| 11/10/2021 | FOR INSURANCE COVERAGE | $29,000.00 |

**Member FDIC**
EQUAL HOUSING LENDER





| #15744 | 11/17/2021 | $2,500.00 |
| #15745 | 11/17/2021 | $165.00 |
| #15746 | 11/26/2021 | $157.50 |
| #15748 | 11/23/2021 | $3,685.79 |
| #15749 | 11/22/2021 | $1,040.00 |
| #15750 | 11/22/2021 | $605.00 |
| #15752 | 11/19/2021 | $206,796.00 |
| #15753 | 11/17/2021 | $1,646.43 |
| #15754 | 11/17/2021 | $1,965.19 |
| #15755 | 11/22/2021 | $5,000.00 |

# Exhibit 25



Kelham Vineyard Growers, LLC

PO Box 60
Oakville, CA 94562

**Invoice**

| Date | Invoice # |
|------|-----------|
| 10/16/2020 | 1070 |

PAID
06/18/2021

Bill To

Kelham Winery

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  | Due on receipt |  |

| Quantity | Description | Amount |
|----------|-------------|--------|
| 31.61 | Tons Cabernet Sauvignon, Clone4 - contract abandoned by Phelps | 142,245.00 |

| | | |
|---|---|---|
| | Total | $142,245.00 |
| | Payments/Credits | -$142,245.00 |
| | **Balance Due** | $0.00 |

# Exhibit 26

# Invoice

**Kelham Vineyards**
360 Zinfandel Lane
Saint Helena, CA 94574
Tel (707) 963-2000    Fax (707) 963-2262

PAID
06/10/2021

| Date | Invoice # |
|------|-----------|
| 4/9/2021 | 13704 |

**Bill To**

**Ship To**

| Terms | Ship Via | E-mail |
|-------|----------|--------|
|  | Other | ham30@mac.com |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
|  | 2021 BULK WINE SALES |  |  |
| 4,327 | 2020 C-BLOCK CABERNET SAUVIGNON | 35.00 | 151,445.00 |
|  | 4,320 GALLONS X $35.00 PER GALLON BULK WINE SALES |  |  |
|  |  |  |  |
|  | BOND TO BOND TRANSFER |  |  |
|  | BW-CA-5224 TO BW-CA-4624 |  |  |
|  | PAYABLE DUE UPON RECIEPT |  |  |

| | |
|---|---|
| **Subtotal** | $151,445.00 |
| **Sales Tax (7.75%)** | $0.00 |
| **Total** | $151,445.00 |
| **Payments/Credits** | -$151,445.00 |
| **Balance Due** | $0.00 |

KV-Ins-0013681

000 0003534 00000000 001 001 03513 INS: 0 0

**Please post payment for:**

**AvidXchange, Inc.**
PO BOX 36250
CHARLOTTE, NC 28236
Payment ID: 107174
Payment delivered by AvidPay Bill Payment

NO. **3260006734**



DATE: 06/01/2021     VENDOR NAME: KELHAM VINEYARDS                     VENDOR NO: KEL609

| INVOICE NO | INVOICE DATE | DESCRIPTION | GROSS | DISCOUNT | NET |
|---|---|---|---|---|---|
| 13704 | 06/01/2021 | | 151,445.00 | 0.00 | 151,445.00 |
| | | | | TOTALS: | 151,445.00 |

KV-Ins-0013682

**Please post payment for:**



DATE: 06/01/2021    VENDOR NAME: KELHAM VINEYARDS    VENDOR NO: KEL609

| INVOICE NO | INVOICE DATE | DESCRIPTION | GROSS | DISCOUNT | NET |
|---|---|---|---|---|---|
| 13704 | 06/01/2021 | | 151,445.00 | 0.00 | 151,445.00 |

TOTALS:  151,445.00

WARNING: THIS DOCUMENT CONTAINS SEVERAL DOCUMENT SECURITY FEATURES · DO NOT CASH IF THE WORD VOID IS VISIBLE · SEE REVERSE SIDE FOR LIST OF SECURITY FEATURES

**Please post payment for:**

CHECK NO.    **3260006734**
KeyBank National Association

4    6-103/410
Payment delivered by AvidPay Bill Payment

| DATE | AMOUNT |
|---|---|
| 06/01/2021 | $*******151,445.00 |

MEMO    lease review check stub for payment application

PAY    **One Hundred Fifty One Thousand Four Hundred Forty Five And 0/100 Dollars**

* VOID After 90 days *

TO THE
ORDER OF    **KELHAM VINEYARDS**
PO BOX 60
OAKVILLE, CA 94562-0060

AUTHORIZED SIGNATURE

SIGNATURE HAS A BLUE-GREEN BACKGROUND · BORDER CONTAINS MICROPRINTING

KV-Ins-0013683

WARNING: THIS DOCUMENT CONTAINS SEVERAL DOCUMENT SECURITY FEATURES · DO NOT CASH IF THE WORD VOID IS VISIBLE · SEE REVERSE SIDE FOR LIST OF SECURITY FEATURES

**X** AvidXchange, Inc.
PO BOX 36250
CHARLOTTE, NC 28236
704-808-7891

CHECK NO. **3260006734**
KeyBank National Association
6-103/410

MEMO  Please review check stub for payment application

Payment ID: 107174
Payment delivered by AvidPay Bill Payment

PAY  **One Hundred Fifty One Thousand Four Hundred Forty Five And 0/100 Dollars**

| DATE | AMOUNT |
|------|--------|
| 06/01/2021 | $*******151,445.00 |

TO THE
ORDER OF    **KELHAM VINEYARDS**
PO BOX 60
OAKVILLE, CA 94562-0060

* VOID After 90 days *

AUTHORIZED SIGNATURE

HAS A BLUE-GREEN BACKGROUND · BORDER CONTAINS MICROPRINTING  MP

KV-Ins-0013684

# Exhibit 27





#15428          06/17/2021          $95.00



#15429          06/30/2021          $310.98



#15430          06/14/2021          $1,152.00



#15431          06/14/2021          $10,000.00



#15432          06/18/2021          $151,445.00



#15434          06/21/2021          $1,152.00



#15435          06/17/2021          $3,000.00



#15436          06/17/2021          $2,000.00





# Exhibit 28

ST. HELENA HIGHWAY, CALISTOGA, CA 94515

**KELHAM VINEYARDS**

April 12, 2022

Check No 60787

60787

| Document No. | Document Date | Posting Description | Amount | Discount | Net Amount |
|---|---|---|---|---|---|
| 13759 | 03/29/22 | | 22,125.00 | 0.00 | 22,125.00 |
| 13758 | 03/29/22 | | 597,300.00 | 0.00 | 597,300.00 |

**Total** 619,425.00

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND • PADLOCK ICON DISAPPEARS WITH HEAT • FLUORESCENT FIBERS AND OTHER SECURITY FEATURES

60787

60787

UMPQUA
B·A·N·K

1065 Main Street
St. Helena, CA 94574

90-4181
1211

PAY

****SIX HUNDRED NINETEEN THOUSAND FOUR HUNDRED TWENTY FIVE AND 0/100 DOLLARS

DATE

AMOUNT

April 12, 2022

$*****619,425.00

TO THE
ORDER
OF

**KELHAM VINEYARDS**
360 ZINFANDEL LANE
SAINT HELENA, CA 94574

KV-Ins-0013615

# Exhibit 29

 **Mechanics Bank**®

P.O. Box 6010
Santa Maria, CA 93456-6010
800.797.6324
www.mechanicsbank.com

**RETURN SERVICE REQUESTED**

KELHAM VINEYARDS & WINERY LLC
360 ZINFANDEL LN
SAINT HELENA CA 94574-1636

### Managing Your Accounts

| | | |
|---|---|---|
| 👤 | Client Services | 800.797.6324 |
| 🖥 | Online | www.mechanicsbank.com |
| 📱 | Mobile | Download Our Mobile Apps |



# EQUIPMENT FINANCING
## Great rates for the equipment you need

Learn more at **www.MechanicsBank.com/GetEquipment**



**Strong Past. Stronger Future.**
Once again, Forbes has named Mechanics Bank one of America's best banks in 2022, based on growth, credit quality and profitability. In its 13th annual report, the global media outlet ranked the bank 32nd among the nation's 100 largest publicly traded banks and thrifts, which represent more than 80 percent of total U.S. bank assets.

## Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| PREFERRED BUSINESS CHECKING | XXXXXXXX3760 | $683,576.57 |

# PREFERRED BUSINESS CHECKING-XXXXXXXX3760

### Account Summary

| Date | Description | Amount |
|---|---|---|
| **04/01/2022** | **Beginning Balance** | **$15,161.50** |
| | 6 Credit(s) This Period | $941,226.66 |
| | 92 Debit(s) This Period | $272,811.59 |
| **04/29/2022** | **Ending Balance** | **$683,576.57** |

### Deposits

| Date | Description | Amount |
|---|---|---|
| 04/01/2022 | DEPOSIT | $30,000.00 |
| 04/06/2022 | DEPOSIT | $9,000.00 |
| 04/11/2022 | DEPOSIT | $269,100.00 |
| 04/15/2022 | DEPOSIT | $13,641.89 |
| 04/28/2022 | DEPOSIT | $59.77 |
| 04/28/2022 | DEPOSIT | $619,425.00 |



Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 219
of 316

KV-Ins-0038874

# Exhibit 30

5695

DEPOSITED WITH



## Mechanics Bank®
www.mechanicsbank.com

In receiving items for deposit or collection this bank acts as a depositor's collecting agent.

### TRANSACTION RECORD

All deposits and payments are subject to Bank verification. Deposits may not be available for immediate withdrawal.

```
Office# 1017        3:20 PM
Teller#   1  Seq#  16 07/29/2022
Account XXXXXX3760           3,202.87
DDA Deposit 3,202.87
```

KV-Ins-0016438

# Exhibit 31


**Mechanics Bank**®

P.O. Box 6010
Santa Maria, CA 93456-6010
800.797.6324
www.mechanicsbank.com

**RETURN SERVICE REQUESTED**

KELHAM VINEYARDS & WINERY LLC
360 ZINFANDEL LN
SAINT HELENA CA 94574-1636

### _Managing Your Accounts_

| | | |
|---|---|---|
| Client Services | 800.797.6324 |
| Online | www.mechanicsbank.com |
| Mobile | Download Our Mobile Apps |



**BUSINESS LINE OF CREDIT**
**UP TO $100,000**

**Prime +0%** APR

**LIMITED TIME OFFER**
**www.MechanicsBank.com/GrowIt**

All loans and credit products subject to program eligibility, collateral, underwriting approval and credit approval. Offer is for new lines of credit and does not apply to renewing lines of credit. Subject to change or cancellation without notice. Offer is effective as of 3/17/2022 and subject to change or cancellation without notice. Prime Rate is defined as "the Prime Rate as published daily in the Money Rates section of the Wall Street Journal." For the current Prime Rate, talk to a banker or visit https://www.wsj.com/market-data/bonds/moneyrates.

**WATCH OUT FOR CARD OR ACCOUNT LOCKED SCAMS**
Criminals contact you via phone, text or email pretending to be your bank or a credit card company, and tell you that your account is "locked" or "frozen" from fraudulent attempts to access it. They then ask for your card number, account number, password or PIN to "unlock" the account. **Learn how to spot this scam at www.MechanicsBank.com/Security.**

### _Summary of Accounts_

| Account Type | Account Number | Ending Balance |
|---|---|---|
| PREFERRED BUSINESS CHECKING | XXXXXXXX3760 | $3,176.92 |

**Member FDIC**
EQUAL HOUSING LENDER



#16565    12/05/2022    $1,982.12



#16566    12/02/2022    $7,500.00



#16567    12/02/2022    $7,500.00



#16568    12/07/2022    $1,000.00



#16569    12/05/2022    $1,600.00



#16571    12/12/2022    $1,720.00



#16572    12/05/2022    $40,000.00



#16573    12/02/2022    $128,000.00



#16574    12/14/2022    $3,800.00



#16575    12/14/2022    $2,160.26

# Exhibit 32

# TAXES MEETING 11/18/21

WRITE OFF MEALS IN GROWERS

WRITE OFF GAS IN GROWERS

I. HOW DO WE NOT GIVE MORE MONEY TO THE GOVERNMENT?
  ⤷ PURCHASE ASSETS?

- VINEYARDS

- RUN ALL THINGS BUSINESS RELATED THROUGH BOOKS

SK OWED FOUR YEARS OF GRAPES
  ⤷ HAS SEEDED INTO COMPANY BUT HAS BEEN PAID OFF
    FOR ALL BUT GRAPES/MAIN STREET FOR THE MOST PART.
    MEL PROVIDED SPREADSHEET W/ FULL AMOUNTS
      ⤷ NET INCOME/HARVEST
      ⤷ 1099 FORM FOR HN BONUS (FROM GROWERS)
    STILL PAID AS A CONSULTANT, WILL NEED TO BE 1099'D
    ON GOING.

  HN HOPING TO GET 350K-400K PAYMENT TO GROWERS
    TO WHITTLE DOWN AMOUNT OWED

WINERY HAS MADE MONEY THIS YR-$819K SHORT
  $650,000 IN ACCOUNTS PAYABLE (APPROX)
    POSSIBLE ADD IN OF GUARANTEED PAYMENTS- SK

KV-Ins-0028418

→ CERTAIN DOLLAR AMT NEEDED TO SPEND

HN WANTS TO REDUCE TAX BURDEN FOR YEAR — WANTS
RECOMMENDATIONS, RE EQUIPMENT, PREFAB HOME FOR
FARM LABOR — POSSIBLE GRANTS ECT. HHS OR THE USDA.

MULTIPLE PROPERTIES TO PLACE:
→ CHARTER OAK
→ MAIN STREET      } MUST BE PUT INTO SERVICE
→ VINEYARD          TO APPRECIATE — START 2022

TINY HOUSE IN USE ALREADY FROM FIRE FUNDS/PAYOUT
→ LABOR HOUSING ↓
   NO DEDUCTION ON THIS BUT CAN BE ACCOUNTED FOR
(FULL DISCLOSURE)

KELHAM PAYMENT STILL OWED PLUS CONTRACTIAL PAYMENTS
APPROX $700K MORE = $1.4 MILLION IN FUNDS COMING IN
→ SUGGESTION: A WATER TANK, POSSIBLE REPLANT
   FEDERAL OK W/ 100% WRITE OFF — ASSET W/
   LIFE SPAN OF LESS THAN 20 YEARS

$700,000 NEED FOR FARMING W/ $700,000 LEFT
— LOSSES FOR OTHER YEARS & DEPRECITATION ON CURRENT
ASSETS STILL A FACTOR.

'' PERMIT NEEDED FOR H₂O TANK, MAY NOT BE VIABLE
VIGUISHED — 735,000 GALLON TANK; NEXT YEAR

KV-Ins-0028419

II. NEED TO EMPTY BANK ACCOUNTS DUE TO LAWSUIT.
RN WILL BE "OWED" 1/3 OF AMOUNTS LEFT PENDING
IN KV ACCOUNTS UNLESS PAYING OFF DEBTERS
I.E. GROWERS.                    WILL LEASE BACK
        ↳ INFORMED GRACE OF SITUATION.

III. SUGGESTIONS FOR ASSETS. ⌐HAMN┐
        ↳ EXCAVATOR?
            ↳ WINE TANKS?
                ↳ TRACTOR?

Q: HOW MUCH DO WE
    HAVE TO SPEND?
Q: EMPLOYEE PAYMENTS
    OF WHAT WE'RE
    SPENDING? (AFTER DEBT)
        ↳ POSSIBLE TAX REDUCTION
            IN 'INVESTING' IN PEOPLE.
    (PAST DEBT OF COURSE)
        BONUSUS-POTENTIAL OTHER
                OPTION.

IV. MARKS VINEYARD
    SPREADSHEET — WENT
    OVER WITH GRACE.

1. MEL WILL IMPUT INFO
   AS IT COMES IN (FROM TINA)
2. WILL WORK ON SPREADSHEET
   FOR WINERY.
3. MARK WILL MAINTAIN SPREADSHEET.
4. HAM WILL MEET W/ MARK NEAL FIRST.

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 228 of 316

KV-Ins-0028420

POTENTIAL BIG BULK WINE SALE BEST DONE IN
JANUARY 2022. TOO LATE IN YEAR.

V. FINISH UP W/ GRACE
- PAYING OFF S.K.
  ↳ MONEY FOR NEXT YEAR (DEBT PAYMENT)
  ↳ HOW MUCH TO SPEND TAXABLE REASONS
- TAKE SURPLUS CASH & RESEED INTO
  COMPANY IF NECESSARY (SHOWS PATTERN
  OF BAILING OUT COMPANY)
- COST OF GOODS ACCURATE? MAY NEED TO
  REVISE AMOUNT. $8.64 COST PER BOTTLE.
- BALANCED QUICKBOOKS.

VI. BEFORE SENDING BOOKS
  ↳ MAKE PAYMENTS
    ↳ DRAIN ACCOUNTS & GIVE TO SK
      ↳ MAKE NOTES 'IOU' IF SEEDED BACK
        ↳ LEAVE MUND RD. FUNDS THERE

KV-Ins-0028421

# Exhibit 33

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF NAPA

--oOo--

RONALD NICHOLSEN II,              )
                                  )
          Petitioner,             )
                                  )
     VS.                          )     No. 21CV001403
                                  )
KELHAM VINEYARDS & WINERY         )
LLC and SUSANNA ROGERS            )
KELHAM,                           )
                                  )
          Respondents.            )
                                  )
                                  )

**CERTIFIED COPY**

--oOo--

DEPOSITION OF GENEVIEVE CREGO

--oOo--

Napa, California
Friday, May 12, 2023
9:07 a.m.

--oOo--

REPORTED BY: REBECCA K. DOWELL, CSR
          CSR License Number 8043

```
 1                    I N D E X

 2                                           PAGE

 3   APPEARANCES                               8

 4

 5   EXAMINATION BY:

 6        MR. DAVIS                            9

 7

 8   EXHIBITS FOR PETITIONER:

 9   No. 1 -  Amended Notice of Taking Deposition of    11

10            Genevieve R. Crego

11   No. 2 -  Amended Notice of Deposition of Kelham    12

12            Vineyards and Winery LLC's Person Most

13            Knowledgeable

14   No. 3 -  Invoice dated 6/10/202 to Kelham          26

15            Growers from 360 Zinfandel Lane

16   No. 4 -  Document headed Kelham PPP Information     33

17   No. 5 -  Document headed Employees                 44

18   No. 6 -  E-mail dated April 6, 2020, Subject:      52

19            Please send me this information, with

20            handwritten notes

21   No. 7 -  Paycheck Protection Program Borrower       58

22            Application Form

23   No. 8 -  Document headed Ranch 72, with related     60

24            attachments

25   No. 9 -  Document headed Kelham Vineyards           68
```

Sims & Sims Reporting, Inc. * (707) 226-3022

1    BE IT REMEMBERED that, pursuant to Notice of

2  Taking Deposition, and on Friday, May 12, 2023,

3  commencing at 9:07 a.m. thereof, at office of Sims & Sims

4  Reporting, Inc., 1700 Second Street, Suite 308, Napa,

5  California, before me, REBECCA K. DOWELL, CSR No. 8043, a

6  duly licensed Certified Shorthand Reporter in the State

7  of California, there personally appeared

8                  GENEVIEVE CREGO,

9  a witness called under the appropriate and applicable

10  provisions of the Codes of the State of California, who,

11  being first duly sworn, was thereupon examined and

12  testified as hereinafter set forth.

13                  --oOo--

14              A P P E A R A N C E S

15                  --oOo--

16    HAROLD H. DAVIS, Attorney at Law, MARC R.

17  BALUDA, Attorney at Law, and RICHARD RODRIGUEZ, Attorney

18  at Law, of counsel, of GREENBERG TRAURIG, LLP, 101 Second

19  Street, Suite 2200, San Francisco, California 94105-3668,

20  appeared as counsel on behalf of Petitioner.

21  Mr. Rodriguez was present via telephone.

22    RICHARD W. PETTY, Attorney at Law, of HOLLAND &

23  KNIGHT, LLP, 400 South Hope Street, 8th Floor, Los

24  Angeles, California 90071-2801, appeared as counsel on

25  behalf of Respondent Kelham Vineyards & Winery, LLC.

Case: 23-10384 * Doc# 16-1 * Filed: 08/07/23 * Entered: 08/07/23 16:06:25 * Page 233 of 316

```
 1            Also present were Petitioner Ronald Nicholsen II
 2    and Hamilton Nicholsen.
 3                         --oOo--
 4                  GENEVIEVE CREGO,
 5    called as a witness, having been first duly sworn to tell
 6    the truth, the whole truth, and nothing but the truth,
 7    was examined and testified as follows:
 8            THE WITNESS:  I do.
 9                  EXAMINATION
10    BY MR. DAVIS:
11    Q.      Good morning.  My name is Harold Davis, and with
12    me today is Marc Baluda, and on the telephone is Richard
13    Rodriguez, and we represent the petitioner, Mr. Ronald
14    Nicholsen, who is also here in attendance today.
15            Could you please state your name for the record?
16    A.      It's Genevieve Crego.
17    Q.      Could you spell your last name for us?
18    A.      C-r-e-g-o.
19    Q.      Have you ever been deposed before?
20    A.      No.
21    Q.      But you sat through a deposition of Ms. Kelham a
22    couple weeks ago, correct?
23    A.      That is correct.
24    Q.      Okay.  And so you got a chance to see sort of
25    how the process works?
```

9

Case: 23-10384 * Doc# 16-1 * Filed: 08/07/23 Entered: 08/07/23 16:06:25 * Page 234 of 316

```
 1   Q.        And so are these notes that you took of a
 2   meeting with Grace Kinney on November 18th, 2021?
 3   A.        They are notes that I took; if Grace was there,
 4   I don't know.
 5   Q.        Okay.  Regardless of who was there, these would
 6   be notes you took --
 7   A.        Yes.
 8   Q.        Okay.  Let me finish the question.
 9             Regardless of who was there, these were notes
10   that you took on November 18th, 2021, at a meeting in
11   which other people were there?
12   A.        Yes.
13   Q.        Okay.  And so just so we've got this in the
14   timeline correctly, Exhibit 38 was in October of 2021, at
15   least that's what it's dated, and then these notes
16   occurred about a month later on November 18th, 2021; are
17   we there?  Is that good?
18   A.        Yeah.
19   Q.        Okay.  All right.  Were you instructed to take
20   notes, or did you just do that on your own accord?
21   A.        I was instructed to take notes.
22   Q.        Okay.  Who instructed you to take notes?
23   A.        I don't remember.
24   Q.        Well, was Ms. Kelham at this meeting?
25   A.        I don't remember.
```

Case: 23-10384 * Doc# 161 * Filed: 08/07/23 Entered: 08/07/23 16:06:25 * Page 235 of 316

```
 1   STATE OF CALIFORNIA    )
                            ) ss:
 2   COUNTY OF NAPA         )

 3        I hereby certify that the witness in the

 4   foregoing deposition, named

 5                     GENEVIEVE CREGO,

 6   was duly sworn to testify to the truth, the whole truth

 7   and nothing but the truth in the within-entitled cause;

 8   pursuant to Section 2093 (b) CCP; that said deposition

 9   was taken at the time and place therein named; that the

10   testimony of said witness was reported by me, a duly

11   licensed Certified Shorthand Reporter under the laws of

12   the State of California, and a disinterested person, and

13   was thereafter transcribed into typewriting under my

14   direction.

15        And I further certify that I am not of counsel

16   or attorney for either or any of the parties to

17   said deposition, nor in any way interested in the outcome

18   of the cause named in said caption.

19                     IN WITNESS WHEREOF, I have

20                     hereunto set my hand this

21                     22nd day of May 2023.

22

23                     REBECCA K. DOWELL
                       CSR No. 8043
24                     County of Napa,
                       State of California
25
                          --o0o--
```

Case: 23-10384 * Doc# 161 * Filed: 08/07/23 * Entered: 08/07/23 16:06:25 * Page 236 of 316

Sims & Sims Reporting, Inc. * (707) 226-3022

```
 1
 2
 3
 4   GENEVIEVE CREGO                    May 22, 2023
     c/o Holland & Knight, LLP
 5   400 South Hope Street, 8th Floor
     Los Angeles, California  90071-2801
 6
     Re:     Nicholsen v. Kelham Vineyards, et al.
 7           Napa County Case No. 21CV001403

 8   The deposition you have rendered in the above-entitled
     matter has been transcribed into typewriting and is ready
 9   for your review.

10   If you wish to read, correct and sign your deposition,
     the deposition transcript will be available in our Napa
11   offices during business hours for a period of 30 days
     from the date of this letter before being forwarded in a
12   sealed envelope as provided by law to the attorney who
     noticed your deposition.
13
     You may come to our office to read and sign the original
14   transcript, or you may contact your attorney or the
     attorney who arranged for you to be present at your
15   deposition.  It may be possible for you to review their
     copy and submit to us a letter setting forth any changes
16   you choose to make.  If you wish to come to our office to
     read your deposition, please call in advance and make an
17   appointment.

18   If you have any questions regarding this letter, please
     contact your attorney or call our office.
19
                           Sincerely,
20
                           SIMS & SIMS
21

22
                           Kathleen Soloaga
23

24   cc:     All counsel
             Original
25   Date Taken:  May 12, 2023
```

# Exhibit 34



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Jul 18 04:07:22 EDT 2023*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  **List At:** [          ] OR  Jump  to record: [          ]  **Record 1 out of 5**

TSDR  ASSIGN Status  TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*

Kelham Vineyards with Le Petit Chef

| | |
|---|---|
| **Word Mark** | **KELHAM** VINEYARDS WITH LE PETIT CHEF |
| **Translations** | The English translation of "**Kelham** Vineyards with Le Petit Chef" in the mark is "Little Chef". |
| **Goods and Services** | IC 043. US 100 101. G & S: Restaurant services featuring a dining experience using overhead projectors with animation on the tables flat surface with dishes, namely, food and wine coursed food. FIRST USE: 19980401. FIRST USE IN COMMERCE: 19980401 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 97106009 |
| **Filing Date** | November 3, 2021 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | January 10, 2023 |
| **Registration Number** | 7089607 |
| **Registration Date** | June 27, 2023 |
| **Owner** | (REGISTRANT) KELHAM VINEYARDS LLC LIMITED LIABILITY COMPANY CALIFORNIA PO Box 60 Oakville CALIFORNIA 94562 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Trevor A. Caudle, Esq. |
| **Prior Registrations** | 3032163 |
| **Type of Mark** | SERVICE MARK |

**Register**        PRINCIPAL-2(F)

**Other Data**      The name(s), portrait(s), and/or signature(s) shown in the mark identifies Susanna Kelham, whose consent(s) to register is made of record.

**Live/Dead Indicator** LIVE

---

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |
|---|---|---|---|---|---|---|---|---|---|---|

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |
|---|---|---|---|

---

# Exhibit 35

# the WINES

*Kelham Vineyards*
Cabernet Sauvignon

*Kelham Vineyards*
Sauvignon Blanc

*Kelham Vineyards*
Chardonnay

*Kelham Vineyards*
Port

*Kelham Vineyards*
Sons Red
Proprietary Blend

Option times and dates are pre-determined so please check for availability.
Initially, we will be offering all options on

Thursday - Friday - Saturday only

Petit Tasting: 10:00 AM - 11:30 AM
Lunch: 12:00 PM - 2:00 PM
Dinner: 5:00 PM - 7:00 PM

There is a six (6) person minimum for all showings and options.

Seven day advanced notice is required.

Price points do not include large group added service charges, gratuity or any other additional costs.

Other stipulations may apply.

No dietary substitutions can be accommodated.

Pepperjack Productions
In Association With
*Kelham Vineyards*

P.O. Box 60
Oakville, California 94562
707~963~2000
www.kelhamvineyards.com

© 2021 Kelham Vineyards
© 2021 pepperjack productions

*Kelham Vineyards*

ILLUMINATING MAGIC

FOOD & WINE

EXPERIENCE

Take a fantastical excursion into the Napa Valley with our new animated adventure. Light and sound come together with delicious food and scrumptious wine to create a uniquely magical experience you won't soon forget. Featuring vibrant state-of-the-art animation come see for yourself why Kelham Vineyards' new food and wine offering is the talk of the valley!

# Le PETIT Chef TASTING

Four wines paired with four mini bites!







Mini Bruschetta - Crispy crostini, fresh mozzarella, tomato & basil

A single seasoned shrimp in a zesty tomato cocktail sauce

A thin slice of filet on a bed of crispy au gratin potatoes with a drizzle of Napa Valley Olive Oil

Mini chocolate covered ice cream with raspberries & fresh whipped cream

**$150.00** Per Person

# 3 COURSE LUNCH

A selection of wines paired with three set courses






A fresh heirloom tomato Caprese salad with mozzarella, basil and a balsamic vinaigrette drizzle

Sliced filet of beef Potatoes Au Gratin, sautéed carrots and broccolini with a red wine reduction

Two chocolate covered ice cream scoops with tart raspberries and whipped cream

**$225.00** Per Person

# 4 COURSE DINNER

A selection of wines paired with four set courses




Heirloom Tomato Caprese salad with fresh mozzarella, basil and balsamic drizzle

Three perfectly seasoned shrimp in a savory cocktail sauce

Thinly sliced beef filet Potatoes Au Gratin, carrots, broccolini and a red wine reduction

Two chocolate covered ice cream scoops with whipped cream & raspberries

**$300.00** Per Person

| From: | Baluda, Marc R. (Shld-SFO-CP) |
|---|---|
| To: | Petty, Richard W (LAX - X52477) |
| Cc: | Davis, Hal (Shld-SFO-IP-Tech); Rodriguez, Richard (LCJD-SFO-CP) |
| Subject: | Re: Kelham Vineyards - Information for the ABC |
| Date: | Thursday, May 19, 2022 10:31:46 AM |

Mr. Petty: further to the below can you send a full copy of all papers filed or intended to be filed with the CA ABC, along with an explanation as to why?

> On May 18, 2022, at 6:34 PM, Petty, Richard W (LAX - X52477) <richard.petty@hklaw.com> wrote:

**\*EXTERNAL TO GT\***

Hal:

Can you let me know when your client and his wife have submitted the forms that are attached to this email?  They can be mailed or delivered directly to this address:

Ann Johnson
Licensing Representative II
Department of Alcoholic Beverage Control
50 D Street, Room 130 - Santa Rosa, CA 95404

Thank you,

**Richard Petty** | **Holland & Knight**

Senior Counsel

Holland & Knight LLP

400 South Hope Street, 8th Floor | Los Angeles, California 90071

Phone 213.896.2477 | Fax 213.896.2450

richard.petty@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Petty, Richard W (LAX - X52477)
**Sent:** Thursday, May 5, 2022 2:11 PM
**To:** davish@gtlaw.com
**Cc:** baludam@gtlaw.com
**Subject:** Kelham Vineyards - Information for the ABC

Hal:

Could you have both your client and his wife complete these forms?  If you would prefer to have them submitted directly to the ABC rather than through me, I can provide you with the address to which they should be mailed.  I trust that your client is already familiar with these forms and their purpose.

Thank you,

**Richard Petty** | **Holland & Knight**
Senior Counsel
Holland & Knight LLP
400 South Hope Street, 8th Floor | Los Angeles, California 90071
Phone 213.896.2477 | Fax 213.896.2450
richard.petty@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

# Exhibit 36

# Exhibit 37

**DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL**
SANTA ROSA DISTRICT OFFICE
50 D ST , ROOM 130
SANTA ROSA, CA  95404
(707) 576-2165



April 13, 2022

KELHAM VINEYARDS & WINERY LLC
360 ZINFANDEL LN
SAINT HELENA, CA  94574-1636

KELHAM VINEYARDS & WINERY
360 ZINFANDEL LN
SAINT HELENA, CA  94574-1636
File:  02-376142

Dear Licensee(s):

I have been assigned to investigate membership update with premises expansion.  Please be advised that in order to complete my investigation, the following documents and/or information are needed:

      \*ABC-208'S & COPIES OF DL'S FOR SUSANNA R. KELHAM, RONALD NICHOLSEN, HAMILTON NICHOLSEN AND SPOUSES (RAWSON KELHAM) (COPIES IN FILE ARE FROM 2001). IF NEW SPOUSES HAVE NOT BEEN QUALIFIED, THEN $63.00 PER PERSON WILL BE NEEDED.

  \*COPIES OF OPERATING AGREEMENT JAN 8, 2010 PAGES MISSING ARTICLE II 2.4 THRU ARTICLE IV 4.9 (ARE EXHIBITS 3&4 REFERRED TO IN THESE ARTICLES?)

      \* ABC-257-NR 2 SIDED - COMPLETE REVERSE (INTENDED OPERATIONS)

      \*LETTER OF INTENDED OPERATIONS FOR EXPLANATION OF HOW AND WHEN TASTINGS IN EXPANDED OUTDOORS AREA WILL BE CONDUCTED

      \*As we receive / review the above requested documentation, there may be additional documentation requested as this is an active investigation.

To prevent any unnecessary delays in the processing, please submit the above-requested items to my attention.  If you have any questions, feel free to contact me any time at (707) 576-2646.

Sincerely,

4 8

Ann Johnson
Licensing Representative II

KV-Ins-0034648

Department of Alcoholic Beverage Control

# PLANNED OPERATION (NON-RETAIL)

**1. APPLICANT'S NAME(S)** (If an individual, last name, first name, middle name. Name of entity if corporation, limited partnership or limited liability company.)

Kelham Vineyards and Winery

**2. LICENSE TYPE(S)**

**3. PREMISES ADDRESS** (Street number and name, city, zip code)

360 Zinfandel Lane St. Helena Ca 94574

**4. PREMISES** (Check all that apply)

- [X] Office
- [X] Warehouse
- [X] Production Facility
- [X] Alternating Proprietorship
- [ ] Tasting Room
- [ ] Joint Tasting Room
- [ ] Restaurant on Premises
- [ ] Shared Common Area (i.e. You intend to share a common licensed area with another licensee)

**5. MANUFACTURE**
- [ ] Beer
- [X] Wine
- [ ] Distilled Spirits

**IMPORT**
- [ ] Beer
- [ ] Wine
- [ ] Distilled Spirits

**WHOLESALE** (Distribute)
- [ ] Beer
- [X] Wine
- [ ] Distilled Spirits

**6. SELL TO**
- [X] Retailers
- [X] Wholesalers
- [ ] Export out of California
- [X] Consumers

**6e.** Will you be selling cocktails or single servings of wine to-go? [ ] Yes [X] No

**7. OPERATING HOURS**

| | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Opening Time | | 9 am | 9 am | 9 am | 9 am | 9 am | 9 am |
| Closing Time | | 5 pm | 5 pm | 5 pm | 5 pm | 5 pm | 5 pm |

**8. LIST ANY BRAND NAME(S) AND TYPE(S) OF ALCOHOL PRODUCT YOU WILL MANUFACTURE/IMPORT/DISTRIBUTE**

Kelham Vineyards, wine

**9. IF CONTRACTING WITH A MANUFACTURER TO MAKE A CUSTOM PRODUCT TO BE SOLD UNDER YOUR BRAND NAME LIST NAME AND LICENSE NUMBER OF MANUFACTURER.**

**10. LIST NAME(S) AND ADDRESS(ES) OF ALL SUPPLIERS OF _ALCOHOLIC BEVERAGES_** (Street number and name, city, state, zip code)

Kelham Vineyards 360 Zinfandel Lane St. Helena Ca 94574

**11. ALCOHOLIC BEVERAGES WILL BE SHIPPED TO MY CUSTOMERS FROM** (STREET NUMBER AND NAME, CITY, STATE, ZIP CODE)

- [ ] Applied-for premises
- [ ] Type 14 (Public Warehouse) ABC License Number CA-W-2942 Address 360 Zinfandel Lane St. Helena Ca 94574
- [ ] Other (E.G. Duplicate 02) ABC License Number _____ Address _____

**12. ALCOHOLIC BEVERAGES WILL BE STORED AT** (Street number and name, city, state, zip code)

360 Zinfandel Lane St. Helena Ca 94574

**13. BUSINESS RECORDS WILL BE MAINTAINED AT** (Street number and name, city, state, zip code)

360 Zinfandel Lane St. Helena Ca 94574

**14. FEDERAL BASIC PERMIT REQUIRED FROM ALCOHOL AND TOBACCO TAX AND TRADE BUREAU (TTB)?**

[X] Yes [ ] No APPLICATION DATE July 21, 2001

**15. IF APPLYING FOR TYPE 02 WINEGROWER LICENSE OR TYPE 22 WINEBLENDER LICENSE, LIST BONDED WINERY PERMIT NUMBER ISSUED BY TTB (REQUIRED)**

BONDED WINERY PERMIT NUMBER BW-CA-5224

**16. REGISTRATION REQUIRED FROM STATE BOARD OF EQUALIZATION?**

[X] Yes [ ] No REGISTRATION DATE July 21, 2001

## FOR ABC USE ONLY

| INFORMATION PROVIDED | PROVIDED BY (Name) | DATE PROVIDED |
|---|---|---|
| [ ] ABC-579 Instructions to Beer Suppliers | | |
| [ ] ABC-413 Instructions to Distilled Spirits Shipper | | |
| [ ] ABC-414 Distilled Spirits Shipper Agreement | | |

COMMENTS/ADDITIONAL INFORMATION

ABC-257-NR 2-sided (rev. 12/21)

KV-Ins-0034649

Department of Alcoholic Beverage Control

# LICENSED PREMISES DIAGRAM (NON-RETAIL)

| 1. APPLICANT'S NAME(S) (If an individual, last name, first name, middle name. Name of entity if corporation, limited partnership or limited liability company.) | 2. LICENSE TYPE |
|---|---|
| *Kelham Vineyards and Winery LLC* | |
| 3. PREMISES ADDRESS (Street number and name, city, zip code) | 4. NEAREST CROSS STREET |
| *360 Zinfandel Lane  St Helena  Ca 94574* | *HWY 29* |

The diagram below is a true and correct description of the entrances, exits, interior walls and exterior boundaries of the premises to be licensed, including dimensions and identification of each room (i.e., "storeroom", "office", etc.). The area to be licensed must be outlined in red.

**DIAGRAM**

It is hereby declared that the above-described premises and character of premises, as indicated on the reverse side, will not be changed in accordance with Rule 64.2 of the California Code of Regulations without first notifying and securing written approval of the Department of Alcoholic Beverage Control. Substantial changes to the premises may require an application fee in accordance with Section 24072 of the Business and Professions Code. I declare under penalty of perjury that the foregoing is true and correct.

| APPLICANT SIGNATURE (Only one signature required) | DATE SIGNED |
|---|---|
| | |

| *FOR ABC USE ONLY* | | |
|---|---|---|
| CERTIFIED CORRECT (Signature) | PRINTED NAME | INSPECTION DATE |
| | | |

ABC-257-NR 2-sided (rev. 12/21)

Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 250 of 316

KV-Ins-0034650

# Exhibit 38



### Kelham Vineyards

**TIMECARDS**

Employee Name: _Antonio Olivera_   Pay Period: _1|30|22 - 2|5|22_

Address: _____

Telephone Number: _____

Pay Rate: _____   Total Hrs Worked: _45_   Total Paid: _1170.00_

| DAY | | | START TIME | END TIME | TOTAL HOURS |
|---|---|---|---|---|---|
| 31 | MONDAY 1 | 22 | 7:30 | 3:30 | 8 |
| 1 | TUESDAY 2 | 22 | 7:30 | 3:30 | 8 |
| 2 | WEDNESDAY 2 | 22 | 7:30 | 3:30 | 8 |
| 3 | THURSDAY 2 | 22 | 7:30 | 4:30 | 9 |
| | FRIDAY | | 7:30 | 4:30 | 9 |
| | SATURDAY | | 7:30 | 4:30 | 9 |

**WEEKLY TOTALS**   | 51 hours |

Work Day Description:

MONDAY _Winery garden Main house_   | 8 | — |

TUESDAY _Winery Work_   | 8 | — |

WEDNESDAY _Winery Work_   | 8 | — |

THURSDAY _Winery Work and Oak Vineyards_   | 4 | 5 |

FRIDAY _Oak Vineyards tractor Work_   | — | 9 |

SATURDAY _Oak Vineyards tractor Work_   | — | 9 |

**NUMBER OF HOURS AT**

| WINERY | VINEYARD |

For Office Use ----------------------------------------------------------------------

Check Number: _____   Amount Of Check $_____

Date Paid: _____

KELHAM VINEYARDS & WINERY LLC  ST. HELENA, CA 94574

15911

Antonio De Jesus Olivera

2/9/2022

1,170.00

Mechanics Bank - #37   PAY PERIOD 01/30/22-02/05/22

1,170.00

SF5001NL-1        TO REORDER, CALL YOUR LOCAL SAFEGUARD DISTRIBUTOR AT 510-769-6773        CSCGPJ0010000    V16SF000204

Safeguard  LITHO-USA   SFSLT  O47S5811YL

KV-Ins-0020268



## Kelham Vineyards

### TIMECARDS

Employee Name: Antonio Olivera   Pay Period: 4/3/22 - 4/6/22

Address: _____

Telephone Number: _____

Pay Rate: _____   Total Hrs Worked: 38   Total Paid: 988.00

| DAY | START TIME | END TIME | TOTAL HOURS |
|---|---|---|---|
| 28 MONDAY 3 | | | |
| 29 TUESDAY 3 | 7:00 | 4:00 | 9 |
| 30 WEDNESDAY 3 | 7:00 | 4:00 | 9 |
| 31 THURSDAY 3 | 7:00 | 4:00 | 9 |
| 1 FRIDAY 4 | 7:00 | 4:00 | 9 |
| 2 SATURDAY 4 | 7:00 | 3:00 | 8 |

WEEKLY TOTALS   44 hours

Work Day Description:

MONDAY _____

TUESDAY tractor work oak

WEDNESDAY tractor work oak

THURSDAY tractor work oak

FRIDAY tractor work oak

SATURDAY tractor wor and Susie house

| | |
|---|---|
| | 9 |
| | 9 |
| | 9 |
| 2 | 7 |
| | 8 |
| NUMBER OF HOURS AT | |
| WINERY | VINEYARD |

For Office Use --------------------------------------------------------------------------------

Check Number: _____   Amount Of Check $_____

Date Paid: _____

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 254 of 316

KV-Ins-0020286

**KELHAM VINEYARDS & WINERY**

Antonio De Jesus Olivera

16011

4/9/2022

988.00

PAYMENT RECORD

Mechanics Bank - #37   PAY PERIOD 04/03/22 - 04/09/22

988.00

 10503

 105031

 Rev 2/14

988.00

KV-Ins-0020287



**TIMECARDS**

Employee Name: _Antonio Olvera Jr_     Pay Period: _5/8/22 - 5/14/22_

Address: _____

Telephone Number: _____

Pay Rate: _16_     Total Hrs Worked: _46_     Total Paid: _640.00_

| DAY | START TIME | END TIME | TOTAL HOURS |
|---|---|---|---|
| 9  MONDAY 5 22 | 7:00 | 3:30 | 8 |
| 10 TUESDAY 5 22 | 7:00 | 3:30 | 8 |
| 11 WEDNESDAY 5 22 | 7:00 | 3:30 | 8 |
| 12 THURSDAY 5 22 | 7:00 | 3:30 | 8 |
| 13 FRIDAY 5 22 | 6:00 | 2:30 | 8 |
| 14 SATURDAY 5 22 | 8:00 | 1:00 | 5 |

**WEEKLY TOTALS**     45 hours

Work Day Description:

MONDAY _WEEADEATER     hamilton house_     | 8 | |

TUESDAY _WEEA dEATER   hamilton house and_     | 6 | 2 |

WEDNESDAY _Put the bruns of Ch arbor'   Soquering oak_     | 8 | |

THURSDAY _arbor work   and  (work) Soquering oak_     | 6 | 2 |

FRIDAY _Soquering    Oakaville_     | | 8 |

SATURDAY _Main   house  Susie house_     | 5 | |

NUMBER OF HOURS AT

WINERY     VINEYARD

For Office Use -------------------------------------------------------------------------

Check Number: _____     Amount Of Check $_____

Date Paid: _____

Case: 23-10384     Doc# 16-1     Filed: 08/07/23     Entered: 08/07/23 16:06:25     Page 256
of 316

KV-Ins-0020313

KELHAM VINEYARDS & WINERY

Cash

5/18/2022

16145

640.00

PAYMENT RECORD

Mechanics Bank - #37

640.00

10503

105031

Rev 2/14

KV-Ins-0020314

# Exhibit 39

Harold H. Davis (SBN 235552)
Marc R. Baluda (SBN 192516)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1300
Facsimile: (415) 707-2010
E-mail: davish@gtlaw.com

*Attorneys for Petitioner RONALD NICHOLSEN II*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF NAPA

| | |
|---|---|
| RONALD NICHOLSEN II,<br><br>       Petitioner,<br><br>v.<br><br>KELHAM VINEYARDS & WINERY LLC, AND SUSANNA ROGERS KELHAM,<br><br>       Respondents. | Case No. 21CV001403<br><br>**DECLARATION OF SEAN MCNAMEE IN SUPPORT OF PETITIONER RONALD NICHOLSEN II'S OPENING BRIEF ON THE MERITS OF VERIFIED PETITION FOR WRIT OF MANDATE TO ENFORCE HIS RIGHT TO OBTAIN, INSPECT, AND COPY CERTAIN RECORDS OF A LIMITED LIABILITY COMPANY PER CALIFORNIA CORPORATIONS CODE**<br><br>Assigned for All Purposes to Judge Monique Langhorne<br><br>Hearing Date: October 21, 2022<br>Time: 8:30 a.m.<br>Dept.: TBD |

## DECLARATION OF SEAN MCNAMEE

I, Sean McNamee, declare as follows:

1. I am a certified public accountant ("CPA") and have been licensed in the State of Connecticut since 1983. Unless otherwise stated, I have personal knowledge of the matters stated in this Declaration, about which I could and would testify competently if called as a witness. I make this declaration in support Petitioner, Ronald Nicholsen II's, Brief on the Merits of his Petition for a Writ of Mandate to Enforce Member's Right to Inspect the books and records of Kelham Vineyards & Winery, LLC ("Kelham Vineyards" or the "Company").

2. I was Kelham Vineyards CPA from approximately 2010 to 2015.

3. I have been Petitioner Ronald Nicholsen II's ("NICHOLSEN") personal CPA since approximately 2010, and in that capacity, I have reviewed certain financial documents provided by Kelham Vineyards with respect to NICHOLSEN's membership interest in Kelham Vineyards. Historically, my review of these financial documents has been for purposes of preparing and filing his tax documents. More recently, I have reviewed certain books and records provided to NICHOLSEN by Kelham Vineyards for purposes of determining whether those are the books and records of the Company.

4. On or about October 5, 2021, I received Kelham Vineyards' 2020 Tax Returns. On October 6, 2021, I requested a detailed backup to substantiate the amount it reported paying NICHOLSEN. But I never received a response to that request. Attached hereto as **Exhibit 20** is a true and correct copy of that email.

5. I have reviewed the records the Company provided to NICHOLSEN in response to his requests to inspect and copy its books and records. My review of those books and records has demonstrated that they are deficient and do not adequately represent the Company's finances. Those deficiencies include but are not limited to the following:

      a. No balance sheet and profit and loss statements for the Company have been provided for any of the previous four fiscal years.
      b. The journal entries used to prepare the Company's 2021 tax return has not been provided.

1

**DECLARATION OF SEAN MCNAMEE IN SUPPORT OF PETITIONER'S OPENING BRIEF ON THE MERITS**

ACTIVE 681405021v5

c.  Backup documentation for QuickBooks entries, such as bank statements, credit card statements, cancelled checks, copies of checks, invoices, bills, and other records that must exist have not been provided. Consequently, none of the entries can be verified, and in many instances, the payee or payor are unknown, and I have been unable to reconcile the QuickBooks entries with the Company's tax returns.

d.  None of the contracts reflecting the sale/purchase of grapes have been provided.

e.  The Company has not provided any documentation for the numerous lease payments paid by the Company.

f.

g.  NICHOLSEN has been taxed on health insurance provided by the Company, but documentation regarding the amounts that are attributable to Petitioner have not been provided. The Company must provide copies of the AG Health bills attributable to Petitioner.

h.  There are no documents regarding the loans made by the Company to S. Kelham

i.  No explanation or documents reflecting how or why S. Kelham and her son Hamilton Nicholsen now take monthly draws from the Company.

j.  No documents have been provided establishing the purported loans Kelham Growers LLC made to the Company.

k.  The Company/'s state tax returns for the past six years have not been provided.

l.  The Company's "books and records … as they relate to the internal affairs" of the Company for at least the current and past four fiscal years has not been provided.

6.  The foregoing documents, information and books and records of the Company must be provided to NICHOLSEN so that he can properly evaluate the Company's finances and how they affect his membership interest.

7.  Moreover, without detailed payments and distributions purportedly paid to NICHOLSEN, Kelham Vineyards' general ledgers, posting sheets, journal entries and financials prepared by its certified public accounts, NICHOLSEN cannot meaningfully review the Notice of Proposed Assessment from California Franchise Tax Board, its accuracy, or his liability thereunder, and he is in jeopardy of significant unknowable tax penalties.

8.  Based upon my review of the backup of the "December 9, 2021 QuickBook file" received in January 2022, I saw entries purportedly reflecting that Kelham Vineyards' pays monthly

expenses, property taxes, and mortgage for a house in Tahoe City, California. And the expenses and taxes alone cost Kelham Vineyards nearly $200,000 over its entire lifetime.

9.      There are also entries showing Kelham Vineyards also pays the expenses, mortgage, and other items for a property on Mund Road. In 2021, an insurance company paid nearly $300,000 for insurance proceeds related to a fire at this property, but to what entity is unknown. Journal entries for Mechanics Bank Mund Rd. account no. 6685, reflect payments from Kelham Vineyards in the amount of $65,000 on 7/2/21 and $5,000 on 7/16/21, but the payee is not identified.

10.     There is also an entry on November 11, 2020, when Kelham Vineyards was apparently nearly insolvent, it paid $150,000.00 to S. Kelham for an unknown loan, which took Kelham Vineyards' account into arrears.

11.     Without Kelham Vineyards' books and records, NICHOLSEN has way to determine his tax liability, his membership interest, or whether he has interest in related entities.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 25 day of September 2022, in W. Hu, Connecticut.

Sean McNamee      C P A

**DECLARATION OF SEAN MCNAMEE IN SUPPORT OF PETITIONER'S OPENING BRIEF ON THE MERITS**

ACTIVE 681405021v5

| | |
|---|---|
| **From:** | seancpa@iconn.net |
| **To:** | Baluda, Marc R. (Shld-SFO-CP); ronnicholsen@gmail.com |
| **Cc:** | info@kelhamvineyards.com |
| **Subject:** | RE: Kelham Vineyards - 2020 Taxes |
| **Date:** | Wednesday, October 6, 2021 6:25:05 AM |

Good Morning and thank you for sending a copy of the return, In reviewing it, could you please provide a detail for the amount you show for Ron's distributions of $          .  Thank you Sean

---

**From:** Info <info@kelhamvineyards.com>
**Sent:** Tuesday, October 5, 2021 3:19 PM
**To:** Baluda, Marc R. (Shld-SFO-CP) <baludam@gtlaw.com>
**Subject:** Kelham Vineyards - 2020 Taxes

**\*EXTERNAL TO GT\***

Good afternoon,

Kelham Vineyards have completed their 2020 taxes so I was asked to forward you a copy. This was part of the requested information. Please see the attached.

Thank you and have a great day,

Gen Crego
Kelham Vineyards
360 Zinfandel Lane
St. Helena, CA 94574
Phone: 707-963-2000
Fax: 707-963-2262
Web: www.kelhamvineyards.com

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# Exhibit 40

1  Harold H. Davis (SBN CA 235552)
   Marc R. Baluda (SBN CA 192516)
2  GREENBERG TRAURIG, LLP
   101 Second Street, Suite 2200
3  San Francisco, California 94105-3668
   Telephone: 415.655.1300
4  Facsimile: 415.707.2010
   Hal.Davis@gtlaw.com
5  Marc.Baluda@gtlaw.com

6

7  Attorneys for Petitioner RONALD NICHOLSEN II

8

FILED
9/27/2022 12:03 PM
Clerk of the Napa Superior Court
By: Lori Walker, Deputy

9        SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF NAPA

11

12 RONALD NICHOLSEN II,                  CASE NO. 21CV001403

13        Petitioner,                    **PETITIONER RONALD NICHOLSEN II'S
                                         OPENING BRIEF ON THE MERITS OF**
14 v.                                    **VERIFIED PETITION FOR WRIT OF
                                         MANDATE TO ENFORCE HIS RIGHT TO**
15 KELHAM VINEYARDS & WINERY LLC         **OBTAIN, INSPECT, AND COPY CERTAIN**
   and SUSANNA ROGERS KELHAM,            **RECORDS OF A LIMITED LIABILITY**
16                                       **COMPANY PER CALIFORNIA**
         Respondent.                     **CORPORATIONS CODE**
17

18                                       DATE:    November 4, 2022
                                         TIME:    8:30 a.m.
19                                       DEPT:    B

20

21

22

23

24

25

26

27

28

                                         1                      CASE NO. 21CV001403

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

I.     INTRODUCTION ................................................................................................. 1

II.    RESPONDENTS MUST ALLOW THE COMPANY'S MEMBERS TO INSPECT AND COPY RECORDS THAT AFFECT THE MEMBERS' INTERESTS ........................................................ 1

III.   FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 2

     A.     NICHOLSEN Demands to Inspect Kelham's Corporate Records ...................... 3

     B.     NICHOLSEN Files His Petition for Writ of Mandate and Attorney's Fees ......................... 4

     C.     S. Kelham Defaults .................................................................................. 4

     D.     Respondents Provides Additional Records After NICHOLSEN Filed his Petition ............ 5

           1.     Kelham Vineyards Provides Its 2020 Tax Returns but NICHOLSEN Is Assessed a Tax Penalty due to the Company's 2019 Return and Respondents Refuse To Provide Him The Records Necessary To Evaluate Or Challenge The Fee. ............. 5

           2.     Kelham Vineyards Transmits An Odd, Third Version of the Operating Agreement 5

           3.     Respondents Provide a Single, Incomplete, Back-Up QuickBooks File in 2022 ..... 6

                 a)     Kelham Vineyards pays mortgages on numerous properties, but Respondents will not provide the title and escrow papers for the properties, financing papers, insurance claims, insurance payouts and other information related to these assets. ........................................... 6

                 b)     Kelham pays rents on numerous properties, but Respondents will not provide the rental or lease agreements and other related information to these assets or their relationship to Kelham ........................................ 7

                 c)     Kelham Vineyards' loan payments are considerable, so are transfers between bank accounts, but Respondents will not provide any loan documents, bank statements, or other records regarding these expenses or activity ................................................................................. 8

                 d)     The source of moneys coming into and going out of Kelham Vineyards is unclear and Respondents will not provide accounting ledgers, audited financials, bank statements or other records related to these transactions.... 8

ACTIVE 682270641v1

1            e)     The payments to Kelham Vineyards' members are inexplicable. ...............8

2            f)     NICHOLSEN Needs Records Reflecting Related Party Transactions .........9

3      E.     Kelham Vineyards Files its Verified Response to the Petition Admitting "it will be

4           Transmitting its Books and Records" to NICHOLSEN ....................................10

5 IV.    ARGUMENT ............................................................................................................11

6      A.     NICHOLSEN has an undisputed Statutory Right to Inspect Kelham Vineyards' Corporate

7           Records and this Court should issue a writ compelling Respondents' Compliance with the

8           Law. ...................................................................................................................11

9      B.     Respondents' Failure to Comply with California Corporations Code is Without

10          Reasonable Justification.......................................................................................13

11 V.     CONCLUSION.........................................................................................................14

PETITIONER RONALD NICHOLSEN III'S OPENING BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE
ACTIVE 682270641v1

# TABLE OF AUTHORITIES

**Statutes**

Cal. Code Civ. Proc. 1085 ............................................................................................ 4, 13

Cal. Code Civ. Proc. 1090 ................................................................................... 1, 13, 14, 15

Cal. Code Civ. Proc. 2016.020 .................................................................................... 12, 14

Cal. Corp. Code 17701.13 ..................................................................................................... 2

Cal. Corp. Code 17704.10 ........................................................................................... passim

Cal. Rule of Ct. 8.4 ............................................................................................................ 4

Cal. Rule of Ct. 8.932 ........................................................................................................ 4

PETITIONER RONALD NICHOLSEN II'S OPENING BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE

ACTIVE 682270641v1

# I. INTRODUCTION

Respondents Kelham Vineyards & Winery LLC ("Kelham Vineyards" or "Respondent Company") and Susanna Kelham ("S. Kelham") (collectively, "Respondents") have failed to comply with California Corporations Code section 17704.10 ("Section 17704.10") by refusing to permit Petitioner Ronald Nicholsen ("NICHOLSEN") to inspect and copy or otherwise obtain the Company's complete books records.

Consequently, NICHOLSEN requests the Court (i) order S. Kelham to be deposed both in her individual capacity and as the corporate representative of Kelham Vineyards, at Respondents' expense, so that he can ascertain information regarding Respondent Company's records, and (ii) issue a writ compelling Respondents to comply with Section 17704.10 by permitting him to inspect and copy or otherwise obtain the records. NICHOLSEN also requests that if the return of the writ raises any questions of fact as to whether it has been satisfied, that the question be tried before a jury and that the jury award him any damages he sustained because of Respondents' wrongful actions. Cal. Code of Civ. Proc. §1090.

# II. RESPONDENTS MUST ALLOW THE COMPANY'S MEMBERS TO INSPECT AND COPY RECORDS THAT AFFECT THE MEMBERS' INTERESTS

California law compels Respondents "to maintain in writing or in any other form capable of being converted into clearly legible tangible form" at its office:

    (1) A current list of the full name and last known business or residence address of each member and of each transferee set forth in alphabetical order, together with the contribution and the share in profits and losses of each member and transferee.

    (2) If the limited liability company is a manager-managed limited liability company, a current list of the full name and business or residence address of each manager.

    (3) A copy of the articles of organization and all amendments thereto, together with any powers of attorney pursuant to which the articles of organization or any amendments thereto were executed.

    (4) Copies of the limited liability company's federal, state, and local income tax or information returns and reports, if any, for the six most recent fiscal years.

    (5) A copy of the limited liability company's operating agreement, if in writing, and any amendments thereto, together with any powers of attorney pursuant to which any written operating agreement or any amendments thereto were executed.

CASE NO. 21CV001403
PETITIONER RONALD NICHOLSEN'S OPENING BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE
ACTIVE 682270641v1

(6) Copies of the financial statement of the limited liability company, if any, for the six most recent fiscal years.

(7) The books and records of the limited liability company as they relate to the internal affairs of the limited liability company for at least the current and past four fiscal years.

Cal. Corp. Code, §17701.13(d).

California law vests NICHOLSEN with two mechanisms to obtain these documents ("Kelham's Corporate Records"):

First, upon his request, for purposes reasonably related to NICHOLSEN's interests as a member, "a member of the company in possession of the requested information, shall promptly deliver, in writing, at the expense of the limited liability company, a copy of the information required to be maintained by paragraphs (1), (2), and (4) of subdivision (d) of Section 17701.13, and any written operating agreement of the limited liability company." Cal. Corp. Code, §17704.10(a)

Second, NICHOLSEN has the right, upon reasonable request, for purposes reasonably related to his interest as a member... to each of the following: "(1) [t]o inspect and copy during normal business hours *any* of the records required to be maintained pursuant to Section 17701.13; (2) ..." Cal. Corp. Code, §17704.10(b) (emphasis added).

In contravention of his rights under Section 17704.10, Respondents denied and deprived NICHOLSEN of his right to access, inspect or receive Kelham's Corporate Records, without any justification, for more than a year, and only after this Petition was filed, did Respondents provide entirely inadequate records as discussed herein.

### III.    FACTUAL AND PROCEDURAL BACKGROUND

NICHOLSEN established the winery in 1997 at its current location at 360 Zinfandel Lane, St. Helena, California. Ronald Nicholsen II Declaration ("Nicholsen Dec."), ¶2. Since its inception, NICHOLSEN has been a winemaker, vineyard manager, winery tour guide, and operations manager for Kelham Vineyards. NICHOLSEN, his mother, S. Kelham, and his brother, Hamilton Nicholsen ("H. Nicholsen"), are equal owners and members of Kelham Vineyards, each owning a 33% interest in the Company. The Company owns and operates a winery, tasting room, and showroom in St. Helena. It also manages five acres of prime planted vineyards and production of up to 3,200 bottles of wine a year.

PETITIONER RONALD NICHOLSEN II'S OPENING BRIEF IN SUPPORT OF PETITION FOR MANDATE
ACTIVE 682270641v1

NICHOLSEN, who is the founding member of Kelham Vineyards, has been forced to seek this writ because his mother, who now manages the day-to-day operations and is in possession of Kelham's Corporate Records refuses to provide them to NICHOLSEN and has also denied him access to the winery to inspect and copy the records.

### A.    NICHOLSEN Demands to Inspect Kelham's Corporate Records

On May 24, 2021, S. Kelham informed NICHOLSEN that it was "time to sever our business relationship, and to start the process of negotiating a settlement for your exit from Kelham Vineyards and Winery LLC. As a reminder, you own a 33% interest in Kelham Vineyards and Winery LLC. I am in the process of having Kelham Vineyard and Winery LLC appraised. Once that value is determined, we can negotiate the terms of your exit…. I believe it is time to move in our separate directions and I hope you will agree to a reasonable settlement for your exit." Nicholsen Dec., ¶8, Ex. 1.

In response, on June 1, 2021, NICHOLSEN sought to exercise his inspection rights under California law to evaluate, *inter alia*, whether Respondents could unilaterally sever NICHOLSEN's ownership in Kelham Vineyards, to discover Kelham Vineyard's assets and liabilities considering S. Kelham's decision to "buy him out," and the corresponding value of his membership interest in Kelham Vineyards. Marc Baluda Declaration ("Baluda Dec."), ¶¶4-5, Ex. 2.[1] Respondents concede that the records NICHOLSEN demanded "will permit Petitioner to evaluate his rights under the operating agreement, to understand Respondent's assets and liabilities, to understand the value of his membership interest in Respondent, and to evaluate the expenses and operations of Respondent." Respondent Kelham Vineyards' Verified Response to Petition ("Resp.") at ¶9. Nevertheless, even after being apprised of their statutory obligation to permit him to inspect and copy the records, Respondents unjustifiably failed to comply with Section 17704.10 by precluding, thwarting and obstructing NICHOLSEN's right to access and inspect Kelham's Corporate Records.

First, Respondents claimed NICHOLSEN was in possession of those records, which even if it were true – it is not – does not abrogate their obligations to comply with the law. Baluda Dec., ¶6, Ex. 3; Nicholsen Dec., ¶7; Petition, ¶36, *cf.* Resp., ¶25. Second, when NICHOLSEN endeavored to inspect and

---

[1] NICHOLSEN sent this letter to Alexis White, Kelham Vineyards' corporate counsel, H. Nicholsen, and S. Kelham. Decl. Baluda, ¶¶4-5. On June 2, 2021, Ms. White informed the undersigned that she did not represent "Ms. Kelham [sic], Kelham Vineyards and Winery LLC (*or any other related entity*) in this matter." *Id.*

PETITIONER RONALD NICHOLSEN'S OPENING BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE
ACTIVE 682270641v1

copy the records at the winery during normal business hours, S. Kelham denied his access to the office. Baluda Dec., ¶¶10-11, Exs. 6 and 7; Petition, ¶38; *see also* Resp., ¶38. Third, Respondents sent NICHOLSEN on expensive and unsuccessful detours to try and obtain the records from Kelham Vineyards' former accountants and attorneys. Baluda Dec., ¶13, Exs. 8 and 9.

Instead of complying with their obligations under California law, Respondents began a false and injurious campaign to improperly malign NICHOLSEN and divest him of his rights as a member of the Company. S. Kelham unilaterally reduced NICHOLSEN's salary and then stopped paying him any distributions, she banned him from the property (in which he has an ownership interest), she forbade him from contacting her or H. Nicholsen, and he was informed that the Company intended to have an appraiser evaluate and determine "a fair market value for the LLC partnership *as it stands*." Baluda Dec., ¶12, Ex. 7, pg. 5 (emphasis added).

After trying to obtain Kelham Vineyards' books and records, as of October 1, 2021, NICHOLSEN had only received:

> (1) an unexecuted version of the purported operating agreement that contained a handwritten note reading, "all need to be managing member Susana top w/authority – flexibility for layering managers";
>
> (2) Kelham Vineyards' tax returns from 2015 to 2019; and
>
> (3) print outs of its purported annual profit & loss statements from 2015 to 2019.

Baluda Dec., ¶14-15, Ex. 11. These are clearly not the complete "books and records" that NICHOLSEN is entitled to review per his statutory rights.

**B.    NICHOLSEN Files His Petition for Writ of Mandate and Attorney's Fees**

With no other option to obtain what he is entitled to under California law, NICHOLSEN filed his Petition for Writ pursuant to California Code of Civil Procedure 1085 ("Petition").[2]

**C.    S. Kelham Defaults**

Despite expeditiously serving Kelham Vineyards, S. Kelham evaded service of the Petition for weeks. NICHOLSEN's process server made five separate attempts to serve her at her home or the

---

[2] Respondents' assertion that NICHOLSEN failed to comply with California Rules of Court, Rule 8.932(b)(5) is without merit. Resp.¶ 12. California Rules of Court Rule, Title 8, is "referred to as the Appellate Rules" and apply exclusively to appeals from the superior courts and proceedings in the Court of Appeals and the Supreme Court. *See* Rule 8.4. Therefore, Rule 8.932(b)(5) is inapplicable in this matter.

PETITIONER RONALD NICHOLSEN II'S OPPOSITION BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE
ACTIVE 682270641v1

winery, but each time she refused them access or hid from the process server. Harold Davis Declaration ("Davis Dec."), ¶2, Ex. 16.

On November 15, 2021, Kelham Vineyards counsel confirmed that he accepted service on behalf of Ms. S. Kelham. Davis Decl. ¶3, Ex. 3. Nevertheless, Ms. S. Kelham did not file a response to the petition.

### D. Respondents Provides Additional Records After NICHOLSEN Filed his Petition

Even after filing the Petition, Respondents refused to provide him Kelham's Corporate Records. S. Kelham also engaged in dilatory conduct thereby increasing NICHOLSEN's costs to inspect the records and delaying his right to the same.

> 1. Kelham Vineyards Provides Its 2020 Tax Returns but NICHOLSEN Is Assessed a Tax Penalty due to the Company's 2019 Return and Respondents Refuse To Provide Him The Records Necessary To Evaluate Or Challenge The Fee.

Kelham Vineyards furnished NICHOLSEN its 2020 tax returns. Baluda Dec., ¶19. Therein, it reported to the IRS that NICHOLSEN was paid almost twice the amount he received. Declaration Sean McNamee ("McNamee Dec."), ¶4. Accordingly, NICHOLSEN requested Respondents provide backup to verify the amount Kelham Vineyards reported. *Id.* at Ex. 20. No response was provided.

NICHOLSEN's concerns about Kelham Vineyards' 2020 tax returns were substantiated in April 2022 upon his receipt of a Notice of Proposed Assessment from California Franchise Tax Board proposing a tax assessment of $27,657 against him based on Kelham Vineyards' estimated income for 2019. Nicholsen Dec., ¶11. Kelham Vineyards did not pay NICHOLSEN an amount nearing what it reported. Nicholsen Dec., ¶11. The amount it reported is also at odds with the purported 2019 profit and loss statement it provided NICHOLSEN.

But without the relevant books and records, such as the detailed payments and distributions purportedly paid to NICHOLSEN, Kelham Vineyards' general ledgers, posting sheets, journal entries and financials prepared by its certified public accounts, NICHOLSEN cannot meaningfully review this assessment, its accuracy, or his liability thereunder, and he is in jeopardy of significant unknowable tax penalties. McNamee Dec., ¶7.

> 2. Kelham Vineyards Transmits An Odd, Third Version of the Operating Agreement

Kelham Vineyards also transmitted another version of the purported operating agreement. This

PETITIONER RONALD NICHOLSEN II's OPENING TRIAL BRIEF IN SUPPORT OF HIS VERIFIED MANDATE

ACTIVE 682270641v1

undated version contains different handwritten notes and a signature page containing all three members' signatures, but the legitimacy of this record is questionable. Baluda Dec., ¶20. First, the signature page contains a fax stamp reflecting it was transmitted on December 11, 2014. *Id.* Second, the fax stamp reflects that the signature page is the 19th of a 20-page document, whereas in this operating agreement the signature page is the 24th page of a 29-page document. The fax stamp does not appear on any of the other pages. *Id.* NICHOLSEN cannot verify whether this is indeed the fully integrated and executed copy of the operating agreement or whether the signature page from another version of an agreement was inserted as into this copy. Nicholsen Dec., ¶12.

The bottom line is that as of the date of this filing, NICHOLSEN has received at least three versions of the purported operating agreement governing the Company and his membership rights.

### 3. Respondents Provide a Single, Incomplete, Back-Up QuickBooks File in 2022

On November 16, 2021, Respondents informed NICHOLSEN they would be providing him QuickBooks files. Davis Dec., ¶4. In a now familiar stratagem, no records were produced until January 10, 2022, when Respondents transmitted a USB drive containing an incomplete QuickBooks backup file dated December 9, 2021 ("QuickBooks File"). The QuickBooks File could not be viewed or accessed by NICHOLSEN or his counsel until they obtained certain enterprise software (yet another unnecessary delay). Davis Dec. ¶5, Ex. 18.[3] Importantly, the QuickBooks File further demonstrates the need for a writ compelling Respondents to comply with Section 17704.10., including the following:

> a) *Kelham Vineyards pays mortgages on numerous properties, but Respondents will not provide the title and escrow papers for the properties, financing papers, insurance claims, insurance payouts and other information related to these assets.*

Kelham Vineyards pays nearly $8,000 a month toward a $3 million mortgage with Bank of Marin, which is listed in the QuickBooks File as "New Bank of Marin Loan – Mort./Trac #5776." Baluda Dec., ¶21. Respondents refuse to provide NICHOLSEN any books or records regarding this mortgage while simultaneously claiming Kelham Vineyards owns no real property. Resp., ¶ 15. NICHOLSEN suspects this is the $3 million mortgage S. Kelham took out with Bank of Marin for the property at 360

---

[3] On September 12, 2022, Kelham sent a USB file with a corrupted file that Kelham's counsel claimed was an "updated QuickBooks file." The file could not be opened. Despite requests from the undersigned, Kelham has not re-produced a readable file. In any event, this single file, presumably only contains updated profit/loss statements from 2022.

PETITIONER RONALD NICHOLSEN II'S OPPOSITION BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE

ACTIVE 682270641v1

Zinfandel Lane in 2015. Nicholsen Dec., ¶13. If he is correct, then he has an interest in the real property at 360 Zinfandel Lane.

Kelham Vineyard pays the monthly expenses, property taxes, and mortgage for a house in Tahoe City, California. The expenses and taxes alone cost Kelham Vineyards nearly $200,000. McNamee Dec., ¶8. Based on a single line item in the QuickBooks File, it appears Kelham Vineyards spent almost $400,000 to pay off the mortgage in December 2020.[4] *Id.*

Kelham Vineyards also pays the mortgage for a home located on Mund Road in Deer Park. In 2021, an insurance company paid Kelham Vineyards nearly $300,000 for insurance proceeds related to a fire at this property. McNamee Dec., ¶9. Kelham Vineyards also spent more than $100,000 for "fire related" expenses, but again, why is Kelham Vineyards paying this mortgage, receiving insurance proceeds, and paying fire related costs when it apparently does not own it?

Kelham Vineyards' payment of these mortgages is certainly germane to NICHOLSEN's understanding Kelham Vineyard's assets and liability, valuing his member interest in Kelham Vineyards, and evaluating the expenses of Kelham Vineyards.

> b) **Kelham pays rents on numerous properties, but Respondents will not provide the rental or lease agreements and other related information to these assets or their relationship to Kelham.**

In addition to paying numerous mortgages, Kelham Vineyards apparently leases 360 Zinfandel Lane "from others." *See* Resp., ¶55. Although NICHOLSEN is an owner of 360 Zinfandel Lane, he has never received rental payments. Nicholsen Dec., ¶14; *see* Resp., ¶14. The "rent" Kelham Vineyards pays "others" is remarkably fluid: it started at $4,000/ month before ballooning to $228,000/ a month in 2018 and $122,250 in December 2020 before resuming to $4,000/month in 2021. Baluda Dec., ¶22.

In 2020, the same year NICHOLSEN's pay was cut because of Kelham Vineyards' alleged financial instability, the Company began renting another property referred to as "Guest House Main St." Baluda Dec, Ex.22. That rent varied between $5,250.00 a month to $50,000.00 for November 2020. NICHOLSEN believes this is a house owned by S. Kelham in St. Helena, but why Kelham Vineyards is

---

[4] It is impossible to know whether the mortgage was actually paid off because the line-item is coded as "AJE," which presumably is an acronym for "adjusting journal entry" and is defined by investopedia.com as "an entry in a company's general ledger that occurs at the end of an accounting period to record any unrecognized income or expenses for the period." https://www.investopedia.com/terms/a/adjusting-journal-entry.asp#:~:text=An%20adjusting%20journal%20entry%20is,or%20expenses%20for%20the%20period.

PETITIONER RONALD NICHOLSEN'S OPPOSITION BRIEF IN SUPPORT OF IT'S MOTION TO COMPEL AND TO MANDATE
ACTIVE 682270641v1

leasing this property and for what business purpose is a mystery. Nicholsen Dec., ¶15. These rent payments alone vary by up to $260,000 *per month* paid to what appear to be *related parties.* Kelham Vineyards' payment of rent is certainly relevant to NICHOLSEN's understanding of Kelham Vineyard's assets and liabilities, valuing his member interest in Kelham Vineyards, and evaluating the expenses of Kelham Vineyards.

> c) *Kelham Vineyards' loan payments are considerable, so are transfers between bank accounts, but Respondents will not provide any loan documents, bank statements, or other records regarding these expenses or activity.*

On November 11, 2020, when Kelham Vineyards was apparently nearly insolvent, it paid $150,000.00 to S. Kelham for an unknown loan, which took Kelham Vineyards' account into arrears. McNamee Dec. ¶10. Why Kelham Vineyards borrowed money from S. Kelham and the terms of the loan(s) is a complete mystery.

There are countless transfers into and out of various accounts, but the QuickBooks File does not assist NICHOLSEN in understanding where money is coming in from and going out to. NICHOLSEN cannot even discern the account holder(s) on the bank accounts. All he can see is the banking institution name and a short description, *i.e.,* "Mechanics Bank Mund Rd." or "Mechanics Bank." Kelham Vineyards also pays American Express and "CitiAADvantage" Business credit card bills and NICHOLSEN reasonably questions purchases made on those cards. Nicholsen Dec., ¶16.

> d) *The source of moneys coming into and going out of Kelham Vineyards is unclear and Respondents will not provide accounting ledgers, audited financials, bank statements or other records related to these transactions.*

In April 2020, Kelham Vineyards received $103,452 under the Paycheck Protection Program for the purposes of payroll for six employees but it reported paying less than half of that amount in payroll. The records Kelham Vineyards submitted to the federal government to obtain that loan and to have the loan forgiven are important to NICHOLSEN's membership interests.

> e) *The payments to Kelham Vineyards' members are inexplicable.*

Kelham Vineyards' payments to its members in the form of guarantees, salaries, equity draws are inconsistent, and Respondents refuse to provide any records supporting or explaining these decisions. For example, in 2019, NICHOLSEN received tens of thousands of dollars less than S. Kelham and H. Nicholsen in guaranteed payments. In January 2020, Kelham Vineyards started making monthly

ACTIVE 682270641v1

1  "guaranteed payments" of $10,000 to S. Kelham and H. Nicholsen also received a $2,000 increase for his

2  "guaranteed payments" in 2021, but when and why the Company was approved to make these decisions

3  is unknown.

4  The QuickBooks File further reflects that NICHOLSEN has more than $300,000 in membership

5  equity but it is unclear how that equity was calculated and when it is due to him.

*f)*     *NICHOLSEN Needs Records Reflecting Related Party Transactions*

7  The QuickBooks File suggests there are transactions between related parties, including Kelham

8  Growers, LLC ("Kelham Growers").[5] This is wholly consistent with NICHOLSEN's understanding

9  about the relationship between the entities. Kelham Vineyards is plural and refers to the two vineyards,

10  and they are publicly advertised as being related. Resp., ¶19.

11  The QuickBooks File reflects numerous loans between Kelham Vineyards, S. Kelham, and

12  Kelham Growers. For example, in 2018, Kelham Growers lent Kelham Vineyards money for "Growers

13  Grapes." In 2020, Kelham Growers also lent Kelham Vineyards $50,000 for replanting, which Kelham

14  Vineyards apparently repaid to S. Kelham.

15  Kelham Growers is not capable of making or processing its own wine – it is only a vineyard.

16  Nicholsen Dec., ¶¶17-18. In April 2020, Kelham Vineyards paid Kelham Growers $142,245.00 for 31.61

17  tons of "Cab abandoned by [winery] and bulked out." *Id*. Bulking out wine is a known term within the

18  industry, which means Kelham Vineyards bought the grapes and paid to process it into wine, but Kelham

19  Vineyards did not ingest the grapes into its own production. *Id*. There is no record of Kelham Vineyards

20  selling the bulked wine. There is a single line item reflecting an invoice that *may* correspond to the sale,

21  but it is impossible to know based on the QuickBooks File and there is no corresponding deposit from the

22  purchaser into any of the accounts.[6]

23  Kelham Growers is on a hillside so it necessitates a Mach4 Carraro tractor to farm, which cannot

24  be used on the flat vineyards owned by Kelham Vineyards. Nevertheless, that tractor is reported as a

25  fixed asset by Kelham Vineyards. Nicholsen Dec., ¶19. There are also numerous line-items reflecting

---

[5] Respondents' assertion that the entities are unrelated is simply not true. Notably, Respondents have not made this assertion under oath, and discovery would likely demonstrate the inaccuracy of this statement.

[6] Kelham Vineyards also paid Kelham Growers nearly $400,000 for "2021 Grape Harvest" which is a significantly larger purchase than any in the past.

PETITIONER DONALD H. NICHOLSEN'S OPENING BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE
ACTIVE 682270641v1

1    "reimbursements" Kelham Growers paid Kelham Vineyards for its employees' wages, loans between the
2    entities, and other transfers that raise questions about their relationship. *Id.*

3         Without access to Kelham Vineyards' books and records, to which he is legally entitled,
4    NICHOLSEN is unable to evaluate or know of the assets, liabilities, and internal affairs of the Company.
5    He is, accordingly, unable to determine whether his rights or obligations due him have been violated by
6    the other members. Likewise, without access to the books and records, he cannot obtain an independent
7    value of "the partnership as it stands" for determining how and whether Kelham Vineyards should be
8    wound down or whether the appraiser selected by Respondents has all relevant information regarding the
9    assets and liabilities of Kelham Vineyards and its related entities.

**E.    Kelham Vineyards Files its Verified Response to the Petition Admitting "it will be Transmitting its Books and Records" to NICHOLSEN**

12        Weeks after receipt of the QuickBooks File, on January 26, 2022, Kelham Vineyards filed its
13   verified response to the Petition and admitted it provided NICHOLSEN "with: (a) its state tax returns for
14   the past six years; (b) its federal tax return for 2020; and (c) the complete operating agreement executed
15   by all three members of Respondent. Respondent further admits that ***it will be transmitting its books and***
16   ***records for the current and past four fiscal years*** to Petitioner's counsel." Resp., ¶52 (emphasis added).
17   To be clear: Kelham Vineyards has never contended that the QuickBooks File constituted its books and
18   records. *See* Resp., ¶¶13, 46, 52, 61. NICHOLSEN did not, however, receive any additional records
19   despite numerous requests over the next five months. Davis Dec., ¶5, Ex. 18; Baluda Dec., ¶23, Ex. 14;
20   McNamee, ¶4, Ex. 20. In May 2022, Respondents transmitted 28 months of bulk wine reports and weight
21   tags for 2018, 2019, and 2020.[7] These are presented by Respondents as backups to the reports Kelham
22   Vineyards provides the federal government as part of its compliance obligations. Nicholsen Dec., ¶20.
23   Kelham Vineyards did not, however, share the final reports it provided the government. *Id.*

24        Respondents otherwise ignored NICHOLSEN's numerous demands for records. On September
25   12, 2022, Kelham Vineyards transmitted another QuickBooks backup file, but it is corrupted, and no one
26   has been able to access it as of the date of this filing. Baluda Dec., ¶26.

---

[7] Omitted from the production was the bulk wine report for April 2020.

ACTIVE 682270641v1

# IV. ARGUMENT

Absent a writ, Respondents will never comply with California law.

For a year and a half, NICHOLSEN has repeatedly requested the Company provide him records it is required to transmit to him or permit him to inspect the records at its principal place of business. NICHOLSEN has taken a patient and measured approach but Respondents' refusal to comply with the law is without justification and violates NICHOLSEN's rights under Section 17704.10(g) and justifies an award of an amount to reimburse him for bringing this action.

## A. NICHOLSEN has an undisputed Statutory Right to Inspect Kelham Vineyards' Corporate Records and this Court should issue a writ compelling Respondents' Compliance with the Law.

NICHOLSEN is, and was at all relevant times, a member of Kelham Vineyards and partial owner of 360 Zinfandel Lane. Petition, ¶14; Resp., ¶¶5, 18, 46. As a member, for purposes reasonably related to his interests as a member, Respondents shall deliver or permit NICHOLSEN to inspect and copy Kelham Vineyards' Corporate Books. Cal. Corp. Code, §17704.10(a) – (b). Respondents admit the records NICHOLSEN demanded to inspect and copy "will permit Petitioner to evaluate his rights under the operating agreement, to understand Respondent's assets and liabilities, to understand the value of his membership interest in Respondent, and to evaluate the expenses and operations of Respondent." Resp., ¶9.

Since his initial record demand, NICHOLSEN's interest in obtaining these records has grown because the limited information that Respondents provided have caused him to have grave concerns regarding Respondents' improper actions related to the Company, their withholding of information relevant to his interests, and their disposal of his personal property.

For example, on May 5, 2022, Respondent's attorney transmitted forms ABC-208-A and B from the California Department of Alcoholic Beverage Control to NICHOLSEN for he and his wife to execute. Baluda Dec., ¶24, Ex. 15. Those forms are financial affidavits that must be completed by each general partner and their spouses. *Id.* NICHOLSEN had never seen or been required to execute the transfer forms as part of Kelham Vineyards' business. Nicholsen Dec., ¶21. These affidavits are only executed as part of an alcohol license transfer application or when a company seeks a new alcohol

PETITIONER RONALD NICHOLSEN II's OPENING BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE
ACTIVE 682270641v1

license.[8] Baluda Dec., ¶24. NICHOLSEN requested copies of all documents Kelham Vineyards filed with, or intended to be filed with, the ABC regarding this transfer and demanded an explanation for why they were being filed. Baluda Dec., ¶24-25, Ex. 15. To date, no response or records have been provided. Given Respondents' improper actions related to the Company, NICHOLSEN reasonably suspects it is to unlawfully divest his interest in the Company's alcohol license without his consent. Nicholsen Dec., ¶21.

On or about July 19, 2022, NICHOLSEN was informed that Respondent S. Kelham sold or otherwise disposed of his personal property from 360 Zinfandel Lane, including but not limited to, his young children's bicycles. Nicholsen Dec., ¶22. NICHOLSEN's counsel immediately demanded Respondents "provide immediate access to the Kelham property so that our client may retrieve his remaining personal items; and provide us a complete accounting of the property sold, date it was sold, who the property was sold to, and the price received for the property." Davis Dec., ¶6. NICHOLSEN's counsel offered to accompany him to the property and invited Respondents' counsel to join so that the attorneys could oversee the collection of his items, once again, however, Respondents denied his right to entry. Davis Dec., ¶6, Ex. 19. In other words, NICHOLSEN is still prohibited from entering the property.[9]

Respondents continue to prohibit him from entry onto the property and refuse to transmit him the records. NICHOLSEN has no adequate or speedy remedy at law to obtain the records to which he is statutorily entitled to receive. He has exhausted every means at his disposal to gain access to records to which he is entitled as a matter of right. A court of competent jurisdiction may enforce the duty of making and mailing or delivering the requested information. Cal. Corp. Code § 17704.10(f).

Given Respondents dilatory and unlawful conduct, NICHOLSEN further requests an order compelling S. Kelham to sit for deposition within seven days of the date of the writ, at Respondents expense, so that NICHOLSEN can ascertain necessary information about the records and books and their locations. *See* Cal. Code Civ. Proc. §2016.020, subd. (a) (the Civil Discovery Act applies both to civil

---

[8] Ironically, the affidavits also authorize the ABC "to examine and secure copies of financial records consisting of signature cards, checking and savings accounts, notes and loan documents, deposit and withdrawal records, and escrow documents of my financial institution(s) or any financial records established in connection with this business…" Something NICHOLSEN cannot even achieve absent this Court issuing a writ.

[9] S. Kelham's statement under penalty of perjury that NICHOLSEN "was and is welcome to access those records at any time he wishes" is false. Resp., ¶10.

actions and special proceedings of a civil nature).

Accordingly, this Court should issue a writ mandating Respondents to permit NICHOLSEN to inspect and copy the Company's books and records as described in the Proposed Writ filed concurrently herewith within fourteen days of the date of the writ. Cal. Civ. Code §1085.

Finally, whether Respondents fully perform will be a question of fact essential to the determination of the return of the writ, which affects NICHOLSEN's substantial rights, so NICHOLSEN reserves his right to request the question be tried before a jury, and postpone the argument that the writ has been returned until such trial can be had, and the verdict certified to the court. Cal. Code of Civ. Proc. §1090. NICHOLSEN further requests the Court or jury to assess any damages sustained by NICHOLSEN. *Id.*

### B. Respondents' Failure to Comply with California Corporations Code is Without Reasonable Justification.

Respondents obstructed NICHOLSEN'S right to inspect and copy the Company's books and records. Accordingly, NICHOLSEN respectfully requests this Court find that Kelham Vineyards' failure to comply with Section 17704.10 is without reasonable justification. Cal. Corp. Code §17704.10(g).

Respondents admit the records are solely in their possession. Resp., ¶28. Respondents informed NICHOLSEN that he could access the records at Kelham Vineyards during its normal business hours, as required by Section 17704.10(b)(1) but when he endeavored to do so, Respondents denied his right to access the property. *Supra*, part IIIA. The Respondent Company claim that NICHOLSEN's inspection of the Company's Records would have interfered with tastings and operations is patently absurd. Resp., ¶38. First, Kelham Vineyards' records, documents, and computers are kept in an office in the winery. The office is attached to the kitchen, and it has a separate entrance and exit, which is not accessible to guests or visited as part of any tour. Nicholsen Dec., ¶10. Second, Respondents provided no alternative dates or times for NICHOLSEN to inspect and copy the records. Finally, Respondents banned NICHOLSEN from the property in 2021 and refused his entry (with counsel) this year. There is, accordingly, no legitimate justification for Respondents' ongoing refusal to permit NICHOLSEN to inspect and copy the records during normal business hours, as required by Section 17704.10.

///

PETITIONER RONALD NICHOLSEN III'S OPENING BRIEF IN SUPPORT OF VERIFIED PETITION FOR WRIT OF MANDATE
ACTIVE 682270641v1

Case 21CV001403 Document 110 Filed 08/07/23  Exhibit 10 08/07/23 16:06:23 Page 281 of 316

1    Respondents' refusal to transmit NICHOLSEN the records is also without reasonable

2    justification. Respondents initially made the baseless claim that NICHOLSEN possessed the records.

3    Then Respondents agreed to provide him the records in lieu of his inspection and copying. Instead of

4    doing so, Respondents sent NICHOLSEN on needless detours to try and obtain the records from its

5    former accountants and attorneys. *Supra*, part III.A. In January 2022, Respondents provided the

6    QuickBooks File, which required NICHOLSEN to obtain the software necessary to view the records.

7    Thereafter, the Respondent Company filed its Response and verified under penalty of perjury "that ***it will***

8    ***be transmitting its books and records*** for the current and past four fiscal years to Petitioner's counsel."

9    Resp., ¶52 (emphasis added). However, Respondents, thereafter, only produced the weight tags and bulk

10   wine records and ignored NICHOLSEN's repeated requests for the records. *Supra*, III.D. Respondents'

11   failure to comply with Section 17704.10(b) is obviously without justification.

12       To the extent Respondents contend there was justification for their failure to comply with Section

13   17704.10, NICHOLSEN respectfully requests this Court compel S. Kelham in her personal capacity and

14   on behalf of the Company to sit for a deposition, at Respondents' expense, so that NICHOLSEN may

15   discover the basis of their excuse. *See* Cal. Code Civ. Proc. §2016.020, subd. (a) (the Civil Discovery Act

16   applies both to civil actions and special proceedings of a civil nature).

17                          V.    **CONCLUSION**

18       None of the parties dispute the material facts sets forth herein, which mandate a writ compelling

19   Respondents to allow NICHOLSEN to inspect and copy its books and records.

20       NICHOLSEN respectfully requests the Court compel S. Kelham to sit for deposition, at

21   Respondents' expense, in her personal capacity and on behalf of Kelham Vineyards.

22       NICHOLSEN respectfully requests the Court issue the proposed Writ compelling Respondents to

23   allow him to inspect and copy the Company's Records at 360 Zinfandel Lane.

24       NICHOLSEN further requests the Court find that Respondents' failure to comply with Cal. Corp.

25   Code section 17704.10 without justification.

26       NICHOLSEN further requests that if the return of the writ raises any questions of fact as to

27   whether it has been satisfied, that the question be tried before a jury and that the jury award him any

28   damages he sustained. Cal. Code of Civ. Proc. section 1090.

CASE NO. 21CV001403

Finally, NICHOLSEN reserves his right to seek reimbursement of his costs in this action and for any damages the jury may assess pursuant to Cal. Code Civ. Proc. sections 17704.10 and 1090.

Respectfully submitted,

GREENBERG TRAURIG

Dated: September 27, 2022      By:

_____

Harold Davis
Marc Baluda

Attorneys for Petitioner
RONALD NICHOLSEN II

ACTIVE 682270641v1

# Exhibit 41

HOLLAND & KNIGHT LLP
  Stacie P. Nelson, SBN 185164
  Richard W. Petty, SBN 219633
400 S. Hope Street, 8th Floor
Los Angeles, California 90071-2801
Tel.: 213.896.2400
Fax: 213.896.2450
E-mail: stacie.nelson@hklaw.com
      richard.petty@hklaw.com

Attorneys for Respondent
Kelham Vineyards & Winery LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF NAPA

| | |
|---|---|
| RONALD NICHOLSEN II,<br><br>              Petitioner,<br><br>   v.<br><br>KELHAM VINEYARDS & WINERY LLC,<br>and SUSANNA ROGERS KELHAM,<br><br>              Respondents. | Case No. 21CV001403<br><br>**RESPONDENT KELHAM VINEYARDS & WINERY LLC'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS**<br><br>Date:    February 15, 2023<br>Time:   8:30 a.m.<br>Dept.:   B |

RESPONDENT KELHAM VINEYARDS & WINERY LLC'S RESPONSE TO ORDER TO SHOW CAUSE RE
SANCTIONS

## I. STATEMENT OF COMPLIANCE

Respondent Kelham Vineyards & Winery LLC ("Respondent") is a small family business with only four individuals providing administrative services who have worked extensive hours to provide petitioner Ronald Nicholsen ("Petitioner") with the records that he has requested. Respondent has fully complied with California Corporations Code section 17704.10 ("Section 17704.10") by providing Petitioner with unfettered access to all of its files retained in hard copy for fourteen days and by producing more than 1.21 gigabytes of electronic copies of substantial portions of Respondent's books and records (including two copies of QuickBooks files showing every financial transaction involving Respondent from its inception to February 14, 2023).

Moreover, it is important to note that Petitioner has ongoing access to Respondent's files during regular business hours because Petitioner has never been excluded from the property where Respondent operates and is free to enter the property when he wishes. Petitioner even visited the property without notifying anyone of his intention to do so on Thanksgiving Day in 2022 and could have accessed Respondent's complete files in hard copy during that visit had he chosen to.

Further, many of Petitioner's remaining concerns pertain to matters outside the jurisdiction of this Court because they pertain to Petitioner's personal disputes with his mother Susanna Kelham ("Mrs. Kelham"), which do not relate to assets or books and records of Kelham Vineyards & Winery, and which must be resolved separately from matters concerning the operations of Respondent. For example, most of the real estate that Petitioner references in his filings does not belong to Respondent.

Because Respondent has complied with the Court's Order of November 4, 2022, the Order to Show Cause should be dismissed and no sanctions issued.

## II. DISCUSSION OF SPECIFIC CATEGORIES OF RECORDS

- **General Ledgers**: Respondent does not prepare or generate general ledgers as part of its ordinary operations. It keeps its financial records in Quickbooks, which is software that allows the user to generate files numerous financial files such as general ledgers upon command. Respondent's CPA uses the Quickbooks file to prepare the tax returns and does not generate general ledgers during that process. Upon request, Respondent can generate

general ledgers for each fiscal year, but they will be several hundred pages long and are not generated in the ordinary course of business.

- **Adjusting Journal Entries**:  These were provided in hard copy in December 2022 and made available going back more than five years.

- **Bank Statements**:  These were provided in hard copy in December 2022 and made available going back more than five years.  Bank statements for the past five fiscal years were also provided in electronic copy on February 14, 2023.

- **Records Pertaining to 360 Zinfandel:**  Respondent does not own this parcel of real property and the debt secured by the property is in Mrs. Kelham's name.  Respondent has never owned any interest in the real property.  Respondent only makes a payment toward the mortgage as a condition of its ongoing use of the property.  Originally, Respondent paid this obligation to the lender versus to Mrs. Kelham to avoid an interim step.  But, starting in October 2022, this payment is being made directly to Mrs. Kelham and is no longer made directly to the Bank of Marin, the lender.

  o **Lease:**  A hard copy of a purported lease agreement signed by Petitioner and Mrs. Kelham was made available to him for copying in December 2022 and will be delivered electronically in advance of the February 15, 2023 hearing.

  o **Rental Agreements, Payments and Register of Patrons:**  No one other than Respondent rents this property.

- **Mund Road House**:  Respondent owns this property, but it is not leased or rented to anyone.  The property is not financed.  The property was destroyed by the Glass Fire.

- **Tahoe City House:**  This property is owned by Main Street, LLC and Petitioner is not a member of that limited liability company.  At one time, Petitioner owned an interest in the property along with the other members of Respondent but not owned by Respondent.  During the time that it was owned by all three members, Respondent made the monthly mortgage payment on behalf of the members and that payment was allocated to each of them as an ownership draw.  Petitioner sold his interest in this property to Mrs. Kelham.  Thus, he has no rights related to it.  After Petitioner sold his interest in the property to Mrs.

RESPONDENT KELHAM VINEYARDS & WINERY LLC'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS

Kelham, she formed Main Street, LLC with Hamilton Nicholsen and began paying the mortgage through Main Street, LLC.

- o **Expenses, Property Taxes, and Mortgage Documents:** These documents were not provided because the property was never owned by Respondent.
- o **Leases/Rental Agreements and Records of Rental Payments and Patrons:** This property is not leased by Respondent.
- o **Information re Payoff:** After Petitioner sold his interest in the Tahoe City House to Mrs. Kelham, the CPA made a journal entry in Quickbooks to remove it from Respondent's books. The mortgage against the Tahoe City House has not been paid off. A copy of the current mortgage statement was provided to Petitioner electronically on February 14, 2023 as proof that the mortgage is still outstanding.

- **Main Street Guest House:** This property is owned by Mrs. Kelham and the mortgage information is protected from disclosure by her individual right to privacy. Respondent leases the cottage from Mrs. Kelham, which uses it as a benefit to wine club members that do not pay to stay there.

- o **Records of Rental Payments:** Monthly lease payments are made to Mrs. Kelham for use of the cottage. Those payments are recorded in Quickbooks. The payments are also shown on the bank statements and the cancelled checks, which were made available in hard copy in December 2022 and in electronic form on February 14, 2023. There are numerous months of unpaid and accumulated lease payments as Respondent only pays Mrs. Kelham when it has the cash flow to do so. When Respondent does not pay the rent, the unpaid rent is accrued as a payable to Mrs. Kelham as shown in the Quickbooks file.

- **Kelham Growers, LLC**
- o **Contracts:** There is no formal contract for fruit with Respondent or between Mrs. Kelham and her sons.

- o **Loan Documents:** Respondent has never had an interest in Kelham Growers, LLC or its real estate, which is wholly owned by Mrs. Kelham. No documents pertaining to loans taken out by Kelham Growers, LLC have been provided.
  - o **Record of Payments from Respondent:** The records of these payments are contained in the Quickbooks files, bank statements, and cancelled checks previously mentioned, which were produced in hard copy in December 2022 and electronically on February 14, 2023.
  - o **Invoices for Fruit to Respondent:** These documents have been provided in hard copy in December 2022 and electronically on February 14, 2023.
- **Documents re Rejected Tonnage:** This information has been provided.
- **Records Reflecting Disposition of Bulk Wine:** This information has been provided. Further, all transactions are documented in Quickbooks and on the corresponding bank statements. Copies of invoices, payments, and bills of lading were provided in hard copy.
- **Loans Between Respondent and Mrs. Kelham:**
  - o **Contracts:** There are no such contracts.
  - o **Record of Payments:** These payments are included in the Quickbooks file, on the corresponding bank statements and cancelled checks, which were provided in hard copy and electronically for the past five fiscal years.
  - o **Invoices:** There are no such invoices.
- **Assets the LLC Reports to the Tax Authorities:** Most of the assets that are reported on the taxes have been on the books for many years and are completely or almost entirely depreciated. The depreciation schedule in the tax returns shows the assets that have been purchased by the LLC, the acquisition date, the purchase price, and the current value.
- **Mach4 Tractor:** Payments were made electronically every month and shown clearly on the bank statements from the Bank of Marin (which were provided in hard copy and electronically). Mrs. Kelham paid the remaining balance on this loan personally in 2020 and her payment was then coded as a loan from Mrs. Kelham to Respondent.

RESPONDENT KELHAM VINEYARDS & WINERY LLC'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS

- o **Authorization to Take Loan:** All members were involved in the decision to purchase the tractor.
- **Mrs. Kelham's Emails:** These are not Respondent's records. Nevertheless, responsive emails will be provided in advance of the hearing on February 15, 2023.
- **Appraisals:** Respondent has not obtained an appraisal of its assets in the past five fiscal years. During the course of these proceedings, Mrs. Kelham obtained an appraisal for litigation purposes at the direction of counsel. This appraisal is protected from disclosure. Nevertheless, it has been provided to Petitioner.
- **American Express Statements:** These were provided in hard copy in December 2022 and electronically for the past five fiscal years on February 14, 2023. Proof of payment is indicated on the credit card statements, in Quickbooks, on copies of cleared and cancelled checks, and on the corresponding bank statements, all of which have been provided.
- **CitiAADvantage Statements:** These were provided in hard copy in December 2022 and electronically for the past five fiscal years on February 14, 2023. Proof of payment is indicated in the credit card statements, in Quickbooks, on copies of cleared and cancelled checks, and on the corresponding bank statements, all of which have been provided.
- **Documents from Respondent provided to the government in support of PPP Loan:** These were provided in hard copy in December 2022.
- **Contracts for the Sale of Juice:** These were provided in hard copy in December 2022.
- **Harvest Tags:** These were provided for the current vintage and past four vintages.
- **TTB F 5120.17sm Forms:** These were provided in hard copy.
- **AG Health Insurance Bills:** These payments are all documented in Quickbooks, on copies of cleared and cancelled checks, and on the corresponding bank statements. Petitioner has access to all health insurance records for himself and his family because he is the insured.
- **Articles of Organizations, Operating Agreement, and All Amendments:** These were all provided in advance of the November 4, 2022 hearing.
- **Tax Transcripts, Federal Tax Returns, State Tax Returns, and Local Tax Returns:** These were provided in hard copy and electronically.

-6-
RESPONDENT KELHAM VINEYARDS & WINERY LLC'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS

- **Documents re Unbottled Inventories by Gallon:** These documents have been provided.
- **Records Reflecting the Share of Profits/Losses by Each Member:** No payments have been made to any member in the past five years for distribution of profits. The only payments made to members were the guaranteed payments, which did not leave any funds available for distribution of profits. The share of profits/losses can be found on the tax returns and K-1s provided to Petitioner.
- **Records re the $10,000 Guaranteed Monthly Payment to Mrs. Kelham:** When payments were actually made, those payments are documented in Quickbooks, on copies of cleared and cancelled checks, and on the corresponding bank statements, all of which have been provided.
- **Records re the Guaranteed Monthly Payment to Hamilton Nicholsen:** These payments are documented in Quickbooks, on copies of cleared and cancelled checks, and on the corresponding bank statements, all of which have been provided.

## III.   CONCLUSION

Respondent Kelham Vineyards & Winery LLC has fully complied with all of its obligations pursuant to California Corporations Code section 17704.10 ("Section 17704.10"). The four individuals who work to make Respondent a small and successful family business have worked substantial overtime hours in excess of their ordinary job responsibilities to provide Petitioner with the records he seeks, even though Petitioner himself has full access to the property where these records are stored. In doing so, they have gone far beyond what the statute requires them to do. As a result of their hard work, the OSC should be discharged.


Dated:  February 14, 2023                    HOLLAND & KNIGHT LLP


                                                          Richard W. Petty

                                             Attorneys for Respondent Kelham Vineyards & Winery LLC

**PROOF OF SERVICE**

STATE OF CALIFORNIA        )
                                  )    ss.

COUNTY OF LOS ANGELES   )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 400 South Hope Street, 8th Floor Los Angeles, California 90071.

On **February 14, 2023**, I caused the foregoing document described **RESPONDENT KELHAM VINEYARDS & WINERY LLC'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS** to be served on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Harold H. Davis
**Greenberg Traurig, LLP**
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111
T: (415) 655-1300
F: (415) 707-2010
E: davish@gtlaw.com

Attorneys for Petitioner Ronald Nicholsen II

[ X ]   **(BY E-MAIL VIA PDF FILE)**  By transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above listed document to the email addresses of the persons on the service list. The transmission was reported as complete and without error.

[  ]   **(BY MAIL)**  Following ordinary business practices, I placed the document for collection and mailing at the offices of HOLLAND & KNIGHT LLP, 400 South Hope Street, 8th Floor, Los Angeles, California 90071, in a sealed envelope. I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service, and, in the ordinary course of business, such correspondence would be deposited with the United States Postal Service on the day on which it is collected at the business.

[ X ]   **(STATE)**     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **February 14, 2023**, at Los Angeles, California.

_____
Diana Gin

RESPONDENT KELHAM VINEYARDS & WINERY LLC'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS

# Exhibit 42

# TOLLER & NOVAK LLP
## ATTORNEYS AT LAW

FRANK TOLLER †
frank@tollerandnovak.com
MIEL P. NOVAK
miel@tollerandnovak.com

September 20, 2011

Susanna Kelham
P.O. Box 2707
Yountville, California 94599

**Re:   Kelham Vineyards & Winery, LLC**

Dear Susanna:

Enclosed, pursuant to your request, please find a copy of your Lease.

Very truly yours,

TOLLER & NOVAK LLP

Miel P. Novak
Attorney at Law

Enclosure(s)

1407 MAIN STREET SUITE 103 P.O. BOX 558 ST. HELENA CALIFORNIA 94574
FAX: 707-963-8852
TELEPHONE: 707-963-5547
† Certified Specialist, Estate Planning, Trust and Probate Law, by the State Bar of California, Board of Legal Specialization

# LEASE

THIS LEASE is entered into this 26th day of December, 2005, by and between

SUSANNA R. KELHAM, hereinafter referred to as "Landlord," and KELHAM VINEYARDS &

WINERY, LLC, hereinafter referred to as "Tenant."

## Recitals

Landlord is the owner of real property located at 360 Zinfandel Lane, St. Helena,

California. This is a ground lease of the underlying property described on Exhibit "A" and

includes all rights of use and permits associated with the underlying property. Tenant has

previously improved the premises with a winery building, parking lot and related improvements.

All improvements have been paid for by Tenant and are owned by Tenant.

The improved portions of the property shall be referred to as the "winery parcel." Upon

termination, the Landlord shall purchase the improvements from the Tenant or transfer the

winery parcel, or the entire parcel if a lot line adjustment or subdivision is not allowable, to

Tenant at a price to be arrived at in accordance with Section 22 of this lease.

## Section 1. Term.

This lease commences on January 1, 2005, and shall continue for a period of ten (10)

years, unless terminated sooner in accordance with the provisions of this Lease.

## Section 2. Rent Schedule.

Each year, Tenant will pay to Landlord as minimum rent, without deduction, set off,

1

notice, or demand, sixteen percent (16%) of the gross value of that year's grape crop produced on the property. The gross value will be calculated by multiplying the crop's tonnage by the Weighted Average Base Price in District 4 (Napa County) of the varietal planted on the property, according to Table 8 of the Final Grape Crush Report published by the California Agricultural Statistics Service. For example, if the property produced 27.3 tons of Cabernet Sauvignon grapes in 2004, then the rental equation would be as follows: 16% x 30 tons x 3947.18 (the Weighted Average Base Price in Napa Co., District 4) = $18,946. Payment is due within thirty (30) days after the publication of that Final Report.

### Section 3. Option to Renew.

At the expiration of the term of the lease herein, Tenant shall have the option to extend this lease for an additional two (2) periods of five years each. Such extension shall automatically occur, unless Tenant notifies Landlord in writing of their election not to exercise said option. Said notice shall be delivered to the Landlord no later than sixty (60) days prior to the expiration of this lease and no earlier than ninety (90) days prior to the expiration of said lease.

### Section 4. Option Rent.

For each option period, the lease rental will be determined by the formula specified in Section 2.

### Section 5. Pass Through Charges.

Tenant shall be responsible for the payment of all utilities utilized at the leased Premises, including, but not limited to water, electric, gas, telephone service and removal of garbage and

2

rubbish from said Premises. Tenant shall also be responsible for the payment of all taxes on the furniture, trade fixtures, appliances, and other personal property placed by Tenant in, on, or about said Premises including, without limiting the generality of the other terms used in this section, any shelves, counters, vaults, vault doors, wall safes, partitions, fixtures, machinery, plant equipment, office equipment, television or radio antennas, or communication equipment brought on said Premises by Tenant. Tenant shall be responsible for all property taxes.

### Section 6. Use of Premises.

The Premises will be used and occupied only for winery and vineyard operations and for no other use or purpose.

### Section 7. Insurance Hazards.

Tenant shall not commit or permit the commission of any acts on said Premises nor use or permit the use of said Premises in any manner that will increase the existing rates for or cause the cancellation of any fire, liability, or other insurance policy insuring said Premises or the improvements on said Premises. Tenant shall, at his own cost and expense, comply with any and all requirements of Landlord's insurance carriers necessary for the continued maintenance at reasonable rates of fire and liability insurance policies on said Premises, and the improvements on said Premises.

### Section 8. Compliance With Law.

Tenant shall at Tenant's own cost and expense comply with all statutes, ordinances, regulations, except earthquake retrofits, and requirements of all governmental entities, both

3

federal and state and county or municipal, relating to Tenant's use and occupancy of said

Premises whether such statutes, ordinances, regulations, and requirements be now in force. The

judgment of any court of competent jurisdiction, or the admission by Tenant in a proceeding

brought against Tenant by any governmental entity, that Tenant has violated any such statute,

ordinance, regulation, or requirements shall be conclusive as between Landlord and Tenant and

shall be grounds for termination of the lease by Landlord.

## Section 9.  Assignment and Subletting.

Tenant will not assign this Lease or further sublet all or any part of the Premises without

the prior written consent of Landlord, which approval shall not be unreasonably withheld.

## Section 10.  Hold-Harmless Clause.

Tenant agrees to indemnify and hold Landlord and the property of Landlord, including

said Premises, free and harmless from any and all claims, liability, loss, damage, or expenses

resulting from Tenant's occupation and use of said Premises, specifically including, without

limitation, any claim, liability, loss or damage arising by reason of:

(a) The death or injury of any person or persons, including Tenant or any person who is

an employee or agent of Tenant, or by reason of the damage to or destruction of any property

owned by Tenant or any person who is an employee or agent of Tenant, and caused or allegedly

caused by either the condition of said Premises, or some act of omission of Tenant or of some

agent, contractor, employee, servant, subtenant, or concessionaire of Tenant on said Premises;

(b) Any work performed on said Premises or materials furnished to said Premises at the

instance or request of Tenant or any agent or employee of Tenant; and

4

(c) Tenant's failure to perform any provision of this lease or to comply with any requirement of law or any requirement imposed on Landlord or the leased Premises by a duly authorized agency or political subdivision.

## Section 11. Liability Insurance.

Tenant shall, at his own cost and expense, secure within thirty (30) days and maintain during the entire term of this lease, and any renewals or extension of such term, a broad form comprehensive coverage policy of public liability insurance issued by an insurance company acceptable to Landlord and insuring Landlord against loss or liability caused by or connected with Tenant's occupation and use of said Premises under this lease. Tenant shall also purchase fire and casualty insurance equal to the value of any and all improvements on the property.

This policy shall insure that the contingent liability of Landlord, and is to be placed with Landlord and Tenant is to obtain a written obligation of the part of the insurance carriers to notify Landlord in writing prior to any cancellation thereof, and Tenant agrees if Tenant does not keep such insurance in full force and effect Landlord may take out the necessary insurance and pay the premium and repayment thereof shall be deemed to be additional rental over the rent specified above and shall be due and payable on the next day upon which rent becomes due.

The limits of such policies shall be as follows:

(a) One million dollars ($1,000,000) for injury to or death of one person and, subject to such limitation for the injury or death of one person, of not less than two million dollars ($2,000,000) for injury to or death of two or more persons as a result of any one accident or incident; and

(b) One hundred thousand dollars ($100,000) for damage to or destruction of any property

5

of others.

## Section 12.  Installation and Removal of Trade Fixtures.

Tenant shall have the right at any time and from time to time during the term of this Lease and any renewal or extension of such term, at Tenant's sole cost and expense, to install and affix in, to, or on said premises such items, herein called "trade fixtures," for use in Tenant's trade or business as Tenant may, in his sole discretion, deem advisable.  Any and all such trade fixtures that can be removed without structural damage to said Premises or any building or improvements on said Premises shall, subject to the provisions below of this Lease, remain the property of Tenant and may be removed by Tenant at any time or times prior to the expiration or sooner termination of this Lease.

## Section 13.  Unremoved Trade Fixtures.

Any trade fixtures that are not removed from said Premises by Tenant within thirty (30) days after the expiration or sooner termination, regardless of cause, of this lease shall be deemed abandoned by Tenant and shall automatically become the property of the Landlord as owner of the real property to which they are affixed and not simply because of the lien described above.

## Section 14.  Signs.

Tenant shall be permitted to place and maintain signs on the exterior of the Premises with the approval of Landlord, which approval shall not be unreasonably withheld.  Tenant shall maintain such sign or signs at all times during this lease in good appearance and repair.  Such signs shall be removed by Tenant at the termination of this lease.

6

### Section 15. Waiver of Breach.

The waiver by Landlord of any breach by Tenant or any of the provisions of this lease shall not constitute a continuing waiver or a waiver of any subsequent breach by Tenant either of the same or another provision of this lease.

### Section 16. Attorney Fees.

If either party commences an action against the other in connection with this lease, the prevailing party will be entitled to recover costs of suit and reasonable attorney fees.

### Section 17. Notices.

All notices and demands that may be required or permitted by either party to the other will be in writing. All notices and demands by the Landlord to Tenant will be sent by United States Mail, postage prepaid, addressed to the Tenant at the Premises, and to the address in this Lease below, or to any other place that Tenant may from time to time designate in a notice to the Landlord. All notices and demands by the Tenant to Landlord will be sent by United States Mail, postage prepaid, addressed to the Landlord at the address in this Lease, and to any other person or place that the Landlord may from time to time designate in a notice to the Tenant.

To Landlord: 360 Zinfandel Lane, St. Helena, California.

To Tenant: 360 Zinfandel Lane, St. Helena, California.

### Section 18. Successors and Assigns.

This Lease will be binding on and inure to the benefit of the parties to it, their heirs,

7

executors, administrators, successors in interest, and assigns.

### Section 19. Entire Agreement.

This lease sets forth all the agreements between Landlord and Tenant concerning the Premises, and there are no other agreements either oral or written other than as set forth in this Lease.

### Section 20. Partial Invalidity.

Should any provision of this lease by held by a court of competent jurisdiction to be either invalid, void, or unenforceable, the remaining provisions of this lease shall remain in full force and effect unimpaired by the holding.

### Section 21. Time of Essence and Governing Law.

Time is of the essence in this Lease. This Lease will be governed by and construed in accordance with California law.

### Section 22. Winery Parcel Improvements.

The purchase price of the land or the improvements shall be the fair market value of the asset that is being purchased and the Landlord and Tenant shall agree on the fair market value. If they are unable to agree on the value of the asset they shall select an appraiser who shall be engaged to determine the fair market value of the asset. The appraisal fee shall be shared.

8

IN WITNESS WHEREOF, the parties have executed this Lease as of the date first above written.

TENANT:

RONALD C. NICHOLSEN
KELHAM VINEYARDS & WINERY, LLC

LANDLORD:

SUSANNA R. KELHAM
12·26·05

9

**EXHIBIT A**

10

# Exhibit 43

Good Evening, Susanna Kelham

## Single Transactions    Recurring Transactions    Mobile Deposited Checks

| Created date | Status | Transaction Type | Account | Amount |
|---|---|---|---|---|
| 12/7/2021 | Processed | Funds Transfer - Tracking ID: 547683 | Wine Club Account XXXXX03172 | $20,000.00 |

| | | | | |
|---|---|---|---|---|
| **Tracking ID:** | 547683 | **Amount:** | $20,000.00 | |
| **Created:** | 12/07/2021 4:13 PM | **Description:** | Funds Transfer via Online | |
| **Created By:** | Susanna Kelham | **From Account:** | Wine Club Account XXXXX03172 | |
| **Authorized:** | 12/07/2021 4:13 PM | **To Account:** | BUSINESS SAVINGS XXXXX85776 | |
| **Authorized By:** | Susanna Kelham | | | |
| **Will process On:** | 12/07/2021 | | | |

FOR DEC. MORTGAGE

Case: 23-10384    Doc# 16-1    Filed: 08/07/23    Entered: 08/07/23 16:06:25    Page 306 of 316

# Exhibit 44

 **Bank of Marin**          THIS IS YOUR RECEIPT

```
TR:57  25-2501    01/05/22   12:15 PM
XXXXXX5776 Sav Dep      $32,000.00

Your Business, Our Community
```

TEL 0002 (9/14)          Thank You For Banking With Us

---

KELHAM VINEYARDS & WINERY LLC  ST. HELENA, CA 94574                                                    **15854**

  **Bank of Marin**                                              1/4/2022

                                                                          32,000.00

Mechanics Bank - #37   Monthly Mortgages                                   32,000.00

KV-Ins-0016407

KELHAM VINEYARDS & WINERY LLC  ST. HELENA, CA 94574

15901

Kelham Vineyards & Winery, LLC

1/25/2022

32,000.00

TRANSFER FOR MORTGAGE

Mechanics Bank - #37  MORTGAGE

32,000.00

32,000.00

SF5001NL-1
TO REORDER, CALL YOUR LOCAL SAFEGUARD DISTRIBUTOR AT 510-789-6773
CSCGPJ0010000   V16SF000204

@Safeguard  LITHO USA   SF5L1  CK7S0611FL

KV-Ins-0016409

# Exhibit 45

**KELHAM VINEYARDS & WINERY**

Kelham Vineyards & Winery, LLC

4/15/2022

**16072**

96,000.00

Mechanics Bank - #37   DEPOSIT - MORTGAGE SAVINGS ACCT#8577

96,000.00


10503


105031


Rev 2/14

 **Bank of Marin**

THIS IS YOUR RECEIPT

```
TR:15   24-2404    04/18/22   01:39 PM
XXXXXX5776 Sav Dep      $96,000.00

Your Business, Our Community
```

TEL 0002 (9/14)          Thank You For Banking With Us

KV-Ins-0016424

# Exhibit 46



**Department of Public Works**

1195 Third Street, Suite 101
Napa, CA 94559-3092
www.countyofnapa.org/publicworks

Main: (707) 253-4351
Fax: (707) 253-4627

Steven E. Lederer
Director

A Tradition of Stewardship
A Commitment to Service

October 25, 2018

Kelham Vineyards & Winery, LLC
c/o Hamilton Nicolsen
536 Mund Road
St. Helena, CA  94574

Dear Property Owner,

**Re:    Kelham Vineyards & Winery Voluntary Merger of Contiguous Parcels
under Common Ownership / APNs: 021-301-005 and 021-301-008**

The Department of Public Works (DPW) has approved your application to accomplish a voluntary merger of contiguous parcels under common ownership.  In order to finalize the merger, the new deed(s) merging your parcels into a single parcel must be recorded concurrently with the Certificate of Approval within 90 days of the date of this letter.  Failure to record the deed(s) and Certificate within the 90-day time period will deem the application to be automatically withdrawn.  This approval will expire on January 23, 2019.  The original certificate has been forwarded to your title company for recording.

After the documents have been recorded, conform copies must be submitted to this department.  Upon receipt of the recorded documents by DPW, the merger will be complete.  If you should have questions regarding this letter, please contact Patt Throne-Hetzer, Engineering Technician III at (707) 259-6719; or Danielle Goshert, County Surveyor at (707) 259-8380.  Thank you.

Regards,

Danielle Goshert, P.L.S.
County Surveyor
by:

Patt Throne-Hetzer
Surveying Services Division

cc:    Placer Title Company
Albion Surveys
file

# APPLICATION MAP FOR
# LOT LINE ADJUSTMENT

## COUNTY OF NAPA, STATE OF CALIFORNIA

For the Lands of
Kelham Vineyards & Winery LLC
September 18, 2018



Location Map
(NTS)

*IMPORTANT: THIS PLAT IS NOT A SURVEY. IT IS BASED ENTIRELY ON ASSESSOR'S MAPS AND IT IS FURNISHED FOR YOUR CONVENIENCE TO LOCATE THE SUBJECT PROPERTY IN RELATION TO ADJOINING LANDS, HIGHWAYS, ROADS AND STREETS AND NOT TO GUARANTEE ANY FIXED DIMENSIONS, OR ACREAGE. A FIELD SURVEY SHOULD BE PERFORMED PRIOR TO ANY CONSTRUCTION, DEMOLITION, CONVEYANCE OR TRANSACTION.*

# GENERAL NOTES:

| | | |
|---|---|---|
| SURVEYOR: | JON WEBB PLS, ALBION SURVEYS<br>1113 HUNT AVENUE. ST. HELENA, CA 94574 (707) 963-1217 | |
| PROPERTY: | APN 021-301-005<br>KELHAM VINEYARDS & WINERY LLC<br>536 MUND ROAD,<br>ST. HELENA CA, 94574 | APN 021-301-008<br>KELHAM VINEYARDS & WINERY LLC<br>536 MUND ROAD,<br>ST. HELENA CA, 94574 |
| ZONING: | AW | AW |
| EXISTING LAND USE: | RESIDENTIAL | RESIDENTIAL |
| PROPOSED LAND USE: | SAME | SAME |
| EXISTING WATER SOURCE: | ST. HELENA HOSPITAL WATER SYSTEM | NONE |
| PROPOSED WATER SOURCE: | SAME | SAME |
| EXISTING SEWAGE SYSTEM: | SEPTIC | NONE |
| PROPOSED SEWAGE SYSTEM: | SAME | SAME |
| WILLIAMSON ACT CONTRACT: | NONE | NONE |
| FLOOD ZONE: | PARCEL NOT IN FEMA FLOOD ZONE | PARCEL NOT IN FEMA FLOOD ZONE |

SHEET 1 OF 3
3854-02 MERGER.dwg

KV-Ins-0007237

# APPLICATION MAP FOR PARCEL MERGER

## COUNTY OF NAPA, STATE OF CALIFORNIA

## EXISTING CONFIGURATION



**LEGEND**

- ⊗ SEPTIC TANK
- ≡≡≡≡ SEPTIC FIELD
- ·····125···· 5' INT. CONTOUR LINES
- ▬▬▬ APPROXIMATE PROPERTY LINE
- ‒ ‒ ‒ APPROXIMATE EASEMENT LINE
- — — PROPERTY LINE TO BE ADJUSTED
- ☐ STRUCTURE AS NOTED

**GRAPHIC SCALE**

50    0    25    50

( IN FEET )
1 INCH = 50 FT.

ALBION

PREPARED BY
ALBION SURVEYS
SEPTEMBER 18, 2018

SHEET 2 OF 3
3854-02 MERGER.dwg

Case. 23-10384   Doc# 16-1   Filed. 08/07/23   Entered. 08/07/23 16:06:25   Page 315 of 316

KV-Ins-0007238

# APPLICATION MAP FOR PARCEL MERGER
## COUNTY OF NAPA, STATE OF CALIFORNIA
## PROPOSED CONFIGURATION



End of Easement
527 OR 276
210 OR 449
482 OR 229

90.00'
N77'06'00"W

Mund
APN 021-301-004

49.80'
S9'46'00"E

79.10'
N57'06'00"W

Beginning of
Easement
527 OR 276

20' Right of Way Easement
(Quitclaimed by 2006-0008824)

N28'06'00"W
70.00'

Beginning of
Easement
210 OR 449
482 OR 229

93.04'
S6'00'00"W

580'  585'

Proposed
Parcel One
0.80± Acres

Nicholsen
APN 021-342-002

37.59'
S5'00'00"E

73.34'
N79'46'00"W

N32'23'00"E
89.18'

40'±

595'  600'  605'  610'

590'

40'±

Residence

Mund Road

214.10'
S79'30'26"E

Nicholsen
APN 021-301-006

20'±

N11'31'00"W
5.00'

N

## LEGEND

- ⊗    SEPTIC TANK
- ☰    SEPTIC FIELD
- ·····125·····    5' INT. CONTOUR LINES
- ———    APPROXIMATE PROPERTY LINE
- – – –    APPROXIMATE EASEMENT LINE
- — —    PROPERTY LINE TO BE ADJUSTED
- ☐    STRUCTURE AS NOTED

### GRAPHIC SCALE

50    0    25    50

( IN FEET )
1 INCH = 50 FT.

ALBION

PREPARED BY
ALBION SURVEYS

SEPTEMBER 18, 2018

SHEET 3 OF 3
3854-02 MERGER.dwg

Case: 23-10384   Doc# 16-1   Filed: 08/07/23   Entered: 08/07/23 16:06:25   Page 316 of 316

KV-Ins-0007239