**REBEKAH PARKER SBN 143674**
4225-H Oceanside Boulevard #369
Oceanside CA, 92056-3472
Telephone No. (213) 628-2918
Email: AttorneyRParker@Gmail.Com

Attorney for Main Street Cottage, LLC.
Petitioning Creditor

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SANTA ROSA DIVISION

| | |
|---|---|
| In re<br>KELHAM VINEYARD & WINERY, LLC.<br>                Alleged Debtor. | Case No. 23-10384<br><br>Chapter 11<br><br>**OPPOSITION TO RONALD NICHOLSEN II'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY: MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF REBEKAH PARKER IN SUPPORT THEREOF**<br><br>DATE: August 16, 2023<br>TIME: 9:30 A.M.<br>ROOM: Courtroom 220<br><br>United States Bankruptcy Court<br>1300 Clay Street<br>Oakland, CA 94612 |

# Table of Contents

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 3 |
| II. | THE PARTIES | | 4 |
| III. | FACTUAL BACKGROUND | | 7 |
| IV. | ARGUMENT | | 8 |
| | A. | Keeping the Stay in Place Serves the Statutory Mandate of Title 11. | 8 |
| | B | Keeping the Stay in Place Serves the Interest of Judicial Economy. | 9 |
| | C. | Keeping the Stay in Place Serves the Economic Interests of Both the Estate and Creditor Ron to the Extent that Title 11 Provides a Forum Where Creditors Can Examine a Debtor's Books and Records Without a Debtor Having to Bear the Expense of Having to Respond to Individual Creditor Demands and Without the Creditor Having to Bear the Expense of Having to Make Demands. | 10 |
| | D. | Keeping the Stay in Place Serves the Interest of Protecting the Estate and Its Creditors Without Substantially Affecting or Causing 'Legal Prejudice' to Creditor Ron. | 12 |
| | E. | Keeping the Stay in Place Preserves the Estate's Defenses Against the Claims of Creditor Ron; Granting Relief Would Be Highly Prejudicial to KVW, Other Creditors, and All Equity Holders. | 12 |
| | F. | Keeping the Stay in Place Prohibits the Solicitation and/or Entry of Any State Court Order that Requires Susanna Kelham to Speak on Behalf of KVW or Take Any Action on Behalf of KVW | 13 |
| V. | CONCLUSION AND RELIEF REQUESTED | | 15 |
| Declaration of Rebekah Parker | | | 16 |
| Certificate of Service | | | 17 |

**TO WILLIAM LAFFERTY, U.S. BANKRUTPCY JUDGE, KELHAM VINEYARD & WINERY, LLC., AND THE OFFICE OF THE U.S. TRUSTEE:**

# I
# INTRODUCTION

The Motion for Relief from Stay ("Motion") of Ronald Nicholsen II ("Creditor Ron[1]") should be denied on the ground that Creditor Ron has failed to show "cause" why relief should be granted.

This Motion is fashioned as a request by a "party-in-interest" in connection with a Writ of Mandate (the "Writ Action"), which suggests that more is at stake than the enforcement of a disputed monetary claim. However, by Creditor Ron's own admission, what we have here is simply a creditor with a 'disputed' claim for attorney fees that wants to continue litigating rather than simply file a Proof of Claim as dictated by the policies underlying Title 11.

On this point, the evidentiary record before this court is clear,

> The only questions to be resolved in that trial are whether the parties complied with the Court's writ of mandate issued on November 4, 2022 and whether Ronald Nicholsen can recover his attorneys fees and costs in attempting to enforce his statutory rights. Motion, Page 3, Lines 17-21.

Based on the record, Creditor Ron's remedy is to file a Proof of Claim, which will be deemed allowed in the absence of a duly filed Objection to Claim. Succinctly stated, if and when it can be shown that Creditor Ron's claim has any value, cause may exist for liquidation of this claim in State Court rather than in the above captioned bankruptcy case; but, as the record stands today, it would be an unmitigated waste of this Estate's limited time and dollars, as well as State and Federal Judicial resources to further litigate and liquidate Creditor Ron's claim. Stated in the simplest terms, when all

---

[1] No disrespect is intended or should be taken by the reference to Ronald Nicholsen III as "Ron" or "Creditor Ron". Because both Movant and Respondent's representative are surnamed "Nicholsen", referring to them by a shortened version of their first names (names used their entire lives) is an appropriate convention (i.e., Ronald being called "Ron" and Hamilton being called "Ham").

is said and done, Creditor Ron's claim may receive a zero dividend, making the prudent approach in Case Administration to simply keep the stay in place for the time being, pending the liquidation of this Estate's assets.

## II
## THE PARTIES

While clearly not the threshold issue in this motion, a clear understanding of who Creditor Ron is and what Creditor Ron is after may help put this matter into perspective. Creditor Ron, the elder of two adult children of Susanna Kelham, is the proverbial "prodigal son" who has squandered his inheritance; but, unlike the prodigal son of biblical fame who returned to his father and asked for forgiveness, Creditor Ron sued his mother hoping to exact more money from her. See generally, Declaration of Hamilton Nicholsen.

For the past several years, Creditor Ron has been circulating a false narrative regarding his role at and his relationship to Kelham Vineyard & Winery ("KVW"), a false narrative that is repeated in this motion. Specifically, contrary to the false representations made in his moving papers, KVW was NOT "founded" by Creditor Ron. Motion, Page 4, Lines 17-23. Moreover, it should be made clear that Creditor Ron never invested a cent of his own money in KVW. And while there is no denying that Creditor Ron has a statutory right to inspect KVW's books and records, one should never lose sight of the fact that Creditor Ron is basically suing his mother to determine the value of a gift she gave him, his interest in KVW[2]. Declaration of Hamilton Nicholsen, ¶¶ 19-26, 31.

---

[2] There is no denying that the Writ Action needlessly got out of control; and for this there is plenty of blame to go around. Plaintiff, Creditor Ron, has been overreaching in his demands and sloppy in his discovery practices, unrealistically expecting and demanding that KVW management and staff have knowledge of account balances off the top of their heads, without access to KVW accounting records. See generally, Deposition of Susanna Kelham, attached as Exhibit 6 to the Declaration of H. Davis. As for Defendant, through no fault of its own, KVW is the victim of bad accounting and bookkeeping practices by former CPAs and bookkeepers. KVW has at all times employed what it believed were competent CPAs and bookkeepers; however, time has shown that in several instances some of these

Kelham Vineyard and Winery ("KVW") was founded by Rawson "Rory" Kelham in 2001, the deceased spouse of Susanna Kelham[3]. Prior to Rawson's death, 75% of the membership shares were held by Rawson and his wife Susanna, who gifted their adult children Ronald ("Ron") Nicholsen and Hamilton ("Ham") Nicholsen each a 12 ½ percent interest[4]. After Rawson's death, Susanna Kelham found herself having to secure loans to keep KVW afloat; but somehow the original operating agreement "mysteriously"[5] disappeared. In order to secure the loan on an expedited basis as was needed, a new operating agreement was prepared by a bank loan officer, that reallocated the membership shares in KVW, therein increasing Ron's share to a 1/3 interest. Feeling pressure to close the loan due to the pending cash crunch, Susanna Kelham signed the new operating agreement without reviewing it carefully and without an opportunity to consult an attorney. Declaration of Hamilton Nicholsen, ¶¶ 20-31.

---

CPAs and bookkeepers employed bad judgment in their accounting and bookkeeping practices. But, as will be shown in the bankruptcy disclosure process, much if not all of what is perceived as nefarious by Creditor Ron's attorneys are simply sloppy accounting practices, which is to say that while some of KVW's disbursements in the past may have been mislabeled and mischaracterized, when all is said and done, the record is clear that, contrary to what Creditor Ron would have this Court believe, there is no evidence that KVW has made any improper disbursements at his expense and/or without his consent. Declaration of Hamilton Nicholsen, ¶¶ 43-46.

[3] "After a long battle with diabetes, Rory Kelham lost the fight on Oct. 8 at his home in the Napa Valley. He was 73. Beginning in 1971, Rory farmed in the prestigious Western Oakville Appellation, supplying fruit to wineries such as Robert Mondavi, Cakebread Cellars and BV for Georges De La Tour. His farming practices employed the respected Old World tradition — that fine wines are a product of the vineyard. Rory was a man of his words and compromised for nothing." <u>Wine Business</u>, October 24, 2011.

[4] Susanna Kelham is the natural or birth mother of both Ronald and Hamilton Nicholsen from a prior marriage; Rawson was their common law stepfather.

[5] On June 20, 2023, while cleaning out barn storage space, the original 2001 KVW Operating Agreement was found squirreled away among Creditor Ron's personal possessions left behind when Creditor Ron abandoned his post at KVW. Declaration of Hamilton Nicholsen, ¶¶ 30.

In the years that followed, Ron contributed less and less to help keep KVW afloat; in contrast, Ham and his mother found themselves working day and night. While Ron enjoyed the prestige of wine country life, he simply lacked the work ethic of Rawson, Susanna, and Ham, required to run a winery. Ron fancied himself a playboy, a slick operator, a wheeler-dealer, whose self-described role was to promote the winery at Napa parties, official functions, and in his travels, all paid for by his mother Susanna and KVW, meanwhile his brother Ham toiled in the vineyard and served as KVW's winemaker. To be clear, all this time, Creditor Ron collected a salary and received company benefits, including health coverage, a car, and was allowed to live in various properties owned or leased by KVW. Over the course of time, Susanna and Ham lost interest in funding Ron's lifestyle or putting up with his disruptive shenanigans at the winery. So, when Ron threatened to leave his post at KVW, Susanna and Ham said, "Good Riddance", with Susanna instructing him to stay away from the property[6]. Declaration of Hamilton Nicholsen, ¶¶ 32-37.

## III
## FACTUAL BACKGROUND

Creditor Ron would have this Court believe that the above captioned involuntary was filed by Ham simply to stay a single deposition, making the misguided argument that the *" involuntary bankruptcy petition is consistent with and in furtherance of Kelham Vineyards' and Susanna Kelham's ongoing effort to obstruct Ronald Nicholsen's statutory right to inspect the company's books and records"*. Motion, Page 4, Lines 17-23. Clearly, Creditor Ron and his attorney lack an understanding of the amount of disclosure and examination KVW, and Ham, personally as KVW's winemaker and

---

[6] Creditor Ron would like people to think that Susanna's request that he stay away from KVW was a punitive measure. In point of fact Susanna was protecting the company. Creditor Ron had been caught attempting to sell KVW inventory and attempting to contract for use of KVW facilities and winemaking equipment with third parties, for his own account, without KVW approval. Declaration of Hamilton Nicholsen, ¶ 39.

curator of this bankruptcy estate's most valuable asset (the "Kelham Wine Library"), will be subjected to in this bankruptcy proceeding. Motion, Page 3, Lines 10-13. Subjecting oneself to a deposition is child's play when compared to preparing bankruptcy lists, statements, and schedules, attending a U.S. Trustee conducted 341(a) meeting of creditors, and complying with U.S. Trustee Guidelines for Debtors-in-Possession. Declaration of Hamilton Nicholsen, ¶ 40

While it may have brought his mother to tears, Ham, as a Member of Main Street Cottage LLC, filed this involuntary as an act of mercy to create a forum for the liquidation of KVW's assets and liabilities, thereon allowing everyone connected with KVW to start a new life, to get a fresh start. With Susanna Kelham no longer willing to and/or in a position to finance KVW's income shortfalls or defer payment of KVW debts for rents and grapes, KVW is no longer a viable entity. As such, a case under Chapter 11 of the United States Bankruptcy Code, provides an ideal forum for the liquidation of both KVW's assets and liabilities. Declaration of Hamilton Nicholsen, ¶¶ 3-5.

## IV
## ARGUMENT

Creditor Ron's attempt to state "cause" for relief from stay misses the proverbial boat. Succinctly stated, as a general proposition, whether or not relief should be granted is determined by a balancing of interests, a comparison of the impact of granting relief on the Bankruptcy Estate compared to the impact on Creditor Ron of allowing the stay to remain in place. With that said, what constitutes "cause" for granting relief from the automatic stay is decided on a case-by-case basis. Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1166 (9th Cir.1990); Piombo Corp. v. Castlerock Props. (In re Castlerock Props.), 781 F.2d 159, 163 (9th Cir.1986).

With this case-by-case analytic framework in mind, Respondent respectfully submits that the interests of both the Estate and Creditor Ron tip heavily in favor of keeping the stay in place as evidenced by the following points and authorities:

**A. Keeping the Stay in Place Serves the Statutory Mandate of Title 11.**

"The automatic stay protects the interests of both debtors and creditors. The primary purpose is to assist the debtor. From the debtor's perspective, it provides a breathing spell from the pressure and demands of creditors. The automatic stay provides the debtor with an opportunity to address business problems and negotiate a plan of reorganization without interference from creditors. Secondarily, the automatic stay generally benefits the creditor group. The stay prevents depletion of the bankruptcy estate by creditors who, to the detriment of other creditors, race to the courthouse or use "self-help" remedies to enforce their rights. In this way, the automatic stay enables the orderly administration of the bankruptcy estate, which in turn promotes the policy of equality of distribution." Thompson Reuters, *The Automatic Stay in Bankruptcy*: An Overview, ABA, September 22, 2022.

Summarily stated, granting Creditor Ron relief from stay at this juncture would unduly interfere with and hinder the orderly administration of this Bankruptcy Estate, which as noted above entails the liquidation of KVW assets. Among KVW assets that must be liquidated are grapes from the 2023 Harvest, which takes place any time now, as soon as the grapes attain the requisite sugar, pH, and TA levels, an operation overseen by Ham as KVW's winemaker. Simply stated, KVW needs a breathing spell from the pressure and demands of Creditor Ron's Writ Action to address its business problems and to negotiate a plan of reorganization-liquidation. Granting Creditor Ron relief from stay at this juncture results in further depletion of this Bankruptcy Estate's limited resources at a time when KVW should be using these resources to market its assets. Stated in the simplest terms, securing the

best and highest price for KVW's assets will serve everyone's interest, including Ron's both in his capacity as a Creditor and an Equity Holder. Declaration of Hamilton Nicholsen, ¶¶ 7-9.

### B. Keeping the Stay in Place Serves the Interest of Judicial Economy.

As previously noted, Creditor Ron's remedy is to file a Proof of Claim, which will be deemed allowed in the absence of a duly filed Objection to Claim. If and when it can be shown that Creditor Ron's claim has any value, cause may exist for liquidation of this claim in State Court rather than in the above captioned bankruptcy case; but, as the record stands today, it would be an unmitigated waste of both this Estate's limited time and resources, as well as State and Federal Judicial resources to further litigate and liquidate Creditor Ron's claim. When all is said and done, Creditor Ron's claim may receive a zero dividend, making the prudent approach in administering this Bankruptcy Estate to simply keep the stay in place pending liquidation of this Estate's assets. Declaration of Hamilton Nicholsen, ¶¶ 8-43.

### C. Keeping the Stay in Place Serves the Economic Interest of Both the Estate and Creditor Ron to the Extent that Title 11 Provides a Forum Where Creditors Can Examine a Debtors Books and Records Without a Debtor Having to Bear the Expense of Having to Respond to Individual Creditor Demands and Without the Creditor Having to Bear the Expense of Having to Make Demands.

Counsel for Respondent would submit that the level of financial disclosure required of a debtor in bankruptcy, particularly a Chapter 11 Debtor, well exceeds the review of basic books and records a limited liability company is subjected to by virtue of Title 2.6 of the California Corporations Code, commonly known as the California Revised Limited Liability Company Act. To this end, given that there is no prejudice to Creditor Ron in keeping the stay in place for the time being *(as will be shown below)*, the interests of both the Estate and Creditor Ron are served in that this "time out" may provide KVW with an opportunity to demonstrate to Creditor Ron that continued and protracted litigation is NOT in his best interest and that said continued and protracted litigation will irreparably

harm his equity interest. KVW has already incurred unpaid attorney fees and costs in excess of $400,000.00 in connection with Creditor Ron's statutory right to inspect KVW's books that will appear as a claim against this Bankruptcy Estate, a claim that is paid <u>before</u> his equity interest.

To this end, it would behoove Creditor Ron (and his Attorney if they are truly prosecuting the Writ Action in his best interest rather than merely as a way to generate attorney fees) to sit back and take in all the financial data that will be presented in the next four to eight weeks in connection with the submission of KVW's lists, statements, schedules, and initial U.S. Trustee Guidelines. The Writ Action is not an end unto itself; it yields and produces nothing for Creditor Ron, only fees for his lawyers. When all is said and done, what Creditor Ron desires is money is his pocket, not his lawyer's pockets, whether he can exact it by making demands for more money and applying undue pressure on his mother or whether he can exact it by forcing the liquidation of the family business. As things stand, it appears that Susanna Kelham is through being shaken down—Susanna Kelham is prepared to liquidate the family business. To this end, the type of financial data originally sought in the Writ Action may no longer be relevant as a practical matter, which is to say that the valuation of KVW as a going concern is now off the table, Creditor Ron and his attorney need to start assessing Creditor Ron's interest in KVW from a liquidation standpoint. Declaration of Hamilton Nicholsen, ¶¶ 3-46.

Finally, simply as a matter of completeness, it should be stressed that Creditor Ron's Motion is replete with misrepresentations omissions, and mischaracterizations regarding the status of the Writ Action. The motion opens with Creditor Ron telling this Court that, "*The only questions to be resolved in that trial are whether the parties complied with the Court's writ of mandate issued on November 4, 2022 and whether Ronald Nicholsen can recover his attorneys fees and costs in attempting to enforce his statutory rights*" (Motion, Page 3, Lines 17-21), which may well speak to the only issue that is important to Creditor Ron's attorneys; but, then the Motion goes on and on about various outstanding

issues and the need for supplemental depositions[7], all while attempting to preserve the fiction that *"Hamilton Nicholsen is the last fact-witness Ronald Nicholsen anticipates deposing in anticipation of the trial in the state action "* and that the matter is ready for trial. Motion, Page 9, Line 1-2. While these misrepresentations omissions, and mischaracterizations are not outcome determinative *per se*, they collectively help paint the complete picture of the true procedural status of the Writ Action, pending appeals and all. Time permitting, these issues will be addressed in a Supplemental Declaration of Attorney Andrew White, one of many attorneys in the Writ Action, to be submitted at a later time in support of this Opposition.

> **D. Keeping the Stay in Place Serves the Interest of Protecting the Estate and Its Creditors Without Substantially Affecting or Causing 'Legal Prejudice' to Creditor Ron.**

As illustrated by paragraphs A, B, and C above, keeping the stay in place serves the policies underlying Title 11 by protecting the Estate's creditors and equity holders; with that said, there is no evidence of any "legal" prejudice to Creditor Ron in keeping the stay in place. While Creditor Ron's motion makes a nominal allegation of prejudice, the motion fails to present anything by way of compelling factual or legal analysis to substantiate the claim. Motion, Page 13, Lines 13-19. Creditor Ron argues that he is prejudiced because he has "expended significant legal fees over the past two years to enforce his statutory right to inspect Kelham Vineyards' books and records in the state action." Motion, Page 13, Lines 15-16. While this may and/or may not be true (*there is speculation that Creditor Ron's attorneys agreed to take the case on a contingency because they see Susanna Kelham as a vulnerable widow with "deep pockets"*), the fact that a litigant has expended "significant funds" on prepetition litigation that has not been reduced to a judgment does not standing alone

---

[7] See Motion, Page 23, Footnote 3 regarding the alleged need for supplemental depositions from Susanna Kelham and Melanie Drescher.

constitute "legal" prejudice for relief from stay analysis.  If this were true, relief would be granted in every situation where a pending action was stayed by the filing of a bankruptcy.  Creditor Ron also argues that if relief is not granted, he is prejudiced because he will effectively be "forced to start over".  Motion, Page 13, Lines 17.  This allegation is utter nonsense. The automatic stay is just that a "stay".  It does not terminate the action.  Summarily stated, Creditor Ron has failed to show that leaving the stay in place results in any legal prejudice to his claim.

> **E. Keeping the Stay in Place Preserves the Estate's Defenses Against the Claims of Creditor Ron; Granting Relief Would Be Highly Prejudicial to KVW, Other Creditors, and All Equity Holders.**

Stated in the simplest terms, KVW at this juncture lacks the funds and legal representation to defend against Creditor Ron's litigious claim.  As previously noted, KVW has already incurred unpaid attorney fees and costs in excess of $400,000 in connection with Creditor Ron's statutory right to inspect KVW's books, a debt that will appear as a claim against this Bankruptcy Estate.  In the past, Susanna Kelham has been willing to foot the bill and advance enough funds to keep KVW afloat; but Ms. Kelham has had enough—she is 72 years old and has grown weary and tired of her prodigal son's shenanigans.  KVW's relationship with Corporate Counsel in the Writ Action has soured, with counsel understandably doing as little as possible because they are not being paid.  At this juncture, until KVW is able to demonstrate to an attorney that assets exist in this Estate to pay for their post-petition legal services, nobody is interested in taking on this case.  Declaration of Hamilton Nicholsen, ¶¶ 11-13.  As such, granting relief from stay at this juncture would be highly prejudicial to KVW, other creditors, and all equity holders.  The situation is such that this case may require the appointment of a trustee, a turn of events that would not serve anyone's interest given the complexity of the relationship between KVW and its landlords and suppliers; however, as a matter of judicious case administration, the stay

should be allowed to remain in place to preserve the Estate's defenses against Creditor Ron so that the situation can be evaluated by a trustee in the event one is appointed.

**F. Keeping the Stay in Place Prohibits the Solicitation and/or Entry of Any State Court Order Which Requires Susanna Kelham to Speak on Behalf of KVW or Take Any Action on Behalf of KVW.**

Summarily stated, the pending Writ Action is against KVW pursuant to California Corporate Code §17704.10, which (a) grants members of a limited liability company clearly delineated rights to inspect certain books and records and (b) contains provisions for an award of attorney fees against the limited liability company if it fails to reasonably comply with California Corporate Code §17704.10 (g). With that said, while Susanna Kelham is a named Defendant-Respondent in the Writ Action, neither the statutory basis for the action nor the prayer for relief in that action seeks relief as to Susanna Kelham individually, which is to say that Susanna Kelham has been named and/or functions in the Writ Action simply as a proxy for or representative of KVW, which is to say that any demand or order entered against Susanna Kelham would be a demand or order against KVW. See, *Petition for Writ*, attached as Exhibit 1 to the Declaration of H. Davis in Support of Motion. As such, given the unique parameters of the Writ Action, any demand or order entered against Susanna Kelham is *de facto* a demand or order against KVW in violation of the automatic stay[8].

---

[8] This point is illustrated by Creditor Ron's mischaracterization of the attorney fee order entered on his behalf against KVW, an order which is currently on appeal, a fact which Creditor Ron neglects to point out. Specifically, while Creditor Ron represents that the State Court entered a *"sanctions awards against Susanna Kelham (personally) totaling over more than $140,000"* (Motion, Page 13, Lines 17), the exact language of the Order is that *"Respondent Susanna Kelham (on behalf of Respondents) is ordered to personally pay…"* Order, Page 2, Line 14. While the distinction is subtle, the distinction is important, which is to say that there is no stand-alone attorney fee award against Susanna Kelham, the attorney fee award (not labelled as a sanction by the Order) was entered against KVW with Susanna Kelham, as KVW's Managing Member, personally ordered to pay it on "behalf of KVW". Again, California Corporate Code §17704.10, the statutory basis for the Writ Action, does not create causes of action against limited liability company managers or members, California Corporate Code §17704.10 simply creates a cause of action (and remedies thereon) against

With that said, without going into the minutia, there is a substantial body of case law that finds that a non-debtor and a debtor share an identity of interests when the identity between parties is so great as to make a judgment against the third-party defendant in effect a judgment or finding against the debtor and thus in violation of the automatic stay, commonly referred to as the "alter-ego" and/or "internally related entity" doctrines. See generally, In re Panther Mountain Land Development, LLC., 686 F. 3d 916 (8th Cir. 2012). To be clear, while Susanna Kelham would undoubtedly qualify for protection under this body of case law, Counsel for Respondent is neither looking to nor relying on this body of case law when asserting that given the parameters of the Writ Action, any demand or order entered against Susanna Kelham is *de facto* a demand or order against KVW in violation of the automatic stay. In the case at bar, the conversion of fact and law is so unique that for all intents and purpose, *vis a vis* the Writ Action, Susanna Kelham is KVW.

Having said that, it should be stressed that, should Creditor Ron and his attorneys not find this argument compelling, grounds clearly exist for Susanna Kelham to secure a co-debtor stay under controlling 9th Circuit precedents. See generally, In re Excel Innovations, Inc., 502 F. 3d 1086 (9th Cir. 2007). Specifically, as nominally illustrated above, to the extent KVW simply seeks an orderly liquidation, "the likelihood of a successful reorganization" is very high while the hardship to Creditor Ron of allowing the stay to remain in place is small (i.e., Creditor Ron has shown no legal prejudice). As such, a court balancing these interests, under binding 9th Circuit, should find that a co-debtor stay is appropriate given these unique facts.

---

the limited liability company itself. As such, any order or judgment issued in connection the Writ Action is an order or judgment against KVW and thus barred by the automatic stay. See, Attachment to Notice of Entry of Judgment or Order, included as Exhibit 7 to the Declaration of H. Davis in Support of Motion, more specifically, page 52 of Docket No. 11-2.

## V
## CONCLUSION

Based on the foregoing, Respondent would urge this Court to deny Creditor Ron's motion without prejudice, pending the development of new facts or a change in circumstances that might constitute grounds for Creditor Ron to renew his motion and/or for the Court to reconsider the issue.

August 10, 2023

_____
Rebekah Parker,
Attorney for Main Street Cottage, LLC.,
Petitioning Creditor

**Declaration of Rebekah L. Parker**

I, Rebekah L. Parker, declare:

1. I am an attorney at law, duly qualified and licensed to practice before the U.S. District Court for the Northern District of California, as well as the U.S. Bankruptcy Court for the Northern District of California. I have personal knowledge of the following facts.

2. I drafted, reviewed, and revised, the above captioned **OPPOSITION TO RONALD NICHOLSEN II's MOTION FOR RELIEF FROM THE AUTOMATIC STAY: MEMORANDUM OF POINTS AND AUTHORITIES.**

3. To the best of my knowledge, information, and belief, the facts set forth therein are true and correct.

4. To the best of my knowledge and belief, all the documents attached hereto, in any, are true and correct copies of their originals.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on August 10, 2023, in the County of San Diego, State of California.

_[signature]_
Rebekah Parker, Declarant

# CERTIFICATE OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 4225-H Oceanside Boulevard #369, Oceanside CA, 92056-3472

On August 10, 2023, a true and correct copy of the foregoing document described as **OPPOSITION TO RONALD NICHOLSEN II 'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY: MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF REBEKAH PARKER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR; and **(b)** in the manner indicated below:

William Lafferty
U.S. Bankruptcy Court,
1300 Clay St. Room 220,
Oakland, CA 94612
<u>Served by Priority Mail</u>

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 10, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

| | |
|---|---|
| U.S. Trustee | USTPRegion17.SF.ECF@usdoj.gov |
| Rebekah Parker | attorneyrparker@gmail.com |
| Harold Davis | Hal.Davis@gtlaw.com |

**II. <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL:</u>** On August 10, 2023, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Susanna R. Kelham
Manager Member
Kelham Vineyard & Winery, LLC.
360 Zinfandel Lane
St. Helena, CA 94574
<u>Served by U.S. Mail</u>

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 10, 2023, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Susanna R. Kelham
Manager Member
Kelham Vineyard & Winery, LLC.
360 Zinfandel Lane
St. Helena, CA 94574
<u>Served by Email</u>:
info@kelhamvineyards.com.

Alexis White, Attorney for
Susanna R. Kelham
Day, Pace, York & York
587 Jefferson Street
Napa, CA 94559
<u>Served by Email</u>
awhite@yorkyorklaw.com

Service information continued on attached page: None

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

August 10, 2023

_____
Rebekah Parker