Harold H. Davis (SBN CA 235552)
Marc R. Baluda (SBN CA 192516)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
Hal.Davis@gtlaw.com
Marc.Baluda@gtlaw.com

Michael Thomson *pro hac vice pending*
GREENBERG TRAURIG, LLP
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: 801.478.6817
thomsonm@gtlaw.com

Attorneys for Petitioner RONALD NICHOLSEN II

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SANTA ROSA

|  |  |
|---|---|
| In re Kelham Vineyards & Winery, LLC | Bankruptcy Case No.<br> 23-10384 SR__- Chapter 11<br> [Assigned to: Judge William Lafferty]<br><br>**DECLARATION OF HAROLD DAVIS IN SUPPORT OF REPLY MEMORANDUM IN FURTHER SUPPORT OF RONALD NICHOLSEN'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Hearing:<br>DATE: Aug. 16, 2023<br>TIME: 9:30 a.m.<br>DEPT: 220 |

DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF REPLY MEMORANDUM IN FURTHER
SUPPORT OF RONALD NICHOLSEN'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Case: 23-10384   Doc# 24-2   Filed: 08/14/23   Entered: 08/14/23 19:35:30   Page 1 of 29

ACTIVE 689477090v1

# DECLARATION OF HAROLD H. DAVIS

I, Harold H. Davis, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California. I am a principal shareholder of the law firm Greenberg Traurig, LLP, attorneys of record for Party in Interest Ronald Nicholsen II ("Nicholsen"). I am the lead counsel for Petitioner in the case captioned *Ronald Nicholsen v. Kelham Vineyards and Winery, LLC, et al*. pending in Superior Court of California, Napa County, case no. 21CV001403. The following facts are within my personal knowledge, and if called upon as a witness, I could and would competently testify to the truth of the matters asserted in this Declaration. I submit this Declaration in support of Party in Interest Ronald Nicholsen's Reply Memorandum In Further Support Of Ronald Nicholsen's Motion For Relief From The Automatic Stay.

2. On April 27, 2023, I deposed Susanna Kelham in her personal capacity and designated by Kelham Vineyards as a person most knowledgeable. Attached hereto as **Exhibit 23** is true and correct copy of excerpts of the transcript from Susanna Kelham's deposition.

3. Attached hereto as **Exhibit 24** is a true and correct copy of Kelham Vineyards' website at www.kelhamvineyards.com, which was obtained on August 13, 2023 at 2:41 p.m..

4. Attached hereto as **Exhibit 25** is a true and correct copy of a chain of title guarantee obtained from Stewart Title Guaranty Company on July 14, 2023.

5. Attached hereto as **Exhibit 26** is a true and correct copy of Kelham Vineyards & Winery, LLC's articles of organization downloaded from the California Secretary of State website located at https://bizfileonline.sos.ca.gov/search/business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 14th day of August 2023, in Taipei, Taiwan.

/s/ _____
Harold H. Davis

1

**DECLARATION OF HAROLD H. DAVIS IN SUPPORT OF REPLY MEMORANDUM IN FURTHER SUPPORT OF RONALD NICHOLSEN'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

ACTIVE 689477090v1

# EXHIBIT 23

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF NAPA

---oOo---

RONALD NICHOLSEN II,          )
                              )
            Petitioner,       )
                              )
        vs.                   )      No. 21CV001403
                              )
KELHAM VINEYARDS & WINERY LLC )
and SUSANNA ROGERS KELHAM,    )
                              )
            Respondents.      )
_____)

**CERTIFIED COPY**

---oOo---

VIDEOTAPED DEPOSITION OF PERSON MOST KNOWLEDGEABLE

OF KELHAM VINEYARDS & WINERY, LLC

SUSANNA ROGERS KELHAM

---oOo---

Napa, California
Thursday, April 27, 2023
9:05 a.m.

CECILIA E. RODRIGUEZ, CSR No. 11479, RPR

1                           ---oOo---

2                          I N D E X

3                           ---oOo---

4

5     APPEARANCES:                                    PAGE

6                                                     11

7                           ---oOo---

8

9     EXAMINATION BY:                                 PAGE

10          MR. DAVIS . . . . . . . . . . .           15

11                          ---oOo---

12    DEPOSITION EXHIBITS:                            PAGE

13

14       1    Amended Notice of Taking Deposition     17

15            of Kelham Vineyards and Winery LLC's

16            Person Most Knowledgeable

17       2    Emails to Harold Davis and Marc         23

18            Baluda from Richard Petty dated

19            November 15, 2021

20       3    Order Sanctioning Respondent            24

21            Susanna Rogers Kelham For Failure to

22            Comply With the Court's Writ of

23            Mandate and Order Dated November 4,

24            2022

25    ///

Case: 23-10384 * Doc# 24-2 * Filed: 08/14/23 Entered: 08/14/23 19:35:30 Page 5 of 29

Sims & Sims Reporting, Inc. * (707) 326-3022

1       BE IT REMEMBERED that, on Thursday, the 27th

2  day of April, 2023, commencing at the hour of 9:05

3  o'clock a.m. thereof, at Sims & Sims Reporting, 1700

4  Second Street, Suite 308, Napa, California, before

5  me, Cecilia E. Rodriguez, CSR No. 11479, a duly

6  licensed Certified Shorthand Reporter in the State

7  of California, there personally appeared

8                SUSANNA ROGERS KELHAM,

9       the witness herein, who, being by me first

10  duly sworn, was thereupon examined and testified as

11  hereinafter set forth.

12                   ---oOo---

13              A P P E A R A N C E S

14                   ---oOo---

15       GREENBERG TRAURIG, LLP, 101 Second Street,

16  Suite 2200, San Francisco, California 94105,

17  represented by HAROLD H. DAVIS, ESQUIRE, appeared

18  as counsel on behalf of the Petitioner herein.

19       GREENBERG TRAURIG, LLP, 101 Second Street,

20  Suite 2200, San Francisco, California 94105,

21  represented by MARC R. BALUDA, ESQUIRE, appeared

22  as counsel on behalf of the Petitioner herein.

23       GREENBERG TRAURIG, LLP, 101 Second Street,

24  Suite 2200, San Francisco, California 94105,

25  represented by RICHARD RODRIGUEZ, ESQUIRE, of

Case: 23-10384 * Doc# 24-2 * Filed: 08/14/23 Entered: 08/14/23 19:33:30 Page 6 of 29

1    counsel, on behalf of the Petitioner herein.

2         VGC LLP, 9461 Charleville Boulevard, Suite

3    757, Beverly Hills, California 90212, represented by

4    ANDREW D. WHITE, ESQUIRE, appeared as counsel on

5    behalf of the Respondent Susanna Rogers Kelham,

6    herein.

7         HOLLAND & KNIGHT, LLP, 400 S. Hope Street,

8    8th Floor, Los Angeles, California 90071, represented

9    by RICHARD W. PETTY, ESQUIRE, appeared as counsel on

10   behalf of the Respondents Kelham Vineyards & Winery,

11   LLC, herein.

12        Mike Tunick, Videographer, Ronald Nicholsen,

13   Hamilton Nicholsen and Genevieve Crego were also

14   present.

15

16

17

18

19

20

21

22

23

24

25

Case: 23-10384 * Doc# 24-2 * Filed: 08/14/23 Entered: 08/14/23 19:35:30 Page 7 of 29

Sims & Sims Reporting, Inc. * (707) 326-3022

1                    PROCEEDINGS

2         THE VIDEOGRAPHER:  We're going on record at

3    9:05 a.m.  It's April 27, 2023.  This marks the

4    beginning of the deposition Susanna Kelham in the

5    matter of Ronald Nicholsen II vs. Kelham Vineyards &       09:06:19

6    Winery LLC.  And this is for the Superior Court,

7    State of California, County of Napa, case number

8    21CV001403.  We're located at Sims & Sims Deposition

9    Reporters in Napa.  The videographer is Mike Tunick,

10   and I've been retained by counsel for the Petitioner.

11        And now can we have our attorneys present

12   please introduce yourselves.

13        MR. DAVIS:  Good morning.  My name is Harold

14   Davis.  I'm with Greenberg Traurig in San Francisco.

15   And with me today is my partner and shareholder Marc      09:06:54

16   Baluda, and also of counsel with the firm Richard

17   Rodriguez.  Also, in attendance is Petitioner

18   Mr. Nicholsen.

19        MR. WHITE:  Good morning.  Andrew White on

20   behalf of Respondent Susanna Kelham.                      09:07:08

21        MR. PETTY:  Richard Petty on behalf of the

22   LLC.

23             SUSANNA ROGERS KELHAM,

24         Having first been duly sworn, was

25            examined and testified as follows:

Case: 23-10384 * Doc# 24-2 * Filed: 08/14/23 Entered: 08/14/23 19:33:30 * Page 8 of 29

1                    PROCEEDINGS

2        THE VIDEOGRAPHER:  We're going on record at

3   9:05 a.m.  It's April 27, 2023.  This marks the

4   beginning of the deposition Susanna Kelham in the

5   matter of Ronald Nicholsen II vs. Kelham Vineyards &        09:06:19

6   Winery LLC.  And this is for the Superior Court,

7   State of California, County of Napa, case number

8   21CV001403.  We're located at Sims & Sims Deposition

9   Reporters in Napa.  The videographer is Mike Tunick,

10  and I've been retained by counsel for the Petitioner.

11       And now can we have our attorneys present

12  please introduce yourselves.

13       MR. DAVIS:  Good morning.  My name is Harold

14  Davis.  I'm with Greenberg Traurig in San Francisco.

15  And with me today is my partner and shareholder Marc      09:06:54

16  Baluda, and also of counsel with the firm Richard

17  Rodriguez.  Also, in attendance is Petitioner

18  Mr. Nicholsen.

19       MR. WHITE:  Good morning.  Andrew White on

20  behalf of Respondent Susanna Kelham.                       09:07:08

21       MR. PETTY:  Richard Petty on behalf of the

22  LLC.

23            SUSANNA ROGERS KELHAM,

24        Having first been duly sworn, was

25          examined and testified as follows:

Case: 23-10384 * Doc# 24-2 * Filed: 08/14/23 Entered: 08/14/23 09:35:30 * Page 9 of 29

Sims & Sims Reporting, Inc. * (707) 326-3022

1  Q.     And was Bench Partners the owner of the

2  winery in 1997?

3  A.     The owner of -- I don't understand the

4  question.

5  Q.     Okay.  Was Bench Partners the company that          09:24:55

6  ran the winery?

7         MR. WHITE:  Objection.  Vague and ambiguous.

8  Assumes facts.  Lacks foundation.

9         Go ahead.

10         THE WITNESS:  No.                                  09:25:09

11  BY MR. DAVIS:

12  Q.     Okay.  Who owned the winery at that time?

13  A.     I did and my husband.

14  Q.     And were there other partners besides Ron,

15  yourself and your husband and Bench Partners?          09:25:20

16  A.     I was not a Bench Partner.  My husband was

17  not a Bench Partner.  We owned the winery Bench

18  Partners leased.

19  Q.     When you say "leased," do you mean lease the

20  winery?  I'll rephrase.  What do you mean by             09:25:37

21  "leased"?

22  A.     Well, if you -- if you want to run a business

23  out of a winery, usually we had a lease.  No, we

24  didn't have a lease.  Excuse me.

25         MR. WHITE:  Okay.  So I don't want you             09:26:00

30

Case: 23-10384 * Doc# 24-2 * Filed: 08/14/23 * Entered: 08/14/23 19:35:30 * Page 10 of 29

1    guessing or speculating.  So if you don't know --

2        THE WITNESS:  I don't remember.  It was 26

3    years ago.

4    BY MR. DAVIS:

5    Q.    Okay.  Were there equal partners in Bench          09:26:09

6    Partners?

7    A.    I don't know.  I wasn't a participant.

8    Q.    Okay.  In 2000 you and your husband Rawson

9    Kelham actually bought out Ron's partners and Bench

10   Partners, correct?                                        09:26:23

11   A.    We had to.

12   Q.    So that's a "yes"?

13   A.    We had to.

14   Q.    Okay.  When you say "we had to," does that

15   mean you actually did?                                    09:26:30

16   A.    I don't remember.

17   Q.    Okay.  Did you and Rawson Kelham pay

18   approximately $1.6 million to buy out Ron's partners?

19   A.    No.

20   Q.    Okay.  And did you pay any money to buy out         09:26:47

21   Ron's partners?

22   A.    Yes.

23   Q.    And what was that amount?

24   A.    917,000 for the buyout that was paid in three

25   installments.                                             09:27:07

Case: 23-10384 * Doc# 24-2 Filed: 08/14/23 Entered: 08/14/23 19:35:30 Page 11 of 29

 1          THE WITNESS:  No.

 2    BY MR. DAVIS:

 3    Q.       Who founded the winery?

 4          MR. WHITE:  Same objections.

 5          THE WITNESS:  I don't recall.                    09:28:22

 6    BY MR. DAVIS:

 7    Q.       So despite being a member and -- or a

 8    managing member of the LLC, you do not know who

 9    founded the winery; is that what your testimony is?

10          MR. WHITE:  Objection.  Misstates testimony.   09:28:44

11    Lacks foundation.  Vague and ambiguous.

12    Argumentative.

13          THE WITNESS:  I don't recall.

14    BY MR. DAVIS:

15    Q.       All right.  What properties does the Kelham   09:28:51

16    Vineyards have a direct interest in?

17          MR. WHITE:  Objection.  Vague and ambiguous.

18    Overbroad.  Irrelevant.  Saying it again, we've been

19    going for 21 minutes, and we're still off topic.

20    We're here to discuss the existence and whereabouts   09:29:07

21    of documents in her personal possession related to

22    the writ.  And to date -- to this time, you haven't

23    asked a single question on that point.  Unless you

24    can offer me a reason why you're asking these

25    questions --                                          09:29:20

Sims & Sims Reporting, Inc.    (707) 226-3022

1   was set outside but was covered with tarps.

2   Q.      Do you recall what -- approximately when it

3   was set outside?

4   A.      I don't remember that.

5   Q.      So was it this year in 2023 or before?          06:06:08

6   A.      I don't -- I don't remember.

7   Q.      Do you know who set it outside?

8   A.      His brother, because he had been told to put

9   it outside for him to be able to access it.

10  Q.      Who told --                                      06:06:24

11  A.      I don't know.  I don't know.  You'll have to

12  ask my son.

13          But Ron -- Hamilton was dealing with that and

14  would put it in, take it out, put it in, take it out.

15  Then there was -- it was July, as I recall, and we      06:06:37

16  put it -- we put tarps over everything, the tarps

17  over the cars, everything.  And he never showed up,

18  many times.

19  Q.      Did -- do you know if Mr. Nicholsen -- Ronald

20  Nicholsen actually showed up on a date that was        06:06:52

21  agreed upon with your counsel?

22  A.      Yes, he did.  No.  No.  Excuse me.  No, he

23  did not.  I don't -- I don't know that.  All I know

24  is that the dates I was told that Ron was coming, and

25  I assumed it was through Richard Petty, that Richard    06:07:06

Sims & Sims Reporting, Inc. * (707) 226-3022

Case: 23-10384 * Doc# 242 * Filed: 08/14/23 * Entered: 08/14/23 19:35:30 * Page 13 of 29

```
1    STATE OF CALIFORNIA )
                         )  ss:
2    COUNTY OF NAPA      )
3           I hereby certify that the witness in the
4    foregoing deposition, named
5                    SUSANNA ROGERS KELHAM,
6    was duly sworn to testify to the truth, the whole truth
7    and nothing but the truth in the within-entitled cause;
8    pursuant to Section 2093 (b) CCP; that said deposition
9    was taken at the time and place therein named; that the
10   testimony of said witness was reported by me, a duly

11   licensed Certified Shorthand Reporter under the laws of

12   the State of California, and a disinterested person, and

13   was thereafter transcribed into typewriting under my

14   direction.

15          And I further certify that I am not of counsel

16   or attorney for either or any of the parties to said

17   deposition, nor in any way interested in the outcome of

18   the cause named in said caption.

19                   IN WITNESS WHEREOF, I have hereunto

20                   set my hand this 11th day of

21                   May, 2023.

22

23                   CECILIA E. RODRIGUEZ, CSR NO. 11479
                     County of Napa
24                   State of California

25                   ---oOo---
```

354

# EXHIBIT 24





## THE
## KELHAM FAMILY

Susanna Kelham established
Kelham Vineyards along with
her two sons, Ron Nicholsen
and Hamilton Nicholsen in
October of 1997. The entire family
have been an integral part of
the Oakville heritage for well over
twenty years. Together they are
proud to showcase an impressive
array of celebrated library wines,
each bottle speaking directly to a
passion that has long defined
them as stewards of their craft.

Kelham Vineyards releases every
vintage in succession, allowing
you the customer to savor the
subtle differences between
each year's offerings. We use
only our own locally grown
grapes, allowing the proficiency
and expertise of the entire
Kelham family to be reflected in
every bottle.

Case: 23-10384   Doc# 24-2   Filed: 08/14/23   Entered: 08/14/23 19:35:30   Page 16 of 29



## SUSANNA KELHAM

Owner and founder of Kelham Vineyards, Susanna Kelham is a native Californian who travelled the world before finding her calling in the Napa Valley. A successful business woman and entrepreneur before starting the winery, Susanna

## RON NICHOLSEN

Ron is Susanna's eldest son and a winemaker here at Kelham. Before becoming a full-time vintner, Ron studied architecture at the University of Colorado. He found his passion for wine-making while working at local vineyards at a very young age. Ron's recommended Kelham wine is the 2007 Petit Verdot.

## HAMILTON NICHOLSEN

Ham is a winemaker and Susanna's youngest son. He studied hospitality management at Colorado State University and received his culinary degree in Switzerland before partnering with his mother and brother to start Kelham Vineyards. Ham is an avid skier and can often be found on the slopes of Tahoe when not working. His favorite Kelham wine is the 2001 F-Block Cab.

### Kelham Vineyards

360 Zinfandel Lane
St. Helena, CA 94574

## (707)963-2000

www.kelhamvineyards.com

© 2020 Kelham Vineyards

Susanna's favorite Kelham wine is the Son's Red Proprietary Blend as it was made for her specifically!

## Oh Susanna
*Napa Living Made Simple*

A BLOG

Case: 23-10384    Doc# 24-2    Filed: 08/14/23    Entered: 08/14/23 19:35:30    Page 17 of 29

# EXHIBIT 25



## CLTA CHAIN OF TITLE GUARANTEE

ISSUED BY
STEWART TITLE GUARANTY COMPANY
a corporation, herein called the Company,

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, AND THE GUARANTEE CONDITIONS ATTACHED HERETO AND MADE A PART OF THIS GUARANTEE,

### GUARANTEES

the Assured named in Schedule A of this Guarantee

against loss or damage not exceeding the Amount of Liability stated in Schedule A sustained by the Assured by reason of any incorrectness in the Assurances set forth in Schedule A.

Countersigned:

_____
Authorized Signature

First American Title Company of Napa
Company Name

_____
City State

**stewart**
title guaranty company

Matt Morris
President and CEO

Denise Carraux
Secretary

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.
File Number:  T0021577-006-006-KD

# EXCLUSIONS FROM COVERAGE

Except as expressly provided by the assurances in Schedule A, the Company assumes no liability for loss or damage by reason of the following:

(a)    Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the Land.

(b)    Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the Public Records (1) that are created, suffered, assumed or agreed to by one or more of the Assureds; or (2) that result in no loss to the Assured.

(c)    Defects, liens, encumbrances, adverse claims or other matters not shown by the Public Records.

(d)    The identity of any party shown or referred to in any of the schedules of this Guarantee.

(e)    The validity, legal effect or priority of any matter shown or referred to in any of the schedules of this Guarantee.

(f)    (1) Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2) proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the Public Records.

(g)    (1) Unpatented mining claims; (2) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (3) water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the Public Records.

# GUARANTEE CONDITIONS

1.    Definition of Terms.
The following terms when used in the Guarantee mean:

(a)    the "Assured": the party or parties named as the Assured in Schedule A, or on a supplemental writing executed by the Company.

(b)    "Land": the Land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "Land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.

(c)    "Mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(d)    "Public Records": those records established under California statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.

(e)    "Date of Guarantee": the Date of Guarantee set forth in Schedule A.

(f)    "Amount of Liability": the Amount of Liability as stated in Schedule A.

2.    Notice of Claim to be Given by Assured.
The Assured shall notify the Company promptly in writing in case knowledge shall come to the Assured of any assertion of facts, or claim of title or interest that is contrary to the assurances set forth in Schedule A Schedule A and that might cause loss or damage for which the Company may be liable under this Guarantee. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of the Assured under this Guarantee unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

3.    No Duty to Defend or Prosecute.
The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.

4.    Company's Option to Defend or Prosecute Actions; Duty of Assured to Cooperate.
Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:

(a)    The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in Paragraph 4 (b), or to do any other act which in its opinion may be necessary or desirable to establish the correctness of the assurances set forth in Schedule A or to prevent or reduce loss or damage to the Assured. The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.
File Number:  T0021577-006-006-KD

concede liability or waive any provision of this Guarantee. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(b) If the Company elects to exercise its options as stated in Paragraph 4(a) the Company shall have the right to select counsel of its choice (subject to the right of the Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay any fees, costs or expenses incurred by an Assured in the defense of those causes of action which allege matters not covered by this Guarantee.

(c) Whenever the Company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.

(d) In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, the Assured shall secure to the Company the right to so prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the Assured for this purpose. Whenever requested by the Company, the Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of the Company may be necessary or desirable to establish the correctness of the assurances set forth in Schedule A or to prevent or reduce loss or damage to the Assured.. If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.

5. Proof of Loss or Damage.

(a) In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Assured furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

(b) In addition, the Assured may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Guarantee, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the Assured provided to the Company pursuant to this paragraph shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee to the Assured for that claim.

6. Options to Pay or Otherwise Settle Claims: Termination of Liability.

In case of a claim under this Guarantee, the Company shall have the following additional options:

(a) To pay or tender payment of the Amount of Liability together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

(b) To pay or otherwise settle with the Assured any claim assured against under this Guarantee. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment or tender of payment and that that the Company is obligated to pay; or

(c) To pay or otherwise settle with other parties for the loss or damage provided for under this Guarantee, together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in 6 (a), (b) or (c) of this paragraph the Company's obligations to the Assured under this Guarantee for the claimed loss or damage, other than the

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.
File Number: T0021577-006-006-KD

payments required to be made, shall terminate, including any duty to continue any and all litigation initiated by the Company pursuant to Paragraph 4.

7. Limitation of Liability.
   (a) This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured claimant who has suffered loss or damage by reason of reliance upon the assurances set forth in Schedule A and only to the extent herein described, and subject to the Exclusions From Coverage of this Guarantee.
   (b) If the Company, or the Assured under the direction of the Company at the Company's expense, removes the alleged defect, lien or, encumbrance or cures any other matter assured against by this Guarantee in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.
   (c) In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom.
   (d) The Company shall not be liable for loss or damage to the Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

8. Reduction of Liability or Termination of Liability.
   All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the Amount of Liability under this Guarantee pro tanto.

9. Payment of Loss.
   (a) No payment shall be made without producing this Guarantee for endorsement of the payment unless the Guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.
   (b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions, the loss or damage shall be payable within thirty (30) days thereafter.

10. Subrogation Upon Payment or Settlement.
    Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured claimant.
    The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies.
    If a payment on account of a claim does not fully cover the loss of the Assured the Company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

11. Arbitration.
    Either the Company or the Assured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Assured arising out of or relating to this Guarantee, any service of the Company in connection with its issuance or the breach of a Guarantee provision, or to any other controversy or claim arising out of the transaction giving rise to this Guarantee. All arbitrable matters when the amount of liability is $2,000,000 or less shall be arbitrated at the option of either the Company or the Assured. All arbitrable matters when the amount of liability is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Assured. Arbitration pursuant to this Guarantee and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.
File Number:  T0021577-006-006-KD

Case: 23-10384   Doc# 24-2   Filed: 08/14/23   Entered: 08/14/23 19:35:30   Page 22 of 29

12. Liability Limited to This Guarantee; Guarantee Entire Contract.
   (a) This Guarantee together with all endorsements, if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the Company. In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.
   (b) Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.
   (c) No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

13. Severability
   In the event any provision of this Guarantee, in whole or in part, is held invalid or unenforceable under applicable law, the Guarantee shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

14. Choice of Law; Forum
   (a) Choice of Law: The Assured acknowledges the Company has underwritten the risks covered by this Guarantee and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of Guaranties of the jurisdiction where the Land is located.
   Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims that are adverse to the Assured and to interpret and enforce the terms of this Guarantee. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.
   (b) Choice of Forum: Any litigation or other proceeding brought by the Assured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

15. Notices, Where Sent.
   All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at P. O. Box 2029, Houston, TX 77252-2029.

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.
File Number: T0021577-006-006-KD

## Chain of Title Guarantee

File No.: **T0021577-006-006-KD**                    Guarantee No.: **G-2905-000002862**

Liability: **$1,000.00**                                                    Fee: **$545.00**

1.      Name of Assured:

   **Lauren Nicholson & Susanna Rogers Kelham, Trustee and Ronald Nicholsen and Hamilton Nicholsen**

2.      Date of Guarantee:

   **July 14, 2023 at 7:30 AM**

The assurances referred to on the face page are:

   That, according to those public records which, under the recording laws, impart constructive notice of matters relating to the interest, if any, which was acquired by Susanna Rogers Kelham, as Trustee of the 1995 Susanna Rogers Kelham Revocable Trust, as to an undivided 34% interest; Ronald C. Nicholsen, as his sole and separate property, as to an undivided .8% interest; Hamilton R. Nicholsen, as his sole and separate property, as to an undivided .8% interest; Susanna Rogers Kelham, as Trustee of the Susanna Roger Kelham 2012 Dynasty Trust f/b/o Ronald Nicholsen and Issue, dated December 28, 2012, as to an undivided 32.2% interest; and Susanna Rogers Kelham, as Trustee of the Susann Rogers Kelham 2012 Dynasty Trust f/b/o Hamilton Nicholsen and Issue, dated December 28, 2012, as to an undivided 32.2% interest  pursuant to a Grant Deed recorded December 30, 2014 as Series Number 2014-0027127 in the Napa County Recorder's Office. in and to the land described as follows:

   **See Exhibit A attached hereto and made a part hereof.**

   Only the following matters appear in such records subsequent to May 5, 1998 (January 1, 2000):

1.  Deed
    From:           Hof's Enterprises Incorporated
    To:             Rawson Kelham and Susanna Kelham, husband and wife as community        property
    Recorded:       May 18, 1998 as Series Number 1998-0013518, of Official Records.

2.  Deed
    From:           Rawson Kelham and Susanna Kelham
    To:             Rawson Kelham, Trustee of the Kelham Family Trust
    Recorded:       August 6, 1998 as Series Number 1998-0022484, of Official Records.
                    (An undivided ½ interest)

3.  Deed
    From:           Susanna Kelham and Rawson Kelham
    To:             Susanna Rogers Kelham and Rawson Kelham, Trustees of the 1995 Susanna Rogers Kelham Trust
    Recorded:       August 6, 1998 as Series Number 1998-0022485, of Official Records.
                    (An undivided ½ interest)

4.  Deed
    From:           Rawson Kelham, as Trustee of the Kelham Family Trust;
    To:             Susanna Rogers Kelham and Rawson Kelham, as Trustees of the 1995 Susanna Rogers Kelham Revocable Trust
    Recorded:       October 28, 2003 as Series Number 2003-0058201, of Official Records.

Case: 23-10384   Doc# 24-2   Filed: 08/14/23   Entered: 08/14/23 19:35:30   Page 24
of 29

# CHAIN OF TITLE GUARANTEE
## (Continued)

5.  Affidavit of Change of Trustee (resignation of Rawson Kelham as CoTrustee)
    Recorded:        June 20, 2007 as Series Number 2007-0020527, of Official Records.

6.  Deed
    From:            Susanna Rogers Kelham, as Trustee of the 1995 Susanna Rogers Kelham Revocable
                     Trust U/A dated March 23, 1995
    To:              Ronald C. Nichelson, as his sole and separate property, as to an undivided .4% interest
                     and Hamilton R. Nichelson,, as his sole and separate property, as to an undivided .4%
                     interest
    Recorded:        December 31, 2012 as Series Number 2012-0037071, of Official Records.

7.  Deed
    From:            Susanna Rogers Kelham, as Trustee of the 1995 Susanna Rogers Kelham Revocable
                     Trust U/A dated March 23, 1995
    To:              Ronald C. Nichelson, as his sole and separate property, as to an undivided .4% interest
                     and Hamilton R. Nichelson,, as his sole and separate property, as to an undivided .4%
                     interest
    Recorded:        December 31, 2012 as Series Number 2012-0037072, of Official Records.

8.  Deed
    From:            Susanna Rogers Kelham, as Trustee of the 1995 Susanna Rogers Kelham Revocable
                     Trust, dated March 23, 1995
    To:              Susanna Rogers Kelham, an unmarried woman, as to an undivided 64.4% interest
    Recorded:        December 31, 2012 as Series Number 2012-0037073, of Official Records.

9.  Deed
    From:            Susanna Rogers Kelham, an unmarried woman
    To:              Susanna Rogers Kelham, as Trustee of the Susanna Rogers Kelham 2012 Dynasty Trust
                     f/b/o Ronald Nichelson and Issue dated December 28, 2012
    Recorded:        December 31, 2012 as Series Number 2012-0037074, of Official Records.
                     (as to an undivided 32.2% interest)

10. Deed
    From:            Susanna Rogers Kelham, an unmarried woman
    To:              Susanna Rogers Kelham, as Trustee of the Susanna Rogers Kelham 2012 Dynasty Trust
                     f/b/o Hamilton Nichelson and Issue dated December 28, 2012;
    Recorded:        December 31, 2012 as Series Number 2012-0037075, of Official Records.
                     (as to an undivided 32.2% interest)

Case: 23-10384    Doc# 24-2    Filed: 08/14/23    Entered: 08/14/23 19:35:30    Page 25
of 29

# CHAIN OF TITLE GUARANTEE
(Continued)

11. Deed

From:      Susanna Rogers Kelham, as Trustee of the 1995 Susanna Rogers Kelham Trust; Susanna Rogers Kelham, as Trustee of the 1995 Susanna Rogers Kelham Revocable Trust; Susanna Rogers Kelham, as Trustee of the Susanna Roger Kelham 2012 Dynasty Trust f/b/o Ronald Nicholsen and Issue, dated December 28, 2012; Susanna Rogers Kelham, as Trustee of the Susann Rogers Kelham 2012 Dynasty Trust f/b/o Hamilton Nicholsen and Issue, dated December 28, 2012; Ronald C. Nicholsen, as his sole and separate property; Hamilton R. Nicholsen, as his sole and separate property, all as their interest appear of record

To:      Susanna Rogers Kelham, as Trustee of the 1995 Susanna Rogers Kelham Revocable Trust; Susanna Rogers Kelham, as Trustee of the Susanna Roger Kelham 2012 Dynasty Trust f/b/o Ronald Nicholsen and Issue, dated December 28, 2012; Susanna Rogers Kelham, as Trustee of the Susann Rogers Kelham 2012 Dynasty Trust f/b/o Hamilton Nicholsen and Issue, dated December 28, 2012; Ronald C. Nicholsen, as his sole and separate property; Hamilton R. Nicholsen, as his sole and separate property, all as their interest appear of record

Recorded:      December 30, 2014 as Series Number 2014-0027127, of Official Records.

This Guarantee does not cover:

1.      Taxes, assessments, and matters related thereto.

2.      Deeds of trusts, easements and/or agreements.

Case: 23-10384    Doc# 24-2    Filed: 08/14/23    Entered: 08/14/23 19:35:30    Page 26
of 29

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF NAPA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Parcel A, as shown on the map entitled, "Map of the Lands of Ella Jenkins", filed July 16, 1965 in Book 14 of Surveys at page 42 in the office of the County Recorder of said Napa County.

APN: 030-260-029

# EXHIBIT 26



# State of California
# Bill Jones
### Secretary of State

## LIMITED LIABILITY COMPANY
## ARTICLES OF ORGANIZATION

**A $70.00 filing fee must accompany this form.**
**IMPORTANT   Read instructions before completing this form.**

**200035310017**
File#_____

**FILED**
In the office of the Secretary of State
of the State of California

**DEC 1 8 2000**

*Bill Jones*

**BILL JONES, Secretary of State**

This Space For Filing Use Only

---

1.  Name of the limited liability company  (end the name with the words  Limited Liability Company,   Ltd. Liability Co.,  or the abbreviations LLC  or L.L.C. )

    KELHAM VINEYARDS & WINERY, LLC

---

2.  The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the Beverly-Killea limited liability company act.

---

3.  Name the agent for service of process and check the appropriate provision below:

    ANDREA L. ANDERSON _____ which is

    [XX] an individual residing in California. Proceed to item 4.

    [  ] a corporation which has filed a certificate pursuant to section 1505.  Proceed to item 5.

---

4.  If an individual, California address of the agent for service of process:

    Address:   211 WAPOO AVENUE, SUITE 211

    City:   CALISTOGA, CA   94515   State: **CA**                    Zip Code:

---

5.  The limited liability company will be managed by:  **(check one)**

    [  ] one manager  [  ] more than one manager  [  ] single member limited liability company  [X] all limited liability company members

---

6.  Other matters to be included in this certificate may be set forth on separate attached pages and are made a part of this certificate. Other matters may include the latest date on which the limited liability company is to dissolve.

---

7.  Number of pages attached, if any:

---

8.  Type of business of the limited liability company. (For informational purposes only)

    WINERY

---

9.  **DECLARATION:** It is hereby declared that I am the person who executed this instrument, which execution is my act and deed.

    _____
    Signature of Organizer

    Type or Print Name of Organizer
    RONALD C. NICHOLSEN II

    DECEMBER 13, 2000
    _____
    Date

---

10. **RETURN TO:**

    NAME              ANDREA L. ANDERSON
    FIRM              211 WAPOO AVENUE, SUITE 202
    ADDRESS           CALISTOGA, CA  94515
    CITY/STATE
    ZIP CODE

---

SEC/STATE (REV. 12/99)

FORM LLC-1  FILING FEE $70.00
Approved by Secretary of State