**REBEKAH PARKER SBN 143674**
4225-H Oceanside Boulevard #369
Oceanside CA, 92056-3472
Telephone No. (213) 268-2918
Email: AttorneyRParker@Gmail.Com

Attorney for Committee of Essential
Creditors & Post-Petition Providers

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re<br>KELHAM VINEYARD & WINERY, LLC.<br>                         Debtor | Case No. 23-10384<br><br>Chapter 11<br><br>**OPPOSITION TO RONALD NICHOLSEN'S MOTION TO APPOINT A TRUSTEE; MEMORANDUM OF POINTS AND AUTHORITIES RECOMMENDING APPOINTMENT OF A LIQUIDATION AGENT; AND DECLARATION OF REBEKAH PARKER IN SUPPORT THEREOF**<br><br>DATE: September 5, 2023<br>TIME: 9:30 A.M.<br>ROOM: Courtroom 220<br><br>    United States Bankruptcy Court<br>    1300 Clay Street<br>    Oakland, CA 94612 |

# Table of Contents

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 3 |
| II. | RELIEF REQUESTED | | 3 |
| III. | FACTUAL BACKGROUND | | 4 |
| IV. | ARGUMENT | | 7 |
| | A. | The Record is Void of Any Evidence of "Post-Petition Wrongdoing" that Warrants the Appointment of a Trustee | 8 |
| | B | "Predictions of Possible Impropriety" Do Not Constitute Cause for Appointment of a Trustee | 10 |
| | C. | KVW Can Affect a Liquidation of KVW's Assets and Liabilities in a Manner that Protects the Rights and Interests of All Creditors and Equity Holders with the Appointment of a Liquidation Agent | 13 |
| V. | CONCLUSION | | 14 |

Declaration of Rebekah Parker — 16
Certificate of Service — 17

**TO WILLIAM LAFFERTY, U.S. BANKRUTPCY JUDGE, KELHAM VINEYARD & WINERY, LLC., RONALD KELHAM II, AND THE OFFICE OF THE U.S. TRUSTEE:**

# I
# INTRODUCTION

As complex and controversial as this Motion for Appointment of a Trustee (herein "Motion") may appear at first impression, the evidentiary record presented by Ronald Nicholsen ("Movant"), when viewed purely in terms of 'legal relevancy', is really not that complex or controversial; when viewed purely in terms of legal relevance, the evidence is undisputed and does not support the appointment of a trustee. Summarily stated, (a) the record is void of any evidence (or even a bona fide allegation) that Kelham Vineyard & Winery, LLC., (herein "KVW" or "Debtor" ) has engaged in any "Post-Petition Wrongdoing" to warrant the appointment of a trustee; (b) "Predictions of Possible Impropriety" do not constitute cause for appointment of a trustee; and, (c) KVW can effect a liquidation that protects the rights of all creditors and equity holders with the appointment of a Liquidation Agent.

# II
# RELIEF REQUESTED

Based on the evidentiary record, KVW should minimally be allowed to remain in possession pending its retention of counsel and conclusion of the 341a Meeting of Creditors. In the absence of any factual allegation supported by admissible evidence that illustrates, <u>by clear and convincing evidence</u>, that either "cause" exists for the appointment of a trustee or that the appointment of a trustee would be in the best interests of creditors, it would be both an error of law and an abuse of discretion, to appoint a trustee this early in the case, especially when KVW has not even had an opportunity to retain counsel and establish itself as a 'Debtor-in-Possession', as intended by Congress. With that said,

at the appropriate time (and the appropriate time may be now), the Court should consider appointing a Liquidation Agent (a panel bankruptcy trustee with limited authority) tasked with inventorying KVW intangible and tangible assets and thereon liquidating them either in a private sale or auction, subject to court approval, pursuant to a duly noticed motion with appropriate overbid procedures.

## III
## FACTUAL BACKGROUND

The above captioned Chapter 11 Bankruptcy Case was filed as an Involuntary on July 20, 2023, by Main Street Cottage, LLC, to create a platform for the liquidation of KVW assets and liabilities. The Order for Relief was entered on August 16, 2023, and the 341(a) Meeting of Creditors was immediately noticed by the Office of the United States Trustee for September 15, 2023.

At the time of the filing of this Opposition, KVW is the process of retaining Bankruptcy Counsel, with several candidates, including the lead candidate, expressing an inclination to wait until after the Court rules on several pending matters, specifically, the pending Motion for Relief from Stay and Motion for Appointment of a Trustee, both filed before the entry of the Order for Relief by the same overly aggressive creditor.

KVW is a limited liability company, a small family owned Napa Valley winery owned by a mother, (Susanna Kelham) and her two sons (Ronald Nicholsen and Hamilton Nicholsen). KVW has never been self-sustaining, which is to say that KVW has never been able to pay its debts as they come due. Incorporated in 2001, KVW has been able to stay in business for the past 22 plus years with the assistance of cash loans from Susanna Kelham and credit-debt forbearance from a group of insider creditor-service providers that Movant describes as "major operational creditors". Motion, Page 7, Line 6. While this group of creditors can certainly be described as both "major" to the extent they hold some of the biggest claims against the estate and as "operational" to the extent that KVW cannot

operate without them, perhaps a better description for this body of creditors would be "Essential Post-Petition Providers"[1], without whose participation and ongoing contribution-support KVW would have to cease operations immediately, an event that would have a devastating effect on the value of KVW's most valuable asset, its wine inventory.  <u>See</u>, Declaration of Hamilton Nicholsen in Support of Appointment of Liquidation Agent, ¶¶ 3-4.

In a nutshell, KVW does not own the winery property it uses sell its wines, KVW does not own the Guest House ("Main Street Cottage"), it uses to entice buyers to visit the winery to make sizeable wine purchases, and KVW does not own the land where most of the grapes used to produce KVW wines are grown; these parcels of real property are all owned and controlled by the Essential Post Petition Providers, Declaration of Attorney Alexis White, ¶¶ 5-9.  With that said, these providers have the absolute right to terminate their relationship with KVW at will, subject to any temporary limitations that may exist due to the automatic stay. <u>See</u>, Declaration of Hamilton Nicholsen in Support of Appointment of Liquidation Agent, ¶ 5.  See also, Declaration of Alexis White, ¶¶ 5-9.

The only assets that KVW owns that are subject to liquidation by the bankruptcy estate are (a) limited intangible assets consisting of the corporate shell, transferrable licenses, and trademarks, (b) most, but not all, of the personal property and equipment at the winery; (c) over 41,000 cases of wine; and (d) a vacant parcel of land in Deer Park, California, the former site of a cabin that burned down several years ago.  With that said, with the exception of the vacant lot, the value of each of these assets will tumble, go into a rapid downward spiral, if the estate's Essential Post-Petition Providers make a

---

[1] This body of creditors (*consisting of Main Street Cottage, LLC, Kelham Growers, LLC, SRK 1995 Restated Trust, Hamilton Nicholsen Irrevocable Trust, Ronald Nicholsen Irrevocable Trust, and Hamilton Nicholsen individually*) have formed a committee with the intention of filing a proposed Disclosure Statement Describing Plan of Liquidation in an effort to expedite the administration of this case.  Herein Collectively named Committee of Essential Creditors & Post-Petition Providers (the "Committee").

decision to just shut this operation down, either because Ron Nicholsen and his attorneys refuse to engage in good faith negotiations on how to liquidate KVW's assets or because a heavy-handed bankruptcy trustee or their staff disrespects or mistreats KVW's matriarch and her staff.  See, Declaration of Hamilton Nicholsen in Support of Appointment of Liquidation Agent, ¶¶ 6-7 .

There is minimal value in KVW's intangible assets consisting of the corporate shell, transferrable licenses, and trademarks and limited value in the personal property and equipment at the winery.  KVW's only real asset (its most valuable asset) is the wine library, consisting of approximately 41,000 plus cases of wine, a figure which is in a constant state of flux as existing wines are sold and new wines are bottled. These wines have listed book values that reflect KVW's pride in their product rather than realistic market values; with that said, these list book values were used as a "base" number for insurance purposes; suffice to say, the "listed book value" does not reflect the inventory's likely liquidation value. When all is said and done, these wines will have to be sold at auction, albeit at a bankruptcy court hosted auction or by a wine liquidator.  At this juncture, there is no reliable way to set a value on the wine other than to let the market speak. See, Declaration of Hamilton Nicholsen re Wine Inventory.  See, Declaration of Hamilton Nicholsen in Support of Appointment of Liquidation Agent, ¶¶ 8-11.

With that said, there are facts that this court should be made aware of in connection with this wine inventory.  KVW's wine inventory was amassed over the past 22 years because Ronald Kelham failed miserably in his mission, the task assigned to him and/or the task he undertook to create a market and name recognition for KVW wines; simply stated, this inventory was amassed because KVW has been unable to sell these wines.  KVW wines are not readily available in wine shops, approximately 95% of all wine sales are made directly to wine club members, with the remaining 5%

sold at the winery's gift shop or through online orders. See, Declaration of Hamilton Nicholsen in Support of Appointment of Liquidation Agent. ¶¶ 12-14

With that said, Ronald Nicholsen is playing fast and loose when he suggests or makes an implicit representation that KVW wine inventory is worth $100,000 million. Motion, Page 7, Line 17. This assertion assumes that a market exists for these wines at list price, which history has shown is not the case. As noted above, 95% of wine sales are made to wine club members who buy at a whopping 30% discount. Movant's absurd assumption that his equity interest in KVW should be valued at 1/3 of the listed book price of the wine inventory is preposterous. Motion, Page 7, Line 17. Again, history has shown that there is no market for these wines outside of the winery setting at anything resembling list book price. Accordingly, an auction will have to be held so that the market can speak. See, Declaration of Hamilton Nicholsen in Support of Appointment of Liquidation Agent. ¶¶ 15-17.

# IV
# ARGUMENT

"There is a strong presumption in Chapter 11 cases that the debtor-in-possession should be permitted to remain in control of the corporation absent a showing of need for the appointment of a trustee. 7 Lawrence King, Collier on Bankruptcy § 1104.02 (15th Ed.1998). It is well settled that the appointment of a trustee should be the exception rather than the rule. In re Sharon Steel Corp., 871 F.2d 1217, 1225 (3rd Cir.1989). A corporation's current management is "best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate." In re V. Savino Oil & Heating Co., 99 B.R. 518, 524 (Bankr.E.D.N.Y.1989). This strong presumption is rooted in the debtor-in-possession's familiarity with the business both before and after the filing of bankruptcy. In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (3rd Cir. 1998). Nevertheless in the appropriate case, the appointment of a trustee is a power which is critical for the Court to exercise in order to

preserve the integrity of the bankruptcy process and to ensure that the interests of creditors are served." In re Intercat, Inc., 247 BR 911, 920 (Bankr. S.D. Georgia 2000).

With that said, while Ron Nicholsen readily concedes he has the burden of rebutting this "strong presumption", he <u>misrepresents</u> the case of In re Corona Care Convalescent Corp., 527 B.R. 379 (Bankr. C.D. Cal. 2015) as a case that stands for the proposition that his burden is merely a 'preponderance of evidence'. Motion, Page 15, Lines 24-28. While there does not appear to be a leading 9th Circuit case directly on point, the prevailing view seems to be that Ronald Nicholsen is required to present "clear and convincing evidence" to rebut this "strong presumption". <u>See</u>, Matter of Cajun Elec. Power Co-op., Inc., 69 F.3d 746, 749 (5th Cir. 1995) (Holding that "*The parties moving for the appointment of a trustee have the burden of proof, which they must meet by clear and convincing evidence.*) <u>See</u> also, In re Intercat, Inc., 247 BR 911, 922 (Bankr. S.D. Georgia 2000) and In re L.S. Good & Co., 8 B.R. 312, 315 (Bankr. N.D. W Va. 1980). Suffice to say, Ronald Nicholsen has not made the requisite evidentiary showing.

**A. The Record is Void of Any Evidence of "Post-Petition Wrongdoing" that Warrants the Appointment of a Trustee.**

The standards employed and inquiries made by bankruptcy courts in deciding whether to appoint a trustee have evolved since the Bankruptcy Reform Act of 1978 was enacted. Initially courts simply looked to post-petition bad conduct and then courts began making inquiries as to whether prepetition bad acts rendered a debtor's management and staff so inherently untrustworthy that a trustee needed to be appointed. There does not appear to be a clearly articulated gold standard applied by courts, the decision on whether cause exists to appoint a trustee or whether appointment of a trustee is in the best interest of creditors and equity holders is made on a case-by-case basis. When all is said and done, however, as a practical matter, bankruptcy courts only appoint bankruptcy trustees where

evidence is presented that a debtor is not full-filling its responsibilities as a "debtor-in-possession" or is incapable of full-filling its responsibilities as a "debtor-in-possession'. <u>In re Klein/Ray Broadcasting</u>, 100 BR 509, 510 (9th Cir. BAP 1987).

The evidentiary record in the case at bar is void of any evidence of post-petition bad acts (evidence that KVW is not full-filling its responsibilities); moreover, as will be shown herein, KVW is capable of administering this estate as a debtor in possession in a fair and equitable manner to all creditors and equity holders. This motion for appoint of a trustee was filed on August 7, 2023, less than three weeks after the filing of the involuntary petition and before the entry of the Order for Relief. The motion is entirely premised on 'alleged prepetition bad acts'; and, the motion makes no effort to show how these 'alleged prepetition bad acts' render KVW and its current management and staff unqualified to and/or incapable of executing an orderly liquidation of KVW assets that protects the interests of all creditors and equity holders, albeit with the appointment of a Liquidation Agent rather than a full-blown Chapter 11 Trustee.

The bulk of Movant's Motion, paragraphs B – E, specifically, consists of a laundry list of poorly documented or completely unsubstantiated allegations of "pre-petition bad acts". which even if true, <u>with one possible exception</u>, do not make a compelling case for the appointment of a trustee because there is no evidence, not a scintilla of evidence, that there is a substantial risk that the alleged bad prepetition conduct (even if true) will continue post-petition. With the said, in the interest of completeness, rather than bogging this Opposition down with responses to what are effectively 'legally irrelevant allegations', red herrings, a detailed declaration has been filed by Hamilton Nicholsen that addresses each of these 'alleged' pre-petition bad acts. <u>See</u>, Declaration of Hamilton Nicholsen Responding to False Accusations of Alleged Prepetition Bad Acts.

1     There is one allegation that merits a response in the context of this Opposition due to its legal relevance. Specifically, the Motion makes the false allegation that "Kelham Vineyards may be pursuing unpermitted and unlawful business expansions." Motion, Page 22, Line 2-28. Ronald Nicholsen alleges that he is "concerned" that KVW "intends to offer tasting menus with wine" which he "understands" may be in violation of "Napa County Winery Definition Ordinance 947 of 1990 [that] prohibits wineries in Napa County from offering food service for charge to its patrons." The only evidence in the Motion in support of the false accusation that this alleged "clandestine business operation" is actually taking place is a Trademark application for the name "Kelham Vineyards with Le Petit Chef". Having said that, this issue can be and should be quickly put to rest. As noted in the Declaration of Hamilton Nicholsen, while KVW at one point explored the idea of starting a food service and KVW took steps toward making that food service program a reality (steps which would have included getting all the proper permits and licenses from Napa County), KVW abandoned the program; thus there is no revised ABC license nor building permits—the fact that Ron Nicholsen has been unable to locate them is because the food service program, as anything other than a 'would be' project, only exists as a figment of Ron Nicholsen's vivid imagination. <u>See</u>, Declaration of Hamilton Nicholsen Responding to False Accusations of Alleged Prepetition Bad Acts. ¶21.

    **B. "Predictions of Possible Impropriety" Do Not Constitute Cause for Appointment of a Trustee.**

    The existence of a conflict of interest does not *per se* (or automatically) constitute cause for the appointment of a trustee nor does it *per se* (or automatically) warrant the appointment of a trustee unless it can be shown that the conflict of interest prevents the debtor-in-possession from administering the estate in a manner that is fair to creditors, equity holders, and other interested parties. "[H]olding that these inherent conflicts constitute cause for appointing a trustee would create a *per se* rule

Case: 23-10384    Doc# 38    Filed: 08/22/23    Entered: 08/22/23 17:35:25    Page 10 of 18

permitting the appointment of a trustee in any case" involving closed family with no indication Congress intended such specific treatment.'" Matter of Cajun Elec. Power Co-op., Inc., 69 F.3d 746, 750 (5th Cir. 1995)[2]. Thus, while a need may exist for this court to craft a remedy that protects the rights and interest of creditors and equity holders, to assume that this can only be achieved through the appointment of a full-blown trustee, when less drastic remedies exist, would be an error of law and an abuse of discretion.

From a factual, legal, and policy standpoint, the case at bar bears a strong resemblance to In re Klein/Ray Broadcasting, 100 BR 509 (9th Cir. BAP 1987), the only 9th Circuit case on point cited by Movant. In Klein/Ray Broadcasting the District Court DENIED a motion to appoint a trustee. The motion was made by a former equity-holder (who had become a creditor by virtue of a court sanctioned sale of assets) on the ground that various "insider" claims should be "investigated", arguing that "… an impartial party should be appointed to review and process all claims." In re Klein/Ray Broadcasting, 100 BR 509, 510 (9th Cir. BAP 1987). The District Court did not find these arguments persuasive; the District Court denied the motion to appoint a trustee because the declarations filed in support of the motion did NOT contain "evidence of any conduct on the part of the [debtor] sufficient to constitute 'cause', or sufficient to establish that it would be in the best interests of the creditor's to

---

[2] While the case at bar involves a 'closed family corporation' rather than a 'cooperative', the policy issues presented in Cajun are at play in this proceeding. The 5th Circuit's decision in Cajun promotes the policy of allowing debtors to remain in possession in the absence of clear and convincing evidence of mismanagement and promotes the policy of recognizing that an entity's inherent organizational structure must be taken into consideration when determining whether appointment of a trustee is in the best interest of creditors. Here, the record is void of any evidence of post-petition mismanagement; moreover, the organizational structure of KVW is such that KVW is 100% dependent on the group of Essential Post-Petition Providers, a dependency which exists by design and by necessity since KVW's inception, a condition that Ronald Nicholsen was aware of and implicitly consented to when he accepted his 'gifted' interest in KVW.

appoint a trustee under Section 1104." In re Klein/Ray Broadcasting, 100 BR 509, 511 (9th Cir. BAP 1987).

The District Court's approach in Klein/Ray Broadcasting was measured and insightful. The District Court recognized that the movant was merely "… making 'predictions' as to possible causes for appointing a trustee" and the BAP recognized that the District Court "… correctly determined that if such predictions did hold true, the [creditor] could still protect themselves" by bring a motion at a later time if and when said predictions materialized. In re Klein/Ray Broadcasting, 100 BR 509, 511 (9th Cir. BAP 1987).

Like the case at bar, Klein/Ray Broadcasting was a Chapter 11 Liquidation case where a creditor made a motion to appoint a trustee before debtor had completed the estate's liquidation. An initial hearing was held on August 16, 1986, at which time, in the absence of any evidence of current wrongdoing, the District Court shrewdly continued the motion until September 26, 1986, to allow for a sale of estate assets (a radio station) to close. "The court … determined that it could find no impairment of [creditor's] claims by leaving the case in Chapter 11", without a trustee. In re Klein/Ray Broadcasting, 100 BR 509, 510 (9th Cir. BAP 1987).

KVW and its current management and staff, with the aid of the Essential Creditors and Post-Petition Service Providers, are best suited and qualified to operate KVW during the liquidation of its assets. In order to maximize the return on KVW's assets, KVW needs to remain operational, something which may prove difficult if not impossible with the appointment of a full-blown trustee. To this end, the incremental, measured, insightful, approach taken by the District Court in Klein/Ray Broadcasting is what the case at bar calls for, an approach that serves the best interest of both creditors and equity holders, including Ronald Nicholsen himself, There is no reason why the creditors and equity holders should not enjoy the best of both worlds, the benefit of leaving KVW operational to

enhance the value of assets with the assistance of the Essential Creditors and Post-Petition Service Providers, as well as the benefits of a court appointed Liquidation Agent authorized to conduct an inventory of and sell KVW's assets.

    C. **KVW Can Affect a Liquidation of KVW's Assets and Liabilities in a Manner that Protects the Rights and Interests of All Creditors and Equity Holders with the Appointment of a Liquidation Agent.**

Courts have long recognized that the immediate appointment of a full-blown trustee is not always the solution; sometimes the solution rests in appointing a trustee with "limited powers". In re North American Communications, Inc., 138 B.R. 175, 180 (Bankr.W.D.Pa. 1992). Sometimes, as in Klein/Ray Broadcasting discussed above, the request for appointment of full-blown trustee should be denied or delayed until a debtor has had an opportunity to liquidate its assets pursuant to the debtor's stated bankruptcy purpose. In re Klein/Ray Broadcasting, 100 BR 509, 510 (9th Cir. BAP 1987). And sometimes, courts find that "…that the circumstances of [a] case warrant such a bifurcation of duties as between Debtor's current management and an independent Chapter 11 trustee." In re Intercat, Inc., 247 BR 911, 924 (Bankr. S.D. Georgia 2000).

The circumstances of the case at bar warrant this approach. KVW is a highly specialized business operating in a technical and sophisticated industry; moreover, KVW is completely dependent on the continued aid and support of a group of Essential Creditors and Post-Petition Service Providers who may be alienated by an undiplomatic, heavy-handed trustee, with no experience in operating a winery, telling them how to do their jobs. Susanna Kelham, a 72-year-old window, is the Managing Member and the "heart and soul" of KVW. "Customer recognition of and loyalty to [Susanna Kelham] is a key ingredient of [KVW's] business needs and its chances for success." In re Intercat, Inc., 247 BR 911, 924 (Bankr. S.D. Georgia 2000). As previously noted, an estimated 90 to 95% of all KVW wine sales are made to wine club members, with Susanna Kelham, "*Le Grande Dame of*

*KVW*", helping customers make their wine selections. As noted by the court in <u>North American Communications</u>, sometimes the complete ouster of management is "detrimental to creditors" and "self-defeating" to a bankruptcy estate; Susanna Kelham's continued cooperation and support is "crucial' to KVW's liquidation efforts; she is the "major force" behind KVW's sales operation. <u>In re North American Communications, Inc</u>., 138 B.R. 175, 180 (Bankr.W.D.Pa. 1992).

In sum, with the aid of a Liquidation Agent, this case can and should be administered without the appointment of a full-blown trustee. Ron Nicholsen may be quick to scream that a trustee needs to be appointed to investigate various prepetition transfers. But, here again, the Essential Creditors and Post-Petition Providers would ask the Court to be patient with KVW and to take incremental and measured steps in this case. The stay needs to remain in place, Susanna Kelham needs to be freed up to ensure that KVW remains operational during the proposed liquidation of assets, and then, and only then, should the court consider the appointment of an Avoidance Action Master. To do so today would be premature and would result in a waste of this estate's limited resources at a time when the focus should be on liquidating KVW assets. Simply stated, the viability of preference and fraudulent conveyance litigation is unclear at this juncture pending determination of this estate's solvency both at the time of the alleged transfers and pending the resulting dividend after liquidation.

# V
# CONCLUSION

The Committee of Essential Creditors and Post-Petition Providers will do its very best to prepare and file a proposed Disclosure Describing Proposed Plan of Liquidation that will provide for incremental appointment of a Liquidation Agent and subsequent appointment of an Avoidance Action Master, should one become necessary. This document will hopefully operate as a road map for a court appointed Liquidation Agent to aid them in conducting an inventory of KVW assets and thereon

liquidating them. With that said, if the Committee is not able to generate and file said proposed Disclosure Describing Proposed Plan of Liquidation by the time this Opposition is due and/or before the hearing of this matter, the Committee would ask this court to view and consider this pleading as *prima facia* evidence that KVW can administer this case, while fully protecting the rights of creditors and equity holders, without the necessity of an immediate appointment of a full-blown bankruptcy trustee.

August 22, 2023,

_____
Rebekah Parker,
Attorney for Committee of Essential
Creditors & Post-Petition Providers

## Declaration of Rebekah L. Parker

I, Rebekah L. Parker, declare:

1. I am an attorney at law, duly qualified and licensed to practice before the U.S. District Court for the Northern District of California, as well as the U.S. Bankruptcy Court for the Northern District of California. I have personal knowledge of the following facts.

2. I drafted, reviewed, and revised, the above captioned **OPPOSITION TO RONALD NICHOLSEN'S MOTION TO APPOINT CHAPTER 11 TRUSTEE AND THE MEMORANDM OF POINTS AND AUTHORITIES RECOMMEDNING THE APPOINTMENT TO A LIQUIDATION AGENT.**

3. To the best of my knowledge, information, and belief, the facts set forth therein are true and correct.

4. To the best of my knowledge and belief, all the documents attached hereto, if any, are true and correct copies of their originals.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on August 22, 2023, in the County of San Diego, State of California.

_____
Rebekah Parker, Declarant

# CERTIFICATE OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 4225-H Oceanside Boulevard #369, Oceanside CA, 92056-3472

A true and correct copy of the foregoing document described as **OPPOSITION TO RONALD NICHOLSEN'S MOTION TO APPOINT A TRUSTEE: MEMORANDUM OF POINTS AND AUTHORITIES RECOMMENDING APOINTMENT OF LIQUIDATION AGENT; AND DECLARATION OF REBEKAH PARKER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR; and **(b)** in the manner indicated below:

William Lafferty
U.S. Bankruptcy Court,
1300 Clay St. Room 220
Oakland, CA 94612
<u>Served by Priority Mail</u>

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 22, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

| | |
|---|---|
| U.S. Trustee | USTPRegion17.SF.ECF@usdoj.gov |
| Rebekah Parker | attorneyrparker@gmail.com |
| Harold H. Davis, Jr. | hal.davis@gtlaw.com |
| Michael F. Thomson | thomsonm@gtlaw.com |

II. **<u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL:</u>** On August 22, 2023, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

| | |
|---|---|
| Susanna R. Kelham<br>Manager Member<br>Kelham Vineyard & Winery, LLC.<br>360 Zinfandel Lane<br>St. Helena, CA 94574<br><u>Served by U.S. Mail</u> | Ron Nicholsen<br>223 Alchemy Way<br>Napa, CA 94558<br><u>Served by U.S. Mail</u> |

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 22, 2023, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

| | |
|---|---|
| Susanna R. Kelham<br>Manager Member<br>Kelham Vineyard & Winery, LLC.<br>360 Zinfandel Lane<br>St. Helena, CA 94574<br><u>Served by Email</u>:<br>info@kelhamvineyards.com. | Alexis White, Attorney for<br>Susanna R. Kelham<br>Day, Pace, York & York<br>587 Jefferson Street<br>Napa, CA 94559<br><u>Served by Email</u><br>awhite@yorkyorklaw.com |

Service information continued on attached page: None

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

August 22, 2023

_____
Rebekah Parker