**REBEKAH PARKER SBN 143674**
4225-H Oceanside Boulevard #369
Oceanside CA, 92056-3472
Telephone No. (213) 268-2918
Email: AttorneyRParker@Gmail.Com

Attorney for Unofficial Committee of Essential
Creditors & Post-Petition Providers

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SANTA ROSA DIVISION

In re
KELHAM VINEYARD & WINERY, LLC.
     Debtor

**Case No. 23-10384-WL**

Chapter 11

**REQUEST FOR JUDICIAL NOTICE OF DOCKET NO. 64, MOTION TO SHORTEN EXCLUSIVITY PERIOD WITH ATTACHED COPY OF PROPOSED DISCLOSURE STATEMENT DESCRIBING PLAN OF LIQUIDATION – IN CONNECTION WITH,**

1. **HEARING ON RONALD NICHOLSEN'S MOTION TO APPOINT A TRUSTEE [ DOCKET NO. 11-1 ]; AND,**

2. **CONTINUED HEARING ON RONALD NICHOLSEN MOTION FOR RELEIF FROM STAY [ DOCKET NO. 16].**

 DATE: September 5, 2023
 TIME: 9:30 A.M.
 ROOM: Courtroom 220

  United States Bankruptcy Court
  1300 Clay Street
  Oakland, CA 94612

**TO THE HONORABLE WILLIAM LAFFERTY, UNITED STATES BANKRUPTCY JUDGE, DEBTOR, CREDITORS, EQUITY HOLDERS, AND THE OFFICE OF THE UNITED STATES TRUSTEE, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

The Committee of Essential Creditors & Post-Petition Providers (herein, the "Committee") requests that the Court take Judicial Notice of Docket No 64, captioned " Motion to Shorten Exclusivity Period Pursuant to 11 U.S.C. 1121(d)(1): Memorandum of Points and Authorities in Support Thereof; and Supporting Declaration of Rebekah Parker along with Attached Copy of Proposed Disclosure Statement Describing Plan of Liquidation" in connection with (1) the Hearing on Ronald Nicholson's Motion to Appoint Trustee, Docket No. 16 ; and,  (2) the Continued Hearing on Ronald Nicholsen's Motion for Relief from Stay, Docket No. 11-1.   The Proposed Disclosure Statement Describing Plan of Liquidation addresses the following issues, (1) it provides a road map for an efficient and expeditious liquidation of the assets of this estate; (2) it provides a proposal of how the rights of creditors and equity holders can be protected, notwithstanding the existence of conflicts of interest, without the appointment of a trustee; and (3) it provides (or creates) an evidentiary foundation for this Court to issue a co-debtor stay or injunction in favor of "key" officers, members, and employees of the above captioned debtor, who are presently being harassed by an overly aggressive creditor (i.e., Ronald Nicholsen.).


Date:   September 1, 2023

_____
Rebekah Parker,
Attorney for Unofficial Committee of Essential
Creditors & Post-Petition Providers

# CERTIFICATE OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 4225-H Oceanside Boulevard #369, Oceanside CA, 92056-3472

A true and correct copy of the foregoing document described as **REQUEST FOR JUDICIAL NOTICE OF DOCKET NO. 64, MOTION TO SHORTEN EXCLUSIVITY PERIOD WITH ATTACHED COPY OF PROPOSED DISCLOSURE STATEMENT DESCRIBING PLAN OF LIQUIDATION – IN CONNECTION WITH (1) HEARING ON RONALD NICHOLSON'S MOTION TO APPOINT A TRUSTEE [ DOCKT NO. 16 ] ; AND, (2) CONTINUED HEARING ON RONALD NICHOLSEN MOTION FOR RELIEF FROM STAY [ DOCKET NO. 11-1 ]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR; and **(b)** in the manner indicated below:

William Lafferty
U.S. Bankruptcy Court,
1300 Clay St. Room 220
Oakland, CA 94612
Served by Priority Mail

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 1, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

| | |
|---|---|
| U.S. Trustee | USTPRegion17.SF.ECF@usdoj.gov |
| Paul Gregory Leahy | Paul Leahy @ usdoj.gov |
| Rebekah Parker | attorneyrparker@gmail.com |
| Harold H. Davis, Jr. | hal.davis@gtlaw.com |
| Michael F. Thomson | thomsonm@gtlaw.com |
| Carson Heninger | carson.heninger@gtlaw.com, carson-heninger-5642@ecf.pacerpro.com |
| Michael J. Gomez | mgomez@franzel.com, dmoore@frandzel.com |

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL:** On September 1, 2023, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

NONE.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 1, 2023, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Susanna R. Kelham
Manager Member
Kelham Vineyard & Winery, LLC.
360 Zinfandel Lane
St. Helena, CA 94574
Served by Email:
info@kelhamvineyards.com.

Alexis White, Attorney for
Susanna R. Kelham
Day, Pace, York & York
587 Jefferson Street
Napa, CA 94559
Served by Email
awhite@yorkyorklaw.com

Service information continued on attached page: None

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

September 1, 2023

Rebekah Parker

**DOCKET NO. 64, MOTION TO SHORTEN EXCLUSIVITY PERIOD WITH ATTACHED COPY OF PROPOSED DISCLOSURE STATEMENT DESCRIBING PLAN OF LIQUIDATION**

Case: 23-10384    Doc# 65    Filed: 09/01/23    Entered: 09/01/23 18:20:11    Page 5 of 65

1  **REBEKAH PARKER SBN 143674**
   4225-H Oceanside Boulevard #369
2  Oceanside CA, 92056-3472
   Telephone No. (213) 268-2918
3  Email: AttorneyRParker@Gmail.Com

4
   Attorney for Unofficial Committee of Essential
5  Creditors & Post-Petition Providers

6

7                  **UNITED STATES BANKRUPTCY COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
8                       **SANTA ROSA DIVISION**

9
   In re                                    **Case No. 23-10384-WL**
10 KELHAM VINEYARD & WINERY, LLC.
                          Debtor
11                                          Chapter 11

12

13                                          MOTION TO SHORTEN EXCLUSIVITY
                                            PERIOD PURSUANT TO 11 U.S.C.
14                                          1121(d)(1): MEMORANDUM OF POINTS
                                            AND AUTHORITIES IN SUPPORT
15                                          THEREOF; AND SUPPORTING
                                            DECLARATION OF REBEKAH PARKER
16                                          ALONG WITH ATTACHED COPY OF
                                            PROPOSED DISCLOSURE STATEMENT
17                                          DESCRIBING PLAN OF LIQUIDATION

18

19                                          DATE: October 3, 2023
                                            TIME: 9:30 A.M.
20                                          ROOM: Courtroom 220

21
                                            United States Bankruptcy Court
22                                          1300 Clay Street
                                            Oakland, CA 94612
23

24

TABLE OF CONTENTS

I.    MOTION                                                                          3

II.   MEMORANDUM OF POINTS AND  AUTHORITIES.                                          3

      A.    Bankruptcy Code Section 1121(d) Provides that the "Exclusivity           3
            Period" Can be Shortened for "Cause" Shown

      B     "Cause" Exists for Shortening the "Exclusivity" Period in the Case at      4
            Bar.

III.  CONCLUSION                                                                      14

Declaration of Rebekah Parker                                                         8

Proposed Disclosure Statement Describing Plan of Liquidation

**TO THE HONORABLE WILLIAM LAFFERTY, UNITED STATES BANKRUPTCY JUDGE, DEBTOR, CREDITORS, EQUITY HOLDERS, AND THE OFFICE OF THE UNITED STATES TRUSTEE, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

## I
## MOTION

The above captioned Committee of Essential Creditors & Post-Petition Providers (herein, the "Committee[1]") moves this Court for an order reducing the exclusivity period of 11 U.S.C. §1121(a) to allow the Committee to immediately file its "Disclosure Statement Describing Proposed Plan of Liquidation Presented by the Unofficial Committee of Essential Creditors and Post-Petition Service Providers" (herein, the "Disclosure Statement Describing Liquidation Plan").  A copy of the Disclosure Statement Describing Liquidation Plan is attached.

## II
## MEMORANDUM OF POINTS & AUTHORITIES

### A. Bankruptcy Code Section 1121(d) Provides that the "Exclusivity Period" Can be Shortened for "Cause" Show.

Bankruptcy Code Section 1121(b) provides that  "… only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter."  However, Section 1121(d)(1) goes on to provide that " … on request of a party in interest made within the respective periods

---

[1]  The Committee is chaired by Hamilton Nicholsen, a Member of KVW and the Winemaker at KVW, and is comprised of the following creditors and service providers: (1) A group of trusts that holds title to the land on which KVW is located, 360 Zinfandel Lane, St. Helena, Ca., including the SRK 1995 Restated Trust, the Hamilton Nicholsen Irrevocable Trust, and the Ronald Nicholsen Irrevocable Trust (herein referred to collectively as "360 Zinfandel Lane"); (2) Kelham Growers, LLC., that supplies the grapes from which KVW makes its wine; and (3) Main Street Cottage, LLC., that holds title to the Guest House used by KVW to promote wine sales; and (4) Hamilton Nicholsen,

specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section"

**B. Cause Exists for Shortening the Exclusivity Period in the Case at Bar.**

Summarily stated, this case was filed to execute an orderly liquidation of the assets of Kelham Vineyard & Winery ("KVW" or "Debtor") . Unfortunately, Debtor is not in a position to propose either a plan of reorganization or liquidation without the support and assistance of the Committee given that KVW cannot remain operational without the Committee's support.

With that said, while members of the Committee are neither obligated nor interested in continuing to do business with KVW in its present form, the Committee hopes to be given an opportunity to work with Debtor to execute an orderly liquidation of KVW's tangible and intangible personal property assets. To this end, the Committee has prepared the Disclosure Statement Describing Plan of Liquidation with two threshold, independent, objectives, (1) to provide the Court, creditors, and equity holders with a summary of possible liquidation options, therein noting the advantages and disadvantages of each approach; and (2) to provide the Court, creditors, and equity holders with a Plan (a blueprint) for how KVW can spearhead the administration of this case in an manner that protects the interests of all creditors and equity holders, notwithstanding the existence of any conflicts of interests that may exist between KVW's Managing Member, Susanna R. Kelham ("SRK") and other KVW creditors and equity holders.

Summarily stated, the full participation and cooperation of SRK is essential, indispensable, to KVW's ability to remain operational during the liquidation of KVW's assets; keeping KVW open during the liquidation process will facilitate the Liquidation Agent's job and preserve or enhance the value of KVW's assets. To this end, the appointment of a trustee, which would result, in SRK's removal is self-defeating. A better approach, <u>one that both facilitates the liquidation of assets and</u>

protects the right of creditors and equity holders as proposed by the Committee's Plan, would be for

the Court to (1) immediately appoint a Liquidation Agent, (2) in due time, as described in more detail

later in this Disclosure Statement, appoint an Avoidance Action Master[2] should one become necessary;

and (3) create a modified objection to claim procedure with the appointment of a Claims Master[3],

---

[2]  In the event the proceeds of sale of KVW's assets yield an insolvent bankruptcy estate, the Court shall appoint a member of the Trustee Panel in the limited capacity as an "Avoidance Action Master" charged with the limited task of prosecuting preference and fraudulent transfer litigation.  The appointment of an Avoidance Action Master will be deferred until after the liquidation of this Estate's assets for the simple reason that the commencement and prosecution of avoidance actions will not be necessary, nor recovery legally justifiable, if the liquidation of KVW's assets generates sufficient funds to pay creditors in full.  The Avoidance Action Master will be appointed by the Court, based on the recommendations or nominations of creditors and equity holders, with preference give to panel members who are actually attorneys interested in and capable of prosecuting these actions themselves.  The Committee would like to avoid a situation where a trustee is appointed and then prematurely racks up legal fees and expenses investigating and prosecuting potential preferences and fraudulent transfer actions before (a) a determination has been made these actions are legally viable *vis a vis* insolvency issue-element of these causes of action; and (b) the equity holders of this estate have an opportunity to negotiate a settlement of their disputes having had an opportunity to take the residual value of this estate into consideration.

[3]  After the resolution of avoidance action if any, the Equity Holders of this Estate, consisting of the Susanna Kelham, Hamilton Nicholsen, and Ronald Nicholsen, shall be allowed to file objections to insider claims but only with leave of court.  As a condition precedent to the filing of any said objection to claim, Equity Holders will meet and confer and thereon provide the Court with a Case Status Conference Report that contains a list of proposed objections to claims with a summary of legal and factual issues presented. At that juncture, the Court may, at its discretion, appoint a Claims Master, whose duties will consist of meeting with each side, reviewing each side's factual and legal contentions, and preparing a preliminary assessment for the court on the merits of each claim and the objection thereon (herein, the "Claim Report").  However, before a Claim Report is submitted to the Court, the Claims Master will meet with claimant and the objecting party and attempt to broker a settlement.  If a settlement cannot be reached, the Claim Report will be filed with the Court, who will thereon grant leave for the Objection to Claim to be filed.  This process will be repeated with respect to each claim individually; the Claims Master will be instructed not to delay the administration of this case due to a particularly problematic claim.  With respect to fees, while the Claims Master will be entitled to file an Application for Fees and Costs as an administrative claim, neither the claimant nor the objecting party shall be entitled to recover fees against the Estate or against each other in connection with claim objection process, unless otherwise entitled to do so under the terms of the claim itself.

1  again if necessary, to help the Court stream line the claims objection process, wherein equity holders

2  shall have standing to object to each other's claims, with each party bearing their own attorney fees

3  and expenses.[4] The Committee's goal and belief is that, once KVW's assets are fully liquidated and

4  equity holders' expectations have undergone a reality check as to how much (or how little) those assets

5  are really worth, as well as, had their eyes opened as to the cost of administration, equity holders will

6  be in a better position (and more amenable) to enter into settlement discussions regarding the residual

7  value of this estate.

8  To this end, "cause" exists for shortening exclusivity period on the ground that permitting the

9  Committee to file its "Disclosure Statement Describing Proposed Plan of Liquidation" immediately is

10  in the best interest of creditors and equity holders for the following reasons, (1)  it provides a road map

11  for an efficient and expeditious liquidation of the assets of this estate; (2) it provides a proposal of how

12  the rights of creditor and equity holders can be protected, notwithstanding the existence of conflicts of

13  interest, without the appointment of a trustee; and (3) it provides (or creates) an evidentiary foundation

14  for this Court to issue a co-debtor stay or injunction in favor of "key" officers, members, and

15  employees of the above captioned debtor, who are presently being harassed by overly aggressive

16  creditors.

17

18

19

20

---

21  [4]  Note, there is no reason that the same Trustee Panel member cannot serve in all three capacities, although the Committee would like to explore or consider drawing on the strengths and experience of

22  various panel members to execute specific tasks.  For example, there may be a panel member who has distinguished themselves at negotiating asset sales without the gratuitous and unnecessary

23  doling out of brokerage commissions, such a panel member would make an ideal "Liquidation Agent".  Likewise, if a member of the panel has distinguished themselves as someone capable of

24  synopsizing legal conflicts quickly and thereon brokering settlements, such a panel member would make an ideal "Claims Master".

1

2

3

**III.**
**CONCLUSION**

To this end, the Committee respectfully submits that "cause" has been shown to warrant entry

of an order reducing the exclusivity period of 11 U.S.C. §1121(a) to allow the Committee to

immediately file its "Disclosure Statement Describing Proposed Plan of Liquidation ".  Summarily

stated, the Committee has shown the entry of order reducing the exclusivity period is in the best

interest of the creditors and equity holders of this estate.

September 1, 2023,

_____
Rebekah Parker,
Attorney for Unofficial Committee of Essential
Creditors & Post-Petition Providers

**Declaration of Rebekah L. Parker**

I, Rebekah L. Parker, declare:

1.   I am an attorney at law, duly qualified and licensed to practice before the U.S. District Court for the Northern District of California, as well as the U.S. Bankruptcy Court for the Northern District of California. I have personal knowledge of the following facts.

2.   I drafted, reviewed, and revised, the above captioned   Motion to Shorten Exclusivity Period Pursuant to 11 U.S.C. 1121(d)(1): Memorandum of Points and Authorities in Support Thereof; and Supporting Declaration of Rebekah Parker along with Attached Copy of Proposed Disclosure Statement Describing Plan of Liquidation

3.   To the best of my knowledge, information, and belief, the facts set forth therein are true and correct.

4.   To the best of my knowledge and belief, all the documents attached hereto, are true and correct copies of their originals.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on September 1, 2023, in the County of San Diego, State of California.

_____

Rebekah Parker, Declarant

**Disclosure Statement Describing Plan of Liquidation**

Rebekah Parker – State Bar No. 143674
4225-H Oceanside Blvd. #369
Oceanside, CA, 92056-3472
Telephone (213) 268-2918
Email: AttroneyRParker@Gmail.com

Counsel for the Unofficial Committee of Essential
Creditors and Post-Petition Service Providers

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SANTA ROSA DIVISION

| | |
|---|---|
| In re: Kelham Vineyard & Winery, LLC,<br><br>Debtor | Bk. No. 23-10384<br><br>Chapter 11 |

DISCLOSURE STATEMENT DESCRIBING
PROPOSED PLAN OF LIQUIDATION
PRESENTED BY THE UNOFFICIAL
COMMITTEE OF ESSENTIAL CREDITORS
AND POST-PETITION SERVICE PROVIDERS

Disclosure Statement Hearing

Date:   TO BE SET
Time:   TO BE SET
Ctrm:   220

Plan Confirmation Hearing

Date:    TO BE SET
Time:    TO BE SET
Ctrm:    220

UNITED STATES BANKRUPTCY COURT
1300 Clay Street
Oakland, CA 94612

i

## <u>**TABLE OF CONTENTS**</u>

**I. INTRODUCTION**     **4**

  A.    Purpose of This Document ..................................................................6

  B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.....................7

    1.   Time and Place of the Confirmation Hearing................................7

    2.   Deadline for Voting For or Against the Plan................................7

    3.   Deadline for Objecting to the Confirmation of the Plan......................8

    4.   Identity of Person to Contact for More Information Regarding the Plan ........8

  C.    Disclaimer ...........................................................................8

**II. BACKGROUND**     **9**

  A.    Description and History of the Debtor's Business.................................9

  B.    Principals/Affiliates of the Debtor's Business.....................................10

  C.    Management of the Debtor Before and After the Bankruptcy.......................10

  D.   Events Leading to Chapter 11 Filing.................................................10

  E.    Significant Events ...................................................................11

    1.   Bankruptcy Proceedings........................................................11

    2.   Other Legal Proceedings........................................................12

    3.   Actual and Projected Recovery of Preferential or Fraudulent Transfers .....................12

    4.   Procedures Implemented to Resolve Financial Problems...........................14

    5.   Current and Historical Financial Conditions .................**Error! Bookmark not defined.**

**III. SUMMARY OF THE PLAN OF REORGANIZATION**     **16**

  A.   What Creditors and Interest Holders Will Receive Under the Proposed Plan ...................16

  B.    Unclassified Claims..................................................................16

    1.   Administrative Expenses........................................................17

    2.   Priority Tax Claims.............................................................18

  C.   Classified Claims and Interests ......................................................19

    1.   Classes of Secured Claims......................................................19

    2.   Classes of Priority Unsecured Claims..........................................20

    3.   Classes of General Unsecured Claims..........................................20

    4.   Class(es) of Interest Holders....................................................21

  D.   Means of Effectuating the Plan......................................................22

    1.   Funding for the Plan............................................................22

    2.   Post-Confirmation Management................................................25

    3.   Disbursing Agent ...............................................**Error! Bookmark not defined.**

  E.    Risk Factors .........................................................................25

  F.    Other Provisions of the Plan........................................................28

    1.   Executory Contracts and Unexpired Leases....................................28

      a. Assumptions…………………………………………………..…… 28

      b. Rejections…………………………………………………..……15

    2.   Changes in Rates Subject to Regulatory Approval.............................29

    3.   Retention of Jurisdiction........................................................29

ii

4.   Capital Contributions ........................................................29
G.  Tax Consequences of Plan .............................................................30
**IV. CONFIRMATION REQUIREMENTS AND PROCEDURES.............................30**
A.  Who May Vote or Object .................................................................31
1.   Who May Object to Confirmation of the Plan ...............................31
2.   Who May Vote to Accept/Reject the Plan ....................................31
a. What is an Allowed Claim/Interest ......................................31
b. What is an Impaired Claim/Interest ....................................32
3.   Who is Not Entitled to Vote ...........................................................32
4.   Who Can Vote in More Than One Class ........................................33
5.   Votes Necessary to Confirm the Plan ...........................................33
6.   Votes Necessary for a Class to Accept the Plan ...........................33
7.   Treatment of Nonaccepting Classes ..............................................34
8.   Request for Confirmation Despite Nonacceptance by Impaired Class(es) ..................34
B.  Liquidation Analysis ........................................................................34
C.  Feasibility ........................................................................................37
**V. EFFECTS OF CONFIRMATION OF PLAN             38**
A.  Discharge ........................................................................................38
B.  Revesting of Property in the Debtor .................................................38
C.  Modification of Plan ........................................................................38
D.  Post-Confirmation Status Report .....................................................39
E.  Quarterly Fees .................................................................................39
F.  Post-Confirmation Conversion/Dismissal .......................................39
G.  Final Decree .....................................................................................40
**VI. SUPPORTING DECLARATIONS           40**
EXHIBIT A – LIST OF ALL ASSETS .....................................................42
EXHIBIT B – FINANCIAL STATEMENT ...............................................27
EXHIBIT C – UNEXPIRED LEASES TO BE ASSUMED ......................45
EXHIBIT D – EXECUTORY CONTRACTS TO BE ASSUMED ............45
EXHIBIT E – LIQUIDATION ANALYSIS ..............................................45
EXHIBIT F – LIST OF ADMINISTRATIVE EXPENSE CLAIMS ..........45
EXHIBIT G – LIST OF PRIORITY UNSECURED CLAIMS ...................47
EXHIBIT H – LIST OF GENERAL UNSECURED CLAIMS....................49
EXHIBIT I – LIST OF EQUITY INTERESTS .........................................51

iii

# I.
## INTRODUCTION

This Plan is being proposed by an unofficial committee of insiders that supplies Kelham Vineyard & Winery (herein "Debtor" or "KVW") with the real estate, grapes, and services, on credit, that enabled KVW to stay in business for the past 22 plus years, who herein propose to continue providing KVW with said services post-petition to facilitate the liquidation of KVW's assets. (Herein the "Committee of Essential Creditors and Post-Petition Service Providers" or simply the "Committee").  Specifically, the Committee is chaired by Hamilton Nicholsen, a Member of KVW and the Winemaker at KVW, and is comprised of the following creditors and service providers: (1) A group of trusts that holds title to the land on which KVW is located, 360 Zinfandel Lane, St. Helena, Ca.,[1] including the SRK 1995 Restated Trust, the Hamilton Nicholsen Irrevocable Trust, and the Ronald Nicholsen Irrevocable Trust (herein referred to collectively as "360 Zinfandel Lane"); (2) Kelham Growers, LLC., that supplies the grapes from which KVW makes its wine; and (3) Main Street Cottage, LLC., that holds title to the Guest House used by KVW to promote wine sales; and (4) Hamilton Nicholsen, Winemaker at KVW.

To be clear, while members of the Committee hope to be able to work with KVW to execute an orderly liquidation of KVW's tangible and intangible personal property assets, members of the Committee are neither obligated nor interested in continuing to do business with KVW in its present form. The Committee has filed this Proposed Disclosure Statement and Plan for two independent reasons or objectives. (1) to provide the Court, creditors, and equity holders

---

[1] Title to 360 Zinfandel Lane, St. Helena, California, is currently held by 5 entities, including the SRK 1995 Restated Trust with a 34% interest: the Hamilton Nicholsen Irrevocable Trust with a 32.2% interest, the Ronald Nicholsen Irrevocable Trust with a 32.2% interest, Hamilton Nicholsen as an individual with a .8% interest, and Ronald Nicholsen as an individual with a .8% interest. Susana R. Kelham serves as the Authorized Agent for all but Ronald Nicholsen's *de minimis* .8% interest.

with a summary of possible liquidation options, herein noting the advantages and disadvantages of each approach; and (2) to provide the Court, creditors, and equity holders with a Plan for how KVW can spearhead the administration of this case in an manner that protects the interest of all creditors and equity holders, notwithstanding the existence of any conflicts of interests that may exist between KVW's Managing Member, Susanna R. Kelham ("SRK") and other KVW creditors and equity holders.

Summarily stated, the full participation and cooperation of SRK is essential, indispensable, to KVW's ability to remain operational during the liquidation of KVW's assets; keeping KVW open during the liquidation process will facilitate the Liquidation Agent's job and preserve or enhance the value of KVW's assets. To this end, the appointment of a trustee, which would result, in SRK's removal is self-defeating.   A better approach, <u>one that both facilitates the liquidation of assets and protects the right of creditors and equity holders as proposed by this Plan</u>, would be for the Court to (1) immediately appoint a Liquidation Agent, (2) in due time, as described in more detail later in this Disclosure Statement, appoint an Avoidance Action Master should one become necessary; and (3) create a modified objection to claim procedure with the appointment of a Claims Master, again if necessary, to help the Court stream line the claims objection process, wherein equity holders shall have standing to object to each other claims, with each party bearing their own attorney fees and expenses.[2] The Committee's goal and belief is

---

[2]   The Plan calls for the appointment of a Liquidation Agent, followed by the potential appointment of an Avoidance Action Master and a Claims Master, should the later appointments become necessary. With that said, there is no reason that the same Trustee Panel member cannot serve in all three capacities, although the Committee would like to explore or consider drawing on the strengths and experience of various panel members to execute specific tasks.  For example, there may be a panel member who has distinguished themselves at negotiating asset sales without the gratuitous and unnecessary doling out of brokerage commissions, such a panel member would make an ideal "Liquidation Agent". Likewise, if a member of the panel has distinguished themselves as someone capable of

that, once KVW's assets are fully liquidated and equity holders' expectation have undergone a reality check as to how much (or how little) those assets are really worth, as well as, had their eyes opened as to the cost of administration, equity holders will be in a better position (and more amenable) to enter into settlement discussions regarding the residual value of this estate.

**A.    Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

**(1)    WHO CAN VOTE OR OBJECT,**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

**(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)    WHETHER THIS PLAN IS FEASIBLE.**

---

synopsizing legal conflicts quickly and thereon brokering settlements, such a panel member would make an ideal "Claims Master".

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.    Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan typically takes place on a date and at a time set by the Court**,** in Courtroom 220 of the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division, located at 1300 Clay Street, Oakland, California, 94612. Creditors and Interested Parties will be served with a notice of the hearing date, time, and place, including the Deadline for Voting for or Against the Plan.

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Rebekah Parker, Counsel for the Committee, 4225-H Oceanside Boulevard #369, Oceanside, CA. Ms. Parker can be reached telephonically at (213) 268-2918.

Your ballot must be received by the date designated by the Court, or it will not be counted. Creditors and Interested Parties will be served with a notice that provides the deadline for filing ballots.

**2. Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon Rebekah Parker, Counsel for the Committee at 4225-H Oceanside Boulevard #369, Oceanside, CA 92056. Creditors and Interested Parties will be served with a notice that provides the deadline for filing ballots. Creditors and Interested Parties will be served with a notice that provides the deadline for filing objections to plan confirmation.

**3. Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Rebekah Parker, Counsel for the Committee, at 4225-H Oceanside Boulevard #369, Oceanside, CA 92056. Ms. Parker can be reached telephonically at (213) 268-2918.

**C. Disclaimer**

The financial data relied upon in formulating the Plan is based on the books and records maintained by Debtor. The information contained in this Disclosure Statement has been provided by the Committee. The Committee represents that everything stated in this Disclosure Statement is true to the Committee's best knowledge. The Court has not yet determined whether or not the

8

1  Plan is confirmable and makes no recommendation as to whether or not you should support or

2  oppose the Plan.

3  **II.**
   **BACKGROUND**

4  **A.    Description and History of Debtor Kelham Vineyard & Winery.**

5        Kelham Vineyard and Winery ("KVW") was founded by Rawson "Rory" Kelham in

6  2001, the deceased spouse of Susanna Kelham[3].  Prior to Rawson's death, 75% of the

7  membership shares were held by Rawson and his wife Susanna, who gifted their adult children

8  Ronald ("Ron") Nicholsen and Hamilton ("Ham") Nicholsen each a 12 ½ percent interest[4].

9  After Rawson's death, Susanna Kelham found herself having to secure loans to keep KVW

10 afloat; but somehow the original operating agreement "mysteriously"[5] disappeared.  In order to

11 secure the loan on an expedited basis as was needed, a new operating agreement was prepared by

12 a bank loan officer**,** that reallocated the membership shares in KVW, therein increasing the

13 shares of Ron and Ham to 1/3 interests, respectively. Feeling pressure to close the loan due to the

14 pending cash crunch, Susanna Kelham signed the new operating agreement without reviewing it

15 carefully and without an opportunity to consult an attorney.

16       KVW has never been able to generate enough income to cover its operating expenses.

17 From its inception, KVW has relied on and survived on loans and credit issued by Susanna

18 ---

   [3]  "After a long battle with diabetes, Rory Kelham lost the fight on Oct. 8 at his home in the Napa Valley.
19 He was 73. Beginning in 1971, Rory farmed in the prestigious Western Oakville Appellation, supplying
   fruit to wineries such as Robert Mondavi, Cakebread Cellars and BV for Georges De La Tour. His
20 farming practices employed the respected Old-World tradition — that fine wines are a product of the
   vineyard. Rory was a man of his words and compromised for nothing." Wine Business, October 24,
   2011.

21 [4]  Susanna Kelham is the natural or birth mother of both Ronald and Hamilton Nicholsen from a prior
   marriage; Rawson was their common law stepfather.

22
   [5]  On June 20, 2023, while cleaning out barn storage space, the original 2001 KVW Operating Agreement
23 was found squirreled away among Creditor Ron's personal possessions left behind when Creditor Ron
   abandoned his post at KVW.

24

9

Kelham, 360 Zinfandel Lane, Kelham Growers, LLC, and Main Street Cottage, LLC. With that said, Susanna Kelham, 360 Zinfandel Lane, Kelham Growers, LLC, and Main Street Cottage, LLC. have all grown tired of issuing loans and extending credit. As a result, KVW is no longer in a position to pay even its non-insider obligations as they come due.

**B.  Principals/Affiliates of Debtor's Business**

As noted of above, KVW is a limited liability company organized under California law with three members, with Susanna Kelham holding a 34% interest and her to son Ronald Nicholsen and Hamilton Nicholsen each holding a 33% interest. KVW has no affiliates as that term is defined by Title 11.

**C.  Management of KVW Before and After the Bankruptcy**

Susanna Kelham is KVW's Managing Member. With that said, in terms of day-to-day operations, the "front of the house" which includes all administrative and customer relations functions is handled strictly by Susanna Kelham; however, the "back of house", which is to say vineyard management and winemaking functions are handled by Hamilton Nicholsen.

**D.  Events Leading to Chapter 11 Filing**

As noted above KVW has never been an economically viable entity; it has never been able to sustain itself, which is to say KVW has never been able to pay its debts as those debts came due without the financial assistance provided by various insider entities, including various forms of financial assistance provided by Committee members including loans, credit, and debt forbearance, as well as personal loans provided by Susanna Kelham. Notwithstanding, the financial assistance flowed for 22 plus years, with everyone willing to put their personal issues aside in the spirit of working towards the common goal of making the Kelham family name a Napa legacy. Unfortunately, this came to any end in 2021 when Susanna Kelham's eldest son

Ron Nicholsen abandoned his post at winery and embarked on a litigious campaign to negotiate or leverage an inflated buyout price for his 33% interest in KVW.

As a result of Ron Nicholsen's conduct, Susanna Kelham is no longer willing to extend loans to KVW and members of the Committee are no longer willing to grant KVW debt deferment or forbearance. On July 20, 2023, Committee member Main Street Cottage LLC, who is owed $107,250 in back due rent, filed an Involuntary Petition against KVW to create a forum for the orderly liquidation of KVW assets; an Order for Relief was entered on August 16, 2023, and the 341a Meeting of Creditors was noticed for September 15, 2023.

**E.    Significant Events During the Bankruptcy**

**1.    Bankruptcy Proceedings**

**a.    Motion for Relief from Stay -**  On July 31, 2023, Ron Nicholsen, in his capacity as a creditor seeking an award of attorney's fees and costs under California Corporate Code  §17704.10 (g), filed a Motion for Relief from Stay requesting that Napa County Superior Court Case Number 21-CV-001403 for the inspection of corporate books and records pursuant to §17704.10 (a) and §17704.13 be allowed to move forward. Creditors interested in learning more about this Motion for Relief from Stay are directed to Case Docket No. 11-1 for a copy of the Motion for Relief Stay, along with Case Docket No. 21 and 22 for  copies of the Opposition to Motion for Relief from Stay filed by Creditor, Main Street Cottage, LLC.  At the time this Proposed Disclosure Statement was prepared, the stay remained in place *vis a vis* Napa County Superior Court Case Number 21-CV-001403.

**b.    Motion to Appoint Trustee -**     On August 7, 2023, Ron Nicholsen in his capacity as an equity holder or member of KVW, filed a Motion for Appointment of a Trustee pursuant to either 11 U.S.C. §1104(a)(1) for alleged cause or under 11 U.S.C. §1104(a)(2) for the

best interest of creditors. Creditors interested in learning more about this Motion for Relief from Stay are directed to Case Docket No. 16 for a copy of the Monition for Appointment of a Trustee. This Proposed Disclosure Statement, along with was Opposition to the Motion for Appoint of Trustee currently in the works, was prepared by the Committee for the express purpose of demonstrating to the Court, the U.S. Trustee, along with all creditors and interested parties that appointment of a trustee at this stage in the proceeding is neither warranted nor in the best interest of creditors. At the time of filing of this Proposed Disclosure Statement, a Trustee has not yet been appointed.

**2. Other Related Legal Proceedings:**

As referenced above, Ron Nicholsen is seeking an award of attorney's fees and costs under California Corporate Code §17704.10 (g), in connection with Napa County California Superior Court Case Number 21-CV-001403 for the inspection of corporate books and records pursuant to §17704.10 (a) and §17704.13. Creditors interested in learning more about Ron Nicholsen's action are directed to the case files on, Case Number 21-CV-001403, maintained by the Clerk of Court for Napa County California Superior Courts.

**3. Actual and Projected Recovery of Preferential or Fraudulent Transfers**

At this early stage of the bankruptcy proceeding providing a meaningful assessment of actual and/or projected preference or fraudulent transfers is difficult if not impossible.

While the Committee is not aware of any credible allegations of fraudulent transfers, there are a number of sizeable transfers to various entities that may be the subject of avoidance as preferences. With respect to all transfers enumerated herein, particularly if the transfer was made to an insider, the Committee listed the transfers without regard to whether the transferee has and/or may have a bona fide defense. The routine transfer to non-insider trade creditors-

service providers involving contemporaneous exchanges are not listed here. In preparing this analysis, the Committee obtained copies of bank statements, for the past 12 months, from the account maintained by KVW at Mechanics Bank that is used exclusively as a payment or disbursement account (i.e., Mechanic's Bank Accounting ending in ….3760.) The complete work-up prepared and generated for this analysis by the Committee will be attached to KVW's Statement of Financial Affairs in response to Questions No. 3 and 4.

With that said, the following is a summary of said transfers broken down by the 90 day and one-year avoidance periods.

**Transfers within the 90 Day Avoidance Period:**

| | |
|---|---|
| Ron Nicholsen/Greenburg & Traurig, LLP (Attorney Fee) | $134,679.40 |
| Hamilton Nicholsen  (Guaranteed Payment/Salary) | $ 33,722.69 |
| Susanna Kelham  (Guaranteed Payment/Salary) | $ 30,000.00 |
| Main Street Cottage, LLC ( Monthly Rent) | $  5,250.00 |

**Transfers within the One-Year Avoidance Period:**

| | |
|---|---|
| Holland & Knight (Attorney Fees) | $ 78,796.77 |
| Kelham Growers, LLC  (Loan Repayment) | $128,000.00 |
| Hamilton Nicholsen (Guaranteed Payment/Salary) | $161,222.69 |
| Susanna Kelham  (Guaranteed Payment/Salary) | $113,051.85 |
| Main Street Cottage, LLC ( Monthly Rent) | $ 31,500.00 |
| 360 Zinfandel Lane  (Lease Payment) | $260,240.00 |

Because the vast majority, potentially all, of the above listed potentially avoidable transfers are to insiders, statutory or non-statutory, this Plan provides for the appointment of member of the Trustee Panel in the limited capacity as a Preference-Fraudulent Conveyance Master (herein, the "Avoidance Action Master') charged with the limited task of prosecuting preference and fraudulent conveyance litigation. The appointment of an Avoidance Action Master will be deferred until after the liquidation of this Estate's assets for the simple reason that the commencement and prosecution of avoidance actions will not be necessary, nor recovery

13

viable, if the liquidation of KVW's assets generates sufficient funds to pay creditors in full. The Avoidance Action Master will be appointed by Court, based on the recommendations or nominations of creditors and equity holders, with preference give to panel members who are actually attorneys interested in and capable of prosecuting these actions themselves. The Committee would like to avoid a situation where someone is appointed and thereon goes out and double bills by hiring a separate law firm to do the actual work, therein further diluting the dividend interest of creditors and equity holders.

### 4. Procedures Implemented to Resolve Financial Problems

As previously noted, this is a liquidation Plan that proposes to liquidate all of KVW's assets and thereon windup and dissolve the entity.

KVW's assets consist of both intangible and tangible personal property, as well as, a vacant parcel of land, the former site of a burned down mountain cabin owned by KVW that was used by Ron Nicholsen and wife as their primary residence. Contrary to innuendo and false rumors circulated by Ron Nicholsen, KVW does NOT own either (a) 360 Zinfandel Lane (the site where the winery is located) (b) Oakville Vineyards (the site that grows the grapes used to produce KVW wines); or (c) the Main Street Cottage (a rental property used by KVW to promote sales to Wine Club members.

The Committee believes that four avenues exist for the liquidation of these assets:

  a. A privately negotiated bulk sale without a broker.

  b. A bulk sale consummated with the use of a court appointed business broker.

  c. A bulk sale consummated through a duly publicized auction; or,

  d. A piece meal sale of assets through a duly publicized auction.

The Committee believes the dividend to both unsecured creditors and equity holders will be substantially higher if a sale can be consummated without a broker, auctioneer, or trustee.

A sale with the use of a broker or auctioneer will reduce the funds available to creditors and equity holders by the commissions that will have to be paid to the broker or auctioneer. Business broker commissions for this type of small family-owned business are typically calculated based on the sales price, using the Lehman Formula (10% of first million, 8% of the second million, and 6% of the third million, 4% of the fourth million, and 5% of the fifth million.) Auctioneer commissions would probably range in the 15% - 20% range, possibly higher given out of pocket expenses of publicizing the unique nature of KWV's assets.

If a trustee were appointed, unless the trustee personally located a buyer and personally negotiated a sale which is not a common occurrence, a trustee is likely to retain a broker or auctioneer at the above rates and further reduce the funds available to creditors and equity holders by their own commission known as the trustee's handle plus the costs of their retention of legal and accounting professionals to advise them in consummating the sale. The Trustee's handle or commission is 25% of the first $5,000 distributed. 10% of any amount between $5,001 and $50,000. 5% of any amount between $50,001 and $1,000,000, and. 3% of all amounts over $1,000,000. In addition, an estimated 8% of the trustee commission or handle to cover the trustee legal and accounting professionals.

For the purposes of illustration, the following example shows the net funds available to the Estate's administrative, priority, secured, unsecured, and equity holders, in that order that would be generated for a $2 Million sale without a broker, with a broker, and with a trustee.

15

|  | No Broker | Broker | Broker & Trustee |
|---|---|---|---|
| Sale Price | $2,000,000 | $2,000,000 | $2,000,000 |
| Broker Commission | | $180,000 | $180,000 |
| Trustee Handle | | | $113,250 |
| Administrative | | | $9,069 |
| Net Sales Cost | 0 | $180,000 | $302,310 |
| Net Funds | $2,000,000 | $1,820,000 | $1,697,690 |

The Committee would stress that these costs of sales projections are very conservative in that a trustee's administrative cost can be substantially higher once a trustee's expenses or the costs of in-house paraprofessional staff is included such as adjustors, investigators, bookkeepers, etc. Moreover, if a matter becomes contested, the legal and accounting fees assessed against the Estate can go through the roof. With that said, creditors and equity holders are reminded that all administrative fees must be paid in full before a single cent to goes to creditors and equity holders

### III.
### SUMMARY OF THE PLAN OF REORGANIZATION

**A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead, they are unclassified. They are not considered impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

### 1. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Code section 503(b). The Code requires that all administrative claims be paid on the Effective Date of the Plan unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 503(b) administrative claims and their treatment under the Plan. (See Exhibit F for detailed information about each administrative expense claim):

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Bankruptcy Counsel | TBD [1] | Allowed Fees Paid in Full on Effective Date |
| Rebekah Parker | TBD [2] | Allowed Fees Paid in Full on Effective Date |
| Post-Petition Providers | TBD [3] | Allowed Fees Paid in Full on Effective Date |
| Clerk's Office Fees | TBD | Paid in Full on Effective Date |
| Office of the U.S. Trustee Fees | TBD [4] | Paid in Full on Effective Date |
| TOTAL | TBD | |

TBD = TO BE DETERMINED

[1] As previously noted, this Disclosure Statement was prepared on an expedited basis as a means of demonstrating to the Court that the appointment of a trustee is neither supported by a showing of cause nor in the best interests of the Estate. As this Disclosure Statement is being prepared, KVW is in the process of attempting to retain Bankruptcy Counsel, a process which has been hindered by the immediate filing a Motion for Relief from Stay and a Motion for Appointment of a Trustee. KVW's first choice has indicated that he may accept the position depending on the Court's finding and ruling in connection with these pending motions. Summarily stated, due to the rarity and controversial nature of Involuntary Petitions, everyone just wants to sit on the fence for the time being.

[2] For the reasons just stated, in the absence of Bankruptcy Counsel, Rebekah Parker, Counsel for Petitioning Creditor and now herein Counsel for the Committee has found herself in the position of having to defend KVW's right to keep the stay in place and right to administer this estate without a trustee, by among other things, preparing this Disclosure Statement and Plan, an undertaking which has and/or will provide a "substantial contribution" to this Estate, making Rebekah Parker a possible administrative creditor.

[3] KVW's ability to operate is completely dependent on the use of real estate, goods, and services provided by insiders, many of whom are Members of this Committee herein described. To this end, to enable this KVW to remain operational which may prove essential to maximizing return on its asset sale and to avoid any allegations of financial impropriety, with the exception of the $7,500 'Guaranteed Payment-Salary' to Member-Winemaker Hamilton Nicholsen, all insiders claims to compensation for the use of real estate, goods, and services provided by insiders will be paid as administrative claims pursuant to 11 U.S.C. §503.

[4] As a Chapter 11 Debtor, KVW is required to pay a Quarterly Fees to the Office of the United States Trustee, the fees are assessed on a tiered or sliding sale based on the amount of an estate's Quarterly Disbursements. The minimal fee is $250 for an estate that disburses up to $62,624 in a quarter, with a.04% assessment for additional disbursements between $62,625 and $999,999 in a single quarter. While the exact amount of KVW's Quarterly Fee is unknown at this time, it should be stressed that KVW will pay these fees as they come due, thus there will be a 0 outstanding balance at the confirmation hearing.

Court Approval of Fees Required:

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application and issue a judgment thereon. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

Unless an administrative claimant has agreed to be paid later or the Court has not yet ruled on the administrative claim, the above noted administrative claim will be paid on the Effective Date from the proceeds generated from the liquidation of KVW's assets.

## 2. Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period ending not later than 5 years after the date of the order for relief under section 301. The

18

following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan: *None*

**B.    Classified Claims and Interests**

**1.    Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate. The following chart lists KVW's sole secured claim and its treatment under this Plan:

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|---|
| **1(a)** | Secured claim of:<br><br>• Name: *Kelham Vineyards Growers, LLC (herein Growers)*<br><br>• Collateral Description: *KVW Wine Inventory*<br><br>• Collateral value: *Value of Wine Plus* [1]<br><br>• Priority of Security: *Producer's Lien*<br><br>• Principal owed: *$ 533,929.45*<br><br>• Pre-pet. Arrearage: *n/a*<br><br>• Post-pet. Arrearage: *n/a*<br><br>• Late Charges: *$10,000.00*<br><br>• Fees & Expense *$7,251.78 (Monthly)*<br><br>• Total claim amount: *$533,929.45 plus Monthly Storage Fees* ** | Y | Y | • Payment Interval<br><br>• Payment Amount<br><br>• Balloon Payment<br><br><br>• Begin date<br><br>• End date<br><br>• Interest rate %<br><br>• Total payout<br><br><br><br>Interest<br><br>Principal<br><br><br><br>• Lien Treatment<br><br>Secured<br><br>Unsecured | *n/a*<br><br>*n/a*<br><br>*$ 533,929.45 plus Monthly Storage Fees* [2]<br><br>Effective Date<br><br>Effective Date<br><br>n/a<br><br>*$ 533,929.45 plus Monthly Storage Fees* [2]<br><br>0<br><br>*$533,929.45 plus Monthly Storage Fees* [2]<br><br><br>*Fully Secured*<br><br>0 |

[1] The value of KVW's wine inventory is the subject of much controversy, a controversy that is discussed in Section IV, subparagraph B, below. With that said, there should be no dispute that Growers is fully secured.

[2] Grower's total claim increases monthly with the addition of storage and insurance fees that may be assessed.

## 2. Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan (see Exhibit G for more detailed information about each priority unsecured claim).

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 2 | n/a | n/a | n/a |

## 3. Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims (see Exhibit H for detailed information about each general unsecured claim):

20

| CLASS # 3a | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| 3a | Trade Creditors - Unsecured Claims: $ 59,586.12 | Y | • Payment Interval<br>• Payment Amount<br>• Begin Date<br>• End Date<br>• Interest Rate %<br>• Total Payout<br>• Dividend Paid | *Effective Date*<br>*$ 59,586.12*<br>*n/a*<br>*n/a*<br>*0*<br>*$ 59,586.12*<br>*0 to 100%* |

| CLASS # b | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| 3b | Legal Service /Litigation Support Unsecured Claims: $ 283,239.84 | Y | • Payment Interval<br>• Payment Amount<br>• Begin Date<br>• End Date<br>• Interest Rate %<br>• Total Payout<br>• Dividend Paid | *Effective Date*<br>*$ 283,239.84*<br>*n/a*<br>*n/a*<br>*0*<br>*$ 283,239.84*<br>*100%* |

| CLASS 3c | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| 3c | Claim of Insiders - Unsecured Claims: $ 2,241,700.78 | Y | • Payment Interval<br>• Payment Amount<br>• Begin Date<br>• End Date<br>• Interest Rate %<br>• Total Payout<br>• Dividend Paid | *Effective Date*<br>*$ 2,241,700.78*<br>*n/a*<br>*n/a*<br>*0*<br>*$ 2,241,700.78*<br>*100%* |

**4. Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder. The following

chart identifies the Plan's treatment of the Class of interest holders (see Exhibit I for more detailed information about each interest holder):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| **4** | Interest holders | N | Residual Estate |

**D.     Means of Effectuating the Plan**

    **1.  Funding for the Plan**

        a.   The plan will be funded from income generated from the liquidation of all KVW's assets.

        b.    Pending an actual asset sale and to facilitate an asset sale, KVV's current staff, at their existing compensation levels, will continue to operate KVW in accordance with the provisions of Title 11 and all rules promulgated by the Office of the United States Trustee for Debtors-in-Possession.

        c.   KVW's ability to operate is completely dependent on the use of real estate, goods, and services provided by insiders, many of whom are Members of this Committee herein.  To enable this KVW to remain operational which may prove essential to maximizing return on its asset sale and to avoid any allegations of financial impropriety, with the exception of the $7,500 'Guaranteed Payment-Salary' to Member-Winemaker Hamilton Nicholsen, all insider claims to compensation the use of real estate, goods, and services provided by insiders will be paid as administrative claims pursuant to 11 U.S.C. §503.

        d.   If the KVW's members cannot agree on how to liquidate KVW assets without the employment or retention of a Bankruptcy Trustee or Liquidation Agent by the duly noticed hearing on the approval of this disclosure statement, the Court will appoint, subject to the

Case: 23-10384   Doc# 65   Filed: 09/01/23   Entered: 09/01/23 18:20:50   Page 36 of 66

recommendations of the Office of the U.S. Trustee, KVW members, and the Committee, a member of the Trustee Panel to serve in a limited capacity as an Agent for the Liquidation of all KVW assets. The Liquidation Agent will be charged with the limited duties of determining the nature and scope of KVW's assets and thereon negotiating a sale of said assets. The Liquidation Agent will be entrusted to sell KVW's assets, subject to Court approval of any proposed sale, either with or without a broker, either by way of private sale or auction, as the Liquidation Agent may determine is optimal in the Liquidation Agent's best business judgment.

e. All proceeds from the sale of KVW's assets will be deposited in an Escrow Account from which funds will only be disbursed subject to Court Approval and a Disbursement Order thereon. It may and/or may not be appropriate to disburse funds to Administrative Claims before entry of a Final Decree depending on existing dividend projections. Plan Proponents will be charged with the duty of preparing and filing a Motion for Final Distribution and Motion for Entry of Final Decree as so as it is appropriate.

f. In the event the proceeds of sale of KVW's assets yield an insolvent bankruptcy estate, the Court shall appoint a member of the Trustee Panel in the limited capacity "Avoidance Action Master" charged with the limited task of prosecuting preference and fraudulent transfer litigation. The appointment of an Avoidance Action Master will be deferred until after the liquidation of this Estate's assets for the simple reason that the commencement and prosecution of avoidance actions will not be necessary, nor recovery legally justifiable, if the liquidation of KVW's assets generates sufficient funds to pay creditors in full. The Avoidance Action Master will be appointed by the Court, based on the recommendations or nominations of creditors and equity holders, with preference give to panel members who are actually attorneys interested in and capable of prosecuting these actions themselves. The Committee would like to avoid a

Case: 23-10384   Doc# 65   Filed: 09/01/23   Entered: 09/01/23 16:20:50   Page 37 of 66

situation where a trustee is appointed and then prematurely racks up legal fees and expenses investigating and prosecuting potential preferences and fraudulent transfer actions before (a) a determination has been made these actions are legally viable *vis a vis* insolvency issue-element of these causes of action; and (b) the equity holders of this estate have an opportunity to negotiate a settlement of their disputes having had an opportunity to take the residual value of this estate into consideration.

g.     After the resolution of avoidance action if any, the Equity Holders of this Estate, consisting of the Susanna Kelham, Hamilton Nicholsen, and Ronald Nicholsen, shall be allowed to file objections to insider claims but only with leave of court.  As a condition precedent to the filing of any said objection to claim, Equity Holders will meet and confer and thereon provide the Court with a Case Status Conference Report that contains a list of proposed objections to claims with a summary of legal and factual issues presented. At that juncture, the Court may, at its discretion, appoint a Claims Master, whose duties will consist of meeting with each side, reviewing each side's factual and legal contentions, and preparing a preliminary assessment for the court on the merits of each claim and the objection thereon (herein, the "Claim Report"). However, before a Claim Report is submitted to the Court, the Claims Master will meet with claimant and the objecting party and attempt to broker a settlement.  If a settlement cannot be reached, the Claim Report will be filed with the Court, who will thereon grant leave for the Objection to Claim to be filed.  This process will be repeated with respect to each claim individually; the Claims Master will be instructed not to delay the administration of this case due to a particularly problematic claim.  With respect to fees, while the Claims Master will be entitled to file an Application for Fees and Cost as an administrative claim, neither the claimant nor the objecting party shall be entitled to recover fees against the Estate or against each other in

Case: 23-10384    Doc# 65    Filed: 09/01/23    Entered: 09/01/23 16:20:50    Page 38 of 65

connection with claim objection process, unless otherwise entitled to do so under the terms of the claim itself.

h. Unless KVW is sold as a corporate shell, KVW will be deemed dissolved as soon as practical after the liquidation of KVW's assets; KVW will take all necessary steps, as required by California law, report and/or finalize its dissolution.

### 2. Post-Confirmation Management

As noted above, pending an actual asset sale and to facilitate an asset sale, KVV's current staff, at their existing compensation levels, will continue to operate KVW in accordance with the provisions of Title 11 and all rules promulgated by the Office of the United States Trustee for Debtors-in-Possession.

## E. Risk Factors

**1. KVW Assets Sold as Going Concern:** The likelihood of a Trustee or Liquidation Agent procuring a buyer for KVW as a 'going concern' through a business broker to purchase KVW as a going concern is almost non-existent; KVW is not an economically viable entity, which is to say that the only way KVW has been able to stay in business was with the aid or subsides of interest free loans and/or credit from various insiders. Moreover, KVW does not own the land on which it operates, and 360 Zinfandel Lane is not interested in leasing the property to potential purchasers.

**2. KVW Bulk or Individual Asset Sale:** In the absence of a sale as a 'going concern', KVW's assets will have to be sold either in bulk or individually, with varying risks depending on which sales method is employed; the following is a list of KVW assets available for liquidation and the risks associated with the liquidation method employed:

Case: 23-10384   Doc# 65   Filed: 09/01/23   Entered: 09/01/23 18:20:50   Page 39 of 66

**a. KVW Real Estate:** KVW's sole real estate holding available for liquidation is a burnt-out vacant lot located at 540 Mund Road, St. Helena, CA, (the "Mund Road Property") the former site of a mountain cabin that KVW allowed Ron Nicholsen and his wife to use as their primary residence. The Committee does not believe there is any advantage or disadvantage to selling the Mund Road Property either as part of a bulk sale with a business broker or individually with the use of a real estate broker. An individual sale of this asset will not impact the value to a prospective purchaser.

**b. KVW Personal Property:** KVW's personal property can be broken down into three major categories (1) Winery Equipment; (2) Purvis Artwork Inventory; and (3) Wine Inventory, bottled and bulk.

**(1) Winery Equipment-Supplies:** The winery equipment and supplies can either be sold in place, in bulk, with or without a broker or the appointed Trustee or Liquidation Agent can host an onsite piece meal auction of individual items. A bulk sale in place without a broker is likely to maximize the liquidation value for the estate. A sale to anyone other the 360 Zinfandel Lane may increase costs to the estate by sparking litigation as to what if any pieces of winery equipment constitute fixtures and thus the property of 360 Zinfandel Lane under California law.

**(2) Purvis Artwork Inventory:** KVW is the exclusive distributor of the works of French Contemporary Artist Gerard Purvis. With that said, the Purvis Art in KVW's inventory is NOT on consignment; these works are actually owned by KVW. While KVW does sell some of the Purvis Artwork on its website, the majority of pieces are sold at KVW's gift shop. Purvis Art is linked and associated to KVW; thus, it is not known if a market exists and/or the nature and extent of said market, separate and apart from the KVW experience. There is a

26

further issue that the wholesale transfer of these pieces to another art dealer my constitute a violation of Gerard Purvis' distribution agreement with KVW.

(3) **KVW's Wine Inventory:** KVW's wine inventory exists in two forms (i) Wine-In-Progress; and (ii) Bottled Wine

( i ) **Wine-in-Progress:** Wine-in-Progress are unfinished wines still in the vat or barrels, unbottled, that can either be sold in sold as bulk wines or bottled. Given KVW is winding down its operation and given that KVW has a surplus of bottled wine it is unable to sell, it probably makes sense to sell these wines as bulk wines, with or without the use of a wine broker. Before these wines are turned over to a Liquidation Agent to sell through a wine broker, it would make sense to allow KVW to use its existing pipeline to negotiate a sale, thus saving the Estate a hefty 20% to 25% commission. Needless to say, any such sale would be subject to Court Approval.

( ii ) **KVW Bottled Wine Inventory:** KVW bottled wine inventory is by far KVW's most valuable "balance sheet" asset based on bottle list prices. Unfortunately, KVW does not have a stellar record in selling out its wines; hence, at the time of the drafting of this proposed Disclosure Statement, KVW has over 41,000 cases of unsold wine, with a production or "tax cost" of $19,065.08 and a list price book value of approximately $45,551,612.32. However, it should be stressed that only a small percentage of KVW wine sales are at list price, estimated at about 5%, the remaining 95% of sales (an estimated figure) are to KVW's Wine Club members who are entitled to a 30% discount off the "list price". A huge percentage of these sales are closed with the added cost of promotional events hosted for Wine Club members to encourage them to visit KVW and make sizeable purchases, along with the added 'bonus' of a free 2-night stay at Main Street Cottage with a purchase of 5 or more cases. Stated

in the simplest terms, the prospect of selling KVW's 41,000 cases of wine inventory at list price is simply NOT realistic; KVW has never been able to sell out its annual bottling at list price and flooding the market will only serve to further depress both demand and market price. There is a substantial risk that without a KVW physical location, promotional events, and free stays at the Main Street Cottage, KVW's Wine Club demand or market base will completely dissipate, further depressing the price of KVW wines way below the 30% discount offered to Wine Club members. KVW is a wine boutique whose wines are sold almost exclusively out of the KVW's gift shop.  KVW's wines are not readily available at wine shops, even within the Napa Valley; thus, it promises to be incredibly difficult to locate a wine wholesaler or broker willing to invest in the entire inventory with an eye toward selling it off to individual wine shops.  To this end, more likely than not, KVW's bottled wine inventory will have to be sold at auction to wine discounters, where the winning bid for a bulk purchase may be as low as 10% of the list price, from which the auctioneers 10% seller's commission, maybe more, would have to be deducted, netting KVW a paltry 9% of list price.

**F.      Other Provisions of the Plan**

      **1.   Executory Contracts and Unexpired Leases**

          **a.  Assumptions**

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan (see Exhibit C for more detailed information on unexpired leases to be assumed and Exhibit D for more detailed information on executory contracts to be assumed):  *None*

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor.  The Order of the Court

confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above. If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section {I.B.3.} of this document for the specific date.

**b. Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected:

None

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section {I.B.3.} of this document for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT HAD BEEN SET BY THE COURT FOR **DECEMBER 14, 2023.** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed unless the Court later orders otherwise.

**2. Changes in Rates Subject to Regulatory Commission Approval**

KVW is not subject to governmental regulatory commission approval of its rates.

**3. Retention of Jurisdiction**

The Court will retain jurisdiction to the extent provided by law.

**G.     Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to KVW and its Members. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the KVW's tax liability: The Committee is informed that KVW is a pass-through tax entity. As such, the Committee is informed that KVW will not itself incur any income tax liability in connection with the liquidation proposed herein; however, because KVW is a pass-through tax entity, KVW's members will incur their proportional share of depreciation, income, or loss that may result from the liquidation of KVW's assets herein. Until such time as said liquidation actually takes place and a final net sales figure is available, nobody is really in a position project or estimate whether said figure will be positive or negative.

**IV.**
**CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The Proponent

CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

**A.      Who May Vote or Object?**

**1.  Who May Object to the Confirmation of the Plan?**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**2.  Who May Vote to Accept/Reject the Plan?**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**a.  What is an Allowed Claim or Interest?**

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

31

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE HAS BEEN SET FOR DECEMBER 14, 2023; CREDITORS AND INTERESTED PARTIES WILL BE GIVEN NOTICE OF BAR DATE AS SOON AS IT IS SET BY THE COURT.**

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult Exhibits F through L to see how the Proponent has characterized your claim or interest.

### b. What is an Impaired Claim or Interest?

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that classes 3a, 3b, and 3c are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that class 4 is unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3. Who is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes, and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4. Who Can Vote in More Than One Class?

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

### 6. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted

33

in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7.  Treatment of Nonaccepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.  Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan the Committee asks <u>the Court</u> to confirm this Plan by cramdown on impaired classes 1a, 1b, 1c, 1d and 3 if any of these classes do not vote to accept the Plan. Please note that the proposed Plan treatment described by this Disclosure Statement cannot be crammed down on the following classes:  not applicable. AS A RESULT, IF ANY OF THESE CLASSES DOES <u>NOT</u> VOTE TO ACCEPT THE PLAN, THE PLAN WILL <u>NOT</u> BE CONFIRMED.

## B.  Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest

Case: 23-10384    Doc# 65    Filed: 09/01/23    Entered: 09/01/23 16:20:50    Page 48 of 66

holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons: As illustrated by the tables below, all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation. (See Exhibit E for a detailed explanation of how the following assets are valued. This information is provided by Debtor.)

35

# SUMMARY LIQUIDATION ANALYSIS

| ASSET | LIQUIDATION AGENT | vs, | LIQUIDATION TRUSTEE |
|---|---|---|---|
| Cash | $0.00 | | $0.00 |
| Winery Equipment & Supplies | $322,220.19 | | $322,220.19 |
| Purvis Art | $45,791.25 | | $45,791.25 |
| Wine-in-Progress (Bulk) | $31,055.60 | | $31,055.60 |
| Bottled Wine | $6,507,373.47 | | $6,507,373.47 |
| Vacant Lot - Mund Road | $265,667.00 | | $265,667.00 |
| Intangibles | $0.00 | | $0.00 |
| **TOTAL ASSET VALUE** | $7,172,107.51 | | $7,172,107.51 |
| Less: Secured Creditors | $533,929.45 | | $533,929.45 |
| Less: Chapter 11 Expenses | | | |
| Real Estate Broker Commission | $15,940.02 [1] | | $15,940.02 [1] |
| Business Broker Commission | $48,333.03 [2] | | $48,333.03 [2] |
| Wine Broker Commission | $1,693,260.12 [3] | | $1,693,260.12 [3] |
| Art Broker Commission | $9,158.25 [4] | | $9,158.25 [4] |
| Trustee Handle | $237,063.23 | | $237,063.23 |
| Attorney Fees (Agent v. Trustee) | $35,000.00 | | $185,000.00 |
| Estate Admin. Legal Fees & Costs | $225,000.00 | | $285,000.00 [5] |
| Subtotal | $2,263,754.65 | | $2,473,754.65 |
| Less: Priority Claims | $0.00 | | $0.00 |
| Projected Funds for Unsecured | $4,374,423.41 | | $4,164,423.41 |
| Projected Claims | $2,584,426.74 | | $2,584,426.74 |
| Projected Unsecured Dividend | 100.00% | | 100.00% |
| Residual Estate | $2,014,896.67 | | $1,659,896.67 |
| Projected Member Distribution | | | |
| Susanna Kelham | $685,064.87 | | $649,154.23 |
| Hamilton Nicholsen | $664,915.90 | | $547,765.90 |
| Ronald Nicholsen | $664,915.90 | | $547,675.90 |

Notes: [1] 6% Real Estate Brokerage Commission; [2] 15% Business Brokerage Commission; [3] 25% Wine Broker Commission; [4] 20% Art Broker Commission; [5] The increase is attributable to the expanded duties of a full-blown Bankruptcy Trustee—similar increases can be expected if the estate requires the employment of an Avoidance-Fraudulent Conveyance Master.

36

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 11 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Priority Tax Claims | 100% | 100% |
| Class 1 – Secured Claim | 100% | 100% |
| Class 2 – Priority Classes | 100% | 100% |
| Class 3 – Unsecured | 100% | 100% |
| Class 4 – Equity | Residual Estate | Residual Estate |

**C.      Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.  Here, the stated purpose of the proposed Plan is the liquidation of all of KVW's assets; as such, the proposed Plan in principal satisfies this threshold consideration

With that said, there are at least two important aspects of a feasibility analysis. The first aspect considers whether KVW will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash debtor will have on hand by Effective Date | $ 7,172,107.51 |
| **To Pay:** Administrative claims | $ 2,263,754.65 |
| **To Pay:** Statutory costs & charges | $ 0.00 |
| **To Pay:** Other Plan Payments due on Effective Date | $ 0.00 |

| | |
|---|---|
| Balance after paying these amounts ……………………………..… | $ 4,374,423.41 |

The sources of the cash Debtor will have on hand by the Effective Date to fund payments due on the Effective Date, as shown above are funds generated for the liquidation of KWV assets.

The second aspect considers whether KVW will have enough cash over the life of the Plan to make the required Plan payments. As noted above, this is a Liquidation Plan; as such, all Plan Payments will be made on the Effective Date.

**V.**

**EFFECT OF THE CONFIRMATION OF PLAN**

**A.    Discharge**

While this Plan provides for the immediate dissolution of KVW upon the liquidation of all KVW assets unless its shell corporation is sold by the Bankruptcy Trustee or Liquidation Agent, KVW, as limited liability company, is not entitled to a Discharge.

**B.    Revesting of Property in the Debtor**

If a Bankruptcy Trustee or Liquidation Agent sells KVW as a corporate shell, any scheduled assets and/or asset that said Bankruptcy Trustee or Liquidation Agent knew existed and were thereon expressly or implicitly abandoned by Bankruptcy Trustee or Liquidation Agent shall vest in KVW, except as provided elsewhere in the Plan.

**C.    Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

**E.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be re-imposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

39

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**G.      Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

DATE:   September 1, 2023

**NOT SIGNED**
**UNDER COMMITTEE REVIEW**

_____
Authorized Agent,  Committee of Essential Creditors
and Post-Petition Service Providers

**NOT SIGNED**
**UNDER COMMITTEE REVIEW**

_____
Rebekah Parker, as Counsel for Committee of Essential
Creditors and Post-Petition Service Providers

**SUPPORTING DECLARATION**
**OF**
**HAMILTON NICHOLSEN**

I, HAMILTON NICHOSEN , declare,

1.      I am the authorized representative of the Debtor-in-Possession in the above captioned case  (herein "KVW") .

2.      I have read, reviewed, and revised the attached to DISCLOSURE STATEMENT DESCRIBING PROPOSED PLAN OF LIQUIDATION PRESENTED BY THE UNOFFICIAL COMMITTEE OF ESSENTIAL CREDITORS AND POST-PETITION SERVICE PROVIDERS.

3.      All the information contained in the DISCLOSURE STATEMENT DESCRIBING PROPOSED PLAN OF LIQUIDATION PRESENTED BY THE UNOFFICIAL COMMITTEE OF ESSENTIAL CREDITORS AND POST-PETITION SERVICE PROVIDERS is true and correct to the best of my knowledge information and belief.

4.      I respectfully submit that confirmation of the PROPOSED PLAN OF LIQUIDATION embodied in the attached DISCLOSURE STATEMENT is in the best interest of the creditors and equity holders of this estate to the extent that it pays administrative creditors in full, it pays secured creditors the full, it pays unsecured creditors in full, and it preserves and/or optimize the residual value of this estate for equity holders.  .

5.      Based on the foregoing, I would urge this Court to approve this Disclosure Statement and confirm the Plan of Liquidation proposed therein.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on September 1, 2013, in the County of Napa, State of California.

**NOT SIGNED
UNDER REVIEW**

_____

Hamilton Nicholsen,  Declarant

**EXHIBIT A – LIST OF ALL ASSETS**

Schedule A/B Attached Hereto Without Accompanying Exhibits
Parties Interest in the Exhibits Attached to Schedule A/B filed by KVW
are Direct to Submit an Email Request to Counsel For Plan Proponent

**EXHIBIT B – FINANCIAL STATEMENTS**

Courts customarily request that Plan Proponent submit  projected financial statements for the life of the Plan.  Because the Plan proposed herein is a Liquidation Plan, no such projects exist.

**EXHIBIT C – UNEXPIRED LEASES TO BE ASSUMED (109a)**

| LEASES | ARREARS/DMGS | METHODS OF CURE |
|---|---|---|
| N/A | N/A | N/A |

**EXHIBIT D – EXECUTORY CONTRACTS TO BE ASSUMED**

| CONTRACT | DEFAULT/DMGS | METHODS OF CURE |
|---|---|---|
| N/A | N/A | No Defaults |

45

## EXHIBIT E – LIQUIDATION ANALYSIS AND SUPORTING VALUATION

| ASSET | LIQUIDATION AGENT | vs, | LIQUIDATION TRUSTEE | |
|---|---|---|---|---|
| Cash | $0.00 | | $0.00 | |
| Winery Equipment & Supplies | $322,220.19 | | $322,220.19 | |
| Purvis Art | $45,791.25 | | $45,791.25 | |
| Wine-in-Progress (Bulk) | $31,055.60 | | $31,055.60 | |
| Bottled Wine | $6,507,373.47 | | $6,507,373.47 | |
| Vacant Lot - Mund Road | $265,667.00 | | $265,667.00 | |
| Intangibles | $0.00 | | $0.00 | |
| **TOTAL ASSET VALUE** | $7,172,107.51 | | $7,172,107.51 | |
| Less:  Secured Creditors | $533,929.45 | | $533,929.45 | |
| Less:  Chapter 11 Expenses | | | | |
| Real Estate Broker Commission | $15,940.02 | [1] | $15,940.02 | [1] |
| Business Broker Commission | $48,333.03 | [2] | $48,333.03 | [2] |
| Wine Broker Commission | $1,693,260.12 | [3] | $1,693,260.12 | [3] |
| Art Broker Commission | $9,158.25 | [4] | $9,158.25 | [4] |
| Trustee Handle | $237,063.23 | | $237,063.23 | |
| Attorney Fees (Agent v. Trustee) | $35,000.00 | | $185,000.00 | |
| Estate  Admin. Legal Fees & Costs | $225,000.00 | | $285,000.00 | [5] |
| Subtotal | $2,263,754.65 | | $2,473,754.65 | |
| Less:  Priority Claims | $0.00 | | $0.00 | |
| Projected Funds for Unsecured | $4,374,423.41 | | $4,164,423.41 | |
| Projected Claims | $2,584,426.74 | | $2,584,426.74 | |
| Projected Unsecured Dividend | 100.00% | | 100.00% | |
| Residual Estate | $2,014,896.67 | | $1,659,896.67 | |
| Projected Member Distribution | | | | |
| Susanna Kelham | $685,064.87 | | $649,154.23 | |
| Hamilton Nicholsen | $664,915.90 | | $547,765.90 | |
| Ronald Nicholsen | $664,915.90 | | $547,675.90 | |

Notes: [1] 6% Real Estate Brokerage Commission; [2] 15% Business Brokerage Commission; [3]  25% Wine Broker Commission; [4] 20% Art Broker Commission; [5] The increase is attributable to the expanded duties of a full-blown Bankruptcy Trustee—similar increases can be expected in the estate requires the employment of an Avoidance-Fraudulent Conveyance Master.

# EXHIBIT F – LIST OF ADMINISTRATIVE EXPENSE CLAIMS

| UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS | | | | | | |
|---|---|---|---|---|---|---|
| Name | Code § | Amounts | | | | |
| | | Allowed to date | Estimated | Total Amount | Paid | Total Due |
| Bankruptcy Counsel | § 507(a)(1) | 0 | NOT KNOWN | TBD | 0 | 0 |
| Rebekah Parker | | | NOT KNOWN | TBD | 0 | 0 |
| Office of U.S. Trustee | § 507(a)(1) | 0 | NOT KNOWN | TBD | 0 | 0 |
| Clerk of Court | § 507(a)(1) | 0 | NOT KNOWN | TBD | 0 | 0 |
| **TOTAL AMOUNTS** | | 0 | NOT KNOWN | TBD | 0 | 0 |

TBD= TO BE DETERMINED BY COURT

# EXHIBIT G – LIST OF PRIORITY UNSECURED CLAIMS

| CLASSIFIED CLAIMS: §507(a)(3) PRIORITY CLAIMS | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Class** | **Name** | **Insider** | **Impaired** | SCHEDULED CLAIMS | | FILED CLAIMS | |
| | | | | Amount | D/C/U | Amount | Objection |
| **n/a** | **n/a** | **n/a** | **n/a** | **n/a** | **n/a** | **n/a** | **n/a** |
| **TOTAL AMOUNT FOR CLASS** | | | | | | | |

D/C/U = Disputed/Contingent/Unliquidated

# EXHIBIT G – LIST OF PRIORITY UNSECURED CLAIMS

| CLASSIFIED CLAIMS: §507(a)(4) PRIORITY CLAIMS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Class | Name | Insider | Impaired | SCHEDULED CLAIMS | | FILED CLAIMS | |
| | | | | Amount | D/C/U | Amount | Objection |
| n/a | n/a | n/a | n/a | 0 | n/a | 0 | n/a |
| **TOTAL AMOUNT FOR CLASS** | | | | 0 | | 0 | |

D/C/U = Disputed/Contingent/Unliquidated

## EXHIBIT G – LIST OF PRIORITY UNSECURED CLAIMS

| CLASSIFIED CLAIMS: §507(a)(5) PRIORITY CLAIMS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Class | Name | Insider | Impaired | SCHEDULED CLAIMS | | FILED CLAIMS | |
| | | | | Amount | D/C/U | Amount | Objection |
| n/a | n/a | n/a | n/a | 0 | n/a | 0 | n/a |
| TOTAL AMOUNT FOR CLASS | | | | 0 | | 0 | |

D/C/U = Disputed/Contingent/Unliquidated

## EXHIBIT G – LIST OF PRIORITY UNSECURED CLAIMS

| CLASSIFIED CLAIMS: §507(a)(6) PRIORITY CLAIMS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Class | Name | Insider | Impaired | SCHEDULED CLAIMS | | FILED CLAIMS | |
| | | | | Amount | D/C/U | Amount | Objection |
| n/a | n/a | n/a | n/a | 0 | n/a | 0 | n/a |
| TOTAL AMOUNT FOR CLASS | | | | 0 | | 0 | |

D/C/U = Disputed/Contingent/Unliquidated

## EXHIBIT G – LIST OF PRIORITY UNSECURED CLAIMS

| CLASSIFIED CLAIMS: §507(a)(7) PRIORITY CLAIMS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Class | Name | Insider | Impaired | SCHEDULED CLAIMS | | FILED CLAIMS | |
| | | | | Amount | D/C/U | Amount | Objection |
| n/a | n/a | n/a | n/a | 0 | n/a | 0 | n/a |
| TOTAL AMOUNT FOR CLASS | | | | 0 | | 0 | |

D/C/U = Disputed/Contingent/Unliquidated

## EXHIBIT G – LIST OF PRIORITY UNSECURED CLAIMS

| UNCLASSIFIED CLAIMS: §507(a)(8) PRIORITY CLAIMS | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | **Insider** | **Impaired** | SCHEDULED CLAIMS | | FILED CLAIMS | |
| | | | Amount | D/C/U | Amount | Objection |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| **TOTAL AMOUNT FOR CLASS** | | | | | | |

D/C/U = Disputed/Contingent/Unliquidated

## EXHIBIT H – LIST OF GENERAL UNSECURED CLAIMS

| CLASSIFIED CLAIMS: UNSECURED CLAIMS (Trade Claims) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Class** | **Name** | **Insider** | **Impaired** | SCHEDULED CLAIMS | | FILED CLAIMS | | |
| | | | | Amount | D/C/U | Y/N | Amount | Objection |
| 3a | American Express | N | Y | $ 22,660.08 | U | N | | N |
| 3a | Citibank | N | Y | $ 13,170.14 | U | N | | N |
| 3a | Francois Freres Barrels | N | Y | $1 1,198.60 | U | N | | N |
| 3a | Jack Neal | N | Y | $ 2,264.90 | U | N | | N |
| 3a | Tonnellerie Sylvain | N | Y | $10,292.40 | U | N | | N |
| **TOTAL AMOUNT FOR CLASS** | | | | $ 59,586.12 | | | | |

D/C/U = Disputed/Contingent/Unliquidated

| CLASSIFIED CLAIMS: UNSECURED CLAIMS (Litigation Claims) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Class** | **Name** | **Insider** | **Impaired** | SCHEDULED CLAIMS | | FILED CLAIMS | | |
| | | | | Amount | D/C/U | Y/N | Amount | Objection |
| 3b | Holland & Knight | N | Y | $281,994.84 | D | N | n/a | N |
| 3b | Barbour Analytics | N | Y | $1,245.00 | D | N | Na/ | N |
| **TOTAL AMOUNT FOR CLASS** | | | | $ 283,239.84 | | | | |

D/C/U = Disputed/Contingent/Unliquidated

| CLASSIFIED CLAIMS: UNSECURED CLAIMS (Insider Claims) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Class** | **Name** | **Insider** | **Impaired** | SCHEDULED CLAIMS | | FILED CLAIMS | | |
| | | | | Amount | D/C/U | Y/N | Amount | Objection |
| 3c | Kelham Growers | Y | Y | $291,969.25 | U | N | n/a | N |
| 3c | Susanna Kelham (Guaranteed PMT) | Y | Y | $931,500 | U | N | n/a | N |
| 3c | Susanna Kelham (Mund Payoff) | Y | Y | $305,000.00 | U | N | n/a | N |
| 3c | Susanna Kelham (Reimbursements) | Y | Y | $269,095.53 | U | N | n/a | N |
| 3c | Main Street Cottage | Y | Y | $107,500.00 | U | N | n/a | N |
| 3c | Hamilton Nicholsen | Y | Y | $7,835.00 | U | N | n/a | N |
| 3c | Ronald Nicholsen | Y | Y | $1.00 | D | N | n/a | N |
| 3c | Zinfandel Lane Lease | Y | Y | $328,800.00 | U | N | n/a | N |
| **TOTAL AMOUNT FOR CLASS** | | | | $241,700.78 | | | | |

D/C/U = Disputed/Contingent/Unliquidated

# EXHIBIT I – LIST OF EQUITY INTERESTS

| CLASSIFIED INTEREST: EQUITY SECURITY INTEREST HOLDERS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Class | Name | Insider | Impaired | SCHEDULED INTERESTS | | FILED INTERESTS | |
| | | | | Percentage | D/C/U | Percentage | Objection |
| 4 | Susanna Kelham | Y | N | 34 | U | n/a | N |
| 4 | Hamilton Nicholsen | Y | N | 33 | U | n/a | N |
| 4 | Ronald Nicholsen | Y | N | 33 | U | n/a | N |
| | | | | | | | |

D/C/U = Disputed/Contingent/Unliquidated