**REBEKAH PARKER SBN 143674**
4225-H Oceanside Boulevard #369
Oceanside CA, 92056-3472
Telephone No. (213) 268-2918
E-Mail: AttorneyRParker@gmail.com

Appearing for Susanna Kelham, in her Individual capacity,
and for the Unofficial Committee of Essential Creditors
and Post- Petitions Providers

## United States Bankruptcy Court
### Northern District of California – Santa Rosa Division

| | |
|---|---|
| In re Kelham Vineyard & Winery, LLC<br><br><br>Debtors.<br><hr> | Case No. 23-10384-WL<br><br>Chapter 11<br><br>Adv. No<br> |
| Susanna R. Kelham, in her Individual Capacity as Managing Member of Kelham Vineyard & Winery, LLC<br><br>Plaintiff,<br><br>v.<br><br>Ronald Nicholsen, II, in his Individual Capacity as Petitioner in State Court Action No. 21CV001403<br><br>Defendant. | **Motion for Temporary Restraining Order and Preliminary Injunction Staying Ronald Nicholsen from Prosecuting, or Otherwise Noticing Any Further Hearings in State Court Case No. 21CV001403, Pending the Liquidation of this Estate and Further Order of the U.S. Bankruptcy Court**<br><br>Date:   November 7, 2023<br>Time:   9:30 A.M.<br>Room:  Courtroom 220<br><br>United States Bankruptcy Court<br>1300 Clay Street<br>Oakland, CA 94612 |

Case: 23-01009   Doc# 4   Filed: 09/11/23   Entered: 09/11/23 11:24:38   Page 1 of 22

Case: 23-10384   Doc# 73-1   Filed: 09/12/23   Entered: 09/12/23 20:01:21   Page 1 of 22

**TO THE HONORABLE WILLIAM LAFFERTY, UNITED STATES BANKRUPTCY JUDGE, CREDITOR RONALD NICHOLSEN, II, AND HIS ATTORNEYS OF RECORD:**

**I**
**RELIEF REQUESTED**

Susanna R. Kelham ("Proponent or "Ms. Kelham") commenced the above captioned adversary proceeding (herein, the "Complaint for Injunctive Relief") which, among other things, seeks an injunction staying Ronald Nicholsen from prosecuting State Court Case No. 21CV001403 <u>pending the liquidation of the above captioned Estate</u> (herein, the "Writ Action"). <u>See</u>, Complaint for Injunctive attached hereto.

The Writ Action is a lawsuit pending in the Napa Superior Court filed by Ronald Nicholsen against Kelham Vineyard & Winery, LLC (herein "KVW" or "Debtor") and Ms. Kelham, seeking production of various corporate records pursuant to California Corporations Code §§17704.10 and 17704. <u>See</u>, Exhibit 1 to the Complaint for Injunctive Relief attached hereto for a copy of the Writ Action.

Proponent herein seeks a temporary restraining order or a preliminary injunction, which ever may prove to be necessary, enjoining the further prosecution of the Writ Action in any manner, including but limited to Ronald Nicholsen requesting that any orders be issued by Napa County Superior Court in the Writ Action at the OSC hearing scheduled for September 14, 2023, on the question of whether the automatic stay applies or extends to Ms. Kelham. In an effort to minimize any inconvenience to this Court, Proponent will file and serve this motion on regular notice, thereon requesting that Ronald Nicholsen and his attorneys at Greenberg, Traurig, LLC (herein, the "Greenberg Law Firm") stipulate to a full and complete stay of the Writ Action until this Court rules on this motion. If Proponent is unable to get Ronald Nicholsen to agree to a

continuance of the September 14, 2023, hearing, Proponent may be left with no choice but to file an Application for a Temporary Restraining Order and thereon request that this motion be heard on shortened notice.  With that said, Proponent and her attorney will do their best not to burden this Court with a request to have a TRO issued without a hearing or a request to have a hearing on a Preliminary Injunction on shortened notice.

**II**
**PROCEDURAL POSTURE**

The above captioned bankruptcy was commenced as an involuntary proceeding filed on July 20, 2023, with an Order for Relief entered on August 16, 2023.  At the time of the filing of this involuntary, the Writ Action was pending in the Napa County Superior Court.   The Writ Action's stated purpose is found at paragraph 23 of the Writ Petition, which provides that Ronald Nicholsen "desires to obtain statutory documents and to review, inspect, and copy the books of records of [KVW] for reasons related to his interest as a member of Kelham Vineyards, including without limitation, to evaluate the current value of [KVW] and its assets, [KVW]'s assets and liability, and the corresponding value of his membership interest; to evaluate the propriety…". Unfortunately, the Writ Action has degenerated into an unchecked fishing expedition being used by Ronald Nicholsen as a vehicle to extort or leverage an inflated settlement from KVW in connection with the once proposed buyout of his minority interest.  See, Declaration of Rebekah Parker.

Ronald Nicholsen and the Greenberg Law Firm, along with the Napa County Superior Court were put on notice of the commencement of the involuntary and the resulting stay of 11 U.S.C. §362.  In recognition that the stay was in place, on July 31, 2023, before the Order for Relief had been entered, Ronald Nicholsen through the

Greenberg Law Firm filed a Motion for Relief from Stay, setting a hearing for August 16, 2023.  See, Exhibit 2 to Complaint for Injunctive Relief attached hereto for a copy of the Motion for Relief from Stay.  See also, Declaration of Rebekah Parker.

Notwithstanding their recognition that a stay was in place, sometime shortly after the filing of their Motion for Relief from Stay, in a knowing, willful, and intentional violation of the automatic stay, Ronald Nicholsen through the Greenberg Law Firm contacted the Napa Superior Court to schedule a continued hearing in their further prosecution of the Writ Action; the hearing was coincidentally noticed for August 17, 2023, the day after August 16, 2023, hearing set on Ronald Nicholsen's pending Motion for Relief from Stay.  Ronald Nicholsen through the Greenberg Law Firm apparently convinced the Napa Superior Court to set this continued hearing based on a false representation to the Superior Court, that the stay would be lifted by August 16, 2023. See, Declaration of Rebekah Parker.

The misrepresentation that the stay would be lifted by August 17, 2023, was made by Ronald Nicholsen through the Greenberg Law Firm knowingly, willfully, and maliciously, for the purposes of unlawfully continuing the prosecution of the Writ Action in violation of the automatic stay. The misrepresentation that the stay would be lifted August 16, 2023, was made by Ronald Nicholsen through the Greenberg Law Firm knowingly, willfully, and maliciously, for the purposes of harassing KVW and Ms. Kelham.  See, Declaration of Rebekah Parker.

Ronald Nicholson's Motion for Relief from Stay, among other things, sought a determination that the stay did not extend to Ms. Kelham in the Writ Action, putting the matter "at-issue" in a 'contested proceeding' pending before the Bankruptcy Court.

Specifically, Ronald Nicholson's Motion for Relief from Stay raised the issue of whether the stay extended to or protected Ms. Kelham at page 9, Paragraph E of its motion, captioned "The California state action is not stayed as to Susanna Kelham". See, Exhibit 2 to Complaint for Injunctive Relief attached hereto for a copy of the Motion for Relief from Stay. An Opposition filed by interested party and unsecured creditor Main Street Cottage, LLC, provided responsive briefing on the issue of whether the stay extended to or protected Ms. Kelham at page 13, paragraph III. F. See, Exhibit 3 to Complaint for Injunctive Relief attached hereto for a copy of the Opposition to Motion for Relief from Stay. And finally, Ronald Nicholsen filed a Reply, which again addressed and briefed the issue of whether the stay extended to Ms. Kelham; specifically, the issue is briefed at page 13, Section IV, captioned "The Automatic Stay Does Not – And Should Not – Apply to Susanna Kelham." See, Exhibit 4 to Complaint for Injunctive Relief attached hereto for a copy of the Reply to the Opposition. See also, Declaration of Rebekah Parker.

After hearing oral argument on August 16, 2023, the Bankruptcy Court continued its hearing on Defendant Nicholson's Motion for Relief from Stay to September 5, 2023, without making any final findings or issuing any written orders. The following day, at a hearing that itself was unlawfully scheduled in violation of the automatic stay, rather than simply advise the Napa County Superior Court that the Bankruptcy Court had continued their Motion for Relief Stay, Nicholsen through the Greenberg Law Firm sought to continue or further prosecute the Writ Action by falsely representing to the Napa County Superior Court that the Bankruptcy Court had issued a ruling deferring the

issue or question of whether the stay applied to Ms. Kelham to the Napa County Superior Court.

While the Bankruptcy Court may have postured that the stay probably did not extend to Ms. Kelham, the Bankruptcy Court never made any actual finding or ruling on this issue, therein expressly noting that its comments on this issue were "… *just an aside*".   Notwithstanding, Ronald Nicholsen through the Greenberg Law Firm misrepresented to the Napa County Superior Court that the Bankruptcy Court had made an actual finding or ruling that the issue of whether the stay extended to Ms. Kelham was an issue to be decided by the Napa County Superior Court, prompting the Napa County Superior Court, at Ronald Kelham's request, to issue an OSC set for hearing on September 14, 2023 and directing the parties to provide briefing on the issue of whether the automatic stay applied or protected Ms. Kelham, presumably with the intent of issuing a ruling on September 14, 202, as to whether the stay does apply or protect Ms. Kelham, notwithstanding the fact that this very issue is now pending before the U.S. Bankruptcy Court, both by virtue of Ronald Nicholsen's Motion for Relief from Stay and by virtue of the above captioned Complaint for Injunctive Relief and this Motion for a Temporary Restraining Order and a Preliminary Injunction.

## III
## STATEMENT OF FACTS

The above captioned Chapter 11 Case was commenced as an involuntary proceeding.  An Order Relief was entered based on the petitioning creditor and debtor's stated purpose of creating a vehicle or platform for the liquidation of KVW's assets, a goal fully embraced by the largest creditors of this estate.  See, Declaration of Rebekah Parker.

A Chapter 11 Trustee was recently appointed at the request of Ronald Nicholsen to oversee said liquidation; and, a Disclosure Statement Describing Proposed Plan of Liquidation has been prepared and will be that will be filed by the Unofficial Committee of Essential Creditors and Post-Petition Providers (herein, the "Committee") as soon as permitted by the provisions of 11 U.S.C. §1126.  See, Declaration of Rebekah Parker

With that said, Ronald Nicholsen's continued prosecution the Writ Action has caused, and continues to cause, KVW and Ms. Kelham to divert their limited resources and time from the orderly liquidation of this Estate to the defense of the Writ Action, all to KVW's detriment.  KVW is a small family operation, where the wine is sold by Ms. Kelham and the wine is made by her devoted son Hamilton Nicholsen.  In order to keep KVW operational during its liquidation, thereon ensuring that its value is not diminished, it is imperative that Ms. Kelham and her son are able to devote their full time and attention to KVW's operation, especially during the Fall or Crush Season.  The Fall or Crush Season is the most trying and default time for a winery, especially for KVW given its organizational structure and total dependence on Ms. Kelham and her son Hamilton.  See, Declarations Susanna Kelham and Hamilton Nicholsen.

The following is a list of specific events or factors that make this season particularly difficult at KVW, requiring that both Ms. Kelham and her son Hamilton not be burdened with having to deal with the Writ Action pending KVW's liquidation.

1.  With respect to KVW's administrative operational viability pending liquidation, due to its cash flow problems, KVW does not have a huge staff.  The front office is run by Ms. Kelham, with the help of one full time administrative assistant and a part time bookkeeper who comes in once a week; the front office cannot function without Ms.

Kelham's full-time attention.  See, Declarations of Susanna Kelham and Hamilton Nicholsen.

2.  With respect to KVW's wine making operation, again, due to its cash flow problems, the entire wine making operation is overseen by Hamilton Nicholsen, with Ms. Kelham's and her aides' assistance overseeing the purchase and delivery of wine making supplies.  See, Declarations of Susanna Kelham and Hamilton Nicholsen.

3.   With respect to KVW's procurement of grapes for its wine making, the wines produced by KVW are made from grapes grown by Kelham Growers, LLC. and sold to KVW by Kelham Growers, LLC.  Without these grapes, KVW's value is diminished because KVW will be unable to generate a 2023 Vintage.  With that said, Ms. Kelham and Hamilton also oversee the harvesting, tagging, and processing of these grapes, a process that is going on as this motion is being drafted;  See, Declarations of Susanna Kelham and Hamilton Nicholsen.

4.   With respect to KVW's public presences and promotions, Ms. Kelham is the face of KVW.  She pretty much single handedly makes arrangements for and conducts all wine tastings, winery tours, and Main Street Cottage weekends. With that said, with the public buzz and chatter in the Napa Valley regarding KVW's bankruptcy and ongoing family feud as reported in the news media, it is imperative (in the interest of preserving the value of KVW's assets) that Ms. Kelham have the time and energy to continue this rigorous work schedule to ensure that the public and wine club members remain confident that KVW is still in business.  This work schedule would be challenging for anyone; but , Ms. Kelham is 72-years-old. The additional stress of having to deal with the Writ Action, while having to carry on her day-to-day operational

duties at KVW while at the same time having to assist the Trustee to orchestrate an orderly liquidation of this Estate, creates or poses a health risk to Ms. Kelham, the adverse consequence of which will be felt by the Estate should Ms. Kelham collapse from exhaustion.  <u>See</u>, Declarations of Susanna Kelham and Hamilton Nicholsen.

5.  With respect to KVW wine sales, an estimated 90 to 95% of all wine sales are made to members of KVW's wine club. These sales are generated by Ms. Kelham personally, who gets on the phone twice a year in both the Spring and Fall, for protracted periods of time, to generate these wine sales: specifically, Ms. Kelham calls her members and helps them make their bi-annual selections—these wine sales are generated based on Ms. Kelham's personal relationship with Wine Club members, relationships developed during the wine tasting and winery tour she conducts; and finally, <u>See</u>, Declarations of Susanna Kelham and Hamilton Nicholsen.

6.  With respect to KVW bankruptcy administration, as noted above, this case is in its infancy and will require a huge time commitment on the part of Ms. Kelham because she will be called upon to meet and work with both Ryan Wood, the Estate's newly retained Bankruptcy Counsel, and the newly appointed Chapter 11 Trustee (yet to be named).  Both Mr. Wood and the Trustee are, with absolute certainty, going to call upon Ms. Kelham to produce documents, provide information, assist in the generation of inventories, all for the purposes of bringing about an expedited and orderly liquidation of this Estate.  Moreover, it should further be noted that, while KVW has filed its schedules, lists, and statements, and its initial U.S. Trustee Compliance Requirements, Mr. Wood has not yet had an opportunity to review them carefully and will very likely (almost certainly) be asked to revise and update them, along with anticipated updates

to filed U.S. Trustee Requirements, all of which will require Ms. Kelham's input and review.  See, Declarations of Susanna Kelham and Hamilton Nicholsen.

While Ms. Kelham is a named defendant in the Writ Action, Ms. Kelham is not the real party in interest in the Writ Action;  the "real-in-party" interest is KVW.

1.  California Corporations Code §§17704.10 and 17704.13 bestows rights on corporate members or shareholders and provide a remedy where a corporate entity does not honor those rights; but, these statutory rights and remedies exist strictly as to the corporate entity (i.e., KVW or Debtor).  As such, Ms. Kelham is named in the Writ Action in her representative capacity as KVW's Managing Member.  See, Declaration of Susanna Kelham.

2.  The Writ Action is void of any claim or cause of action against Ms. Kelham personally beyond her duties to respond on behalf KVW or Debtor in her capacity as KVW's Managing Member.  See, Declaration of Susanna Kelham.

3.  While the Napa County Superior Court has issued orders directing Ms. Kelham to produce documents and pay attorney fees, said orders make it clear that, while Ms. Kelham was being ordered to personally execute an action, the action was being executed on behalf of KVW; this is illustrated by a Napa County Superior Court order entered on May 10, 2023, captioned "Order Following Continued Second Order to Show Cause Held on April 17, 2023" where Ms. Kelham was ordered to "personally" pay an attorney fee award on behalf  KVW or Debtors.  See, Exhibit 5 to Complaint for Injunctive Relief attached hereto for a copy of the "May 10, 2023, Order".  See also, Declaration of Susanna Kelham.

Because KVW rather than Ms. Kelham is the real party in interest in the Writ Action, Ronald Nicholsen's continued prosecution will have numerous adverse consequences on this Estate and newly appointed Chapter 11 Trustee.

1. The newly appointed Trustee (who will now be in possession of KVW's books and records – the subject of the Writ Action) or their Attorney (at great administrative expense to this Estate) will be forced to sit with Ms. Kelham (and or her State Court attorney) to review and respond to Ronald Nicholsen's continued and never-ending discovery requests. See, Declaration of Susanna Kelham.

2. The time the Trustee spends (wastes) on Ronald Nicholsen's discovery requests will come at the expense of time the Trustee could and should have used to inventory, market, and liquidate KVW assets. See, Declaration of Susanna Kelham.

4. The newly appointed trustee (or their attorney at great administrative cost to this estate) will have to constantly monitor all pleadings and hearings in Writ Action to ensure that any finding or judgment against Ms. Kelham does not have a preclusive effect on this Estate, as did or does the May 10, 2023, order. See, Exhibit 5 to Complaint for Injunctive Relief attached hereto for a copy of the "May 10, 2023, Order". See also, Declaration of Susanna Kelham.

5. The newly appointed Trustee (or their attorney at great administrative cost to this estate) will have to monitor Ms. Kelham's expenditures in responding to Ronald Nicholsen's continued and never-ending discovery requests to ensure that Ms. Kelham is not accruing huge administrate claims against this Estate to the extent Ms. Kelham is entitled to reimbursement for indemnification from the Estate pursuant to paragraph 5.7 of KVW's Operating Agreement for any cost and expense Ms. Kelham incurs in the

course of performing her duties as KVW, Managing Member (i.e., the capacity in which she serves as a defendant in Writ Action).  See, Exhibit 6 to Complaint for Injunctive Relief attached hereto for a copy of the KVW Operating Agreement.  See also, Declaration of Susanna Kelham.

**IV**
**ARGUMENT**

Injunctive relief is extraordinary, and should be granted sparingly, and only to the extent that the standards for such relief are satisfied and to the extent necessary to achieve the purpose of injunctive relief. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  Courts apply a four-part test when evaluating the propriety of granting injunctive relief: (a) has the proponent demonstrated a likelihood of success on the merits; (b) has the proponent demonstrated that there is a likelihood that they will suffer irreparable harm in the absence of injunctive relief; (c) do the balance of hardships tip in favor of one party or the other; (d) would granting the injunctive relief further public policy? *Id.* at 20." In re Mariner Health Care Central,  2023 WL 187175, page 7.

As will be illustrated in the paragraphs that follow, the facts in the case at bar present one of those rare cases where a co-debtor stay/injunctive relief is appropriate. Here, a limited injunction is sought for the express and bona fide purpose of giving KVW and its principals a breathing spell to work with the newly appointed Trustee to liquidate the assets of this Estate; and a "clear showing" will be made that standards promulgated by the 9th Circuit for granting such relief have been met.  Winter, 555 U.S. at 22.

**A. Proponent Has Made a Clear Showing of the Likelihood of Success on the Merits**.

In its opinion in <u>Mariner</u>, in connection with the issue of proponents making a showing of the likelihood of success, the Court makes an observation that *"…the cases that have analyzed the entitlement to injunctive relief in favor of non-debtors have frequently done so under the burden of an incomplete or inconclusive record of a newly filed case"* …. going onto lament that *"For this reason, the debtors requesting an injunction under such circumstances will typically default to a generic, and frankly imprecise, articulation of these standards,"* thereon noting that, *"[w]ith respect to the "likelihood of confirming a plan" standard, the inquiry becomes a search for any positive signs that the case is off to a reasonably good start* ."

To this end, Proponent in the case at bar would respectfully submit that the prospects of this Debtor achieving its Chapter 11 goal of effecting an orderly liquidation of this Estate are excellent, some would even say, a foregone conclusion. Despite the fact that it is in its infancy (a 341a Meeting of Creditors has not even been held yet) and despite the fact that KVW was not able to secure Bankruptcy Counsel until over 2 weeks after the entry of the Order for Relief. This case is off to a very good start *vis a vis* achieving its goal of a complete liquidation of this Estate's assets. <u>See</u>, Declaration of Rebekah Parker.

Specifically, KVW managed to file all its schedules, list, and statements on time, without having to request and extension; and, KVW is in substantial compliance with U.S. Trustee Guidelines for Debtor in Possession. Moreover, to ensure that said liquidation is orderly and timely, this Court has appointed a Chapter 11 Trustee to assist KVW in its endeavor; and, the Committee has drafted a proposed Disclosure Statement

Describing Plan of Liquidation (the subject of a Motion for Shortening of Exclusivity Period) that serves as *prima facia* evidence of the viability and confirmability of a plan of liquidation in this case.   All and all, this case is off to an excellent start, Proponent has made a clear showing that success on the merits (the liquidation of this estate as proposed) is essentially a foregone conclusion.  <u>See</u>, Declaration of Rebekah Parker.

**B. Proponent Has Made a Clear Showing that there is a Likelihood the Estate Will Suffer Irreparable Harm in the Absence of Injunctive Relief.**

In its opinion in <u>Mariner</u>, in connection with the issue of proponents making a showing of the likelihood of irreparable harm to the Estate, this Court laments that *"the debtor's presentation frequently does not evaluate the likelihood of specific harm in the litigation to be enjoined … nor at what stage of the litigation such harm is likely to occur,* " thereon going to note that "…*the Ninth Circuit in* <u>In re Excel Innovations, Inc</u>. *… directs bankruptcy courts to require some particularized evidence of … alleged irreparable harm. 502 F.3d 1086, 1097 (9th Cir. 2007)"* <u>In re Mariner Health Care Central</u>,  2023 WL 187175, page 8.

To this end, Proponent in the case at bar respectfully submits that the Declarations of Susanna Kelham, Hamilton Nicholsen, and Rebekah Parker, constituting a clear showing of extensive "particularized evidence" that irreparable harm will come to this Estate if an injunction is not granted. Succinctly and summarily stated, as detailed in the statement of facts above, this bankruptcy estate will suffer irreparable harm in the absence of an injunction staying the prosecution of the Writ Action against KVW and Ms. Kelham in several ways (a)  the continued prosecution the Writ Action will divert KVW and Ms. Kelham's limited resources and time from the orderly liquidation of this

Estate; (b) the continued prosecution of the Writ Action against Ms. Kelham will require that KVW (Debtor – now in the person of a Chapter 11 Trustee) as an entity to provide responses to Defendant Nicholsen's endless discovery requests; (c) the continued prosecution of the Writ Action will implicate KVW because Ms. Kelham is entitled to indemnification from KVW (the Estate) of any costs she may incur in connection with executing her responsibilities as the Managing Member of KVW (d), due to the fact that KVW is the real party in interest in the Writ Action, any finding or judgment against Ms. Kelham may have preclusive effect.  See, Declarations of Susanna Kelham, Hamilton Nicholsen, and Rebekah Parker.

Proponent respectfully submits that, viewed in its entirety, the evidence presented makes a compelling case, raising to the level of establishing with relative certainty, that allowing Ronald Nicholsen to continue his prosecution of the Writ Action will not only cause irreparable harm to the Estate by frustrating Ms. Kelham and her son Hamilton's efforts to help the Trustee orchestrate an orderly liquidation,  it will also cause irreparable harm to the Estate by frustrating the Trustee's and his attorneys' efforts to orchestrate an orderly liquidation, by thereon diverting their attention to what is important, the liquidation of KVW's assets, to what will become an all-consuming side show at this Estate's expense.  See, Declarations of Susanna Kelham, Hamilton Nicholsen, and Rebekah Parker.

Lastly, Proponent would note that the Writ Action appears to be in its final stages, a point in time when the Estate is most vulnerable to having a ruling or judgment entered that would have damaging preclusive effects.  In his pending Motion for Relief from Stay, Ronald Nicholsen represents to this Court that,

The only questions to be resolved in that trial are whether the parties complied with the Court's writ of mandate issued on November 4, 2022 and whether Ronald Nicholsen can recover his attorneys fees and costs in attempting to enforce his statutory rights.  Motion, Page 3, Lines 17-21.

However, it is not altogether clear whether this presentation is true. Notwithstanding, this representation that the only outstanding issue was one of entitlement to attorney fees, later in this very pleading and then subsequently in his reply, Ronald Nicholsen concedes that he is also seeking additional documents and depositions from KVW through Ms. Kelham, in her capacity as KVW' Managing Member and through Melanie Drescher, in her capacity as KVW's bookkeeper.  With that said, what is abundantly clear is that while the Writ Action may not be its final stage, it is definitely in an advanced stage, so advanced that it will take the Trustee and his attorney a considerable time commitment to get up to speed on the facts and law, thereon enabling the Estate to assess its potential or pending financial liability.

**C.  The Balance of Hardships Tip in Favor of the Estate; There is No Hardship to Ronald Nicholsen;**

In its opinion in <u>Mariner</u>, in connection with the issue of the balancing of hardships, this Court notes that  *"…the test for a grant of injunctive relief requires the Court to compare the harms likely to be suffered by the Debtors if no injunction is granted with those likely to be suffered by [Defendant] if the preliminary injunction is granted"* then goes on to explain that, " *In the bankruptcy context, the Ninth Circuit requires a court to "identify the harms which a preliminary injunction might cause to defendants and ... weigh these against plaintiff's threatened injury,"* thereon noting that "*This balancing test necessarily coincides with the prior element—the likelihood of irreparable harm—in*

*that the harms alleged by the movant and non-movant must be supported by more than*

*mere speculation*." <u>In re Mariner Health Care Central</u>, 2023 WL 187175, page 13.

To this end, Proponent in the case at bar respectfully submits that, whereas the record is replete with particularized evidence of irreparable harm to the Estate, other than the anticipated cries of the Greenberg Law Firm that Ronald Nicholsen desires to conduct <u>more discovery</u>, these proceedings have shown that (at least in the context of the pending motion for relief from stay) no harm will come to Ronald Nicholsen from the imposition of the 'limited stay" sought herein. <u>See</u>, Declarations of Susanna Kelham, Hamilton Nicholsen, and Rebekah Parker.

This Court notes in <u>Mariner</u> that "*a court [should] analyze the likelihood of irreparable harm according to the scope of the injunctive relief requested.* <u>In re Mariner Health Care Central</u>, 2023 WL 187175, page, 10. To this end, Proponent would respectfully submit that the same approach should be taken in connection with analyzing alleged harm to Ronald Nicholsen herein. Here, Proponent is asking for a limited injunction for as long as it takes the Trustee to liquidate this Estate, thereon allowing Ms. Kelham, Hamilton Nicholsen, and the Trustee to devote their undivided time, attention, and resolve to orchestrating an orderly liquidation of this Estate, rather than wasting precious time and resources (at very busy and critical time in the wine industry generally and for this Estate specifically) responding to Writ Action discovery requests. Summarily stated, Ronald Nicholsen will get his day in the Napa County Superior Court; Mr. Nicholsen is merely being asked to wait until after this Estate is liquidated.

Proponent recognizes, as pointed out by this Court in <u>Mariner</u> that "… *the delay in prosecution of actions sought to be enjoined is never a "non-factor" in this analysis*", thereon prompting this Court to recognize that *"… such delay is always of some import to the effected parties*".  With that said, this Court goes on to correctly point out that .."*courts should examine this potential hardship in light of the relevant circumstances.".* 2023 WL 187175, page, 13.  See In re Excel Innovations, Inc., 502 F.3d at 1097.

Here, as noted above, while there is relative certainty that the Estate will be harmed if an injunction is not granted, there is not a scintilla of evidence that any harm will be fall on Ronald Nicholsen if a stay is granted. To the contrary, in the long run, the imposition of a stay will benefit Ronald Nicholsen because (a) whatever information Ronald Nicholsen is seeking that has not allegedly already been provided to him, will surely be provided to the Trustee during the period of the requested injunction and thereon made available to Ronald Nicholsen; and (b) to the extent Ronald Nicholsen is sincere about his stated purpose for the Writ Action (to determine the value of his equity interest) said value will be determined for him by the Trustee in the course of liquidating this Estate assets.  Thus, not only does a balancing test analysis tip heavily in favor of the Estate; the evidence actually supports a finding that Ronald Nicholsen will actually benefit from the imposition of the limited stay sought herein.

**D. Granting the Injunctive Relief Further the Public Policies of Promoting Chapter 11 Reorganization, as Well as, Defending the Jurisdictional Integrity of the Bankruptcy System.**

In <u>Mariner</u>, this Court notes that the Ninth Circuit ""*... has made clear that in the bankruptcy context, a court may consider whether the preliminary injunction furthers some public policy on an as needed basis. <u>In re Excel Innovations</u>, 502 F.3d at 1089*

*(emphasis added) (the court should "consider the public interest if warranted").* <u>In re Mariner Health Care Central</u>, 2023 WL 187175, page 13.

Here, Proponent respectfully submits that there are two public policies at issue. First, the public policy of giving debtors and trustees a "breathing spell" to prepare for the administration and execution of their Chapter 11 objectives; this is not the same as saying an Estate is or is not likely to reorganize, this is to say that debtors and trustees deserve a modicum of time, before being harassed with prepetition litigation, to gain their footing. This is a case were an over aggressive creditor, with no bona fide purpose other than to harass his elderly mother, filed a Motion for Relief from before the Order for Relief was entered. Second, the public policy of defending the jurisdictional integrity of the bankruptcy system through the enforcement of its corner stone provision, the automatic stay. This is a case where an over aggressive creditor has played fast and loose with the automatic stay, at some level making a mockery of the bankruptcy system. He scheduled a hearing in the Napa County Superior Court in violation of the automatic stay based on false representation that the bankruptcy court would lift the automatic stay on August 16, 2023, and thereafter misrepresented that the bankruptcy court had deferred the issue of the application of the automatic stay to Ms. Kelham to the Napa County Superior Court. To this end, the granting of this injunction would serve the public policy of sending a strong message to creditors to refrain from these unwarranted, overaggressive, unlawful behaviors and tactics. <u>See</u>, Declaration of Rebekah Parker.

**V**
**CONCLUSION**

Proponent Susanna R. Kelham has clearly shown that she and this Estate are entitled to seek an injunction staying Ronald Nicholsen from prosecuting State Court Case No. 21CV001403, <u>pending the liquidation of the above captioned Estate</u> under 11 U.S.C. §105; more, Ms. Kelham has also shown that, even in the absence of an 11 U.S.C. §105 injunction, Ronald Nicholsen is stayed, by virtue of 11 U.S.C. §362 alone, from prosecuting the Writ Action given that, notwithstanding the fact that she is a named defendant in the Writ Action, the Estate is the real party in interest.

Date: September 11, 2023

_____
Rebekah Parker
Attorney for Proponent
Susanna R. Kelham

# CERTIFICATE OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 4225-H Oceanside Boulevard #369, Oceanside CA, 92056-3472

A true and correct copy of the foregoing document described as **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION STAYING RONALD NICHOLSEN FROM PROSECUTING, OR OTHERWISE NOTICING ANY FURTHER HEARINGS IN STATE COURT CASE NO. 21CV001403, PENDING THE LIQUIDATION OF THIS ESTATE AND FURTHER ORDER OF THE U.S. BANKRUPTCY COURT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR; and **(b)** in the manner indicated below:

William Lafferty
U.S. Bankruptcy Court,
1300 Clay St. Room 220
Oakland, CA 94612
<u>Served by Priority Mail</u>

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 11, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

| | |
|---|---|
| U.S. Trustee | USTPRegion17.SF.ECF@usdoj.gov |
| Paul Leahy | paul.leahy@usdoj.gov |
| Ryan Wood | ryan@westcoastbk.com |
| Rebekah Parker | attorneyrparker@gmail.com |
| Harold H. Davis, Jr. | hal.davis@gtlaw.com |
| Michael F. Thomson | thomsonm@gtlaw.com |
| Carson Heninger | carson.heninger@gtlaw.com |
| Michael J. Gomez | mgomez@frandzel.com |
| Wesley H. Avery | wavery@rpmlaw.com |

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL:** On September 11, 2023, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Ron Nicholsen
223 Alchemy Way
Napa, CA 94558
<u>Served by U.S. Mail</u>

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 11, 2023, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Susanna R. Kelham
Manager Member
Kelham Vineyard & Winery, LLC.
360 Zinfandel Lane
St. Helena, CA 94574
Served by Email:
info@kelhamvineyards.com.

Alexis White, Attorney for
Susanna R. Kelham
Day, Pace, York & York
587 Jefferson Street
Napa, CA 94559
Served by Email
awhite@yorkyorklaw.com

Service information continued on attached page: None

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

September 11, 2023

Rebekah Parker