**Rebekah Parker SBN 143674**
4225-H Oceanside Boulevard #369
Oceanside CA, 92056-3472
Phone (213) 268-2918
E-Mail: AttorneyRParker@gmail.com

REBEKAH PARKER Appearing for HAMILTON NICHOLSEN and SUSANNA KELHAM in their various capacities as Creditors and Interest Holders.

**United States Bankruptcy Court**
**Northern District of California – Santa Rosa Division**

| In re Kelham Vineyard & Winery, LLC<br><br>Debtors. | Case No. 23-10384-WL<br><br>Chapter 11<br><br>Adv. No 23-01016 |
|---|---|

**OBJECTION TO TRUSTEE MICHAEL KASOLAS' APPLICATION TO EMPLOY ONYX ASSET ADVISERS FILED AS DOCKET NO. 203; AND REQUEST FOR HEARING THEREON.**

[ NO HEARING SET ]

United States Bankruptcy Court
1300 Clay Street
Oakland, CA 94612

**TO THE HONORABLE WILLIAM LAFFERTY, UNITED STATES BANKRUPTCY JUDGE, MICHAEL KASOLAS, CHAPTER 11 TRUSTEE, AND HIS ATTORNEY OF RECORD:**

The above captioned Application to Employ Onyx Asset Advisers, LLC ("OAA") as the Estate's Sales Agent, filed by Michael Kasolas, the duly appointed Chapter 11 Trustee (herein 'Trustee Kasolas') should be summarily denied in its present form (DN 203). This Estate's creditors and equity holders have serious concerns that OAA's retention may not be in the best interest of the creditors of this Estate and may run afoul of various provisions of Title 11 and California Law.

The following issues are herein submitted for the Court's consideration:

1. OAA appears to have no actual wine industry experience, other than a recent presentation at a professional conference designed to gain entry into the industry. DN 203-1 – See, OAA Website and DN 203, Declaration of K. Otus, Exhibit A *Curriculum Vitae.*

2. Trustee Kasolas' motivation for employing OAA, notwithstanding their lack of experience and qualifications, appears to be that OAA "…*has previously retained Mr. Kasolas to perform services in other unrelated insolvency cases*…" DN 203, Declaration of K. Otus, 2:3-4 (i.e., old school *quid pro quo*).

3. There is a concern that it would be inappropriate for OAA to receive a commission on a bulk sale to a partnership consisting of Ronald Nicholsen and Wilbur Smith given that this Estate has already incurred and continues to bear the cost of developing this Ronald Nicholsen and Wilbur Smith partnership as the

stalking horse bidder. DN 203 Application to Employ OAA, 2:FN 2. To award OAA a commission based on a business opportunity that was procured and developed at Estate expense reeks of the type of bankruptcy cronyism that Congress and modern Bankruptcy Courts have strived so desperately to eliminate. This Estate has already invested what is certainly Tens of Thousands of Dollars, maybe as much as a Hundred Thousand Dollars, working with Ronald Nicholsen and Wilbur Smith as a stalking horse bidders, there is no reason why OAA should be allowed to step in and collect a commission on a sale to Ronald Nicholsen, Wilbur Smith, or any other insider for that matter.

4. The stated purpose for Trustee Kasolas' "*select[ion] of OAA [is] because of its extensive experience and knowledge in the liquidation of assets and its familiarity with Bankruptcy Court procedures*" DN 203 Application to Employ OAA, ¶11, 3:20:23; however, the Application to Employ is plagued with issues and ambiguities that render the employment application unacceptable in its present form given a lack of adequate disclosure regarding the actual purpose, real cost, and questionable benefit of OAA's employment, which shows a total lack of familiarity with Bankruptcy Court procedures.

5. There is a concern that Estate resources and valuable time will be wasted because OAA is being handed $15,000.00 to generate marketing literature to sell assets that are not the Estate's to sell. Specifically, the Application to Employ is misleading in that it erroneously suggests that the Estate will have an asset to sell upon lease termination, what it terms as "*the Lease Assignment*". See, DN 203 Application to Employ OAA, ¶5, 2:8-11. This is categorically false. To be

clear, if Ronald NIcholsen prevails in the 2005 Lease Litigation, what the Estate will have is a right to reimbursement—Susanna Kelham has made it crystal clear, on more than one occasion, that she has no interest in selling or leasing out the Zinfandel Lane Property. Furthermore, the Application to Employ is misleading in that it misrepresents that all the property listed on KVW's "*Amended Schedules*" is property of the Estate available for sale. DN 203 Application to Employ OAA, ¶3, 2:3-4. This again is categorically false. As Trustee Kasolas is fully aware, KVW's designated agent refused to sign the "*Amended Schedules*" generated by Trustee Kasolas' staff because these schedules listed or included personal property that does not belong to KVW.

6. There is a further concern that the Employment Application is somewhat hiding the ball on Trustee Kasolas' true intentions in connection with the requirement that OAA secure court approval in connection with the sale of estate property. Specifically, while the Application to Employ notes that "*Sale Assets will be sold … subject … to Bankruptcy Court approval",* this may be inconsistent with statements in the application to the effect that OAA " *will utilize a two-step sales strategy with respect to the Wine Inventory, focusing on an enhanced & accelerated direct sales campaign to the company's existing wine club members while simultaneously targeting larger bulk sales to commercial buyers and/or retailers*." DN 203 Application to Employ OAA, ¶8,1:21 through ¶92:1-2. The implication is that OAA is expected to function both as a retailer and a wholesaler, raising questions as to whether when the employment application states that "*Sale Assets"'* will be subject to Court Approval, the "*court approval*"

requirement includes all categories of sales, both retail and wholesale; stated in the alternative; 'Does the Application to Employ intend or contemplate a type of sale that is NOT subject to court approval?' This ambiguity needs to be clear-up and there needs to be full disclosure.

7. There is a further concern that, to the extent that Trustee Kasolas seems to be proposing is a warehouse fire sale of KVW's inventory to members of KVW's Wine Club, it would be inappropriate to compensate OAA for 'inhouse wine sales', particularly if OAA staff and employees are already billing the Estate on an hourly basis for the time spent generating said sale. Simply stated, Wine Club Members are existing KVW customers that would be better serviced by existing KVW staff. As previously noted, there is no indication that OAA has any experience or expertise in this area that would qualify OAA to conduct or oversee such an endeavor. Much damage has already been done to this Estate through Trustee Kasolas' use, employment, and reliance on Arch + Beam, who also lacked experience and expertise in this industry at this level; there are serious concerns that the situation will only get worse if another inexperienced acquaintance is given the run of house.

8. While the Application to Employ fails to clearly and fully disclosure Trustee Kasolas' intentions, it appears that what Trustee Kasolas may be proposing is that OAA employees be brought on site to handle sales and tastings for Wine Club Members. If this is in fact what Trustee Kasolas is proposing, there should be full and detailed disclosure as to the number of OAA staff or employees that Trustee Kasolas proposes to bring on site, their qualifications, how much these

individuals will be paid, and their expected duties. At present, Trustee Kasolas already has one or two members of Arch + Beam, his other financial advisors, visiting the site every Thursday, spending a good portion of the day there, billing at rates as high as $500.00 per hour, who spend their time wandering the winery and vineyard with little if anything to do, more often than not simply disrupting winery staff and disturbing winery customers. With that said, bringing on additional overpaid and unqualified staff is not in the best interest of this Estate at this juncture given the massive amount of professional fees that have already been incurred by Trustee Kasolas' '*Administrative Team*' with no apparent benefit to the Estate—KVW is a small family owned and operated winery whose liquidation has been pretentiously administered as if were and had the budget of a Fortune 500 Corporation, much to the detriment of creditors and equity holders. KVW's current staff has done an exemplary job of administering Wine Club sales and tastings since the filing of this case and since Trustee Kasolas' appointment—this is a matter of public record. There is no need for an added layer of overpriced administrative bureaucracy. While there may be a legitimate role for OAA in this case in connection with the procurement of "bulk sale" purchasers or overbidders, the retention of OAA to run or oversee on site wine sales is clearly unnecessary and not in the best interest of this Estate.

9. There is concern that OAA's Employment Application is unclear about how "wine sales" will be handled and/or whether OAA is licensed to sell wine offsite and/or to sell to retailers and wholesalers. Is OAA a licensed wine broker?

10. There is a concern that as the Employment Application is currently drafted, OAA would be receiving an illegal commission on a sale of real estate, since OAA appears not be a licensed real estate broker as can be inferred from Trustee Kasolas' application . DN 203 Application to Employ OAA, 2:FN 2.

11. And, finally, there is a concern that the Application to Employ contains inadequate safeguards against potential abuse in connection with the access being granted to OAA and its staff to KVW' s wine inventory. Specifically, while providing free limited tastings to retailers and wholesalers may be within industry norm (subject to restrictions), Trustee Kasolas' application seeks unrestrained authority to provide free "samples" to potential purchasers, which under the terms of the Application to Employ would include direct sale purchasers (i.e., Wine Club Members). With that said, to the extent the application to employ uses both the terms "tastings" and "samples", the term "sample" must be construed as more than a taste or even a full glass, it must be construed as either a bottle or a case. With that said, providing OAA authority to give away free bottles or cases is not acceptable—it runs afoul of both provisions of Title 11 regarding the proper use of property of the Estate and State Laws regarding prohibits against the free transfer or giveaways of alcohol. To be clear, there is a need for full disclosure and accountability; Trustee Kasolas and OAA should be required to account for every bottle of wine removed from storage or the premises that is not bought and paid for.

Summarily stated, given the nature, scope, and magnitude of the concerns raised herein, this matter should be set for hearing in order to give Trustee Kasolas an opportunity to address these concerns.

Date: March 3, 2024

Rebekah Parker

Appearing for HAMILTON NICHOLSEN and SUSANNA KELHAM in their various capacities as Creditors and Interest Holders.

# CERTIFICATE OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 4225-H Oceanside Boulevard #369, Oceanside CA, 92056-3472

A true and correct copy of the foregoing document described as **OBJECTION TO TRUSTEE MICHAEL KASOLAS' APPLICATION TO EMPLOY ONYX ASSET ADVISERS FILED AS DOCKET NO. 203; AND REQUEST FOR HEARING THEREON** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR; and **(b)** in the manner indicated below:

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On March 3, 2024, I checked the CM/ECF docket for this bankruptcy case and adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

| | |
|---|---|
| U.S. Trustee | USTPRegion17.SF.ECF@usdoj.gov |
| Mark Bostick | mbostick@fennemorelaw.com, ecfbankruptcy@fennemorelaw.com |
| Lisa Lenherr | llenherr@fennemorelaw.com |
| Michael G. Kasolas | trustee@kasolas.net, ecf.alert+Kasolas@titlexi.com |
| Paul Leahy | paul.leahy@usdoj.gov |
| Jared A. Jones | jared.a.day@usdoj.gov |
| C.L. Goebelsmann | christina.goebelsmann@usdoj.gov |
| Ryan Wood | ryan@westcoastbk.com |
| Rebekah Parker | attorneyrparker@gmail.com |
| Harold H. Davis, Jr. | hal.davis@gtlaw.com |
| Michael F. Thomson | thomsonm@gtlaw.com |
| Carson Heninger | carson.heninger@gtlaw.com |
| Michael J. Gomez | mgomez@frandzel.com |
| Wesley H. Avery | wavery@rpmlaw.com |
| Richard L. Pierotti | Rpierotti@kpmd.com |
| MarthaJSimmons | mjs@mjsimonlaw.com |

**SERVED BY U.S. MAIL OR OVERNIGHT MAIL:** On March 3, 2024, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed. None

**SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 3, 2024, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed: None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

March 3, 2024

Rebekah Parker