Mark S. Bostick (Bar No. 111241)
Lisa Lenherr (Bar No. 258091)
**FENNEMORE LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone: (510) 834-6600
Fax: (510) 834-1928
Email: mbostick@fennemorelaw.com
Email: llenherr@fennemorelaw.com

Attorneys for Michael G. Kasolas, Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>KELHAM VINEYARD & WINERY, LLC,<br><br>Debtor. | Case No. 23-10384-WJL<br><br>Chapter 11<br><br>**DECLARATION OF MICHAEL G. KASOLAS IN SUPPORT OF MOTION FOR ORDER: (A) APPROVING OVERBID AND AUCTION PROCEDURES; (B) APPROVING SALE; (C) FINDING PURCHASER IS A GOOD FAITH PURCHASER WITHIN THE MEANING OF 11 U.S.C. § 363(m); (D) AUTHORIZING AND APPROVING PAYMENTS FROM SALE PROCEEDS; (E) WAIVING ANY STAYS OF ORDER; (F) APPROVING COMPROMISE WITH KELHAM PARTIES; AND (G) OTHER RELATED RELIEF**<br><br>Date: June 3, 2025<br>Time: 1:00 p.m. PT<br>Place: 1300 Clay Street<br>Courtroom 220<br>Oakland, CA 94612<br>Judge: Honorable William J. Lafferty, III |

I, Michael G. Kasolas, declare as follows:

1. I am the duly appointed and acting trustee of the above-captioned chapter 11 bankruptcy estate. The following facts are true of my own personal knowledge and if called upon to do so, I would and could competently testify thereto, except as to those matters that are alleged upon information and belief and as to those matters, I believe them to be true.

2. I make this declaration in support of the above-captioned motion (the "**Motion**") and I believe the factual statements set forth in the Motion are true and correct to the best of my knowledge.

3. A true and correct copy of the settlement and release agreement (the "**Agreement**") is attached hereto as **Exhibit 1**.

4. The Sale Assets[1] have been marketed since at least March 2024, and I believe that all potentially interested purchasers have been reached or will be reached by the overbid opportunity marketing efforts. I believe that the Sale Assets have been, and will continue to be, properly marketed under the circumstances.

5. With the assistance of my professionals, I negotiated the Agreement, and developed the Overbid and Auction Procedures with the goal of obtaining the highest and best offer for the purchase of the Sale Assets and I believe the proposal accomplishes this goal. I believe that the Overbid and Auction Procedures will facilitate and enhance a successful overbid auction and sale process.

6. For the reasons described in the Motion, I believe that the compromise of claims is fair and equitable and in the best interests of creditors and the Estate.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on April 22, 2025, at Brisbane, California.

*/s/ Michael G. Kasolas*
MICHAEL G. KASOLAS

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

# EXHIBIT 1

# SETTLEMENT AND RELEASE AGREEMENT
## (INCLUDING SALE OF ASSETS AND COMPROMISE OF CLAIMS)

*In re Kelham Vineyard & Winery, LLC*, U.S. Bankruptcy Court N.D. of Cal., Case No. 23-10384-WJL; *Nicholson et al v. Kasolas*, U.S. Bankruptcy Court N.D. of Cal., AP Case No. 24-1006-WJL (Personal Property Dispute); *Nicholsen v. Kasolas*, U.S. Bankruptcy Court N.D. of Cal., AP Case No. 23-01016-WJL (Lease Dispute); *Nicholsen v. Kasolas*, Ninth Circuit B.A.P. Case No. 24-1135 (Appeal re Lease Dispute)

This **SETTLEMENT AND RELEASE AGREEMENT** ("**Agreement**") is entered into between Susanna Kelham, individually, ("**Kelham**"); Susanna Kelham as Manager of the 360 Zinfandel Lane Tenants In Common Agreement ("**Landlord**"); Main Street Properties, LLC ("**Main Street**"); Kelham Growers, LLC ("**Growers**"); Hamilton Nicholsen, individually ("**Hamilton**"); and Kelham and Hamilton as members of Kelham Vineyard & Winery, LLC (the "**Members**") (collectively the "**Kelham Parties**" or "**Buyer**") on the one hand, and Michael G. Kasolas ("**Trustee**" or "**Seller**"), the Chapter 11 trustee of the Kelham Vineyard & Winery, LLC (Case No. 23-10384) ("**Debtor**") bankruptcy estate (the "**Estate**") (collectively the "**Parties**").

## RECITALS

A. **Bankruptcy Case.** On July 20, 2023, an involuntary petition for relief under Chapter 11 of the Bankruptcy Code was filed against the Debtor as Case No. 23-10384 (the "**Bankruptcy Case**"). On August 16, 2023, an Order for Relief in an Involuntary Case was entered. On September 13, 2023, Michael G. Kasolas was appointed as Chapter 11 trustee of the debtor's estate.

B. **Personal Property AP.** On April 29, 2024, Hamilton and Kelham commenced AP Case No. 24-1006 against Trustee, seeking declaratory and injunctive relief regarding the ownership of certain personal property located on the Zinfandel Lane Property (the "**Personal Property AP**").

C. **Lease Dispute.** Debtor allegedly leased certain real property commonly known as 360 Zinfandel Lane, St. Helena, CA ("**Zinfandel Lane Property**"). On November 21, 2023, Nicholsen filed and commenced AP Case No. 23-1016 against Trustee seeking declaratory relief determining the extent of the Bankruptcy Estate's interest in the Zinfandel Lane Property, among other claims for relief (the "**Lease AP**"). On December 18, 2023, Trustee filed a cross-complaint against Kelham, the Landlord, Ron Nicholsen, and Hamilton, seeking declaratory relief on status and interpretation of the alleged Lease, recovery of alleged lease overpayments, among other claims for relief (the "**Cross-Complaint**"). On August 8, 2024, the Bankruptcy Court entered an order determining that the alleged lease entered into by and between Debtor and Kelham on December 26, 2005 (the "**Lease**"), was valid and enforceable (the "**Lease Order**"). On August 27, 2024, Hamilton appealed the Lease Order to the Ninth Circuit Bankruptcy Appellate Panel, and that appeal is currently pending as Ninth Circuit B.A.P. Case No. 24-1135 (the "**Lease Appeal**").

**D.     Claims filed by the Kelham Parties.** The Kelham Parties filed eight (8) claims in the Bankruptcy Case (collectively the "**Kelham Parties' Filed Claims**"), as follows: **(a)** Claim 7 (Main Street) On December 14, 2023, Main Street filed a claim in the amount of $107,500.00 (Claim No. 7); **(b)** Claim 8 (Susanna) On December 14, 2023, Susanna filed a claim in the amount of $305,000.00 (Claim No. 8) and on January 23, 2024, Trustee objected to Claim No. 8 (Docket No. 181); **(c)** Claim 9 (Susanna) On December 14, 2023, Susanna filed a claim in the amount of $931,500.00 (Claim No. 9) and on January 23, 2024, Trustee objected to Claim No. 9 (Docket No. 182); **(d)** Claim 10 (Susanna) On December 14, 2023, Susanna filed a claim in the amount of $269,095.53 (Claim No. 10) and on January 23, 2024, Trustee objected to Claim No. 9 (Docket No. 183); **(e)** Claim 11 (Growers) On December 14, 2023, Growers filed a claim in the amount of $533,929.45 (Claim No. 11) and on September 6, 2024, Trustee objected to Claim No. 11 (Docket No. 279); **(f)** Claim 12 (Landlord) On December 14, 2023, Landlord filed a claim in the amount of $328,800.00 (Claim No. 12) and on January 23, 2024, Trustee objected to Claim No. 9 (Docket No. 184); **(g)** Claim 13 (Hamilton) On December 14, 2023, Hamilton filed a claim in the amount of $7,835.00 (Claim No. 13); and **(h)** Claim 14 (Growers) On December 14, 2023, Growers filed a claim in the amount of $291,969.25 (Claim No. 14).

E.     The Parties wish to resolve their disputes without further cost, risk or delay and agree to settle on the terms set forth below.

## AGREEMENT

1)     **Sale.**

   a)     **Components of the Purchase Price and Payment.** The purchase price includes cash in the sum of Four Hundred Thousand Dollars ($400,000.00) and the Kelham Parties' general releases of all claims, including administrative claims, prepetition and post-petition claims, asserted and unasserted claims, and unknown claims against the Estate and its agents (the "**Purchase Price**"). A cash deposit of One Hundred Thousand Dollars ($100,000.00) has been received by Trustee (the "**Deposit**"). The balance of the cash component of the Purchase Price ($300,000.00) shall be paid within five (5) days of entry of the Order approving the Agreement. The Deposit shall be refunded in the event that this Agreement is not approved by the Bankruptcy Court or the Kelham Parties are not the successful bidders in the event there are any qualified overbids.

   b)     **Sale Assets.** Subject to the terms and conditions set forth in this Agreement, Trustee agrees to sell to the Kelham Parties, and Kelham Parties agree to purchase from Trustee, all right, title and interest of Trustee in and to all remaining property of the bankruptcy estate including but not limited to: (i) personal property; (ii) books and records; (iii) permits and licenses to the extent transferrable; (iv) all rights and obligations under the Lease; (v) any claims against the Kelham Parties; (vi) all right, title, and interest in the following litigation claims: the Cross-Complaint, the Lease Order, the

Lease Appeal, and the Personal Property AP; (vii) the real property located at 540 Mund Road, St. Helena, CA; and (viii) any claims against third parties (with certain exclusions, see ¶ 1(c)); (collectively, the "**Sale Assets**"); provided, however, the Sale Assets do not include Excluded Property (defined ¶ 1(c)).

    c) **Excluded Property**. Sale Assets <u>do not</u> include: Chapter 5 claims; claims against Terra Valentine; that certain trademark (the "**Trademark**") identified as US Serial Number 78510891, and U.S. Registration Number 3032163 (together with the Trademark, collectively the "**Trademark Rights**"), registered on December 20, 2005 (and related litigation); and any property already sold or abandoned.

    d) **"As-is, Where Is" Sale**. THE SALE ASSETS ARE BEING SOLD IN AN "AS IS" CONDITION, ON A "WHERE IS" BASIS AND "WITH ALL FAULTS," AND SUCH SALE IS WITHOUT RECOURSE, REPRESENTATION, OR WARRANTY OF ANY KIND BY SELLER, WHETHER EXPRESS, IMPLIED OR IMPOSED BY LAW, WHICH RECOURSE, REPRESENTATIONS, AND WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED BY BUYER. BUYER ACKNOWLEDGES THAT IT IS FULLY RELYING ON ITS OWN (OR IT REPRESENTATIVES') INSPECTIONS, EXAMINATIONS AND EVALUATIONS OF THE SALE ASSETS AND NOT UPON ANY STATEMENTS (ORAL OR WRITTEN) THAT MAY HAVE BEEN MADE OR MAY BE MADE (OR PURPORTEDLY MADE) BY SELLER OR ANY OF THEIR RESPECTIVE REPRESENTATIVES, AGENTS OR ATTORNEYS. WITHOUT IN ANY WAY LIMITING THE GENERALITY OF THE FOREGOING, THE PARTIES AGREE THAT SELLER HAS NOT MADE ANY, AND EXPRESSLY AND SPECIFICALLY DISCLAIMS ANY AND ALL, REPRESENTATIONS, GUARANTIES OR WARRANTIES, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW OR RELATING TO THE SALE ASSETS, INCLUDING, WITHOUT LIMITATION, OF OR RELATING TO ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

    e) **Closing**. Upon receipt of the total Purchase Price ("**Closing**"), the Parties will cooperate in good faith regarding delivery of the Sale Assets except that Trustee shall have no delivery obligation with respect to any permit or license that requires an independent escrow, including, but not limited to, any California Department of Alcoholic Beverage Control (ABC) or Alcohol and Tobacco Tax and Trade Bureau (TTB) license or permit. Upon Closing, the Buyer shall have the sole and exclusive authority to transfer, dissolve, and/or dispose of any and all licenses and permits subject to this Agreement.

2) **TTB 702 Monthly Reports and Quarterly Excise Tax Reports**. Trustee agrees to file all 702 monthly reports and the quarterly excise tax reports for the post-Petition period through Closing. Trustee shall provide Buyer with copies of the reports.

3) **Waiver of Claims and Mutual Release.**

51071979.12/513816.0119
Case: 23-10384   Doc# 425-1   Filed: 04/24/25   Entered: 04/24/25 10:49:25   Page 6 of 18

**a)** Upon approval of the Agreement, the Kelham Parties will waive and release all known or unknown claims against the Estate, the Trustee, his agents and professionals, including all pre-petition and post-petition claims filed or unfiled by the Kelham Parties, not including their bare membership interests in the Debtor. Kelham Parties will withdraw all claims against the Estate with prejudice.

**b)** Upon approval of the Agreement, the Kelham Parties absolutely and unconditionally release and forever discharge the Trustee, his associates, agents (but see exception in ¶ 2(d)), as well as his and their successors, assigns, and present and former, agents, professionals, officers, directors, and employees, of any and all known and unknown claims, demands, costs, expenses, damages, debts and causes of action of any kind, nature or description, whether arising in law or equity, contract or tort or under any state or federal law; provided however, that the releases shall not affect the litigation related to the Trademark and Trademark Rights or any claims or obligations of the Trustee under this Agreement.

**c)** Upon payment of the Purchase Price in full, the Trustee on behalf of the Estate absolutely and unconditionally releases and forever discharges the Kelham Parties, their associates, affiliates, as well as their successors, assigns, and present and former, agents, professionals, officers, directors, and employees, of any and all known and unknown claims, demands, costs, expenses, damages, debts and causes of action of any kind, nature or description, whether arising in law or equity, contract or tort or under any state or federal law; provided however, that this release shall not apply to Rebekah Parker, Esq. and Holland & Knight LLP and shall not affect the litigation related to the Trademark and Trademark Rights or any of the claims or obligations of the Kelham Parties under this Agreement.

**d)** Notwithstanding any other provision in this Agreement to the contrary, the release of agents of the Trustee in ¶ 2(b) does not apply to Ronald Nicholsen and his related entities (collectively "**R. Nicholsen**"), to the extent that R. Nicholsen was not acting within the scope of his agency with trustee and: i) unlawfully converted property of the estate; ii) committed an intentional tort; iii) embezzled funds of the Estate; or iv) committed any other criminal acts.

4) **Waiver of California Civil Code Section 1542.** With regard to the waiver of claims and mutual release, the Parties expressly waive any and all rights and claims under 1542 of the California Civil Code, which the Parties have read and understands, and which provides:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

5) **Dismissal of Litigation.** Within thirty (30) days of entry of an order approving this Agreement, the Parties shall dismiss all pending adversary proceedings, contested

matters, and appeals (other than the litigation related to the Trademark and Trademark Rights) with prejudice with each side bearing their fees and costs. <u>Litigation related to the Trademark and Trademark Rights shall be unaffected by this Agreement.</u>

6) **Opportunity to Overbid and Effect of Same.** The Parties agree that the Agreement is subject to overbid according to the bidding and sale procedures as set forth substantially in the form of **Exhibit A** and the Kelham Parties agree to be bound by the same. Copies of any offer by a Qualified Bidder (as defined in Exhibit A) shall be sent to counsel for the Kelham Parties within one (1) day of the bid being qualified by Trustee

7) **Bankruptcy Court Approval Required.** Unless otherwise provided, this Agreement is conditioned upon the Bankruptcy Court approval. In the event this Agreement is not approved or if there is a successful overbid, the Parties reserve all their rights and this Agreement shall have no force or effect, except as provided herein.

8) **No Admission of Liability**. This Agreement was negotiated, in part, to avoid the time, effort and cost of litigation. This Agreement was never intended and shall never constitute nor be construed as an admission of any liability or wrongdoing.

9) **Consultation with Counsel.** The parties have had full opportunity to consult with their respective legal counsel before entering into this Agreement and have read, understood, and voluntarily agreed to execute this Agreement with full knowledge that upon execution it shall become a binding and enforceable contract.

10) **Entire Agreement.** This Agreement contains the entire agreement between the Parties with respect to the matters referred to in this Agreement and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, and there are no representations or other agreements between the Parties in connection with the subject matter hereof except as specifically set forth herein. No delay or omission on the part of either party in exercising any right hereunder will operate as a waiver of such right or any other right. A waiver on one occasion will not be construed as a bar to or a waiver of any right on any further occasion.

11) **Warranties.** Each of the Parties warrants and represents that:

 a) it has not heretofore assigned, subrogated, or transferred or purported to assign, subrogate, or transfer, to any person, firm, partnership, corporation or entity whatsoever any action(s) or cause(s) of action at law or in equity, suits, debts, demands, claims, contracts, covenants, liens, liabilities, losses, costs, accounts, expenses (including, without limitation attorneys' fees), or damages released in this Agreement;

 b) it has full power and authority to execute and perform its obligations under this Agreement in all respects; and

 c) it has not relied upon the advice of any representative, agent, or attorney of any of the other Parties, as to the legal or other consequences which attach from the assent to the terms of this Agreement.

12) **No Other Representations or Warranties.** The Parties acknowledge that no

representations or warranties of any kind have been made by anyone to induce the signing of this Agreement other than as set forth in this Agreement.

13) **Modification.** This Agreement may be modified only by a writing signed by both Parties.

14) **Bankruptcy Court Jurisdiction and Governing Law.** The Parties agree that the Bankruptcy Court presiding over the Case shall have exclusive jurisdiction to resolve any dispute that may arise under the Agreement and that the Agreement shall be governed by California law.

15) **Counterparts.** This Agreement may be executed in one or more counterparts; a copy of an executed original shall be deemed an original for all purposes; a signed copy transmitted by email shall be deemed an executed original.

16) **Severability.** In the event any provision of this Agreement is held to be void, voidable or unenforceable, the remaining provisions of this Agreement will remain in full force and effect.

[Signatures on next page.]

**THE FOREGOING IS AGREED:**

Dated: April 7, 2025    By: /s/ Michael S. Kasolas
                            MICHAEL G. KASOLAS, Trustee

Dated: April 2, 2025    By: /s/ Susanna Kelham
                            SUSANNA KELHAM, individually and as
                            members of Kelham Vineyard & Winery,
                            LLC

Dated: April 2, 2025        360 ZINFANDEL LANE TENANTS IN
                            COMMON

                        By: /s/ Susanna Kelham
                            Susanna Kelham, Manager

Dated: April 2, 2025        MAIN STREET PROPERTIES

                        By: /s/ Susanna Kelham
                            Susanna Kelham, Manager

Dated: April 2, 2025        KELHAM GROWERS, LLC

                        By: /s/ Susanna Kelham
                            Susanna Kelham, Manager

Dated: April 2, 2025    By: /s/ Hamilton Nicholsen
                            HAMILTON NICHOLSEN, individually,
                            and as a member of Kelham Vineyard &
                            Winery, LLC

# EXHIBIT A

(Bidding and Sale Procedures)

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>KELHAM VINEYARD & WINERY, LLC.<br><br>Debtor. | Case No. 23-10384-WJL<br><br>Chapter 11<br><br>**NOTICE OF OPPORTUNITY TO OVERBID, AUCTION SALE, AND HEARING ON MOTION TO APPROVE SALE**<br><br>**SALE HEARING:**<br>Date:   TBD<br>Time:   10:30 a.m. PT<br>Place:   1300 Clay Street<br>            Courtroom 220<br>            Oakland, CA 94612<br>Judge:    Honorable William J. Lafferty, III |

**TO: DEBTOR, ALL CREDITORS OF THE ESTATE, POTENTIAL BUYERS OF ESTATE ASSETS, PARTIES WHO HAVE REQUESTED SPECIAL NOTICE, AND THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that Michael G. Kasolas, trustee herein ("**Trustee**"), has entered into an agreement (the "**Agreement**")[1] to sell (the "**Sale**") pursuant to section 363 of the Bankruptcy Code,[2] and Rule 9019 of the Federal Rules of Bankruptcy Procedure, subject to overbid and Bankruptcy Court approval, all right, title and interest of Trustee in and to all remaining property of the bankruptcy estate including but not limited to: (i) personal property; (ii) books and records; (iii) permits and licenses to the extent transferrable; (iv) all rights and obligations under the Lease[3]; (v) any claims against the Kelham Parties; (vi) all right, title, and interest in the following litigation claims: the Cross-Complaint, the Lease Order, the Lease Appeal, and the Personal Property AP; (vii) the real property located at 540 Mund Road, St. Helena, CA; and (viii) any claims against third parties with certain exclusions (see Agreement ¶ 1(c)); (collectively, the "**Sale Assets**").

**PLEASE TAKE FURTHER NOTICE** that Sale Assets <u>do not</u> include: Chapter 5 claims; claims against Terra Valentine; that certain trademark (the "**Trademark**") identified as US Serial Number 78510891, and U.S. Registration Number 3032163 (together with the Trademark, collectively the "**Trademark Rights**"), registered on December 20, 2005 (and related litigation); and any property already sold or abandoned.

---

[1] A copy of the Agreement is available upon request sent to: kotus@thinkonyx.com
[2] 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").
[3] Undefined capitalized terms shall have the meaning ascribed to them in the Agreement.

1

**PLEASE TAKE FURTHER NOTICE** that the sale of all rights and obligations under the Lease and related litigation includes all related risk and liability, including, but not limited to, any administrative rent determined to be owed and any potential attorneys' fees awards reaching back to the Petition Date (or otherwise for which the Estate is found to be liable). (*See, also*, footnote 4.)

**PLEASE TAKE FURTHER NOTICE** that the sale is conditioned upon bankruptcy court (the "**Bankruptcy Court**") approval (the "**Order**").

**PLEASE TAKE FURTHER NOTICE** that the sale is subject to overbid. Overbids must be all-cash or cash-equivalents, and without contingencies. If any prospective overbidder desires to inspect the Sale Assets prior to submission of an overbid, such overbidder should contact: kotus@thinkonyx.com; provided, however, if any prospective overbidder desires to inspect the 540 Mund Road property, such overbidder should contract Trustee directly at trustee@kasolas.net with a copy to mbostick@fennemorelaw.com.

**PLEASE TAKE FURTHER NOTICE** that anyone interested in purchasing some or all of the Sale Assets must satisfy the following bidder qualification requirements ("**Qualification Requirements**"):

   a. Offer. The potential bidder shall submit a written offer.

      i. Such written offer shall be in the form of **Exhibit 1** (the "**Bidder APA**"). The Bidder APA must include a blackline showing any changes.

      ii. Such written offer shall be irrevocable until conclusion of the Auction.

      iii. Such written offer may not be conditioned on obtaining financing or any internal approval or on the outcome or review of due diligence.

      iv. If bidding on all of the Sale Assets, there will be a minimum overbid in the amount of **$1,300,000.00 plus Indemnification, for which an amount up to $500,000.00 must be secured by a letter of credit or other acceptable accommodation**.[4] Any potential bidder is encouraged to review the economics of the pending offer to ensure submission of a competitive bid.

      v. Qualified Bidders may not request, and the Bidder APA may not be conditioned on or otherwise entitle the Qualified Bidder to any break-up fee, expense reimbursement or similar type of payment.

      vi. Bidder APA must provide bidder expressly consents to bid procedures described herein and the jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Auction or the consummation of the Bidder APA.

   b. 363(m) Declaration. Bidder may request a finding that it is a "good faith" purchaser within the meaning of 11 U.S.C. § 363(m). If such a request is made, it must provide Trustee a competent declaration of such bidder's representative confirming facts supporting a finding by the Court that such bidder would be a good faith purchaser

---

[4] Any Qualified Overbid must include an indemnification (the "**Indemnification**") of the Estate which shall cover all related risk and liability arising from the Lease and related litigation, including, but not limited to, any administrative rent determined to be owed and any potential attorneys' fees awards reaching back to the Petition Date (or otherwise for which the Estate is found to be liable). Qualified Overbidder is purchasing litigation and shall step into Trustee's shoes to continue prosecution of all litigation.

entitled to the protections of 11 USC § 363(m). The declaration will be filed by Seller prior to the hearing to approve the sale. Sale shall not be contingent on a good faith purchaser finding.

c. <u>Financial Information.</u> The potential bidder shall provide Trustee verified financial information evidencing the potential bidder's ability to consummate the Bidder APA, including the source of funding for the purchase price. Financial information must identify the actual potential bidder and owners and ultimate parent company of the potential bidder.

d. <u>Request for Information.</u> Each Qualified Bidder shall comply with all reasonable requests for additional information by Seller regarding such Qualified Bidder and its contemplated transaction. Seller may determine that the Qualified Bidder is not or is no longer a Qualified Bidder if Qualified Bidder fails to comply with Seller's requests for additional information.

e. <u>Commitment Deposit.</u> The potential bidder shall submit to Trustee a commitment deposit in the amount of **10% (ten percent)** of the overbid purchase amount ("**Commitment Deposit**"). The Commitment Deposit shall be made by cashiers' check or wire transfer of immediately available funds (wire instructions available upon request). If the potential bidder is not qualified by Trustee as a Qualified Bidder (defined below) or is not the successful bidder or designated as a back-up bidder (if any), its Commitment Deposit will be returned.

f. <u>Delivery.</u> All of the foregoing items (including, without limitation, the Commitment Deposit) must be delivered no later than **TBD** [NOTE: DATE TO BE AT LEAST 2 DAYS PRIOR TO HEARING], to Onyx Asset Advisors, LLC, at 50 California Street, Suite 1500, San Francisco, CA 94111, or via email kotus@thinkonyx.com; with copies sent to mbostick@fennemorelaw.com.

**PLEASE TAKE FURTHER NOTICE** that upon submission of the Qualification Requirements, Trustee may, in his sole discretion, determine and designate the potential bidder as a qualified bidder ("**Qualified Bidder**") and the overbid as a qualified overbid ("**Qualified Overbid**"). Trustee in his sole discretion, may qualify bidders at any time before the end of the Auction.

**PLEASE TAKE FURTHER NOTICE** that if a timely Qualified Overbid is received, an auction (the "**Auction**") shall take place on **TBD, at 11:00 a.m. PT** at or during the hearing on approval of the Agreement, and may, in in the sole discretion of the Trustee or the Court, be continued from time to time until completed. Auction participants may appear via Zoom (instructions to be provided upon qualification). All Qualified Bidders shall be notified of any other Qualified Bidder, and shall be provided a copy of each Qualified Overbid as soon as practicable.

**PLEASE TAKE FURTHER NOTICE** that the following auction procedures shall apply:

g. <u>Valuation of Kelham Parties' Bid</u>: To facilitate the overbid process, Trustee has determined that the value of the Kelham Parties' bid is $1,200,000.00, comprised of $400,000.00 cash and $800,000.00 in non-cash consideration. Therefore, if there is an overbid at $1,300,000.00 cash plus Indemnification, and the minimum overbid increment is $25,000.00, the Kelham Parties' next bid would be $1,325,000.00 ($425,000 cash plus other consideration in the amount of $800,000.00). In turn, the next bid from the Qualified Overbidder would be $1,350,000.00 cash plus Indemnification. This example assumes that no other non-cash consideration is provided by the Qualified Overbidder. To the extent that a Qualified Overbidder includes non-cash consideration in its bid, Trustee may in his sole discretion value the non-cash consideration for purposes of the Auction bidding.

h. <u>Opening Bid and other Auction Procedures.</u> After review of all Qualified Bidder submissions, Trustee, in his sole discretion, may determine the opening bid (or bids, if Trustee elects to sell lots separately), may set minimum bid increments for any subsequent bid(s) (anticipated $25,000.00 increments), and may establish any other procedures (including adjusting minimum bid increments) he deems necessary to facilitate the Auction. At least twenty-four hours prior to the start of the Sale Auction, Trustee shall provide a copy of the opening bid (or bids, if Trustee elects to sell lots separately) to all participating Qualified Bidders attending the Auction. Either the Trustee or his representatives, or the Bankruptcy Court, shall direct and preside over the Auction.

i. <u>Authority to Bid</u>. All representatives of Qualified Bidders who submit any bid at the Auction represent that he/she has authority to bid and that the bid he/she submits is/are binding on the Qualified Bidder.

j. <u>Overbids</u>. Each subsequent round of bidding (following the opening bid) must comply with the Qualification Requirements and minimum bid increments set by Trustee until the Trustee or the Court elects to close bidding once the highest and best bid(s) for the Sale Assets has been reached.

k. <u>Determination of Winning Bid(s).</u> Trustee or the Court shall determine the highest and best bid(s) at Auction (the "**Winning Bid(s)**"). Sale Assets may be sold in separate lots. All bidding will be concluded at the Auction (which may be continued from time to time) and there will be no further bidding subsequent to the closure of the Auction.

l. <u>Back-Up Bid.</u> At the conclusion of the Auction, Trustee may designate a back-up bid(s) from those bids at Auction that Qualified Bidders have designated as available for back-up bid(s) selection (the "**Back-Up Bid(s)**"). At the conclusion of the Auction, if a bidder is designated as a backup bidder ("**Backup Bidder**"), his/her/its Commitment Deposit shall not be refunded unless or until the sale closes with the Winning Bid.

m. <u>Discretion to Determine Opening and Winning Bid.</u> The Seller will take into account any factors he deems relevant to the value of the Qualified Bidder's bid to Seller when determining which bid constitutes the opening bid, and overbid or Winning Bid(s) including, among other things, the following: (A) the amount and nature of any consideration; (B) the proposed assumption of liabilities, if any; (C) the ability of the Qualified Bidder to consummate the proposed transaction; (D) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (E) any purchase price adjustments; (F) the impact of the contemplated transaction on any actual or potential litigation; (G) the net economic effect of the offer; (H) the net after-tax consideration to be received by Seller; (I) the net amounts to be paid to Seller; and (J) such other considerations as Seller deems relevant.

**PLEASE TAKE FURTHER NOTICE** that Trustee's acceptance of the Winning Bid(s) at Auction is subject to Bankruptcy Court approval. Seller and the winning bidder(s) shall each use their commercially reasonable efforts, and shall cooperate, assist and consult with each other, to secure the entry of an Order approving the sale. The hearing on the Trustee's motion to approve the Sale will occur on the same day as the Auction (i.e., on **TBD, 2025).**

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and supporting declarations, filed concurrently herewith may be obtained from the Clerk of the Bankruptcy Court, off Pacer, or upon request from the undersigned

DATED: April ___, 2025

_____

Mark S. Bostick (Bar No. 111241)
Lisa Lenherr (Bar No. 258091)
**FENNEMORE WENDEL**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone: (510) 834-6600
Email: mbostick@fennemorelaw.com
Email: llenherr@fennemorelaw.com
Attorneys for Michael G. Kasolas, Trustee

# EXHIBIT 1
# BIDDER APA

This Bidder APA is submitted pursuant to the overbid procedures described in the Notice of Opportunity to Overbid, Auction Sale, and Hearing on Motion to Approve Sale, filed as Docket No. ___, on January ___, 2025 (the "**Notice**"), in the *Kelham Vineyard & Winery, LLC* bankruptcy case pending in the U.S. Bankruptcy Court, Northern District of California, as Case No. 23-10384. The undersigned hereby submits an overbid as follows:

1. **Purchaser Name:** _____
2. **Purchase Address**: _____
3. **Purchaser Phone**: _____
4. **Purchaser Email**: _____
5. **Purchaser attorney information (if any)**: _____
6. **Purchase Price**: $ _____
7. **Non-Cash Consideration**[5]**:** [describe in detail] _____

8. **Indemnification of the Estate**: Purchaser agrees to indemnify and hold harmless the Estate for <u>all</u> risk and liability arising from the Lease[6] and related litigation, including, but not limited to, any administrative rent determined to be owed and any potential attorneys' fees awards reaching back to the Petition Date (or otherwise for which the Estate is found to be liable) (the "**Indemnification**"). Purchaser understands that it is purchasing litigation and shall step into Trustee's shoes to continue prosecution of all purchased litigation. **Such Indemnification must be supported by verified information showing that Purchaser is likely to perform on such Indemnification obligation to the satisfaction of Trustee and an amount up to $500,000.00 must be secured by a letter of credit or other acceptable accommodation. Describe verifiable information (and attach documentation) and proposed security for Indemnification**: _____

9. **Commitment Deposit**: $ _____
10. **Assets to be purchased:** <u>all Sale Assets</u>[7] as described in the Notice. [If not purchasing all Sale Assets, please describe] _____
11. **Payment/Closing terms**. The balance of the Purchase Price shall be paid within five (5)

---

[5] Pursuant to the Notice describing the overbid procedures, Trustee has sole discretion to determine the value of non-cash consideration for purposes of the Auction.

[6] Undefined capitalized terms shall have the meaning ascribed to them in the Agreement (filed as Docket No. ___, on ___, 2025).

[7] I understand and agree that the assets listed for sale <u>do not</u> include: Chapter 5 claims; claims against Terra Valentine; that certain trademark (the "**Trademark**") identified as US Serial Number 78510891, and U.S. Registration Number 3032163 (together with the Trademark, collectively the "**Trademark Rights**"), registered on December 20, 2005; and any property already sold or abandoned.

6

days of entry of the Order approving the sale.

12. This offer is all cash and without contingencies except as follows:_____.

13. This offer is irrevocable until entry of an order approving the sale following conclusion of the Auction.

14. Bidder expressly consents to bid procedures described in the Notice and the jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Auction or the consummation of the Bidder APA.

15. [**OPTIONAL** Bidder requests a finding that it is a "good faith" purchaser within the meaning of 11 U.S.C. § 363(m) and will provide Trustee a competent declaration of such Bidder's representative confirming facts supporting a finding by the Court that such bidder would be a good faith purchaser entitled to the protections of 11 USC § 363(m). This offer is not contingent on a good faith purchaser finding.]

16. Other terms: _____

I UNDERSTAND THAT THE SALE ASSETS ARE BEING SOLD BY THE CHAPTER 11 TRUSTEE ("SELLER") FOR THE BANKRUPTCY CASE IN ITS AS-IS CONDITION, ON A "WHERE IS" BASIS AND "WITH ALL FAULTS," AND SUCH SALE IS WITHOUT RECOURSE, REPRESENTATION, OR WARRANTY OF ANY KIND BY SELLER, WHETHER EXPRESS, IMPLIED OR IMPOSED BY LAW, WHICH RECOURSE, REPRESENTATIONS, AND WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED BY BUYER. BUYER ACKNOWLEDGES THAT IT IS FULLY RELYING ON ITS OWN (OR IT REPRESENTATIVES') INSPECTIONS, EXAMINATIONS AND EVALUATIONS OF THE SALE ASSETS AND NOT UPON ANY STATEMENTS (ORAL OR WRITTEN) THAT MAY HAVE BEEN MADE OR MAY BE MADE (OR PURPORTEDLY MADE) BY SELLER OR ANY OF THEIR RESPECTIVE REPRESENTATIVES, AGENTS OR ATTORNEYS. WITHOUT IN ANY WAY LIMITING THE GENERALITY OF THE FOREGOING, THE PARTIES AGREE THAT SELLER HAS NOT MADE ANY, AND EXPRESSLY AND SPECIFICALLY DISCLAIMS ANY AND ALL, REPRESENTATIONS, GUARANTIES OR WARRANTIES, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW OR RELATING TO THE SALE ASSETS, INCLUDING, WITHOUT LIMITATION, OF OR RELATING TO ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

I UNDERSTAND THAT APPROVAL OF THE SALE IS SUBJECT TO BANKRUPTCY COURT APPROVAL.

BY EXECUTING THIS BIDDER APA THE UNDERSIGNED AGREE TO BE BOUND BY THE OVERBID PROCEDURES DESCRIBED IN THE NOTICE.

Purchaser(s):
By:_____  By:_____
Name:_____  Name:_____
Date:_____  Date:_____